Slip Op. 19-139

## UNITED STATES COURT OF INTERNATIONAL TRADE

YC RUBBER CO. (NORTH AMERICA)
LLC AND SUTONG TIRE RESOURCES,
INC. (FORMERLY KNOWN AS SUTONG
CHINA TIRE RESOURCES),

               Plaintiffs,

KENDA RUBBER (CHINA) CO., LTD.,

               Plaintiff-Intervenor,

   and

MAYRUN TYRE (HONG KONG)
LIMITED AND ITG VOMA
CORPORATION,

               Consolidated-Plaintiffs,

   v.

UNITED STATES,

               Defendant.

Before: Mark A. Barnett, Judge
Consol. Court No. 19-00069

## OPINION AND ORDER

[Denying Plaintiff-Intervenor Kenda Rubber (China) Co., Ltd.'s motion to modify the statutory injunction.]

Dated: November 8, 2019

Lizbeth R. Levinson, Ronald M. Wisla, and Brittney R. Powell, Fox Rothschild LLP of Washington, D.C., for Plaintiff-Intervenor Kenda Rubber (China) Co., Ltd.

Ashley Akers, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.

Consol. Court No. 19-00069                                                    Page 2

Barnett, Judge: Before the court is Plaintiff-Intervenor Kenda Rubber (China) Co.,

Ltd.'s ("Kenda") motion to modify the statutory injunction entered on July 2, 2019, to

cover more than 250 entries of Kenda's subject merchandise during the period of review

that were liquidated on June 14 and 21, 2019.  *See* Confidential Pl.-In't's Mot. to Modify

the Statutory Inj., ECF No. 31; Confidential Mem. of P&A in Supp. of Pl.-Int.'s Mot. to

Modify the Statutory Inj. ("Kenda's Mem."), ECF. No. 31-1.  Defendant United States

("the Government") opposes Kenda's motion.  *See* Def.'s Resp. in Opp'n to Int.'s Mot. to

Modify the Statutory Inj. ("Def.'s Resp."), ECF No. 33.  For the following reasons,

Kenda's motion is denied.

BACKGROUND

On April 26, 2019, Commerce published the final results of the second

administrative review of the antidumping duty order covering certain passenger vehicle

and light truck tires from the People's Republic of China for the period of review of

August 1, 2016, through July 31, 2017.[1]  *See Certain Passenger Vehicle and Light*

*Truck Tires From the People's Republic of China*, 84 Fed. Reg. 17,781 (Dep't

Commerce Apr. 26, 2019) (final results of antidumping duty admin. review and final

determination of no shipments; 2016–2017) ("*Final Results*"), ECF No. 24-4, and

accompanying Issues and Decision Mem., A-570-016 (Apr. 19, 2019), ECF No. 24-5.

Of relevance to this motion, Commerce assigned a weighted-average dumping margin

to Kenda in the amount of 64.57 percent.  *Final Results*, 84 Fed. Reg. at 17,782.

---

[1] Commerce signed the *Final Results* on April 19, 2019, *see* Def.'s Resp. at 1, and
publication occurred a week later.

Commerce informed interested parties that it "intend[ed] to issue appropriate

assessment instructions directly to [U.S. Customs and Border Protection ("Customs")]

15 days after publication of the final results of this administrative review." *Id*. at 17,783.

On May 14, 2019, 18 days after Commerce published the *Final Results*,

Commerce sent liquidation instructions to Customs covering relevant entries of subject

merchandise from Kenda, among others.  Def.'s Resp. at 2 (citing Message No.

9134302, Liquidation Instructions for Certain Passenger Vehicle and Light Truck Tires

from the People's Republic of China Exported by Various Companies for the Period

08/01/2016 through 07/31/2017, A-570-016, (May 14, 2019) ("Liquidation Instructions"));

*see also* Kenda's Mem. at 1–2.

On May 23, 2019, Plaintiffs YC Rubber Co. (North America) LLC and Sutong Tire

Resources, Inc. (formerly known as Sutong China Tire Resources) filed a summons and

complaint in this case.  *See* Summons, ECF No. 1; Compl., ECF No. 2.  On May 24,

2019, Plaintiffs filed Form 24 proposed orders for statutory injunctions and said orders

were entered the same day.[2]  *See* Orders for Statutory Inj. Upon Consent (May 24,

2019), ECF Nos. 11–12.  These injunctions did not cover Kenda's entries of subject

merchandise.  *See id.*

---

[2] Form 24 is a streamlined form a party may use to propose a statutory junction, pursuant to which the party indicates the consent of the other parties and agreement that they have made "a proper showing . . . that the requested injunctive relief should be granted under the circumstances."  *See* U.S. Court of International Trade ("USCIT"), Form 24 Order for Statutory Inj. Upon Consent (July 1, 2019) https://www.cit.uscourts. gov/sites/cit/files/Form%2024.pdf.

