**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE**

------------------------------------------------------------------ **X**

YC RUBBER CO. (NORTH AMERICA) LLC, :
SUTONG TIRE RESOURCES, INC.,   MAYRUN :
TYRE (HONG KONG) LIMITED, AND ITG VOMA :
CORPORATION,                                                :
                            **Consolidated Plaintiffs,**       :
                                                                      :
    **and**                                             :
                                                                      :
KENDA RUBBER (CHINA) CO., LTD.              :              **19-cv-00069**
                                                                      :
                            **Plaintiff-Intervenor,**          :
                                                                      :
    **v.**                                               :
                                                                      :
UNITED STATES,                                         :
                                                                      :
                            **Defendant,**                       :
------------------------------------------------------------------ **X**


<u>**COMMENTS OF CONSOLIDATED PLAINTIFF, MAYRUN TYRE (HONG KONG)**</u>
<u>**LIMITED, IN OPPOSITION TO THE COMMERCE DEPARTMENT'S FIRST**</u>
<u>**REMAND REDETERMINATION**</u>

NEVILLE PETERSON LLP
*Counsel for Plaintiff*

John M. Peterson
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Richard F. O'Neill
701 Fifth Ave, Ste. 4200-2159
Seattle, WA 98104
(206) 905-3648
roneill@npwny.com

February 2, 2024

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................................... ii

COMMENTS OF CONSOLIDATED PLAINTIFF, MAYRUN TYRE (HONG KONG) LIMITED, IN OPPOSITION TO THE COMMERCE DEPARTMENT'S FIRST REMAND REDETERMINATION ............................................................................................................. 1

BACKGROUND ........................................................................................................................ 2

ARGUMENT .............................................................................................................................. 7

I.     The Remand Results are Beyond the Scope of the Federal Circuit's Remand. ................... 7

II.    Subjecting Mayrun and the Other Plaintiffs to the "China-Wide" Rate is Arbitrary, Capricious, and an Abuse of Discretion. ........................................................................... 11

III.   The Department Failed to Consider Mayrun's Second Withdrawal Request on Remand. ............................................................................................................................ 15

CONCLUSION ......................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Amentum Servs. v. United States*, 2021 U.S. Claims LEXIS 2741 (Fed. Cl. 2021) ..................... 9

*Changzhou Hawd Flooring Co. v. United States*, 44 F. Supp. 3d 1376 (Ct. Int'l Tr. 2015) ... 7, 11, 14

*Ellwood City Forge Co. v. United States*, 654 F. Supp. 3d 1268 (Ct. Int'l Tr. 2023) ................. 10

*Glycine & More Inc. v. United States*, 880 F.3d 1335 (Fed. Cir. 2018) ....................................... 15

*Hubbell Power Sys. v. United States*, 365 F. Supp.3d 1302 (Ct. Int'l Tr. 2020) ......................... 13

*Inserts v. Geren*. 530 F. Supp. 2d 24 (D.D.C. 2007) ...................................................................... 9

*Laitram v. NEC Corp*, 115 F.3d 947 (Fed. Cir. 1997) ................................................................ 9, 16

*Lifestyle Ent. Inc. v. United States*, 768 F. Supp. 2d 1286 (Ct. Int'l Tr. 2011)............................ 13

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed Cir. 2003)........................................... 13

*Quern v. Jordan*, 440 U.S. 332 (1979) ............................................................................................ 9

*Shaeffler Italia S.R.L. v. United States*, 781 F. Supp. 2d 1358 (Ct. Int'l Tr. 2011) ....................... 4

*Shenzhen Xinboda Indus. Co. v. United States*, 180 F. Supp. 3d 1305 (Ct. Int'l Tr. 2016).......... 13

*Sullivan v. Hudson*. 490 U.S. 877 (1989) ...................................................................................... 10

*Venus Wire Indus. Pvt v. United States*, 471 S. Supp. 3d 1289 (Ct. Int'l Tr. 2020) .................... 13

*YC Rubber (N. Am) LLC, v United States*, 487 F. Supp. 3d 1367 (Ct. Int'l Tr. 2022) .................... 4

*YC Rubber (N. Am.) LLC v. United States*, 2022 U.S. App. LEXIS 24259 (Fed. Cir. August 29, 2023)............................................................................................................. 4, 7

**Statutes**

19 U.S.C. § 1516a................................................................................................................................ 3

