**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| YC RUBBER CO. (NORTH AMERICA) LLC, *et al*., | |
| Plaintiffs and Consolidated Plaintiffs, | |
| and | Consol. Ct. No. 19-00069 |
| KENDA RUBBER (CHINA) CO., LTD., | |
| Plaintiff-Intervenor, | **PUBLIC VERSION** |
| v. | |
| UNITED STATES, | |
| Defendant. | |

<u>**PLAINTIFFS' COMMENTS OPPOSING REMAND REDETERMINATION**</u>

Ned H. Marshak
Jordan C. Kahn

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
599 Lexington Ave., 36th Floor
New York, New York 10022
**
1201 New York Ave., NW
Suite 650
Washington, DC 20005

*Counsel for Plaintiffs*
*YC Rubber (North America) LLC and*
*Sutong Tire Resources, Inc.*

Dated: February 2, 2024

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

BACKGROUND ................................................................................................... 1

    A.    AR2 AS INITIALLY CONDUCTED ................................................. 1

    B.    AR2 APPEALS AND REMAND .......................................................... 3

STANDARD OF REVIEW .................................................................................. 7

I.      COMMERCE WAS NOT REQUIRED TO SELECT ANOTHER RESPONDENT ...................................................................................... 7

II.    COMMERCE'S RESPONDENT SELECTION METHODOLOGY WAS CRITICALLY FLAWED ..................................................................... 11

III.   COMMERCE'S DENIAL OF SEPARATE RATES AND APPLICATION OF AFA ARE CONTRARY TO LAW ................................................... 13

IV.   THE SEPARATE RATE MUST BE ASSIGNED TO EXPORTERS UNABLE TO PARTICIPATE AND SHOULD NOT BE BASED ON JUNHONG DATA ...... 19

V.    COMMERCE SHOULD HAVE GRANTED RESPONDENTS' WITHDRAWAL REQUESTS .................................................................. 22

CONCLUSION ................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albemarle Corp. & Subsidiaries v. United States*,
    821 F.3d 1345 (Fed. Cir. 2016)..................................................................................19

*Baoding Mantong Fine Chem. Co. v. United States*,
    113 F. Supp. 3d 1332 (CIT 2015)...........................................................................21

*BMW of N. Am. LLC v. United States*.
    926 F.3d 1291 (Fed. Cir. 2019)..................................................................................17

*Changzhou Hawd Flooring Co. v. United States*,
    44 F. Supp. 3d 1376 (CIT 2015) ......................................................... *passim*

*Changzhou Hawd Flooring Co. v. United States*,
    848 F.3d 1006 (Fed. Cir. 2017)..................................................................................19

*Diamond Sawblades Mfrs. Coal. v. United States*,
    359 F. Supp. 3d 1374 (CIT 2019)...........................................................................21

*Glycine & More, Inc. v. United States*,
    880 F.3d 1335 (Fed. Cir. 2018)..................................................................................23

*Grobest & I-Mei Indus. (Vietnam) Co. v. United States*,
    36 CIT 98 (2012) ................................................................................................24

*Hubbell Power Sys., Inc. v. United States*,
    365 F. Supp. 3d 1302 (CIT 2019)...................................................................15, 18

*Hyundai Steel Co. v. United States*,
    319 F. Supp. 3d 1327 (CIT 2018)...........................................................................19

*Itochu Bldg. Prod. v. United States*,
    733 F.3d 1140 (Fed. Cir. 2013)..................................................................................12

*Motor Vehicle Mfgrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)....................................................................................7, 12

*Nagase & Co. v. United States*,
    628 F. Supp. 3d 1326 (CIT 2023)...........................................................................12

*Nakornthai Strip Mill Pub. Co. v. United States*,
    32 CIT 1272 (CIT 2008) ..........................................................................................7

*Pirelli Tyre Co. v. United States*,
   638 F. Supp. 3d 1361 (CIT 2023)........................................................20

*SKF USA Inc. v. United States*,
   263 F.3d 1369 (Fed. Cir. 2001)..........................................................10

*YC Rubber v. United States*,
   2022 WL 3711377 (Fed. Cir. Aug. 29, 2022)................................. *passim*

*YC Rubber v. United States*,
   487 F. Supp. 3d 1367 (CIT 2020)........................................................3

**Statutes**

19 U.S.C. § 1516a...............................................................................7

19 U.S.C. § 1677e...............................................................................16

**Statutes**

19 C.F.R. § 351.213.......................................................................2, 22

**Other Authorities**

*Multilayered Wood Flooring from the People's Republic of China*,
   75 Fed. Reg. 70,714 (Nov. 18, 2010) (initiation notice)........................9

*Passenger Vehhicle and Light Truck Tires from the People's Republic of China*,
   80 Fed. Reg. 47,902 (Aug. 10, 2015) (antidumping duty order) ...............19, 20, 21

*Passenger Vehhicle and Light Truck Tires from the People's Republic of China,
Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
   82 Fed. Reg. 48,051 (Oct. 16, 2017) .............................................2, 8, 23

*Passenger Vehhicle and Light Truck Tires from the People's Republic of China*,
   83 Fed. Reg. 11,690 (Mar. 16, 2018) (final results) ...........................19, 20, 22, 23

*Passenger Vehhicle and Light Truck Tires from the People's Republic of China*,
   83 Fed. Reg. 45,893 (Sept. 11, 2018) (preliminary results).......................2

*Passenger Vehhicle and Light Truck Tires from the People's Republic of China*,
   81 Fed. Reg. 17,781 (Apr. 26, 2019) (final results).................................3, 6, 13, 20

*Passenger Vehhicle and Light Truck Tires from the People's Republic of China*,
   85 Fed. Reg. 22,396 (Apr. 22, 2020) (final results)...............................20

*Passenger Vehhicle and Light Truck Tires from the People's Republic of China*,
   85 Fed. Reg. 36,831 (June 18, 2020) (preliminary results) ....................20, 21

*Passenger Vehhicle and Light Truck Tires from the People's Republic of China*,
87 Fed. Reg. 13,966 (Mar. 11, 2022) (final results) ...............................................20

*Passenger Vehhicle and Light Truck Tires from the People's Republic of China*,
87 Fed. Reg. 33,717 (June 3, 2022) (amended final results) ......................................19, 20, 21

*Passenger Vehhicle and Light Truck Tires from the People's Republic of China*,
87 Fed. Reg. 57,174  (Sept. 19, 2022) (correction notice).........................................23

*Passenger Vehhicle and Light Truck Tires from the People's Republic of China*,
88 Fed. Reg. 15,663  (Mar. 14, 2023) (final results) ..............................................20

*Passenger Vehhicle and Light Truck Tires from the People's Republic of China*,
88 Fed. Reg. 75,267  (Nov. 2, 2023) (final results) ..............................................11

*Sugar from Mexico*, 80 Fed. Reg. 57,341 (Sept. 23, 2015) (final determination) ........................12

