**UNITED STATES COURT OF INTERNATIONAL TRADE**
**NEW YORK, NEW YORK**

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

---

YC RUBBER CO. (NORTH AMERICA) LLC,
SUTONG TIRE RESOURCES INC., MAYRUN
TYRE (HONG KONG) LIMITED, and ITG
VOMA CORPORATION,

      Plaintiffs and Consolidated Plaintiffs,

      and

KENDA RUBBER (CHINA) CO., LTD.

      Plaintiff-Intervenor,

      v.

UNITED STATES,

      Defendant.

Consol. Court No. 19-00069

---

**COMMENTS OF ITG VOMA CORPORATION OPPOSING REMAND
REDETERMINATION**

Jonathan T. Stoel
Craig A. Lewis
Nicholas R. Sparks

HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-6634

*Counsel to ITG Voma Corporation*

Dated: February 2, 2024

# TABLE OF CONTENTS

**Page**

I. COMMERCE MAY NOT SELECT A REPLACEMENT RESPONDENT SIX YEARS LATER AND SHOULD THUS APPLY A PULL-FORWARD RATE.................................................... 3

    A.   Commerce Should Not Have Selected Another Mandatory Respondent Many Years After the Review Period Ended..................................................................................................... 3

    B.   Commerce Has Acknowledged that *YC Rubber* Does Not Mandate the Selection of a New Mandatory Respondent under Extraordinary Circumstances, which Exist Here ............. 10

    C.   Commerce Should Apply a Pull-Forward Rate for Separate-Rate Respondents or, in the Alternative, the Final Rate Assigned to Kenda................................................................. 12

II.  COMMERCE SHOULD NOT APPLY THE CHINA-WIDE RATE TO SEPARATE-RATE RESPONDENTS, WHICH CONTINUE TO BE ELIGIBLE FOR A SEPARATE RATE.. 13

III.  COMMERCE SHOULD CORRECT ITS EXCLUSION OF SURROGATE VALUE IMPORT DATA FROM COUNTRIES ALLEGED TO RECEIVE GENERALLY AVAILABLE SUBSIDIES ABSENT EVIDENCE THAT THESE SUBSIDIES WERE ACTUALLY AVAILABLE DURING THE PERIOD OF REVIEW ................................... 17

IV.  CONCLUSION ...................................................................................................................... 19

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Changzhou Hawd Flooring Co. v. United States*,
324 F. Supp. 3d 1317 (Ct. Int'l Trade 2018) ............................................... 7

*Changzhou Hawd Flooring Co. v. United States*,
44 F. Supp. 3d 1376 (Ct. Int'l Trade 2015) ................................... passim

*Changzhou Hawd Flooring Co. v. United States*,
848 F.3d 1006 (Fed. Cir. 2017) ................................................................ 6

*Hubbell Power Sys., Inc. v. United States*,
365 F. Supp. 3d 1302 (Ct. Int'l Trade 2019) ......................................... 16

*Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. et. al. v. United States*,
Consol. Court No. 20-03885 (CIT February 14, 2023) ........................... 11

*Linyi Chengen Imp. & Exp. Co. v. United States*,
609 F. Supp. 3d 1392 (Ct. Int'l Trade 2022) ........................................ 15

*N.L.R.B. v. Columbian Enameling & Stamping Co.*,
306 U.S. 292 (1939).................................................................................. 18

*Siemens Gamesa Renewable Energy v. United States*,
621 F. Supp. 3d 1337 (Ct. Int'l Trade 2023) ........................................... 5

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
716 F.3d 1370 (Fed. Cir. 2013)............................................................... 15

**Statutes**

19 U.S.C. § 1677b(c)(5)........................................................................... 18

19 U.S.C. § 1677e(b) ................................................................................ 13

19 U.S.C. § 1677f-1(c)(2) .......................................................................... 5

**Administrative Materials**

*Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China*,
84 Fed. Reg. 17,781 (Dep't Commerce, Apr. 26, 2019) ........................ 14

*Certain Quartz Surface Products From India*,
88 Fed. Reg. 1188 (Dep't Commerce, Jan. 9, 2023) ............................. 12

*Notice of Court Decision Not in Harmony With the Results of Antidumping Administrative Review; Notice of Amended Final Results*, 87 Fed. Reg. 33,717 (Dep't Commerce, June 3, 2022) ..... 13

## COMMENTS OF ITG VOMA CORPORATION OPPOSING REMAND REDETERMINATION

ITG Voma Corporation ("ITG Voma"), a U.S. importer of subject merchandise and a consolidated plaintiff in this appeal, respectfully submits the following comments opposing the U.S. Department of Commerce ("Commerce" or the "Department") Final Results of Redetermination Pursuant to Court Remand (Oct. 31, 2023), Consol. Court No. 19-000069, Slip Op. 21-1489, ECF No. 78 ("Remand Redetermination").[1] The Department's Remand Redetermination is both unlawful and unsupported by substantial evidence for the reasons that follow.[2]