Consol. Court No. 19-00069                                                    Page 4

On June 14 and 21, 2019, pursuant to the Liquidation Instructions, Customs

liquidated over 250 (but not all) of Kenda's entries of subject merchandise at the rate

determined in the *Final Results*.  *See* Kenda's Mem. at Ex. 1 (Decl. of Robin Pickard,

Vice President of Finance and Accounting at Kenda (undated) ("Pickard Decl.")), ¶ 4.

By June 25, 2019, Kenda became aware that Customs had liquidated these entries.  *Id*.

Upon learning of these liquidations, Kenda contacted counsel about intervening in this

litigation.  *Id.* ¶ 5.

On June 27, 2019, Kenda filed a consent motion to intervene in this litigation.

*See* Proposed Pl.-Int.'s Consent Mot. to Intervene as a Matter of Right, ECF No. 18.

The following day, the court granted Kenda's motion to intervene.  Order (June 28,

2019), ECF No. 21.

On July 2, 2019,[3] Kenda filed a Form 24 proposed order for a statutory injunction

to enjoin Commerce or Customs from "issuing instructions to liquidate or making or

permitting liquidation of any unliquidated entries of" subject merchandise exported by

Kenda that were subject to the *Final Results*.  Proposed Inj. at 1–2.  Kenda's proposed

order covered "any entries inadvertently liquidated after this order [was] signed but

before this injunction [was] fully implemented by [Customs] . . . ."  *Id.* at 3.  The court

entered the injunction later that same day.  *See* Injunction.

---

[3] Kenda initially filed a Form 24 proposed order for a statutory injunction on July 1, 2019.  *See* [Proposed] Order for Statutory Inj. Upon Consent, ECF No. 22.  The next day, Kenda filed a revised Form 24, *see* [Revised Proposed] Order for Statutory Inj. Upon Consent ("Proposed Inj."), ECF No. 25, which the court granted, *see* Order (July 2, 2019) ("Injunction"), ECF No. 26.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012)[4] and 28 U.S.C. § 1581(c) (2012).  Alternatively, to the extent that it is properly before the court, *see infra* note 7, the court has jurisdiction pursuant to 28 U.S.C. § 1581(i) to review Kenda's challenge to Commerce's issuance of the Liquidation Instructions pursuant to its 15-Day Policy.[5] *See Mittal Steel Galati S.A. v. United States*, 31 CIT 730, 738–39, 491 F. Supp. 2d 1273, 1280 (2007) (stating that "this vexing jurisdictional question. . . is largely academic" because the court has jurisdiction pursuant to either 28 U.S.C. § 1581(c) or (i)).  With respect to Kenda's motion, the facts are not in dispute; the only questions are whether Customs' liquidation of the relevant entries was inconsistent with the purpose of the injunction, meriting use of the court's equitable powers to reverse liquidation, and whether Commerce's issuance of the Liquidation Instructions was not in accordance with law.  *See* 19 U.S.C. § 1516a(b)(1)(B)(i) (providing that the court "shall hold unlawful" actions brought pursuant to 28 U.S.C. § 1581(c) that are "unsupported by substantial evidence on the record, or otherwise not in accordance with the law"); 28 U.S.C. § 2640(e) (specifying that "civil action[s] not specified in this section" are

---

[4] Further citations to the Tariff Act of 1930, as amended are to the relevant portions of Title 19 of the U.S. Code, 2012 edition.

[5] As used in this Opinion and Order, the term "15-Day Policy" refers to Commerce's policy of issuing instructions to Customs to liquidate entries subject to the final results of an administrative review 15 days after publishing the results of that review.  *See generally* Announcement Concerning Issuance of Liquidation Instructions Reflecting Results of Admin. Reviews (Aug. 9, 2002), *available at* http://ia.ita.doc.gov/download /liquidation-announcement.html (updated Nov. 9, 2010) (last visited Nov. 8, 2019).

reviewed as provided in 5 U.S.C. § 706 (2012)); 5 U.S.C. § 706(2)(A) ("The reviewing

court shall . . . hold unlawful and set aside agency action,  . . . found to be [] arbitrary,

capricious and abuse of discretion, or otherwise not in accordance with the law").