19 U.S.C. § 1673d............................................................................................................................ 3, 8

19 U.S.C. § 1675 ........................................................................................................................... 6, 14

19 U.S.C. § 1677e............................................................................................................................. 12

28 U.S.C. § 1581 ................................................................................................................................ 3

**Other Authorities**

*Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China*, 80 Fed. Reg. 47,902 (August 10, 2015)........................................................................................ 2

*Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China*, 83 Fed. Reg. 45,893 (Sept. 11, 2018) .......................................................................................... 2

*Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, and Final Determination of No Shipments; 2016–2017*, 84 Fed. Reg. 17,781 (April 26, 2019) ......................................... 3, 7

*Initiation of ADD/CVD Administrative Reviews*, 82 Fed. Reg. 48,051 (Oct. 16, 2017).......... 2, 14

**Regulations**

19 C.F.R. § 351.213 .................................................................................................................... 3, 15

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE**

```
-------------------------------------------------------------- X
YC  RUBBER  CO.  (NORTH  AMERICA)  LLC, :
SUTONG  TIRE  RESOURCES,  INC.,   MAYRUN :
TYRE (HONG KONG) LIMITED, AND ITG VOMA :
CORPORATION,                              :
                  Consolidated Plaintiffs, :
                                          :
      and                                 :
                                          :
KENDA RUBBER (CHINA) CO., LTD.            :          19-cv-00069
                                          :
              Plaintiff-Intervenor,       :
                                          :
      v.                                  :
                                          :
UNITED STATES,                            :
                                          :
              Defendant,                  :
-------------------------------------------------------------- X
```

## COMMENTS OF CONSOLIDATED PLAINTIFF, MAYRUN TYRE (HONG KONG) LIMITED, IN OPPOSITION TO THE COMMERCE DEPARTMENT'S FIRST REMAND REDETERMINATION

In accordance with this Court's Scheduling Order of January 22, 2024 (ECF 87), plaintiff, Mayrun Tyre (Hong Kong) Limited ("Mayrun"), hereby files comments opposing the U.S. Department of Commerce ("Commerce" or the "Department") Final Results of Redetermination Pursuant to Court Remand (November 3, 2023), Consol. Court No. 19-00069, Slip Op. 21-1489, ECF 78 ("Remand Redetermination"). For the following reasons, Mayrun respectfully submits that Commerce's remand redetermination impermissibly exceeds the scope of the Federal Circuit's remand and disregards settled "law of the case." Further, Mayrun submits that Commerce acted improperly in ignoring, and effectively denying, Mayrun's second request (made on remand) to withdraw from the administrative review of the antidumping order against *Certain Passenger*

*Vehicle and Light Truck Tires from the People's Republic of China*, 80 Fed. Reg. 47,902 (August 10, 2015) (antidumping duty order).

## BACKGROUND

### I.    Actions Leading to the Remand to Commerce

This proceeding arose out of the second annual review of the antidumping order against *Certain Passenger Vehicle and Light Truck Tires* ("PVLT") *from the People's Republic of China*. The review covered entries made during the period August 1, 2016, through July 30, 2017.  The review was initiated on October 16, 2017. *See Initiation of ADD/CVD Administrative Reviews*, 82 Fed. Reg. 48,051, 48,055 (Oct. 16, 2017). As is customary, Commerce allowed individual exporters/producers to apply for "separate rate" status by demonstrating that they are free from *de facto* or *de jure* Chinese government control. Separate rate respondents receive an individually-calculated dumping margin separate from the country-wide margin. Mayrun and other companies applied for, and received, "separate rate" status.

Although respondents requested that Commerce select at least three "mandatory respondents" whose sales would be examined, Commerce selected only two, Zhaoqing Junhong Co. ("Junhong"), and Shangdong Haohua Tire Co. Ltd. ("Haohua"), *see PVLT from China*, 83 Fed. Reg. 45,893 (Sept. 11, 2018) ("Preliminary Results"), and issued additional questionnaires to these two companies on April 12, 2018. Two weeks later, Haohua notified the Department that it was withdrawing from participation in the review. *Id.* Commerce did not select a replacement respondent, and for the next three months, investigated only Junhong.  On September 11, 2018, Commerce issued its Preliminary Results based on its examination of Junhong and determined an individual dumping margin of 73.63%. This margin was designated as the rate applicable to the "separate rate respondents" as well. *Id.* at 45,895. Various respondents, including Mayrun, sought

2

to withdraw from the review at that time, but Commerce denied these requests as being untimely submitted pursuant to 19 C.F.R. § 351.213(d)(1).