PUBLIC VERSION

## INTRODUCTION

Plaintiffs YC Rubber (North America) LLC and Sutong Tire Resources, Inc. oppose the Department of Commerce's ("Commerce" or "Department") Remand Redetermination (Nov. 1, 2023), ECF 78, PRR 112 ("Remand"), in the second administrative review ("AR2") of the antidumping duty ("ADD") order on passenger vehicle and light truck tires ("PVLT") from the People's Republic of China ("China" or "PRC"). Commerce's assignment of the 87.99% PRC-wide rate to exporters from whom Plaintiffs imported PVLT during the AR2 period of review ("POR") – Linglong Tyre Co., Ltd. ("Linglong"), Shandong Wanda Boto Tyre Co., Ltd. ("Boto"), Shandong Hengyu Science & Technology Co., Ltd. ("Hengyu"), and Winrun Tyre Co., Ltd. ("Winrun") – was unlawful, because, as described in turn below:

1. Commerce was not required to select another mandatory respondent on remand;

2. Commerce selected respondents on remand through a flawed methodology, and failed to acknowledge – let alone meaningfully address – those deficiencies;

3. Given that the selected respondents were unable to participate five years-after-the-fact on account of bankruptcy, destroyed records pursuant to document retention policies, and changed personnel, there is no legal basis to deny their separate rates or apply statutory adverse facts available ("AFA"), and such PRC-wide treatment improperly exceeds the remand scope;

4. The exporters that were unable to participate should be assigned a separate rate and that rate should not be based on the aberrational ADD rate calculated for Zhoquing Junhong Co., Ltd. ("Junhong"); and

5. Review request withdrawals filed by respondents should be accepted, per U.S. Court of Appeals for the Federal Circuit ("CAFC") precedent and in recognition of the unique circumstances presented in this case.

## BACKGROUND

### A.  AR2 as Initially Conducted

Commerce in October 2017 initiated AR2 covering PVLT entering the United States between August 1, 2016, and July 1, 2017, exported by *inter alia*, Boto, Hengyu, Linglong,

Winrun, Consolidated Plaintiff Mayrun Tire (H.K), Ltd. ("Mayrun"), and Plaintiff-Intervenor

Kenda Rubber (China) Co., Ltd. ("Kenda"). *Initiation of ADD/CVD Administrative Reviews*, 82

Fed. Reg. 48,051, 48,055 (Oct. 16, 2017) ("*AR2 Initiation*"). Commerce in April 2018 selected

Junhong and Shandong Haohua Tire Co., Ltd. ("Haohua") as mandatory respondents for

individual examination. *PVLT from China*, 83 Fed. Reg. 45,893 (Sept. 11, 2018) ("*AR2*

*Preliminary Results*"), PR 225, Preliminary Decision Memorandum (Sept. 4, 2018), PRR 226

("PDM"), at 11. Haohua early on withdrew its participation. *Id*.

Commerce continued with AR2 as to Junhong alone and in September 2018 preliminarily

calculated Junhong's ADD rate that was assigned as the AR2 separate rate. *AR2 Preliminary*

*Results*, 83 Fed. Reg. at 45,895. This separate rate was granted to, *inter alia*, Boto, Hengyu,

Linglong, Winrun, Kenda, and Mayrun – each of whom had each been found independent from

government control after submitting information establishing their eligibility for a separate rate.

*Id*.; Commerce Memorandum (Sept. 4, 2018), CR 298, PR 231 ("Separate Rate Memo"); PDM

at 2-3.

Hengyu, Linglong, Winrun, Kenda, and Mayrun subsequently filed requests that

Commerce withdraw their review requests despite being outside the regulatory deadline for

filing, 19 C.F.R. § 351.213(d)(1), each demonstrating that the CAFC-recognized standard for

belated acceptance was satisfied. Letter from Curtis, Mallet-Prevost, Colt & Mosle to Commerce

(Oct. 2, 2018), CR 306-07, PR 239 ("Winrun Withdrawal"); Letter from GDLSK to Commerce

(Oct. 25, 2018), PR 251 ("Linglong Withdrawal"); Letter from Gaopeng & Partners to

Commerce (Nov. 6, 2018), PR 254 ("Hengyu Withdrawal"); Letter from deKieffer & Horgan to

Commerce (Oct. 9, 2018), PR 245 ("Mayrun Withdrawal").

PUBLIC VERSION

Commerce finalized AR2 in April 2019, calculating a 64.57% ADD rate for Junhong that was assigned as the separate rate. *PVLT from China*, 81 Fed. Reg. 17,781, 17,782-83 (Apr. 26, 2019) ("*AR2 Final Results*"). Commerce rejected arguments that: (1) it should have selected another respondent; (2) the aberrational and non-representative Junhong rate should not be used as the separate rate: and (3) the withdrawal requests should have been granted. Issues and Decision Memorandum (Apr. 19, 2019), PR 276 ("IDM"), Comments 1-3.

### B.    AR2 Appeals and Remand

Plaintiffs in May 2019 appealed to this Court, alleging that Commerce unlawfully conducted AR2. Complaint (May 23, 2019), ECF 2. Plaintiffs' AR2 appeal was in June 2019 consolidated with those of ITG Voma Corp. ("Voma") and Mayrun. Order (June 20, 2019), ECF 16. Kenda was later that month authorized to intervene as a Plaintiff-Intervenor. Order (June 28, 2019), ECF 21. This Court in December 2020 affirmed AR2 in all respects. *YC Rubber v. United States*, 487 F. Supp. 3d 1367 (CIT 2020). Plaintiffs, Voma, Kenda, and Mayrun appealed to the CAFC, which in August 2022 reversed this Court – finding that "Commerce erred in relying on a single entity for calculation of a dumping margin for all respondents." *YC Rubber v. United States*, 2022 WL 3711377, *4 (Fed. Cir. Aug. 29, 2022). The CAFC ordered "remand for further proceedings in conformity with this opinion." *Id*. Commerce requested and obtained multiple extensions of time to seek CAFC reconsideration, for a total of 120 days, but ultimately did not do so. *YC Rubber*, CAFC Case No. 21-1489, ECF 78-81.

This Court likewise subsequently ordered that AR2 be "remanded to Commerce to issue a determination consistent with *YC Rubber*." Order (Feb. 2, 2023), ECF72. This Court initially granted six months to conduct remand – as requested by Commerce – which was subsequently extended an additional three months upon Commerce's request. ECF71-72/73-74. Immediately upon commencement of the remand proceeding, Commerce selected Boto as a mandatory

respondent, finding that it had the largest AR2 POR export volumes of those exporters with enjoined AR2 entries: Kenda; Boto; Mayrun; Boto; and Winrun – omitting Linglong, which also had enjoined entries. Commerce Respondent Selection Memo (Feb. 8, 2023), PRR 1; Injunction (May 24, 2019), ECF 11.