In *YC Rubber Co. (N. Am.) LLC v. United States,* No. 2021-1489, 2022 WL 3711377 (Fed. Cir. Aug. 29, 2022), the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") held that Commerce had violated the "unambiguous language" of the Tariff Act by calculating a separate rate based on its examination of only one respondent when there were forty two respondents subject to the review. Commerce's disregard for its statutory directive resulted in a separate rate that was legally infirm. Respondents, including ITG Voma, had explained this legal error to Commerce to no avail as far back as 2018, prior to the issuance of the Final Results in the underlying administrative review. Notwithstanding, in the original agency proceeding, Commerce disregarded its legal obligation and instead defended its decision to draw and assign a separate rate

---

[1] The Remand Redetermination is dated October 31, 2023, but was filed with the Court on November 3, 2023, following the Court's Order granting the Defendant's Motion for Extension of Time to File Remand Results Out of Time. ECF No. 77.

[2] ITG Voma respectfully observes that Plaintiffs and Consolidated Plaintiffs YC Rubber Co. (North America) LLC, Sutong Tire Resources, Inc., and Mayrun Tyre (Hong Kong) Limited are also filing comments opposing the Remand Redetermination. ITG Voma supports these comments. For the reasons identified therein, as well as those outlined below, the Court should remand the determination to the agency.

from its examination of just one respondent. As a consequence of this unlawful decision, Commerce assigned a separate rate of **64.57** percent in the underlying review.

Now, after its years-old legal error was rebuked and reversed by the Federal Circuit, Commerce still continues to violate the law, including clear U.S. Court of International Trade ("CIT") precedent. Moreover, Commerce has responded to the Federal Circuit's reversal and instruction by punishing separate-rate respondents with the China-wide rate of **87.99** percent. Specifically, in justifying its new and punitive margin, the agency has the gall to blame separate-rate respondents for not rapidly being able to produce detailed business records dating back to 2016. This problem – the unavailability of years-old data and since-departed company personnel – was one of Commerce's own creation, and the agency's new application of the China-wide rate to separate-rate respondents is neither supported by substantial evidence nor in accordance with law. Accordingly, this Court should again remand these proceedings back to the agency for further revision, consistent with the Federal Circuit's previous holding in this same appeal.

## ARGUMENT

For the reasons set forth herein, the Remand Redetermination fails to comport with the Federal Circuit's holding remanding the case "for further proceedings in conformity with this opinion," *YC Rubber*, 2022 WL 3711377, at *5, and this Court's Order that the proceeding be "remanded to Commerce to issue a determination consistent with *YC Rubber*." ECF No. 72 (Feb. 2, 2023) at 1. This Court should again remand back to the agency, instructing Commerce that:

(1)    Commerce unlawfully required respondent companies in the Remand Redetermination to provide detailed factual information and data many years after the conclusion of the underlying review period (August 1, 2016 to July 31, 2017);

(2)    Commerce is instructed not to apply the China-wide rate to respondents previously granted separate-rate status in the underlying administrative review;

(3)     Commerce should instead apply a pull-forward rate to remedy the legally infirm Final Results rate assigned to respondents;

(4)     If Commerce proposes a methodology other than application of the pull-forward rate, it may not apply the China-wide rate, which is inappropriate under these circumstances because separate-rate respondents like Boto responded to the best of their ability.

(5)     Commerce should correct its continued exclusion in the Remand Redetermination of surrogate value import data from countries alleged to have received generally available subsidies, absent evidence that these subsidies were actually available during the underlying period of review.

## I.     COMMERCE MAY NOT SELECT A REPLACEMENT RESPONDENT SIX YEARS LATER AND SHOULD THUS APPLY A PULL-FORWARD RATE

### A.     Commerce Should Not Have Selected Another Mandatory Respondent Many Years After the Review Period Ended

On October 31, 2023, more six years after the July 31, 2017 completion of the administrative review period at issue in this proceeding, Commerce announced its Remand Redetermination.  The Remand Redetermination includes the following outcomes:

(1)     Assigned a new calculated rate of 18.15 percent to Kenda Rubber (China) Co., Ltd. ("Kenda") as a replacement mandatory respondent;

(2)     Stripped the previously-confirmed separate-rate status of Mayrun Tyre (Hong Kong) Limited ("Mayrun"); Shandong Hengyu Science & Technology Co., Ltd. ("Hengyu); Winrun Tyre Co., Ltd. ("Winrun"); and Shandong Wanda Boto Tyre Co., Ltd ("Boto");

(3)     Assigned these separate-rate status entities the China-wide rate of 87.99 percent; and

(4)     Calculated a separate rate for Shandong Linglong Tyre Co., Ltd of 41.36 percent.