## DISCUSSION

**A. The Liquidation of Kenda's Entries Was Not Inconsistent with the Injunction and the Court Will Not Exercise Its Equitable Powers**

The court entered the Injunction pursuant to 19 U.S.C. § 1516a(c)(2), which

provides that the court "may enjoin the liquidation of some or all entries of merchandise

covered by a determination of [Commerce]."  Here, while Kenda moves to modify the

Injunction, Kenda does not seek to have the court enjoin the liquidation of additional

unliquidated entries.  To the contrary, while only ever addressing the issue in terms of

modifying the Injunction, in substance, Kenda would have the court order the reversal of

liquidation of Kenda's entries that were liquidated in accordance with the *Final Results*

at a time when no injunction was in place.

Kenda does not allege that the liquidation of these entries occurred contrary to

the terms of the Injunction.  In fact, Kenda could not make such an argument.  It is clear

from the Pickard Declaration that Kenda knew these entries had been liquidated and

only then considered intervening in this litigation.  *See* Pickard Decl. ¶¶ 3–6.

Kenda nevertheless suggests that the liquidation of these entries must be

reversed in accordance with the "purpose" of the Injunction.  Kenda's Mem. at 3–5.

Kenda's claim is at least disingenuous, if not outright false.  Kenda had actual

knowledge that the entries in question had already been liquidated when it filed its

proposed injunction, Pickard Decl. ¶¶ 3–6; therefore, when it sought the Injunction,

Consol. Court No. 19-00069                                                          Page 7

which, on its face, applies only to unliquidated entries, it could not have been Kenda's

purpose (much less the purpose of any other party consenting to the proposed

injunction) that the Injunction cover previously liquidated entries.  *See* Proposed Inj. at 1

(enjoining the liquidation "of any unliquidated entries"); Injunction at 1 (same).  Thus, the

liquidation of Kenda's entries did not violate the terms or purpose of the Injunction.

Kenda also requests the court to grant relief as an exercise of the court's

equitable powers.  Kenda's Mem. at 2–5 (citing *Agro Dutch Indus. Ltd. v. United States*,

589 F.3d 1187 (Fed. Cir. 2009); *Clearon Corp. v. United States*, 34 CIT 970, 717 F.

Supp. 2d 1366 (2010)).  That being said, Kenda's argument for relief in equity merely

restates its arguments regarding the purpose of the Injunction.

While the court has equitable powers to modify an injunction to achieve its

intended purpose, *see, e.g.*, *Clearon*, 34 CIT at 979, 717 F. Supp. 2d at 1373, here, the

purpose of the Injunction was to maintain the status quo as of the time the Injunction

was entered.  The particular entries in question were liquidated prior to the entry of the

Injunction, and Kenda only sought to intervene after learning of the liquidation.  *See*

Pickard Decl. ¶¶ 4–5.  Consequently, Kenda's arguments based on equity and the

purpose of the Injunction must fail.[6]  *See, e.g.*, *An Giang Fisheries Imp. & Exp. Joint*

*Stock Co. v. United States*, 41 CIT ___, ___, 211 F. Supp. 3d 1346, 1351 n.6 (2017)

---

[6] Denial of Kenda's motion does not moot Kenda's ability to challenge Commerce's
*Final Results* because, while Kenda's cause of action as to the liquidated entries may
be lost, *see Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed. Cir. 1983),
the liquidated entries in question constitute a subset of the universe of Kenda's entries
during the period of review.  Other entries remain unliquidated and the liquidation of
those entries is enjoined pursuant to the Injunction.

(finding that the court's equitable powers do not extend to "reliquidat[ing] entries that liquidated prior to the entry of the statutory injunction and that were not covered by the terms of that injunction").

### B. Commerce's Issuance of Liquidation Instructions Was Not Unlawful

The only legal basis that Kenda asserts for possibly reversing the liquidation of the entries in question is that Commerce's issuance of the Liquidation Instructions was unlawful.[7]  The court is unpersuaded.

In the *Final Results*, Commerce provided notice that it would issue liquidation instructions 15 days after the publication of the *Final Results*.  Such notice was consistent with Commerce's 15-Day Policy.  Citing *Jinan Farmlady Trading Co., Ltd. v. United States*, 41 CIT ___, 228 F. Supp. 3d 1351 (2017), and *SKF USA Inc. v. United States*, 33 CIT 370, 611 F. Supp. 2d 1351 (2009), Kenda contends that Commerce's issuance of the Liquidation Instructions less than 30 days after publication of the *Final Results* is unlawful.  Kenda's Mem. at 5–7.  In both *Jinan* and *SKF*, the court found the issuance of liquidation instructions pursuant to the 15-Day Policy unlawful because it abbreviated the 30-day period parties have following the publication of the final results