Commerce published the final results of the review on April 26, 2019, and reduced the rate of the single mandatory respondent, Junhong, to 64.57%. It continued to use the Junhong rate as the rate applicable to the separate rate respondents. *See Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, and Final Determination of No Shipments; 2016–2017,* 84 Fed. Reg. 17,781 (April 26, 2019) ("PVLT Final Results AR2").

However, Commerce did not change its view that the companies designated as separate rate respondents were entitled to that status.

YC Rubber, Sutong Tire, ITG Voma, Mayrun and Kenda Rubber (China) Co. Ltd. filed suit in this Court seeking review of the Final Results pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c). The cases were consolidated *sub nom, YC Rubber (North America) LLC v. United States*, Consol. Ct. No. 19-00069. Before this Court, the plaintiffs argued, *inter alia*, that Commerce's Final Results were not in accordance with law, because the agency's use of a single mandatory respondent as the basis for assigning rates to the separate rate respondents violated the general rule in 19 U.S.C. § 1673d(c)(5), which provides:

**Method for Determining All-Others Rate**

(A) General Rule

For purposes of this subsection and section 1673b(d) of this title, the estimated all-others rate shall be an amount equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and de minimis margins, and any margins determined entirely under section 1677e of this title.

(B) Exception

3

If the estimated weighted average dumping margins established for all exporters and producers individually investigated are zero or de minimis margins, or are determined entirely under section 1677e of this title, the administering authority may use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated.

This Court held that basing the margins for a separate rate respondent on an "average" of one data point was a reasonable exercise of Commerce's discretion. *See YC Rubber (N. Am) LLC. v United States*, 487 F. Supp. 3d 1367 (Ct. Int'l Tr. 2022). The Court of Appeals for the Federal Circuit disagreed, however, adopting the CIT's decision in *Shaeffler Italia S.R.L. v. United States*, 781 F. Supp. 2d 1358 (Ct. Int'l Tr. 2011), and holding that "a reasonable number of exporters or producers must be greater than one." The Federal Circuit concluded that the statute's reference to the plural term "reasonable number of exporters or producers[,]" read according to its plain meaning, did not encompass a quantity of one. *YC Rubber (N. Am.) LLC v. United States*, 2022 U.S. App. LEXIS 24259 (Fed. Cir. August 29, 2023).

"For these reasons," the appellate Court held, "we conclude that Commerce erred in relying on a single entity for calculation of a dumping margin for all respondents." The Federal Circuit vacated the decision of the Court of International Trade and remanded the case "for further proceedings in conformity with this opinion."[1] The Court did not specify what "further proceedings" should be conducted. *Id.*

Issuance of the Federal Circuit's mandate returned the case to this Court, which, on February 2, 2003, remanded the matter to Commerce for action consistent with the Federal Circuit's decision. ECF 72.

---

[1] The Federal Circuit held in abeyance a decision on Mayrun's claim that Commerce had erred by not allowing to withdraw as a respondent in the case.

After seeking extensions of time, Commerce filed its remand redetermination with this Court on November 3, 2023. ECF 78.

**II.**     **Commerce's Determination on Remand**

There were a number of ways the government might have sought to implement the Federal Circuit's decision. It could have "pulled through" antidumping rates from the first annual review of the Order;[2] it could have mooted the appeal as to various respondents by granting their requests to withdraw from the review. Instead, Commerce took the rare step of reopening the record, many years after the reviewed transactions had occurred, and trying to locate a second mandatory respondent. *See* Memorandum from Shawn Thompson to Jacob Saude, Dated February 8, 2023, PR 1.

Commerce, one by one, selected several of the remaining separate rate respondents to act as a second mandatory respondent. Most declined, on the reasonable ground that they no longer retained records of the transactions that the agency was inquiring about. Commerce's quest found surprising success when one of the separate rate respondents, Kenda Rubber, indicated that it would act as a mandatory respondent. *See* Letter from Fox Rothschild to Secretary of Commerce (March 20, 2023), PR 38.   Kenda responded to the agency's questionnaires, and Commerce calculated an individual rate of 18.15% for the company. *See* ECF 78-1 at 5. Commerce announced its remand determinations on July 25, 2023. *See* Draft Remand Redetermination (July 25, 2023) PR 103. Mayrun, along with other litigants in this case, submitted comments in opposition to the draft remand results. *See* Letter from Neville Peterson LLP to Secretary of Commerce (August 17, 2023) PR 111.