Boto was only given a single week to advise Commerce whether it would participate, which was extended by only a single day. Letters from Commerce to Boto (Feb. 8 & Feb. 13, 2023), PRR 2, PRR 7. This truncated time period contrasts with Commerce's typical practice of affording selected respondents three weeks to respond to the ADD questionnaire, without requiring an earlier indication that the company will participate, and granting at least a one-week extension – as during AR2. *E.g.*, Letter from Commerce to Junhong (Apr. 12, 2018), PR 142; Letter from Commerce to Junhong (May 1, 2018), PR 156. Boto advised Commerce that it could not participate on remand due to the passage of time between the original AR2 proceeding and the remand, emphasizing that it was not involved in the appeal and lacked key information:

> **{T}he original AD {POR} (August 1, 2016 through July 31, 2017) ended nearly six years ago**. Boto participated cooperatively in the underlying AD review at that time and did not appeal the final results. **Boto is not currently a party to the court litigation** . . . , and therefore until just a few days ago **has not been involved in this proceeding in any way for more than four years. Given the very lengthy passage of time and the unexpected nature of the Department's request, it is no longer feasible for Boto to prepare the detailed sales and cost information requested by Commerce**. Nor was it reasonable for Commerce to make this request after all of this time for data from a company that is not even a party to the underlying litigation.

Letter from Hogan Lovells to Commerce (Feb. 16, 2023), PRR 9 ("Boto Response"), at 2, 4-5 (emphases added) (footnote omitted).

Commerce next selected Hengyu, whose counsel within the one-week timeframe advised that Hengyu could not participate due to bankruptcy, and that no employees could be found:

> Hengyu is not in a position to participate in the current review and respond to the questionnaire because **Hengyu is in the bankruptcy procedure. All the company personnel of Hengyu have been dismissed** and even no responsible person could be contacted by us.

Letter from Gaopeng & Partners to Commerce (Feb. 24, 2023), PRR 16 ("Hengyu Response"), at

2. Hengyu further renewed its request for withdrawal. *Id*.

Commerce next selected Mayrun, who within the one-week timeframe advised that it did

not retain the necessary information:

> We at **Mayrun did not retain any files/documents for more than 3 years**, we are not a public company and we follow the company regulation of Hongkong, as a private trading company **we only keep the records for the past 3 years**, and obviously, **records of 2016-2017 were totally out of the range**.

> Mayrun has previously cooperated with the Department in this administrative review. It is unable to do so at this time because **it no longer has the requisite records** from the period the Department wishes to review.

> **Given the very lengthy passage of time and the unexpected nature of the Department's request, it is no longer possible for Mayrun to access and prepare the detailed sales and cost information requested by Commerce.**

Letter from Neville Peterson to Commerce (Mar. 3, 2023), PRR 23 ("Mayrun Response") at 2.

Mayrun had earlier renewed its request for withdrawal. Letter from Neville Peterson to

Commerce (Feb. 16, 2023), PRR 8 ("Mayrun Withdrawal Renewal").

Commerce next selected Winrun, who within the one-week timeframe advised that it was

not a party to the appeal and could not participate due to the passage of time, emphasizing that it

no longer possessed documents due to its document retention policy:

> **Winrun no longer has sufficient data and information to be able to prepare complete AD responses and databases** for the POR2 August 1, 2016 – July 31, 2017 time period. Winrun notes that **the time period for which the Department seeks data and information is 6 – 7 years old**. And Winrun hereby confirms that, **pursuant to its normal business practices, Winrun only has the ability to access sales data and information that is 3 years old**.

> Winrun requests that the Department understand the following:

PUBLIC VERSION

- Winrun participated in each of the first three AD reviews for PVLT tires, and during each {of} those AD review proceedings the Department never concluded that Winrun failed to cooperate fully.

- **The AD review period (POR2) at issue** (August 1, through July 31, 2017) **ended nearly six years ago**.

- Winrun participated in the POR2 AD review and fully cooperated.

- **Winrun did not appeal** the Department's final results for the POR2 AD review, and therefore **Winrun is not a party to the court case** that led to this remand proceeding and therefore Winrun was not (until the Department's March 3rd letter) involved in any way in the court case.

- Given the very lengthy passage of time and the unexpected nature of the Department's request, **it is no longer feasible for Winrun to prepare the detailed sales and cost information requested by Commerce. The data sources are stale, key company staff have changed, and the requested documentation is no longer easily accessible**.

Letter from Curtis Mallet-Prevost, Colt & Mosle to Commerce (Feb. 24, 2023) ("Winrun Response"), at 1-2 (emphases added).

Finally, Commerce selected Kenda who, in contrast to other selected respondents, was able to participate on remand. In July 2023, Commerce calculated a 18.15% preliminary ADD rate for Kenda. Draft Remand Redetermination (July 25, 2023), PRR 103 ("Draft Remand"), at 23. At the same time, Commerce "preliminarily found . . . Boto, Mayrun, Hengyu, and Winrun to be part of the China-wide entity." *Id*. Commerce did not recalculate a separate rate, finding that "no remaining non-examined companies that qualify for separate rate status." *Id*.

Commerce assigned an 87.99% rate to the selected respondents who were unable to participate, which was 23.42% percentage points higher than the 64.57% separate rate they received in the initial *AR2 Final Results*. *Id*. Plaintiffs filed comments requesting that Commerce, *inter alia*, recalculate the separate rate and assign that recalculated rate to Linglong, Boto, Mayrun, Hengyu, and Winrun. Letter from GDLSK to Commerce (Aug. 17, 2023), PRR 109

("Pl. Comments"), at 18. Plaintiffs argued that Commerce's remand respondent selection

methodology was critically flawed and there was no basis to treat these respondents as either

non-cooperative or part of the China-wide entity. *Id*. at 7-22.

Commerce in November 2023 assigned a 41.36% separate rate to Linglong and finalized

its draft redetermination in all other respects. Remand at 36-37. Thus, the first four selected

respondents were assigned a rate of 87.99%, and Plaintiffs – who purchased and imported

subject merchandise from Boto, Hengyu, and Winrun – will be required to pay such ADD unless

Commerce's decision is reversed. Commerce's Remand and that administrative record were both

untimely filed, necessitating judicial involvement. ECF 73-82.

## **STANDARD OF REVIEW**

"The court reviews remand determinations for compliance with the court's remand

order." *Nakornthai Strip Mill Pub. Co. v. United States*, 32 CIT 1272, 1274 (CIT 2008). This

Court must also hold unlawful a remand redetermination that is "unsupported by substantial

evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

Commerce, as any agency, must "cogently explain why it has exercised its discretion in a

given manner." *Motor Vehicle Mfgrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48

(1983) (citation omitted).

## I.    COMMERCE WAS NOT REQUIRED TO SELECT ANOTHER RESPONDENT

Commerce conducted this remand proceeding under the misguided premise that it was

compelled by CAFC instruction to review an additional mandatory respondent. The CAFC

invalidated Commerce's conduct of AR2 – including assignment of the 64.57% ADD rate

calculated for the lone mandatory respondent, Junhong, as the separate rate – because:

> Commerce erred in relying on a single entity for calculation of a dumping margin
> for all respondents. . . .