U.S. importer ITG Voma imported from Boto during the period of review.  Ct. No. 19-78, ECF No. 13 (June 5, 2019 request for statutory injunction by ITG Voma).  ITG Voma participated fully in the underlying remand process before Commerce.  Letter from the Hogan Lovells US LLP to the Honorable Gina M. Raimondo, *Passenger Vehicle and Light Truck Tires from People's*

*Republic of China: Comments Regarding Draft Results of Redetermination*, Case No. A-570-016 (Remand CAFC 21-1489) (Aug. 17, 2023), P.R. 110.[3]

In the Remand Redetermination, Commerce erred by selecting a new mandatory respondent. This step was inappropriate and unlawful so many years after the conclusion of the review and not mandated by the Federal Circuit's holding. The Federal Circuit ordered "remand for further proceedings in conformity with this opinion." *YC Rubber Co. (N. Am.) LLC v. United States*, No. 2021-1489, 2022 WL 3711377, at *5 (Fed. Cir. Aug. 29, 2022). This Court likewise made no specific instruction that Commerce should select another respondent years after-the-fact, instead ordering that the second administrative review be "remanded to Commerce to issue a determination consistent with *YC Rubber*." CM/ECF 72 (Feb. 2, 2023) at 1.

Instead, Commerce could have complied with the Federal Circuit's decision and this Court's instruction by means that did not involve selecting another respondent. For example, Commerce could have assigned and applied a "pull-forward" antidumping duty ("AD") rate, a practice the agency has undertaken in similar circumstances. Letter from Hogan Lovells US LLP to U.S. Department of Commerce, *Response to the Department's Request to Notify*, (Remand CAFC 21-1489) (Feb. 16, 2023) ("Boto Response"), at 3, P.R. 9; Letter from Neville Peterson LLP to U.S. Department of Commerce, *Mayrun Tire (H.K.) Ltd.: Request to Notification of Participation and to Initial Questionnaire*, (Remand CAFC 21-1489), Case No. A-570-016 (Mar. 3, 2023) ("Mayrun Response"), at 2-3, P.R. 23. Simply put, Commerce was by no means judicially required to select another mandatory respondent years after the review period ended. On the contrary, as the CIT has demonstrated, if a remand requires selection of a replacement respondent, the court can state as much, and six years after the review period is too late to select a replacement respondent.

---

[3]       Throughout this brief, documents in the public administrative record are referenced "P.R."

To start, if the Federal Circuit or this Court had concluded that Commerce was required to select a replacement respondent at this late stage, a clear instruction could have been given for the agency to do so. For example, in *Siemens Gamesa Renewable Energy v. United States*, 621 F. Supp. 3d 1337, 1349 (Ct. Int'l Trade 2023), the CIT remanded the proceeding to the agency after concluding that the rate assigned to a Spanish exporter "was unlawful because it resulted from an unlawful respondent selection method, Commerce having limited its individual examination to a single respondent, contrary to 19 U.S.C. § 1677f-1(c)(2) as interpreted in *YC Rubber*." In determining the appropriate remedy, the CIT noted: "Plaintiff challenges {Commerce's} decision not to examine Siemens Gamesa individually as the largest remaining exporter, and ***that unlawful decision must be remedied by an individual investigation of Siemens Gamesa*** during the remand proceeding the court is ordering." *Id*. (emphasis added). Here, in contrast, neither the Federal Circuit nor the CIT directed Commerce to individually examine a new respondent. On remand, Commerce was required to determine a representative and reasonable separate rate that was supported by substantial evidence. At this late stage, selecting a new mandatory respondent was not a reasonable means of achieving this mandate.

In fact, the CIT has confirmed that it is not reasonable for Commerce to reopen a record and individually investigate a respondent years after-the-fact. In *Changzhou Hawd Flooring Co. v. United States*, 44 F. Supp. 3d 1376, 1388–91 (Ct. Int'l Trade 2015), "the CIT rejected Commerce's attempts to select a new mandatory respondent ***three and a half years*** after the initial investigation." Remand Redetermination at 23 (emphasis added). There, the CIT observed that while Commerce has the "discretion to reasonably reopen the record, its decision to conduct a full individual investigation of Changzhou Hawd at such a late date is arbitrary and capricious." *Changzhou Hawd Flooring Co. Ltd. v. United States*, 44 F. Supp. 3d 1376, 1388–91 (Ct. Int'l Trade 2015); *see also Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006, 1010 (Fed.

Cir. 2017) ("In *Changzhou Hawd Flooring*, 44 F. Supp. 3d at 1390, the court held to be arbitrary and capricious Commerce's decision to conduct a full individual investigation of Changzhou Hawd Flooring so late in the investigation. On remand, Commerce applied the same above-de minimis but unspecified separate rate to Changzhou Hawd Flooring that it applied to the other separate-rate firms. The Court of International Trade approved that decision. *Changzhou Hawd Flooring*, 77 F. Supp. 3d at 1359. Commerce does not challenge the rejection of its attempt to individually investigate Changzhou Hawd Flooring.").