---

[7] Defendant did not object that Kenda, as a Plaintiff-Intervenor, impermissibly enlarged the Plaintiff's case with this claim.  Plaintiff-Intervenors do not enlarge a case by seeking an injunction to cover their own entries.  *See, e.g.*, *N.M. Garlic Growers Coal. v. United States*, 41 CIT ___, ___, 256 F. Supp. 3d 1373, 1376 (2017).  However, by requesting the court to declare Commerce's 15-Day Policy unlawful and order the reversal of liquidation, it appears that Kenda's motion is improper to the extent that it would enlarge the issues in the case.  *See Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498 (1944).  In the absence of argument on this issue by the Parties, the court will note this as an alternative basis for its denial of Kenda's motion.

to decide whether to file suit.  *See Jinan*, 228 F. Supp. 3d at 1358; *SKF*, 33 CIT at 389,

611 F. Supp. 2d at 1367; *see generally* 19 U.S.C. § 1516a(c).

 In this case, the Liquidation Instructions were issued 18 days after publication of

the *Final Results*.  *See* Def.'s Resp. at 2.  Obviously, that is less than the statutory 30-

day period afforded by 19 U.S.C. § 1516a(c)(2) to file suit following the publication of a

determination as identified in 19 U.S.C. § 1516a(a)(1).  However, liquidation itself did

not occur until 49 to 56 days after publication.  Pickard Decl. ¶ 4.  Thus, Kenda, in fact,

had more than 30 days to decide whether to file suit or intervene.[8]

 Kenda argues, however, that the reasoning of *Jinan* and *SKF* should be

extended to hold unlawful the issuance of liquidation instructions until Kenda's full time

period for determining whether to intervene and obtain a statutory injunction has run its

course.  *See* Kenda's Mem. at 5–7.  Such a period could be as long as 120 days.  *See*

19 U.S.C. § 1516a(a)(2)(A)(i)(I) (a civil action to challenge the final results of an

administrative review must be commenced within 30 days of publication of the results in

the Federal Register); USCIT Rule 3(a)(2) (a complaint must be filed within 30 days of

filing the summons that commenced the action); USCIT Rule 24(a) (providing for

intervention no later than 30 days after service of the complaint); USCIT Rule 56.2(a)

---

[8] Given that Kenda filed its motion to intervene 62 days after Commerce published the *Final Results* and 44 days after Commerce issued the Liquidation Instructions, Kenda has failed to make a case that the 15-Day Policy forced Kenda to file its motion to intervene or seek an injunction "in a rushed manner."  *Juancheng Kangtai Chem. Co., Ltd v. United States*, 41 CIT ___, ___, 322 F. Supp. 3d 1351, 1358–59 (2018), *aff'd*, 932 F.3d 1321 (Fed. Cir. 2019); *see also Mittal Steel Galati S.A. v. United States*, 31 CIT 730, 738–39 (2007) (stating that the 15-Day Policy may cause a "lack of certainty of when liquidation will occur," causing interested parties to "almost immediately" file with this court a complaint, summons, and motion to enjoin liquidation).

("[A]n intervenor must file a motion for statutory injunction . . .  no later than 30 days after the date of service of the order granting intervention . . . .").  In other words, Kenda suggests that because an intervenor is permitted to wait as long as 30 days after service of a complaint (which, pursuant to 19 U.S.C. § 1516a, might not be filed until as late as 60 days from the publication of the final results) to intervene in an action, *see* USCIT Rule 24(a)(3), and to wait another 30 days after its motion to intervene is granted to request a statutory injunction, *see* USCIT Rule 56.2(a), that any issuance of liquidation instructions and actual liquidation prior to such deadline is unlawful.

The court declines to extend the logic of *Jinan* and *SKF* as requested by Kenda. The statute is clear that liquidation of entries of merchandise subject to a preliminary or final determination in an antidumping investigation is suspended by operation of law. *Int'l Trading Co. v. United States*, 281 F.3d 1268, 1272 (Fed. Cir. 2002); *Am. Power Pull Corp. v. United States*, 39 CIT ___, ___, 121 F. Supp. 3d 1296, 1301 (2015). Publication of the final results of an administrative review provides notice to Customs of the lifting of the suspension of liquidation of entries covered by that administrative review.  *Int'l Trading*, 281 F.3d at 1275.  That notice marks the start date for measuring the six-month period by the end of which Customs must have liquidated the covered entries, otherwise they are deemed liquidated at the entered rate.  19 U.S.C. § 1504(d). Thus, in the absence of a judicial challenge to the final results of an administrative review, the liquidation of the covered entries is either suspended by law, or it is not.