---

[2] *See* Letter from Neville Peterson to Commerce (March 3, 2023), PR 23, at 2-3.

To the extent Commerce was successful in locating a second mandatory respondent, that action it should have taken, consistent with the remand order of the Federal Circuit, would have been to calculate an  average of the Junhong and Kenda rates, and apply that rate to the other mandatory rate respondents. Instead, it revisited its prior determination that these firms, including Mayrun, had satisfied the requirements to receive a separate rate, and instead designated them as part of the "China-wide entity." *Id.*

Having decided to re-designate these respondents as part of the China-wide entity, Commerce only had a single "separate rate respondent" to which it could assign a rate based on averaging. It therefore allowed a separate rate of 41.36% to be applied to Shandong Linglong Tyre Co., Ltd., who perhaps luckily, was never selected as a mandatory respondent.

Once Commerce decided that it would re-initiate the process of selecting "mandatory respondents—typically done in the early stages of a 19 U.S.C. § 1675 administrative review, Mayrun submitted its second request to withdraw from the review. *See* Mayrun Second Withdrawal Request (February 16, 2023), PR 8. Commerce, in its final remand results, denied this request in conclusory fashion, only noting that the Federal Circuit had not rendered a decision on Mayrun's *initial* request to withdraw. Commerce did not address the fact that, in the remand proceeding, Mayrun's second request to withdraw was submitted during respondent selection— *i.e.,* a very early stage of the administrative proceeding.

As discussed below, Commerce's remand redetermination is improperly beyond the scope of the Federal Circuit's remand and is arbitrary and capricious. In addition, Commerce must rule on Mayrun's second withdrawal request.

## ARGUMENT

### I.     The Remand Results are Beyond the Scope of the Federal Circuit's Remand.

Commerce's Final Results of the second annual review of the Order concluded that Mayrun and the other firms—including Plaintiffs in this consolidated action—had shown that they were free from *de facto* and *de jure* Chinese state control, and were entitled to receive separate rates. *See PVLT Final Results AR2*. Commerce's designation of Mayrun and others as "separate rate respondents" was not challenged before this Court or the Federal Circuit and became final, settled "law of the case."

The issue on appeal was the proper calculation of the dumping rates for these Plaintiffs, whose separate rate respondent status is unquestioned and is not susceptible to Commerce's reconsideration on remand. *See e.g., YC Rubber (N. Am.) LLC v. United States*, 2022 U.S. App. LEXIS 24259 (Fed. Cir. August 29, 2023). The Federal Circuit did not invite Commerce to reopen the question of Plaintiffs' entitlement to separate rate status, nor did it invite re-evaluation of whether these separate rate respondents were free of Chinese state control. *Id.* The Federal Circuit did not direct, invite or allow Commerce to find a second mandatory respondent. *Id.* And yet, in an unprecedented move, the agency both re-evaluated Plaintiffs' separate rate status and selected a new mandatory respondent. *See e.g.,* Remand Redetermination.

This Court has previously held that for Commerce to request data from a respondent some 3-1/2 years after a review was conducted is arbitrary and capricious. *Changzhou Hawd Flooring Co. v. United States*, 44 F. Supp. 3d 1376, 1388-91 (Ct. Int'l Tr. 2015). Here, Commerce's requests upon the Plaintiffs to be mandatory respondents came an unprecedented 6 to 7 years after relevant events. Not surprisingly, Mayrun and other respondents reported that they were unable to respond to mandatory respondent questionnaires—not that they were unwilling—because the necessary

records were no longer retained, or were no longer complete. In Mayrun's case, the legally required records retention standard in Hong Kong of 3 years was noted in explaining the absence of the required records, and therefore, the impossibility of compliance was certified on the record of this proceeding by a company representative. *See* Letter from Neville Peterson LLP to Commerce (March 3, 2023), PR 23.