> Having determined that Commerce unlawfully restricted its examination to a single mandatory respondent, **substantial evidence does not support Commerce's application of Junhong's rate to the other separate rate respondents**. . . .

*YC Rubber*, 2022 WL 3711377,*4 (emphasis added).

The CAFC did not, as Commerce insists, find the need to review "more than one company more than six years after the completion of the underlying review." Remand at 27. There is no basis to find that "Commerce was required to select more than one mandatory respondent to comply with *YC Rubber*." *Id*. at 31. Rather than instruct Commerce to do so years-after-the-fact, the CAFC merely ordered "remand for further proceedings in conformity with this opinion." *YC Rubber*, 2022 WL 3711377, *4. This Court likewise merely ordered that AR2 be "remanded to Commerce to issue a determination consistent with *YC Rubber*." Order (Feb. 2, 2023), ECF 72. Commerce could have accomplished this by relying on a methodology that did not involve selecting another respondent, such as assigning a "carry-forward" ADD rate as it has in similar circumstances and/or granting the requested withdrawals. *See* Boto Response at 2; Mayrun Response at 3. Thus, Commerce lacked any basis to find that the CAFC compelled the Department to select a second respondent.

Moreover, Commerce's belated selection is contrary to both its mandate to calculate ADD rates in a reasonable manner and judicial precedent holding that the Department cannot select a new respondent many years after the initial proceeding is concluded. The CAFC's August 29, 2022, decision overturning the *AR2 Final Results* issued **five years after** Commerce's October 2017 AR2 initiation of AR2, spanning August 1, 2016, through July 31, 2017. *AR2 Initiation*, 82 Fed. Reg. 48,051. This passage of time refutes Commerce's finding that "selecting additional mandatory respondents was a reasonable method for addressing the Federal Circuit's concerns." Remand at 25. Indeed, Commerce's remand conduct was directly contrary

to this Court's review of the ADD investigation on multilayered wood flooring ("MLWF") from China, in *Changzhou Hawd Flooring Co. v. United States*, 44 F. Supp. 3d 1376 (CIT 2015). In that case, Commerce on remand selected a new respondent **three and a half years** after the initial investigation. *Compare MLWF from China*, 75 Fed. Reg. 70,714 (Nov. 18, 2010) (initiation notice) *with* Remand Redetermination, *Changzhou Hawd*, CIT Case No. 12-00020 (May 30, 2014), ECF 52, at 8-9, 35-37. This Court expressly rejected Commerce's belated effort, finding that "its **decision to conduct a full individual investigation** . . . **at such a late date is arbitrary and capricious**." *Changzhou Hawd*, 44 F. Supp. 3d at 1388-91 (emphasis added). Commerce unpersuasively tries distinguishing AR2 from *Changzhou Hawd*, Remand at 26-27. In both instances, Commerce:

- opted to conduct a full review years after-the-fact, instead of an alternate methodology in recognition of the time passed; and

- initially claimed unable to review another respondent, before on remand marshalling resources to do so.

44 F. Supp. 3d at 1388-91; IDM at 15 ("Commerce's decision to limit individually-examined companies relied, in part, on resource considerations.").

Commerce's Remand makes no effort to recognize, let alone address, the fact that the AR2 POR ended in July 2017 and that AR2 was initiated in October 2017 – five years before the CAFC decision and five and a half years before Commerce selected Boto as a new respondent. As Commerce was advised at the beginning of its AR2 remand procedure, and as this Court held in *Changzhou Hawd*, 44 F. Supp. 3d at 1388-91, it is completely unrealistic for Commerce to require that respondents participate in an administrative review conducted more than five years after the POR given that "**data sources are stale, key company staff have changed, and the requested documentation is no longer easily accessible**." Boto Response at 2 (emphasis

PUBLIC VERSION

added). The CAFC's *YC Rubber* decision cannot reasonably be construed to require that Commerce ignore the teachings of *Changzhou Hawd* by selecting a new mandatory respondent five years after its initial selection.

In addition, contrary to its reasoning in this appeal, Commerce has repeatedly found that *YC Rubber* does not mandate the selection of a second respondent. In its voluntary remand of the 2017 administrative review of the countervailing duty ("CVD") order on MLWF from China, Commerce found it: "**reasonable and in accordance with law to continue declining to select an additional mandatory respondent**" based on "the **unique circumstances of this case**," as well as "**the administrative burden posed by conducting a full review of an additional mandatory respondent**." *Jiangsu Senmao Bamboo & Wood Indus. Co. v. United* States, CIT Case No. 20-03885, Remand Redetermination (Mar. 31, 2023), ECF 119 ("MLWF CVD Remand"), at 6 (emphases added). In its Remand, Commerce unpersuasively attempts to distinguish its MLWF CVD Remand based on its supposed "accelerated 90-day deadline," misstating that this Court "issued the voluntary remand on August 11, 2022, with a due date of December 7, 2022 (*i.e.*, 90 days)." Remand at 28. Yet this Court in fact granted 118 days for the MLWF CVD Remand – initially ordering 90 days for the remand to be completed as a default schedule, and then extending the time required to complete the remand by another four weeks upon Commerce's request. *Jiangsu Senmao*, CIT Case No. 20-03885, ECF 98-100.

Commerce obtained all the additional time that it requested for the MLWF CVD Remand. If Commerce needed additional time to select another respondent in that case, it could have so requested. That this Court initially granted Commerce 90 days for remand as a default, which was extended upon request, does not provide a basis to distinguish the MLWF CVD Remand. "An agency action is arbitrary when the agency offers insufficient reasons for treating

similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001). In AR2, "**unique circumstances**" – *i.e.*, the passage of nearly six years, bankruptcy, document retention policies, and changed personnel – rendered full participation of a company as a mandatory respondent virtually impossible. MLWF CVD Remand at 6-7. Indeed, Commerce in AR2 encountered the same "**administrative burden posed by conducting a full review of an additional mandatory respondent**" as it encountered in the MLWF CVD Remand. *Id*.

Similarly, in its most recently completed administrative review of the CVD order on *Aluminum Foil from China*, Commerce once again declined to select a second respondent without providing any substantive basis to distinguish *YC Rubber*. 88 Fed. Reg. 75,267 (Nov. 2, 2023) (final results), IDM at 59-60 ("Commerce made its respondent selection decision based on its practice before *YC Rubber*.") Such selective interpretation of the CAFC ruling, coupled with Commerce's failure to acknowledge the judicially recognized effect that passage of time has on an exporters' ability to participate, renders Commerce's redetermination contrary to law.