The Remand Redetermination's attempts to distinguish itself from *Changzhou Hawd* are unavailing. Commerce acknowledges: "In *Changzhou Hawd*, the CIT ordered Commerce to redetermine the separate rate it applied to *Changzhou Hawd* approximately three and half years after the underlying investigation was completed." Remand Redetermination at 26. Under the agency's view of that case, however, "The CIT found Commerce's decision to individually examine Changzhou Hawd at such a late date to be 'arbitrary and capricious' because Commerce was internally inconsistent in that case with respect to its availability of administrative resources to individually examine respondents." *Id*. at 26–27. But, the CIT's logic in that case was clear: it is arbitrary and capricious for the agency to years-later investigate a respondent, particularly when other evidence has collected over the interim period. The CIT explained:

> Commerce now has both an investigation and first administrative review, each with three fully cooperative individually investigated respondents. . . . It has denied multiple voluntary respondent applications . . . but still has an evidentiary record much more robust than would be available in a typical investigation. In this context, while Commerce retains the discretion to reasonably reopen the record, *its decision to conduct a full individual investigation of Changzhou Hawd at such a late date is arbitrary and capricious*.

*Changzhou Hawd Flooring*, 44 F. Supp. 3d 1390 (emphasis added). *See also Changzhou Hawd Flooring Co. v. United States*, 324 F. Supp. 3d 1317, 1328 (Ct. Int'l Trade 2018), *aff'd*, 947 F.3d

781 (Fed. Cir. 2020) ("Here, though, too much time has passed for Commerce to individually examine the Voluntary Applicants.").

Like in *Changzhou Hawd*, Commerce is again demonstrating puzzling internal inconsistency – the agency concluded, for instance, in April 2019 that by November 2018, Commerce had reached "a point at which it was not feasible to select an additional respondent". More than four years later, however, the same agency now insists that it ***must*** select a replacement mandatory respondent. Memorandum from Gary Taverman to Jeffrey I. Kessler, *Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Issues and Decision Memorandum for the Final Results of the 2016-2017 Antidumping Duty Administrative Review,* Case No. A-570-016 (Apr. 19, 2019) at 14, P.R. 276.

Of greater concern than being internally inconsistent, however, Commerce's action is far too late. In *Changzhou Hawd*, three and a half years later was too long. Six years later is far too long, too. Commerce should reverse its findings as to the separate-rate respondents in light of the correct logic applied by the CIT in *Changzhou Hawd*.

Notwithstanding the outrageousness of selecting a respondent six years after the period of review, on February 8, 2023, Commerce selected Boto for individual examination for the 2016-17 review period. This was ***nearly twice as long*** as the three-and-a-half-year long delay that was invalidated by the CIT and corrected by Commerce in *Changzhou Hawd*. Commerce provided Boto with only one week to indicate whether it would complete Commerce's burdensome and detailed AD questionnaire. Letter from U.S. Department of Commerce to Shandong Wando Boto Tyre Co., Ltd. (Feb. 8, 2023), P.R. 2, ("**Please notify the Department of Commerce (Commerce) officials in charge . . . whether {Boto} intends to respond to this questionnaire within 7 days of issuance of this questionnaire.**") (emphasis in original). This was peculiar because, in administrative reviews, Commerce normally provides respondents selected for individual

examination with **three weeks** to submit its Section A Questionnaire Response without requiring an earlier indication that the company will participate and regularly grants firms at least a one-week extension. Yet on remand, the Department required Boto to give notice within merely one week of receipt of the questionnaire, and then was unwilling to extend this unreasonable deadline by more than a single day. Letter from U.S. Department of Commerce to Shandong Wando Boto Tyre Co., Ltd. (Feb. 15, 2023), P.R. 7; Boto Response at 2. On February 16, 2023, Boto informed the Department that Boto was unable to provide the years-old data solicited in Commerce's request on the timeline mandated by the agency. Boto timely explained:

> {T}he original AD period of review (August 1, 2016 through July 31, 2017) ended nearly six years ago. Boto participated cooperatively in the underlying AD review at that time and did not appeal the final results. Boto is not currently a party to the court litigation that led to this remand proceeding, as noted above, and therefore until just a few days ago has not been involved in this proceeding in any way for more than four years. Given the very lengthy passage of time and the unexpected nature of the Department's request, *it is no longer feasible for Boto to prepare the detailed sales and cost information requested by Commerce. Nor was it reasonable for Commerce to make this request after all of this time for data from a company that is not even a party to the underlying litigation*.

Boto Response at 2, P.R. 9 (emphasis added). Boto elaborated that it was not able to respond to the questionnaire at this very late point because "*{t}he data sources are stale, key company staff have changed, and the requested documentation is no longer easily accessible*." *Id*. (emphasis added) Commerce then similarly notified, in turn, Hengyu, Winrun, Mayrun, and Kenda that they would be subject to review as the second mandatory respondent in the 2016-2017 review.[4]

- Hengyu, on February 24, 2023, reported: "Hengyu is not in a position to participate in the current review and respond to the questionnaire because Hengyu is in the

---

bankruptcy procedure. All the company personnel of Hengyu have been dismissed and even no responsible person could be contacted by us." Letter from Gaopeng & Partners to U.S. Department of Commerce (Feb. 24, 2023), at 2, P.R. 16.