Following the issuance of the final results of an administrative review, a party may challenge those results at the U.S. Court of International Trade.  *See* 19 U.S.C.

Consol. Court No. 19-00069                                                          Page 11

§ 1516a.  Again, the statute is clear regarding the consequences associated with such a

court challenge: If liquidation of the covered entries is enjoined by the court, such

entries must be liquidated in accordance with the final court decision in the action, 19

U.S.C. § 1516a(e); otherwise, the entries must be liquidated in accordance with

Commerce's determination, 19 U.S.C. § 1516a(c)(1).  Thus, following the publication of

the final results and the lifting of the suspension of liquidation, the liquidation is either

enjoined by the court, or it is not.[9]

        This is a detailed scheme created by Congress and defined by statute that

addresses the status of entries covered by an administrative review by which their

liquidation is either suspended or not and, if not suspended, either enjoined or not.

What Kenda would do is ask this court to create an additional status whereby entries

that are neither suspended by law nor enjoined by the court, nevertheless, may not be

liquidated.  Moreover, Kenda would ask that this period of inaction cover four of the six

months within which Customs must act to liquidate the entries.  Kenda's request is both

unwarranted and unreasonable.

        Just as it is clear that Congress knew how to provide for the status of entries

subject to an administrative proceeding by Commerce—that is, the suspension of

liquidation and the lifting of that suspension with the publication of the final results of the

administrative review—so too did Congress know how to provide for a period for parties

to file a summons and then a complaint challenging those final results.  Congress,

---

[9] Special procedures exist in the case of a bi-national panel review pursuant to the
NAFTA, which are not relevant here. *See, e.g.*, 19 U.S.C. § 1516a(g)(5).

however, chose not to extend the period of suspension of liquidation to encompass the

period in which a party may elect to challenge Commerce's final results.[10]  Similarly, 19

U.S.C. § 1504(d) makes it plain that Congress intended to provide Customs with a six-

month period—which begins to run on the date the final results are published—during

which the suspension is lifted and Customs may liquidate entries in accordance with the

agency's final results.  *Cf. Int'l Trading*, 281 F.3d at 1273 ("[T]here is nothing untoward

about having the six-month period for liquidation run during the period between the time

Commerce publishes the final results and the time Commerce directs Customs to

liquidate the entries that are covered by those results.").  To suggest that there exists

some extended waiting period after the notice lifting suspension of liquidation is

published but before the agencies may begin the process of liquidating an entry (absent

an injunction) is inconsistent with Congress's statutory framework.[11]

---

[10] In that vein, the court in *SKF* specifically rejected the argument "that 19 U.S.C. § 1516a(a)(2) requires Commerce to wait sixty days (or alternatively, according to USCIT Rule 56.2(a), ninety days) from the date of publication before issuing liquidation instructions."  33 CIT at 382, 611 F. Supp. 2d at 1362.

[11] The court has suggested in previous opinions that Congress left a statutory gap by not prescribing a schedule or methodology for Commerce's issuance of liquidation instructions, and that Commerce may not fill that gap by use of an earlier version of the 15-Day Policy.  *See, e.g., Jinan*, 228 F. Supp. 3d at 1358.  However, the court "must . . . defer to Commerce's reasonable construction of its governing statute where Congress 'leaves a gap in the construction of the statute that the administrative agency is explicitly authorized to fill or implicitly delegates legislative authority, as evidenced by 'the agency's generally conferred authority and other statutory circumstances.''"  *U.S. Steel Corp. v. United States*, 621 F.3d 1351, 1357 (Fed. Cir. 2010) (citation omitted).  And while the court looks for reasoned analysis or explanation to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion, *id*., here, Commerce has provided that explanation by public announcement (i.e., the 15-Day Policy, *see supra* note 5), in which it explained its reasoning in light of the six-month deemed liquidation deadline and other challenges.  Notwithstanding Commerce's

For these reasons, the court declines to extend the logic of *Jinan* or *SKF* in this

case.

**CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that Kenda's motion to modify the statutory injunction (ECF Nos. 31,

32) is denied.

/s/     Mark A. Barnett
Mark A. Barnett, Judge

Dated: November 8, 2019
       New York, New York

---

reasoning, the agency might consider whether its 15-Day Policy could be amended so
that regardless of when Commerce issues the liquidation instructions to Customs, the
instructions specify some time period before which Customs may not act on those
instructions in order to provide greater clarity to all parties and to better address some of
the concerns raised in the numerous court cases addressing the 15-Day Policy.  *See*,
*e.g.*, *Mukand Int'l Ltd. v. United States*, 30 CIT 1309, 1314–15, 452 F. Supp. 2d 1329,
1334–35 (2006).