Nor could it reasonably be argued that Mayrun and other respondents had an obligation to maintain these records beyond the legal recordkeeping obligations imposed in the jurisdictions where they operate. The final agency record on which judicial review was to occur had closed well before the issuance of the Final Results. Judicial review of Commerce's decisions is based on the administrative record certified by the agency. There is no reason for these respondents to have expected that their records were necessary in connection with this proceeding considering *inter alia*: (1) they had not been selected as mandatory respondents; (2) their status as separate rate respondents was already settled "law of the case"; and (3) the record for Commerce's determination in the review had long since closed.

Indeed, it was surprising that Kenda Rubber had maintained usable records extending back to the period covered by this review; fortuitous for the Department, in that it could now attempt to comply with the Federal Circuit's remand order by calculating a rate based on an average, *See* 19 U.S.C. § 1673d(c)(5)(A) ("General Rule"), rather than devising a method under the "exception" set out at 19 U.S.C. § 1673d(c)(5)(B).

Had Commerce set the separate rate respondents' rates by creating an average of the Junhong and Kenda rates, this likely would have been in conformity with the Federal Circuit's Remand Order (subject, of course, to any challenges to the calculation of such rates).

Instead, however, Commerce's Remand Redetermination tramples settled issues which are not implicated in this suit, and discards the finality of the agency decision treating Mayrun and the other Plaintiffs as separate rate respondents. Final agency action had occurred as to these subjects, and the Federal Circuit neither directed, invited, nor allowed the agency to revisit them on remand. Moreover, Commerce's Remand Redetermination fails to fulfill the Federal Circuit's Order to calculate a dumping rate for the separate rate respondents based on an average of mandatory respondent rates.

The law is clear that on remand, a lower court cannot re-adjudicate matters that have already been decided; though, it can rule on matters left open by the appellate court's mandate. *See e.g., Messenger v. Anderson*, 225 U.S. 436,444 (1912). In *Laitram v. NEC Corp*, 115 F.3d 947, 951 (Fed. Cir. 1997), the Federal Circuit held:

> Upon return of its mandate, the district court cannot give relief beyond the scope of that mandate, but it may act on "matters left open by the mandate." *Caldwell [v. Puget Sound Electrical Apprenticeship & Training Trust]*, 824 F.2d [765] at 767 (quoting [*In re J Sanford [Fork & Tool Co*], 160 U.S. [247] at 256 (1895)). Therefore, the critical question in determining whether the district court had the power to hear and decide the motions for JMOL on remand, is what issues were left open by the mandate.

Agencies and lower courts alike, are bound by the scope of the mandate issued by an appellate court, which directs the scope of a district court's actions on remand must be consistent with the mandate. *Quern v. Jordan*, 440 U.S. 332, 347 (1979). On remand, a lower court or agency may take those actions required to comply with the mandate. *Amentum Servs. v. United States*, 2021 U.S. Claims LEXIS 2741 (Fed. Cl. 2021). In *Inserts v. Geren*. 530 F. Supp. 2d 24, 35-36 (D.D.C. 2007), the court noted that an agency:

> … was not required to consider plaintiffs three additional arguments on remand, for the scope of the Court's remand determines what issues an administrative agency can address. *Cf. Consarc Corp. v. U.S. Treasury Dept. Office of Foreign Assets Control*, 871 F. Supp. 1463, 1464 (D.D.C. 1994) ( "The scope of the appellate court's remand determines what issues the trial court can relitigate.")

(citing *Nelson v. All Am. Life & Fin. Corp..* 889 F.2d 141, 152 (8th Cir. 1989)), rev'd on other grounds. 315 U.S. App. D.C. 201, 71 F.3d 909, 915 (D.C. Cir. 1995). Moreover, "<u>a legal decision made at one stage of litigation, unchallenged in a</u> <u>subsequent appeal when the opportunity to do so existed, becomes the law of the</u> <u>case for future stages of the same litigation, and the parties are deemed to have</u> <u>waived the right to challenge that decision at a later time.</u>" *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc..* 258 U.S. App. D.C. 124, 810 F.2d 243, 250 (D.C. Cir. 1987) (citing *Laffey v. Nw. Airlines, Inc..* 238 U.S. App. D.C. 400, 740 F.2d 1071, 1089-93, 1102-03 (D.C. Cir. 1984), cert. denied. 469 U.S. 1181, 105 S. Ct. 939, 83 L. Ed. 2d 951 (1985)); *see also Aw. Ind. Tel. Co., Inc. v. F.C.C.*, 277 U.S. App. D.C. 30, 872 F.2d 465, 470 (D.C. Cir. 1989) ("It is elementary that where an argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second appeal following remand.") (quoting *Laffey*, 740 F.2d at 1089-90) (internal quotation marks omitted).