## II. COMMERCE'S RESPONDENT SELECTION METHODOLOGY WAS CRITICALLY FLAWED

In addition to its erroneous conclusion that it was compelled to select another mandatory respondent on remand, Commerce's process of selecting that respondent was flawed. In their comments on the Draft Remand, Plaintiffs raised multiple, important reasons why Commerce's methodology was contrary to law, including that Commerce:

- provided no explanation for limiting its examination to those respondents with suspended entries, rather than all respondents that exported subject merchandise during the AR2 POR;

- based its selection on the overall AR2 POR volumes of PVLT exported by respondents with suspended entries, rather than limiting its selection methodology to suspended volumes;

- ignored the fact that Linglong had suspended entries; and

- gave each selected respondent an arbitrarily truncated one-week timeframe to respond (extended by a single day), when this Court provided all the time requested to conduct remand and – given the intervening years since AR2 was conducted – exporters should have been afforded more time than usual, not less.

Pl. Comments at 7-9.

**Commerce's Remand ignored Plaintiffs' comments challenging respondent selection**, simply assigning Linglong the separate rate without explaining that prior omission or addressing the other flaws identified above. *See* Remand at 1-37. A second remand is now necessary for Commerce to explain its respondent selection methodology "because *post hoc* rationalizations are not permitted." *Nagase & Co. v. United States*, 628 F. Supp. 3d 1326, 1344 (CIT 2023). In this case, Commerce failed to "explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfgrs*, 463 U.S. at 48.

Commerce "entirely failed to consider an important aspect of the problem," *id*., because through this flawed methodology Kenda could have been selected first instead of last – resulting in a dramatically different outcome for the other respondents. Indeed, the aggregated volumes in U.S. Customs and Border Protection data released at the outset of AR2 demonstrate that even under Commerce's methodology to consider overall volumes instead of suspended volumes, Kenda ([        ])[1] should have been selected [        ] Hengyu ([        ]), Winrun ([        ]),

---

[1]         Commerce improperly [

].
*Compare* CBP Data *with* Commerce Memorandum (Mar. 10, 2023), CRR 3, PRR 34. All such volumes should have been considered in accordance with Commerce practice when evaluating export volumes for respondent selection that "routinely accounts for minor variations in company names and aggregates CBP data related to the same company." *Sugar from Mexico*, 80 Fed. Reg. 57,341 (Sept. 23, 2015) (final determination), IDM at 12 n.53. Raising this specific data discrepancy before Commerce, to the extent there was any obligation to do so, "would have been futile" because all previously selected respondents were found part of the PRC-entity before Kenda was selected and, moreover, Plaintiffs' general respondent selection challenges went unaddressed. *Itochu Bldg. Prod. v. United States*, 733 F.3d 1140, 1146 (Fed. Cir. 2013); *see* Remand at 30-35.

Mayrun ([         ]). *See* Commerce Memorandum (Nov. 30, 2017), CR 43-44, PR 119,

Attachment 1 ("CBP Data").

    In sum, a second remand is warranted because Commerce's respondent selection

methodology employed for the initial remand was critically flawed.

## III.  COMMERCE'S DENIAL OF SEPARATE RATES AND APPLICATION OF AFA ARE CONTRARY TO LAW

    Commerce improperly "determined that . . . Boto, Mayrun, Hengyu, and Winrun each

failed to establish its entitlement to a separate rate." Remand at 5. This decision directly

contradicts Commere's decision in the initial AR2 proceeding, granting separate rates to these

companies based on its finding that each company was independent from Chinese government

control. *AR2 Final Results*, 81 Fed. Reg. at 17,782-83; Separate Rate Memo; PDM at 2-3. While

acknowledging its prior decision, Commerce justifies its reversal of that conclusion because each

exporter "did not respond to any sections of Commerce's AD questionnaire." Remand at 6. Here

again Commerce ignores the passage of time between the AR2 POR and Commerce's

respondent selection on remand, which renders it unreasonable for respondents to participate at

this time. When asked to participate on remand, Boto, Hengyu, Winrun, and Mayrun each

advised Commerce that it had not been a party to the litigation and could not participate due to

the passage of time, for multiple practical reasons, including bankruptcy, internal recordkeeping

requirements, and personnel turnover. *See* Boto Response; Hengyu Response; Mayrun Response;

Winrun Response.

    The remand record therefore provides compelling evidence establishing the reasons why

these exporters were unable to participate five years after-the-fact. *Id*. These reasons were similar

to the reasons why this Court reversed Commerce's belated respondent selection decision in

*Changzhou Hawd*, 44 F. Supp. 3d at 1389-90. That Kenda was able to participate does not

detract from the problems experienced by the other exporters. Indeed, in this case Kenda is the outlier, since it retained necessary records to respond to Commerce's complex and comprehensive ADD questionnaire for a greater period of time than would normally be expected from a company faced with similar circumstances.

Commerce, and not Chinese exporters, is responsible for the passage of time between AR2 and its decision to select a second mandatory respondent on remand. Commerce delayed the proper conduct of AR2 by acting contrary to statute – leading to protracted litigation to reach a result that conforms to law – and compounded that delay by obtaining four additional months to seek CAFC reconsideration (which was not pursued). *YC Rubber*, CAFC Case No. 21-1489, ECF 78-81. Yet Commerce improperly blames exporters for their inability to participate on remand. Remand at 3-6, 30-31. These actions render Commerce's separate rate denials unreasonable.

Moreover, Commerce's remand finding that exporters failed to establish their entitlement to a separate rate contradicts longstanding judicial precedent. This Court has long recognized that separate rate entitlement is not linked to failure to respond to unrelated questions:

> As the court has previously stated, **a company's failure to provide information unrelated to establishing entitlement to a separate rate does not necessarily undermine submissions demonstrating an absence of government control.** *See Shenzhen Xinboda Indus. Co. v. United States*, 180 F.Supp.3d 1305, 1316–17 (C.I.T. 2016) (holding that Commerce cannot find a respondent's separate rate information "tainted" on the basis of deficiencies in sales data as such data is unrelated to corporate ownership and control); *Lifestyle Enter. Inc. v. United States*, 768 F.Supp.2d 1286, 1296 (C.I.T. 2011) (holding that a respondent's failure in unrelated aspects of a review does not undermine its application for separate rate status); *Shandong Huarong Gen. Grp. Corp. v. United States*, 27 CIT 1568, 1594 (2003) (denying Commerce's assignment of a PRC-wide dumping margin where respondents presented "evidence of their entitlement to separate rates" when there was "no indication that any necessary information was missing or incomplete").

*Hubbell Power Sys., Inc. v. United States*, 365 F. Supp. 3d 1302, 1309 (CIT 2019).