- Similarly, Mayrun explained: "We at Mayrun did not retain any files/documents for more than 3 years, we are not a public company and we follow the company regulation of Hongkong, as a private trading company we only keep the records for the past 3 years, and obviously, records of 2016-2017 were totally out of the range." Mayrun Response at 2, P.R. 23.

- When it was selected next, Winrun reported: "Winrun no longer has sufficient data and information to be able to prepare complete AD responses and databases for the POR2 August 1, 2016 – July 31, 2017 time period. . . . Winrun hereby confirms that, pursuant to its normal business practices, Winrun only has the ability to access sales data and information that is 3 years old." Letter from Curtis Mallet -Prevost, Colt & Mosle to U.S. Department of Commerce (Mar. 10, 2023), at 2, P.R. 29.

- On March 10, 2023, Commerce then selected Kenda as the replacement mandatory respondent in this proceeding. Remand Redetermination at 4.

In its Remand Redetermination, Commerce has stripped Boto, Hengyu, Winrun, and Mayrun of their separate-rate status and applied the China-wide rate to their exports made during the review period. Commerce is notably silent regarding the reasonableness of requiring a company to respond to questionnaires *six years after the relevant period ended*, particularly given that these six years coincided with a once-in-a-century global pandemic. That is, the Remand Redetermination fails entirely to address how long Commerce expects companies to maintain business records that could be subject to Commerce review years after the period in question expired, how companies should rapidly produce information to Commerce when the relevant personnel have long since departed, and how the passage of six years affects the reliability and availability of information necessary for Commerce to calculate fair and accurate margins. Rather than address these prohibitive constraints, which Boto, Hengyu, Winrun, and Mayrun all timely identified, and ITG Voma addressed in its Draft Remand Comments, the Remand Redetermination simply reasons: "Commerce's selection of additional mandatory respondents on remand to weight-

average with {Zhaoqing Junhong Co., Ltd.'s ("Junhong") } rate is a logical and reasonable method to comply with the Federal Circuit ruling." Remand Redetermination at 27.

In other words, Commerce has simply side-stepped the candid, real-world explanations of difficulty and impossibility provided by Boto, Hengyu, Winrun, and Mayrun. As such, Commerce's "reasonableness" assessment is conclusory and unsupported. Respondents' explanations of impracticability demonstrate exactly why the CIT relied on this legal tenet in *Changzhou Hawd*. It is not realistic to investigate activities years after-the-fact, and any such attempt is contrary to principles of fundamental fairness.

Commerce thus ignores the impracticability of acting as a respondent six years after the period ended and argues that the Federal Circuit's *YC Rubber* holding required the agency to select a replacement mandatory respondent here. ITG Voma agrees that Commerce should have followed the "unambiguous language" of the Tariff Act and selected a mandatory respondent when Haohua Tire Co. ("Haohua") withdrew from the review in 2018. But, the time to select a replacement respondent was in April 2018, not February 2023, when in the intervening years key company personnel departed, business records were replaced, bankruptcies were navigated, and a global pandemic upended the world.

**B.  Commerce Has Acknowledged that *YC Rubber* Does Not Mandate the Selection of a New Mandatory Respondent under Extraordinary Circumstances, which Exist Here**

Further compounding this internal inconsistency and violation of CIT precedent, and demonstrating why this Court should again remand to the agency, in other proceedings Commerce has concluded that *YC Rubber* does not require Commerce to select more than one mandatory respondent. In the 2017 administrative review of the countervailing duty ("CVD") order on Multilayered Wood Flooring ("MLWF") from China, for example, upon remand, Commerce explained:

10

> We do not interpret the Federal Circuit's language in *YC Rubber* as requiring that Commerce always calculate the non-selected rate in an administrative review based on at least two individually calculated rates. Instead, it instructs that if Commerce departs from this norm to rely on the rate from only one mandatory respondent, it must demonstrate it is reasonable to do so.

Final Results of Redetermination Pursuant to Court Remand (Mar. 31, 2023), *Jiangsu Senmao Bamboo and Wood Industry Co., Ltd. et. al. v. United States,* Consol. Court No. 20-03885 (CIT Feb. 14, 2023) at 7.  ECF No. 119.  The Remand Redetermination's attempts to distinguish that reasoning from the instant case are puzzling in that Commerce asks this Court to focus on the passage of time.  That is, Commerce contends that it could not select an additional respondent in the MLWF remand because it only had 90 days to complete the remand but it could select a respondent in this case because it had 180 days, which were subsequently extended to 270.  Remand Redetermination at 28-29.  In Commerce's view, this timeline in the MLWF review constituted a "unique circumstance" that waived the agency's obligation to select an additional respondent for examination.  Commerce thus openly admits that *YC Rubber* does not mandate the selection of an additional respondent under all circumstances.  Here, "unique circumstances" similarly render it unreasonable for Commerce to select a replacement respondent for a review period that ended six years ago.  Unlike in the MLWF review, however, the Federal Circuit has already invalidated application of the Junhong rate.  As such, Commerce should remedy this legally infirm rate through the application of a pull-forward rate.