(Emphasis added). That Mayrun and the other Plaintiffs had already qualified as "separate rate respondents," and were therefore not part of the "China-wide entity," was settled "law of the case." *Id.*

The question before the Federal Circuit was limited to whether the Plaintiffs, previously adjudicated to be separate rate respondents, were entitled to separate rates that would be calculated based on an average of two or more mandatory respondents. Thus, Commerce's options were either (i) to find a second mandatory respondent and deduce an average rate; or (ii) fix rates for those respondents in a different, statutorily-permissible way. Commerce's action taken in the remand—*i.e.,* disqualification of the Plaintiffs as separate rate respondents—unlawfully exceeds the scope of remand and is therefore impermissible. <u>An agency's deviation from remand</u> <u>instructions is "itself legal error, subject to reversal on further judicial review.</u>" *Sullivan v. Hudson*. 490 U.S. 877, 886 (1989) (emphasis added); *see also Ellwood City Forge Co. v. United States*, 654 F. Supp. 3d 1268, 1276 (Ct. Int'l Tr. 2023). The CIT could not enter judgment affirming such a remand redetermination.

**II.     Subjecting Mayrun and the Other Plaintiffs to the "China-Wide" Rate is Arbitrary, Capricious, and an Abuse of Discretion.**

Setting aside the fact that the remand decision improperly exceeds the scope of the Remand Order, and is therefore not in accordance with law, it was also an arbitrary and capricious decision for Commerce to effectively sanction Mayrun and the other Plaintiffs for their inability to provide information from 6 to 7 years earlier. For Commerce to even request such aged information is arbitrary and capricious.[3] In *Changzhou Hawd Flooring Co. v. United States*, 44 F. Supp. 3d 1376 (Ct. Int'l Tr. 2015), Commerce determined to conduct a full review of a respondent in connection with the third remand of an administrative review. This Court noted that Commerce's discretion to reopen the agency record is subject to the command that the action not be arbitrary and capricious (*id.* at 1389):

> While the decision to reopen the record is generally within the agency's discretion, see *Essar Steel*, 678 F.3d at 1277-78, that discretion cannot be exercised in a manner that is arbitrary and capricious. See *Changzhou Wujin Fine Chem.,*701 F.3d at 1377 (citing *Bowman Transp*., 419 U.S. at 284). Arbitrary and capricious is a "narrow" standard of review, but still "searching and careful." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Commerce must" articulate a rational connection between the facts found and the choice made." *Bowman*, 419 U.S. at 285 (quotation marks and citation omitted). The agency's decision cannot have "relied on factors [that] Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before [it], or [be] so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Requesting that a respondent be subjected to a full review at this late stage of an administrative proceeding is inherently arbitrary and capricious, the Court held. Here, however, Commerce's actions were even more capricious than in *Changzhou Hawd*. This is manifest from

---

[3] That Kenda Rubber was able to supply information in this case does not make Commerce's action any less arbitrary or capricious.

the fact that (i) the administrative process was completed, and had been subjected to judicial review; (ii) Commerce's treatment of Mayrun and the other special rate respondents upsets settled "law of the case"; and (iii) Commerce's decision fails to deliver what the Federal Circuit determined was legally required: rates for separate rate respondents calculated on the basis of an average (assuming sufficient data is available).

It is also arbitrary to draw an inference that Mayrun and the other separate rate respondents are part of the "China wide entity". Adverse inferences are usually applied to respondents which Commerce concludes have not cooperated "to the best of their ability" in a proceeding. Mayrun's ability to cooperate with Commerce's request to serve as a mandatory respondent had diminished with the passage of time. Commerce's approach effectively sanctions Mayrun and the other respondent Plaintiffs as being uncooperative, which is not the case.

By determining that Mayrun and the other mandatory respondents were part of the "China-wide" entity, the Department in effect subjected them to an adverse inference. In this regard, 19 U.S.C. § 1677e(a) provides that when a respondent fails to provide requested information, Commerce may rely on "facts available". But 19 U.S.C. § 1677e(b) provides:

(b) Adverse inferences

(1) In general

If the administering authority or the Commission (as the case may be) finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority or the Commission, the administering authority or the Commission (as the case may be), in reaching the applicable determination under this subtitle—

    (A) may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available; and

    (B) is not required to determine, or make any adjustments to, a countervailable subsidy rate or weighted average dumping margin based on any assumptions about information the interested party would

have provided if the interested party had complied with the request for information.