This judicial precedent establishes that Commerce may not deny separate rates to respondents who submit valid separate rate certifications ("SRC") at the outset of the review, but then subsequently do not successfully participate as mandatory respondents. This Court has applied this legal principle to respondents who decline to participate contemporaneously with their SRC submissions. This principle applies with greater force to respondents whose separate rate status was initially confirmed by Commerce in a final determination and who were not selected as mandatory respondents until Commerce administered a remand proceeding five years later. Commerce unpersuasively seeks cover from its *AR2 Initiation Notice*, Remand at 30, to salvage its practice that has been repeatedly invalidated by this Court for respondents selected at the time of such notice – and is accordingly all the more improperly when applied to respondents selected more than five years afterwards, as occurred on remand in AR2.

Commerce claims that such "reliance on *Hubbell Power* . . . is unpersuasive" because the CAFC "did not require Commerce to disregard its practice of treating companies that do not respond to its questionnaire to be part of the China-wide entity even if the company has previously filed a SRC." Remand at 33. Yet Commerce cannot implement an unlawful practice merely because it was not specifically prohibited in the CAFC's remand order. Indeed, in challenging Commerce's decision to select one mandatory respondent in the initial AR2 proceeding, Plaintiffs cannot be blamed for failing to ask the CAFC to guard against the possibility that Commerce would ignore controlling judicial precedent on remand: first, by deciding to select a new mandatory respondent five years later; and second, by denying a previously granted separate rate because a fully co-operating respondent was unable to continue to co-operate five years after its initial separate rate had been granted.

15

The illegality of Commerce's separate rate denial was recently confirmed in an appeal of

the 2018-19 administrative review of the ADD order on MLWF from China. *American Mfgrs. of*

*MLWF v. United States*, CIT Consol. Case No. 21-00595, Remand Order (Mar. 21, 2023), ECF

51. This Court held that because Commerce accepted SRCs from non-individually examined

respondents, it arbitrarily denied a separate rate for the mandatory respondent who thereafter

declined to participate:

> the court . . . **REMANDS** this case to . . . Commerce with instructions that the
> Department reconsider whether the Fusong Jinlong Group was eligible for a
> separate rate based on its submission of a {SRC}, despite not responding to
> Commerce's Section A questionnaire, **in view of the Department's acceptance
> of {SRCs} as sufficient evidence on the record to warrant renewing separate-
> rate status for other respondents not individually examined and in view of
> the court's finding that disparate treatment of respondents who appear to be
> similarly situated is arbitrary and capricious** . . . .

*Id.* (emphases modified).

In that case, Commerce's redetermination found that the respondent was entitled to a

separate rate yet assigned an ADD rate based on "total" AFA. *American Mfgrs. of MLWF*, CIT

Case No. 21-00595, Remand Redetermination (Aug. 8, 2023), ECF 57-1, at 5-6. Thus, assigning

the 87.99% rate to exporters in AR2 could only be justified if Commerce was allowed to rely on

total AFA and apply an AFA rate which was the same as the China-wide rate. *See id*. at 3-9. The

statutory question is whether each company "has failed to cooperate by not acting to the best of

its ability." 19 U.S.C. § 1677e(b). The answer for these exporters is a resounding no – each

newly selected respondent in turn advised Commerce that it could not participate due to the

passage of time, for multiple practical reasons, including bankruptcy, destroyed records, and

changed personnel. *See* Boto Response; Hengyu Response; Mayrun Response; Winrun

Response. Once more, this Court has expressly found that while Commerce has "discretion to

reasonably reopen the record, its **decision to conduct a full individual investigation** . . . .**at such a late date is arbitrary and capricious**." *Changzhou Hawd*, 44 F. Supp. 3d at 1388-91.

Exporters should not be subjected to total AFA because of their inability to respond to a request which this Court previously has found to be arbitrary and capricious. *Id*. Moreover, Commerce's action was based on its impermissible demand that exporters advise within merely one week after selection whether they could fully participate, without expressly advising that their failure to participate on remand would result in denial of a separate rate which previously had been granted and in application of total AFA.

The impropriety of applying AFA in AR2 is demonstrated by the CAFC ruling *BMW of N. Am. LLC v. United States*. 926 F.3d 1291 (Fed. Cir. 2019). There, a respondent was asked to submit information to Commerce under unusual circumstances – as were exporters on remand in AR2. In *BMW*, the CAFC held that the respondent's analysis of its obligations was not unreasonable, and reversed Commerce's AFA analysis:

> Commerce must consider the totality of the circumstances in selecting an AFA rate, including, if relevant, the seriousness of the conduct of the uncooperative party. Here, **Commerce did not address how the procedural irregularities surrounding the administrative review process affected** its view of BMW's **level of culpability**. On this record, we cannot ascertain whether Commerce properly selected an AFA rate that was not unduly punitive.

*Id*. at 1302.

Similarly, here Commerce on remand assigned exporters the identical 87.99% China-wide rate as it did to the mandatory respondent that withdrew its participation early in AR2. IDM at 13. In so doing, Commerce disregarded the *BMW* holding that Commerce must consider how "the procedural irregularities surrounding the administrative review process affected its view of . . . . {the selected exporters'} . . . level of culpability." *BMW*, 926 F.3d at 1302. Commerce cannot reasonably assess the same punitive ADD rate for exporters asked to provide data five

years after-the-fact as it did for an exporter in a normal administrative review, initiated
immediately after the POR ended.

Moreover, Commerce unlawfully expanded the scope of its AR2 remand proceeding. The
CAFC invalidated the Department's initial conduct of AR2 in response to respondents' challenge
to the separate rate being based on Junhong's ADD rate. Both the CAFC and CIT ordered
remand for action consistent with *YC Rubber*, 2022 WL 3711377, *4; Order (Feb. 2, 2023), ECF
72. Nothing in the initial AR2 challenge nor in the CAFC opinion suggests that Commerce could
on remand reassess separate rate eligibility for exporters granted such status in AR2.[2]
Commerce's response is to claim that the "mandate in YC Rubber" required the selection of
another respondent five years after-the-fact. Remand at 33. Yet there is no merit to this
misguided premise, which Commerce also proffered in response to *Changzhou Hawd*, the
MLWF CVD Remand, and *Hubbell Power*, *id*. at 27-31; neither this Court nor the CAFC
compelled Commerce to disregard the passage of time that rendered it unreasonable to expect
exporters to be able to fully participate. Section I, *supra*.

In sum, the remand record establishes that exporters were unable to participate as
mandatory respondents in the AR2 remand due to the passage of time. And longstanding,
consistent judicial precedent prohibits Commerce from denying separate rate status merely
because companies failed to respond to questions unrelated to their eligibility for a separate rate.
Accordingly, Commerce's decision was contrary to law insofar as Commerce reversed its
previous grant of separate rate status to certain Chinese exporters who were unable to fully
participate in the remand proceeding due to the five year passage of time.

---

[2]      Commerce's decision in this case, increasing the ADD rate for Chinese exporters from
64.57% to 87.99%, which Plaintiffs, as importers of record will be required to pay, suggests that
Commerce is retaliating against parties who prevailed in litigation.