In short, this internal inconsistency by the agency underscores that Commerce's selection of an additional mandatory respondent in this remand proceeding is arbitrary and capricious and not supported by substantial evidence.  Troublingly, Commerce appears to be punishing separate rate respondents for their years' long insistence that Commerce comply with the "unambiguous language" of the statute and calculate a rate that is fair and accurate.  *YC Rubber*, 2022

WL 3711377, at *3 (Fed. Cir. Aug. 29, 2022).  On remand, this Court should direct Commerce to assign these firms a separate rate consistent with the approach described above.

### C.  Commerce Should Apply a Pull-Forward Rate for Separate-Rate Respondents or, in the Alternative, the Final Rate Assigned to Kenda

In light of the unusual and difficult circumstances outlined above, the only appropriate course of action at this late stage is for Commerce to adopt a reasonable, alternative dumping margin for Boto.  Namely, Commerce should apply the "pull-forward" margin calculated in the first administrative review of the AD order (i.e., the review immediately preceding this one).  Commerce frequently carries forward margins from prior reviews in circumstances where it is not feasible to calculate individual rates, and the Courts have endorsed this policy.  *See, e.g.*, *Certain Quartz Surface Products From India*, 88 Fed. Reg. 1188, 1189 (Dep't Commerce, Jan. 9, 2023) (final results of antidumping duty administrative review; 2019-2021) ("Commerce has determined that a reasonable method to establish the rate for the 51 non-selected companies subject to this administrative review is by relying on the all-others rate calculated in the initial investigation of this *Order,* consistent with the guidance in section 735(c)(5)(B) of the Act.").  Here, the underlying Final Results' separate rate was legally infirm, and it was unreasonable and unlawful for Commerce to have required the respondents' 2016-2017 sales and production records at this late stage.  Accordingly, the correct approach is for Commerce to select and apply a pull-forward rate, which would be based on information nearly contemporaneous to the period in question.  On remand, Commerce should pull forward the 1.45 percent rate from the most recently-completed administrative review segment preceding the 2016-2017 review.  *Notice of Court Decision Not in Harmony With the Results of Antidumping Administrative Review; Notice of Amended Final Results*, 87 Fed. Reg. 33,717 (Dep't  Commerce, June 3, 2022) (certain passenger vehicles and light truck tires from the People's Republic of China).

The Remand Redetermination argues that there is no statutory basis for assigning a pull-forward rate because Junhong's rate was neither de minimis nor based on adverse facts available. Remand Redetermination at 26. Commerce ignores, however, that this is a unique proceeding in which separate-rate respondents were subjected to a rate that the Federal Circuit confirmed to be legally invalid. As such, it is appropriate to pull forward the most recently-completed prior segment rate in this review.

In the alternative, if Commerce elects not to assign the separate-rate respondents a pull-forward rate, then Commerce should assign the separate-rate respondents the final AD remand rate assigned to Kenda, recognizing the unusual circumstances of this proceeding.

## II. COMMERCE SHOULD NOT APPLY THE CHINA-WIDE RATE TO SEPARATE-RATE RESPONDENTS, WHICH CONTINUE TO BE ELIGIBLE FOR A SEPARATE RATE

Commerce's application of the China-wide rate to Boto, Hengyu, Winrun, and Mayrun is unlawful, unreasonable, and arbitrary and capricious. Commerce should not penalize these respondents for being unable to provide detailed information so very many years after the period of review. Commerce may not lawfully disregard the respondents' separate rate status and apply the China-wide rate. Put simply, there is no basis for the application of the China-wide rate to Boto, Hengyu, Winrun, and Mayrun under the circumstances of this proceeding.

Commerce's new application of the China-wide rate to the respondents seemingly assumes that the agency is entitled to apply adverse facts available here. But, the statutory inquiry for Commerce's application of adverse facts available is whether each company "has failed to cooperate {with Commerce} *by not acting to the best of its ability*." 19 U.S.C. § 1677e(b) (emphasis added). That plainly is not the case here.

On the contrary and for example, Boto participated cooperatively in both the original investigation and the first administrative review, and Commerce found twice that it qualified for a

separate rate.  *Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China*, 84 Fed. Reg. 17,781, 17,783 (Dep't Commerce, Apr. 26, 2019) (final results of antidumping duty administrative review and final determination of no shipments; 2016-2017*)*.  Subsequently, Boto qualified again for a separate rate in the underlying administrative review here.  *Id*. at 17,783 and accompanying Issues & Decision Memorandum.  The fact that Boto is entitled to a separate rate in this review period has never been challenged or appealed by any party and should therefore be recognized as final and conclusive.  The Remand Redetermination points to no information on the record that now suddenly indicates Boto is subject to government control such that it is not entitled to a separate rate.  The Remand Redetermination likewise fails to explain how reopening the respondents' separate-rate status falls within the scope (or letter or spirit) of the Court's remand.