The Federal Circuit has noted that "subsection (b) permits Commerce to 'use an inference that is adverse to the interests of [a respondent] in selecting from among the facts otherwise available,' only if Commerce makes the separate determination that the respondent "has failed to cooperate by not acting to the best of its ability to comply." The focus of subsection (b) is respondent's failure to cooperate to the best of its ability, not its failure to provide requested information." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed Cir. 2003). Commerce must make a separate finding that a party failed to cooperate to the best of its ability, and like any other Commerce determination, that finding must be supported by substantial evidence on the record. *See e.g.*, *Venus Wire Indus. Pvt v. United States*, 471 S. Supp. 3d 1289, 1307 (Ct. Int'l Tr. 2020). On the record for remand, there is nothing about Mayrun's ability to cooperate other than Mayrun's own statement that it was *unable* to cooperate 7 years after the transactions occurred, because it no longer had the records. At no point did Commerce made an evidence-based determination regarding the "best of its ability" to cooperate. In this regard, the Remand Redetermination as to Mayrun is unsupported by substantial evidence on the record.

Moreover, it is well-settled that a party may not be denied "separate rate" status because of deficiencies in providing data unrelated to the factors of de jure and de facto government control. *See Hubbell Power Sys. v. United States*, 365 F. Supp.3d 1302, 1309 (Ct. Int'l Tr. 2020); *see also*, *Shenzhen Xinboda Indus. Co. v. United States*, 180 F. Supp. 3d 1305, 1316-17 (Ct. Int'l Tr. 2016) (Commerce cannot find a respondent's separate rate information "tainted" on the basis of deficiencies in data unrelated to corporate ownership or control); *Lifestyle Ent. Inc. v. United States*, 768 F. Supp. 2d 1286, 1296 (Ct. Int'l Tr. 2011).

To be clear, this is not a situation where Mayrun declined to cooperate, or ceased participation in the case to the best of its ability. Asked to be a mandatory respondent in the remand, Mayrun consulted its records, determined (quite reasonably) that it did not have records from the period of review, and so certified this fact to the Department. *See* PR 23, Letter from Neville Peterson LLP to Secretary of Commerce, dated March 3, 2023.

The agency relies on its *Initiation Notice* published in the Federal Register in connection with the original review in 2017 for support in subjecting Mayrun to the China-wide rate. *See* 82 Fed. Reg. 48,051, 48,055 (October 16, 2017).  In its remand decision, Commerce notes that "our Initiation Notice states the following: "{f}or exporters and producers who submit a separate-rate status application or certification and subsequently are selected as mandatory respondents, these exporters and producers will no longer be eligible for separate rate status unless they respond to all parts of the questionnaire as mandatory respondents."[4] Mayrun submitted its separate rate certification, was granted separate rate respondent status, and kept that status through the completion of the review. Its status was never challenged, administratively or in court, and as noted above, is now settled "law of the case." Commerce now appears to be trying to impose this condition from the Initiation Notice to this *separate* remand proceeding.[5] Again, this goes well beyond the Federal Circuit's remand decision. Moreover, in light of *Changzhou Hawd, supra*, such a position is plainly unreasonable. Annual reviews under 19 U.S.C. § 1675 are conducted in the year following importation of the merchandise in question. It is certainly reasonable for Commerce

---

[4] This seems a bit of a nonsense statement. A separate rate respondent who completes all parts of the mandatory respondent questionnaire at Commerce's direction would appear to become a mandatory respondent.

[5] If Commerce views this remand proceeding as a re-initiation of the initial review, then by all rights it should have granted Mayrun's renewed request to withdraw from the proceeding. Commerce cannot have its cake and eat it too.

to expect that a respondent has in its possession records relating to merchandise exported to the United States a year before. It is not reasonable for Commerce to conclude the same when asking for records of transactions conducted 6 or 7 years ago. Concluding that a respondent is, in effect, bound by a condition it had already satisfied, or is failing to cooperate to the best of its ability under these circumstances is arbitrary and capricious.