IV.  **THE SEPARATE RATE MUST BE ASSIGNED TO EXPORTERS UNABLE TO PARTICIPATE AND SHOULD NOT BE BASED ON JUNHONG DATA**

This Court should direct Commerce to assign the separate rate to those exporters who were unable to participate due to the passage of time, as there is no basis to either revisit their separate rate eligibility or apply AFA. Section III, *supra*; *see* Boto Response; Hengyu Response; Mayrun Response; Winrun Response. Moreover, Commerce should revisit the 41.36% separate rate, as it is improperly based in part on Junhong's ADD rate. The CAFC has explained that the "representativeness of the investigated exporters is the essential characteristic that justifies an 'all others' rate based on weighted average for such respondents." *Albemarle Corp. & Subsidiaries v. United States*, 821 F.3d 1345, 1353 (Fed. Cir. 2016). This Court has further found that any presumption of representativeness can be overcome by evidence showing that the examined respondent is not representative. *Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006, 1012 (Fed. Cir. 2017).

Junhong's calculated 64.57% ADD margin should not be used to calculate the separate rate, as it is not representative of the market behavior for PVLT exporters from China during the AR2 POR. It is more than double the next highest calculated rate in the initial LTFV investigation, extraordinarily greater than all rates in the preceding AR1, and nearly ***22 times greater*** than the 2.96% separate rate initially assigned in AR1 – a rate that went into effect in March 2018 and is nearly contemporaneous with the AR2 POR – which was reduced to 1.45% on appeal. *PVLT from China*, 80 Fed. Reg. 47,902, 47,905-06 (Aug. 10, 2015) ("*ADD Order*"); *PVLT from China*, 83 Fed. Reg. 11,690, 11,692 (Mar. 16, 2018) ("*AR1 Final Results*"); *PVLT from China*, 87 Fed. Reg. 33,717, 33,718 (June 3, 2022) ("*Amended AR1 Final Results*").

The chart below demonstrates that Junhong's 64.57% AD rate is a "true outlier{}" compared with all ADD rates calculated, and separate rates assigned, throughout the history of

the *ADD Order*. *Hyundai Steel Co. v. United States*, 319 F. Supp. 3d 1327, 1356 (CIT 2018).

And the 0% or otherwise very low ADD rates calculated in subsequent reviews confirms the

aberrational nature of that rate:

| Segment | Respondent | Rate |
|---|---|---|
| **Investigation**[3] | GITI | 30.74% |
| | Sailun | 14.35% |
| | Separate Rate | 25.84% |
| **AR1 (8/1/15–7/31/16)**[4] | GITI | 1.5% |
| | Sentury | 1.27% |
| | Separate Rate | 1.45% |
| **AR2 (8/1/16–7/31/17)**[5] | **Junhong** | **65.47%** |
| | **Separate Rate** | **41.36%** |
| | Kenda | 18.35% |
| **AR3 (8/1/17–7/31/18)**[6] | Shandong New Continent ("SNC") | 0% |
| | Separate Rate | 0% |
| **AR4 (8/1/18–7/31/19)**[7] | Separate Rate | 0% |
| **AR5 (8/1/19–7/31/20)**[8] | Sumitomo | 2.06% |
| | Separate Rate | 2.06% |
| **AR6 (8/1/20–7/31/21)**[9] | GITI | 5.39% |
| | Sumitomo | 0.59% |
| | Separate Rate | 2.19% |

---

[3]    *ADD Order*, 80 Fed. Reg. at 47,905-06.

[4]    *AR1 Final Results*, 83 Fed. Reg. at 11,692; *Amended AR1 Final Results*, 87 Fed. Reg. at 33,718.

[5]    *AR2 Final Results*, 81 Fed. Reg. at 17,782-83; Remand at 36.

[6]    *PVLT from China*, 85 Fed. Reg. 22,396, 22,397 (Apr. 22, 2020) (final results). Although SNC's AR3 rate was reconsidered on remand, Commerce confirmed its 0% ADD rate, that redetermination was affirmed by this Court and was not appealed to the CAFC. *Pirelli Tyre Co. v. United States*, 638 F. Supp. 3d 1361, 1367-71 (CIT 2023). There cannot be any basis to change the 0% ADD rate assigned to SNC in AR3.

[7]    *PVLT from China*, 85 Fed. Reg. 36,831, 36,832 (June 18, 2020) ("*AR4 Preliminary Results*"). The AR4 final results are stayed pending the outcome of SNC's 0% AR3 rate. Commerce Memorandum, A-570-016 (Dec. 4, 2020) (ACCESS Barcode 4061991). Yet that redetermination was affirmed and not further appealed, meaning there cannot be any basis to change the 0% preliminarily assigned in AR4. *Pirelli*, 638 F. Supp. 3d at 1367-71.

[8]    *PVLT from China*, 87 Fed. Reg. 13,966, 13,967 (Mar. 11, 2022) (final results).

[9]    *PVLT from China*, 88 Fed. Reg. 15,663, 15,664 (Mar. 14, 2023) (final results).

The 64.57% ADD Junhong rate is aberrational and contrasts sharply with all other ADD

rates calculated during the history of this *ADD Order*. Commerce insists that this Court "already

rejected" the "argument that Junhong's rate should be disregarded." Remand at 25-26. Yet there

have been multiple data points since that 2020 ruling confirming that aberrancy – including

Kenda's rate and recently-completed reviews calculating very low ADD rates. Further, the

record reveals that Junhong's average U.S. sales prices were [      ] below the average unit value

for PVLT from China during the AR2 POR. Winrun Withdrawal at 7, Exhibit 1. Accordingly,

Commerce's use of Junhong's rate to calculate the separate rate is "difficult to comprehend from

a commercial or economic standpoint," violating its **duty to calculate a rate to be applied to**

**non-examined parties that is based on some fair sample . . .  of the exporter and producer**

**pool**." *Baoding Mantong Fine Chem. Co. v. United States*, 113 F. Supp. 3d 1332, 1337-41 (CIT

2015) (emphasis added); *Diamond Sawblades Mfrs. Coal. v. United States*, 359 F. Supp. 3d

1374, 1381 (CIT 2019).

To avoid using aberrant Junhong data, Commerce should have carried forward the 1.45%

AR1 separate rate to serve as a nearly contemporaneous, and entirely representative separate rate

for AR2. *Amended AR1 Final Results*, 87 Fed. Reg. at 33,718. Commerce has done so in similar

circumstances. *See* Boto Response at 3; Mayrun Response at 2-3. Commerce declined to use a

carry-forward rate based on its "usual practice" when presented with "above-*de minimis* rates

that are not entirely based on {facts available}." Remand at 33-34. Yet Commerce can and does

depart from this "usual practice" when there are no viable rates, as in AR4 when it carried

forward the AR3 separate rate. *AR4 Preliminary Results*, 85 Fed. Reg. 36,831, PDM at 12.