Moreover, Commerce's attempt to penalize respondents for being unable to provide detailed information from the 2016-2017 review period is both arbitrary and unreasonable – just like in *Changzhou Hawd*, where the CIT concluded "it is arbitrary and capricious for Commerce to now launch an individual investigation of Changzhou Hawd."  *Changzhou Hawd Flooring Co. v. United States*, 44 F. Supp. 3d 1391.  As described above, the original AD period of review (August 1, 2016 through July 31, 2017) ended more than six years ago.  Boto, for example, participated cooperatively in the underlying AD review at that time and did not appeal the final results.  It simply was not feasible for respondents to prepare the detailed sales and cost information requested by Commerce, given the very lengthy passage of time, the intervention of the Covid-19 pandemic, and the unexpected nature of Commerce's request.

The fault for the circumstances presented here (i.e., the extensive passage of time and the accompanying data and personnel difficulties now confronting the respondents) lies solely with Commerce.  The agency cannot thus penalize separate-rate respondents in an attempt to shift the

blame for this error. *See, e.g.*, *Linyi Chengen Imp. & Exp. Co. v. United States,* 609 F. Supp. 3d 1392, 1404 (Ct. Int'l Trade 2022) ("Commerce is not permitted to create a scarcity of information, to use that scarcity as justification for its determination, and to claim that a constraint on resources prevents further examination, while ignoring potentially contrary evidence on the record."). There is no question that the decision to locate and select a substitute mandatory respondent could have, and should have, been made during the original administrative review immediately after the initial mandatory respondent, Haohua, notified Commerce that it would not participate in the review. *See, e.g., Case Brief of Shandong Wanda Boto Tyre Co. Ltd. and ITG Voma Corporation*, Case No. A-570-016 (2016-2017 Administrative Review) (Nov. 8, 2018) at 12, P.R. 263. Back then, the data were still fresh, there was ample time to prepare and review the data, Covid-19 had not occurred, and Commerce could reasonably have expected participating respondents to submit questionnaire responses. Commerce not only unlawfully refused to take this necessary action, as the Federal Circuit explained in *YC Rubber*, but the agency then further exacerbated the situation by opposing plaintiffs during the CIT and Federal Circuit litigation that followed, refusing to accept its statutory obligation until the Federal Circuit so ordered. Accordingly, it was Commerce's actions that massively delayed the final resolution of this matter, making it no longer feasible or reasonable for Commerce to review an additional respondent. *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1379 (Fed. Cir. 2013) (citing *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 35 C.I.T. 948, 955 n.4, 783 F. Supp. 2d 1343, 1351 n.4 (2011) (similarly faulting Commerce for its own actions, which "put itself in a precarious situation when it selected only two mandatory respondents.").

Commerce's attempt to strip respondents of separate-rate status also does not comport with CIT precedent, which makes clear that the agency may not deny separate-rate status based on failure to provide information unrelated to the question of government control. In *Hubbell Power*

*Sys., Inc. v. United States*, the CIT explained that "a company's failure to provide information unrelated to establishing entitlement to a separate rate does not necessarily undermine submissions demonstrating an absence of government control." 365 F. Supp. 3d 1302, 1309 (Ct. Int'l Trade 2019). There, the CIT observed that "the {respondent's} production data deficiencies do not relate to the threshold determination of government control, but rather impact Commerce's ability to set an accurate dumping rate." *Id.* Likewise, here, Commerce points to no new information to suspect the separate-rate respondents are subject to government control. Indeed, the Remand Redetermination suggests that the agency may entirely disregard this CIT precedent simply because Commerce's Initiation Notice stated: "{f}or exporters and producers who submit a separate-rate status application or certification and subsequently are selected as mandatory respondents, these exporters and producers will no longer be eligible for separate rate status unless they respond to all parts of the questionnaire as mandatory respondents." Remand Redetermination at 30. Commerce does not explain, however, why language from an Initiation Notice obviates the need to respect judicial direction from the CIT. Commerce also fails to identify information detracting from the evidence that Boto timely provided in the review, including a business license and export and other certifications, demonstrating its continued qualification for a separate rate. Letter from Hogan Lovells US LLP to the Honorable Wilbur L. Ross, *Second Administrative Review of the Antidumping Order on Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Separate Rate Certification*, Case No. A-570-016 (2016-2017 Administrative Review) (Nov. 15, 2017), P.R. 93.

In sum, on remand, this Court should direct the agency not to strip the respondents' separate-rate status in this proceeding. Commerce's punitive measure is unreasonable given the passage of time and is also outside the scope and spirit of this Court's remand—Commerce's

decision also fails to comport with CIT precedent because it removes separate-rate status on the basis of information unrelated to government control.