### III. The Department Failed to Consider Mayrun's Second Withdrawal Request on Remand.

During the initial phase of the review, when Mayrun initially sought to withdraw from the review, Commerce denied that request, citing 19 C.F.R. § 351.213(d)(1).[6] This Court upheld that decision, which Mayrun appealed to the Federal Circuit. In remanding the case, the Federal Circuit court did not reach the issue of Mayrun's second withdrawal request.

Commerce had previously issued a policy determination in which it held that a tardy request to withdraw from a proceeding pursuant to 19 U.S.C. § 351.213(d)(3) could only be considered in "extraordinary circumstances." While the Federal Circuit subsequently ruled that a tardy withdrawal was not limited to "extraordinary circumstances," it certainly did not preclude Commerce from entertaining a tardy withdrawal request when extraordinary circumstances exist. *See Glycine & More Inc. v. United States*, 880 F.3d 1335 (Fed. Cir. 2018).

When this Court remanded the matter to Commerce, and the agency raised the possibility of selecting a second mandatory respondent, this was truly an "extraordinary circumstance." The

---

[6] 19 C.F.R. § 351.213(d)(1) provides:

(d) Rescission of administrative review—(1) Withdrawal of request for review. The Secretary will rescind an administrative review under this section, in whole or in part, if a party that requested a review withdraws the request within 90 days of the date of publication of notice of initiation of the requested review. The Secretary may extend this time limit if the Secretary decides that it is reasonable to do so.

agency was going back to the respondent selection phase, an early stage in any review. Mayrun thus made a second request to withdraw from the proceeding, on February 16, 2023. *See* Mayrun Second Withdrawal Request (February 16, 2023), PR 8. In its opinion remanding this action, the Federal Circuit did not take action on Mayrun's first request to withdraw, leaving the issue open for Commerce to address. *See Laitram v. NEC Corp.,* 115 F.3d 947, 951 (Fed. Cir. 1997). Commerce was required to consider the "extraordinary circumstances" which prompted Mayrun's second request to withdraw. Commerce's Remand Redetermination says the agency considered it inappropriate to rule on tardy withdrawal requests made during the initial review,[7] but said nothing about Mayrun's second withdrawal request, submitted on remand. The ability to request withdrawal from an antidumping proceeding when Commerce effectively decides to "re-initiate" its annual review is a question of first impression. The Remand Decision should be remanded to Commerce with instructions to consider Mayrun's second withdrawal request.

---

[7] Commerce stated in the Remand Redetermination (ECF 78, at 37):

We *continue* to find that it is inappropriate to accept the untimely review withdrawal requests filed by Mayrun, Winrun, Linglong, and Hengyu. The CIT ruled that Commerce's denial of the untimely withdrawal requests filed by Mayrun, Winrun, Linglong, and Hengyu was reasonable, and that the Federal Circuit did not issue a ruling on this issue.

## **CONCLUSION**

For the reasons set out herein, Mayrun submits that the Court should reject Commerce's

Remand Redetermination, and remand this matter again to Commerce for further consideration.

Respectfully submitted,

NEVILLE PETERSON LLP
*Counsel for Plaintiff*

/s/ John M. Peterson
John M. Peterson
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Richard F. O'Neill
701 Fifth Ave, Ste. 4200-2159
Seattle, WA 98104
(206) 905-3648
roneill@npwny.com

February 2, 2024

17

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE**

```
------------------------------------------------------------ X
YC  RUBBER  CO.  (NORTH  AMERICA)  LLC, :
SUTONG  TIRE  RESOURCES,  INC.,    MAYRUN :
TYRE (HONG KONG) LIMITED, AND ITG VOMA :
CORPORATION,                                :
                    Consolidated Plaintiffs, :
                                            :
        and                                 :
                                            :
KENDA RUBBER (CHINA) CO., LTD.              :          19-cv-00069
                                            :
            Plaintiff-Intervenor,           :
                                            :
        v.                                  :
                                            :
UNITED STATES,                              :
                                            :
            Defendant,                      :
------------------------------------------------------------ X
```

## CERTIFICATE OF COMPLIANCE

Pursuant to the U.S. Court of International Trade Standard Chambers Procedures, and in reliance upon the word count feature of the word processing program used to prepare the instant Memorandum, I, Patrick B. Klein, of Neville Peterson LLP, who is responsible for the instant Memorandum, certify that it contains 4,920 words.

Respectfully submitted,

/s/ Patrick B. Klein
Patrick B. Klein