Alternatively, Commerce could set the separate rate as Kenda's non-aberrational

calculated rate, which represents sales prices of PVLT from China during the AR2 POR and is in

line with historic ADD rates. *ADD Order*, 80 Fed. Reg. at 47,905-06. Although more recent rates have been significantly lower – ranging 0% to 5.39% – Kenda provides a representative data point that Commerce could lawfully assign as the separate rate.

## V.  COMMERCE SHOULD HAVE GRANTED RESPONDENTS' WITHDRAWAL REQUESTS

Winrun, Linglong, Hengyu, and Mayrun were among the exporters that sought to withdraw their AR2 review requests during the underlying review, albeit after the 90-day regulatory deadline. Winrun Withdrawal; Linglong Withdrawal; Mayrun Withdrawal Hengyu Withdrawal.[10] These companies established that strict adherence to the 90-day regulatory deadline set forth in 19 C.F.R. § 351.213(d)(1) was inappropriate given that the *AR1 Final Results* and AR2 respondent selection did not occur until long after 90 days from initiation. *See id*. Commerce refused to grant these requests. IDM at 8-9. This issue was appealed, with the CAFC declining to reach the withdrawal question while acknowledging that it remained a live issue: "We also do not reach Appellants' challenge to Commerce's decision to deny Appellants' withdrawal requests." *YC Rubber*, 2022 WL 3711377, *5. These respondents renewed their withdrawal requests on remand:

- Due to the exceptional circumstances, we . . .  respectfully request to withdraw Hengyu's request to be included as an interested party in this review. Hengyu Response at 2.

- In October 2018 Winrun requested that the Department accept its {withdrawal} of Winrun's POR2 review request and, given the circumstances, now renews that request. Winrun notes that no other party, other than Winrun, requested an AD review for the POR2 AD review. Winrun Response at 2.

---

[10]  Importer American Pacific Industries, Inc. ("API") also withdrew its review for Hengyu, although that request was invalid because API failed to submit an entry summary establishing the importation of subject merchandise – as required by Commerce practice. Letters from Tuttle Law to Commerce (Aug. 30, 2017, Nov. 28, 2017 & Nov. 9, 2018), PR 35, PR 118, PR 266.

PUBLIC VERSION

- Mayrun . . . respectfully renews its application to withdraw its request to be included as an interested party in this review. Although the 90-day period from the notice of initiation of this review has long passed, Mayrun submits that the unique nature of the remand following the decision of the {CAFC} in *YC Rubber* . . . makes renewal and allowance of this request reasonable in the circumstances. Mayrun Withdrawal Renewal.

Commerce should have granted these withdrawal requests in the underlying AR2 proceeding, in accordance with CAFC precedent, *Glycine & More, Inc. v. United States*, 880 F.3d 1335, 1338-45 (Fed. Cir. 2018). The CAFC there mandated that Commerce accept requests to withdraw reviews filed more than 90 days after initiation of a review when it is reasonable to do so. *Id*. In that appeal, it was reasonable because:

1. Commerce had not yet expended resources to review the respondent seeking rescission at the time the late withdrawal was filed; and

2. the final results of the preceding review were not knowable until well after expiration of the deadline.

*Id*. The CAFC emphasized that Commerce itself articulated these criteria when codifying the regulation allowing it to accept untimely withdrawals. *Id*.

*Glycine* compels the grant of withdrawal requests in AR2, as it invalidated the "extraordinary circumstances" requirement that Commerce expressly and incorrectly employed in AR2. *Id*.; *AR2 Initiation*, 82 Fed. Reg. at 48,052. Moreover, both factual criteria are present. First, the *AR1 Final Results* were not knowable until long after the 90-day deadline had passed in AR2; the withdrawals were filed in Fall of 2018 and those results were not issued until March 2019. *AR1 Final Results*, 83 Fed. Reg. 11,690. Indeed, AR1 was not conclusively resolved until litigation concluded in September 2022. *PVLT from China*, 87 Fed. Reg. 57,174 (Sept. 19, 2022) (correction notice). Given the CAFC-recognized importance of knowing the previous review rates to inform withdrawal, Commerce should have granted the AR2 withdrawal requests as reasonable.

PUBLIC VERSION

Next, as in *Glycine*, Commerce had not expended significant resources on the separate rate respondents when their withdrawal requests were filed in Fall of 2018. At that time, Commerce had only reviewed their SRCs (and a Separate Rate Application for Linglong). Separate Rate Memo; PDM at 2-3. This exercise that does not require the same effort as reviewing a mandatory respondent questionnaire response – as this Court emphasized when invalidating Commerce's strict adherence to deadlines: "every indication suggests that the burden of reviewing the SRC would not be great. . . . Nor did Commerce conduct any further questioning of the other separate-rate respondents in this review." *Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 36 CIT 98, 124 (2012). Commerce in AR2 improperly denied the requested rescissions because it had expended resources on issues unrelated to the separate rate respondents, IDM at 9; the inquiry should have focused on agency resources with respect to those respondents seeking withdrawal.

Commerce continued denying the withdrawal requests because this Court previously found that the "denial of the untimely withdrawal requests . . . was reasonable." Remand at 36. Yet since that time, Commerce inexplicably opted to expend additional resources by selecting an additional mandatory respondent on remand, rather than granting the withdrawals, which would have preserved agency resources.

Exporters renewed their withdrawal requests on remand. Hengyu Response at 2; Winrun Response at 2; Mayrun Withdrawal Renewal. The basis for granting the AR2 withdrawals on remand is especially compelling given the unique circumstances surrounding this litigation; that is, exporters could not participate as mandatory respondents on remand due to the passage of time caused by Commerce violating its statutory mandate and seeking unused extensions for reconsideration. Commerce's refusal to implement this simple and fair resolution of this matter

PUBLIC VERSION

underscores the improper, vindictive, and unlawful manner in which this remand has been conducted.

## CONCLUSION

Based on the foregoing, Plaintiffs request that this Court invalidate Commerce's Remand, direct Commerce to reconsider its Remand, and take action consistent with the arguments set forth by Plaintiffs herein, as well as the arguments set forth by Voma and Mayrun in their comments opposing Commerce's Remand filed contemporaneously herewith.

Respectfully submitted,

GRUNFELD, DESIDERIO, LEBOWITZ, SILVERMAN & KLESTADT LLP

/s/ Jordan C. Kahn
Ned H. Marshak
Jordan C. Kahn*

599 Lexington Ave., 36th Floor
New York, New York 10022
**
1201 New York Ave., NW*
Suite 650
Washington, DC 20005

Counsel for Plaintiffs
YC Rubber (North America) LLC and
Sutong Tire Resources, Inc.

Dated: February 2, 2024

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Plaintiffs' Comments on Remand Redetermination, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's word processing system Microsoft Word 2007, is 7,272 words, less than the 10,000 word limit.

<u>/s/ Jordan C. Kahn</u>

*Counsel for Plaintiffs*
*YC Rubber (North America) LLC and*
*Sutong Tire Resources, Inc.*

Dated: February 2, 2024

12583140_1