### III. COMMERCE SHOULD CORRECT ITS EXCLUSION OF SURROGATE VALUE IMPORT DATA FROM COUNTRIES ALLEGED TO RECEIVE GENERALLY AVAILABLE SUBSIDIES ABSENT EVIDENCE THAT THESE SUBSIDIES WERE ACTUALLY AVAILABLE DURING THE PERIOD OF REVIEW

As ITG Voma has previously explained to the CIT, Commerce unlawfully and without substantial evidence disregarded Thai imports of goods from India, Indonesia, and South Korea in calculating the import-based surrogate values used to value the factors of production of Junhong based on a presumption of the existence of generally available subsidies in those countries. Memorandum from Gary Taverman to Jeffrey I. Kessler, *Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Issues and Decision Memorandum for the Final Results of the 2016-2017 Antidumping Duty Administrative Review*, Case No. A-570-016 (2016-2017 Administrative Review) (Apr. 19, 2019) at 16–18, P.R. 276. The Federal Circuit did not address this issue on appeal, instead remanding to Commerce on separate grounds as explained above. *YC Rubber*, 2022 WL 3711377, at *5. Commerce has sidestepped this issue (again) entirely in the Remand Redetermination. Remand Redetermination at 35-36.

The crux of this issue is that, as ITG Voma demonstrated in the underlying administrative review, Commerce merely offered a simple citation to previous determinations in the selection of its surrogate values and provided no explanation of what support, if any, within those determinations the agency was relying on, or why Commerce was crediting that information as valid or applicable. Commerce's failure to offer any explanation is particularly striking given the staleness of its cited determinations and the governing statute's demonstrated preference for the use of contemporaneous information in its administration. Moreover, that statute, 19 U.S.C. § 1677b(c)(5), allows Commerce to "disregard price or cost values without further

investigation if {it} has determined that broadly available export subsidies existed . . . ," but this does not excuse the agency from supporting its determinations with substantial evidence, which must be "more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established." *N.L.R.B. v. Columbian Enameling & Stamping Co*., 306 U.S. 292, 300 (1939).

In its calculation of an AD margin for Junhong, Commerce failed to identify reasonably contemporaneous, country-specific evidence of the existence of generally available export subsidies in India, Indonesia, or Korea. Specifically, Commerce failed to explain:

(1)    the specific programs the agency was referencing in these countries;

(2)    the basis for its conclusion that these programs were "generally available export subsidies";

(3)    how these asserted "generally available export subsidies" fit the specific definition set forth in Section 1677b(c)(5); and

(4)    whether these subsidies even existed during the relevant POR.

Establishing none of these facts requires Commerce to conduct a formal "investigation" of the alleged subsidies. Commerce did not do this. [5]

---

[5]    In fact, the only support ever referenced by Commerce is in a footnote in its Preliminary Decision Memorandum, citing to a single prior countervailing duty determination made with respect to each of India, Indonesia, and Korea. *See* Memorandum from James P. Maeder to Gary Taverman, *Decision Memorandum for the Preliminary Results of the Antidumping Duty Administrative Review of Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China, Preliminary Determination of No Shipments; and Rescission, in part; 2016-2017*, (2016-2017 Administrative Review) (Sep. 4, 2018) at 20 n.71, P.R. 224. In addition to Commerce failing to identify and/or explain what information in these determinations allegedly supported Commerce's presumptions, these determinations are inapposite. Commerce relied on cases involving Thailand, Indonesia, Korea, and India that were 17, 13, 10, and 8-years old, respectively. *Id*. The India and Indonesia cases cited by Commerce were determinations made in the context of expedited "sunset" reviews in which no respondent parties actually participated, and where the data examined by Commerce was from the original investigations conducted more than five years earlier, meaning that the examined data were between 14 and 22 years old.

In its calculation of Junhong's AD margin, Commerce's citation to previous determinations offered no explanation of the programs on which the agency was relying or whether those programs could even feasibly continue to be in place now. Commerce's failure to grapple with the importance of contemporaneous information in the administration of the trade laws is unlawful and unsupported by the evidence.

## IV.     CONCLUSION

For the foregoing reasons, and those submitted in the comments of YC Rubber Co. (North America) LL, Sutong Tire Resources Inc., and Mayrun Tyre (Hong Kong) Limited, ITG Voma respectfully request that this Court remand Commerce's Remand Redetermination for further correction by the agency in accordance with *YC Rubber* and *Changzhou Hawd*.

Respectfully submitted,
/s/ Jonathan T. Stoel
Jonathan T. Stoel
Craig A. Lewis
Nicholas R. Sparks

HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109

*Counsel to ITG Voma Corporation*

Dated: February 2, 2024

**CERTIFICATE OF COMPLIANCE**

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Jonathan T. Stoel, hereby certify that this brief complies with the word limitations set forth in Paragraph 2(B) of the Standard Chamber Procedures. Excluding the table of contents, table of authorities, and signature block, the word count for this brief is 6,056 words. This brief thus complies with the Standard Chambers Procedures, which permits responses to the agency's remand redetermination of 10,000 words or fewer.

Respectfully submitted,

/s/ Jonathan T. Stoel
Jonathan T. Stoel

Hogan Lovells US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109

*Counsel to ITG Voma Corporation*

Dated: February 2, 2024