**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| YC RUBBER CO. (NORTH AMERICA) LLC, SUTONG TIRE RESOURCES INC., MAYRUN TYRE (HONG KONG) LIMITED, and ITG VOMA CORPORATION, | ) ) ) ) ) |
| Plaintiffs and Consolidated Plaintiffs, | ) ) |
| and | ) ) |
| KENDA RUBBER (CHINA) CO., LTD., | ) ) |
| Plaintiff-Intervenor, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant. | ) ) ) |

Consol. Court No. 19-00069

**<u>DEFENDANT'S RESPONSE TO COMMENTS ON REMAND RESULTS</u>**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

OF COUNSEL:
AYAT MUJAIS
Senior Attorney
Office of the Chief Counsel
  for Trade Enforcement and Compliance
U.S. Department of Commerce

ASHLEY AKERS
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, DC 20044

April 2, 2024

Attorneys for Defendant

## TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................i

TABLE OF AUTHORITIES .....................................................................................ii

INTRODUCTION ................................................................................................... 2

ARGUMENT .......................................................................................................... 2

    I.     Background ............................................................................................. 2

    II.    Standard of Review................................................................................ 6

    III.   The Court Should Sustain Commerce's Redetermination .................... 6

        A.  Commerce's Calculation Of A Separate Rate Using Two Mandatory Respondents Satisfied The Federal Circuit's Opinion And This Court's Remand Order ................................................................................. 6

        B.  Consolidated Plaintiffs' Arguments That Commerce Should Not Have Selected A Second Mandatory Respondent Are Meritless ............................. 8

            i.    Commerce Is Not Required To Use One Of Consolidated Plaintiffs' Methods To Calculate A Separate Rate ................................................. 8

            ii.   Commerce Selection Of A Second Mandatory Was Lawful And Reasonable ................................................................................. 11

            iii.  Commerce's Selection Of A Second Mandatory Respondent Was Not Arbitrary And Capricious .................................................. 14

        C.  Commerce's Re-Evaluation Of Companies' Separate Rate Status Adheres To The Remand Order And In Accordance With Law ........................................ 15

        D.  Commerce Was Not Required On Remand To Make Determinations On Issues Not Within The Scope Of The Federal Circuit's Opinion .................. 23

        E.  Commerce's Separate Rate Determination Was Not An Application Of Adverse Facts Available .................................................................. 25

        F.  Commerce's Respondent Selection Methodology Was In Accordance With Law ......................................................................................... 26

CONCLUSION.......................................................................................................... 27

**TABLE OF AUTHORITIES**

**CASES**

*ABB, Inc. v. United States,*
   920 F.3d 811 (Fed. Cir. 2019)................................................................ 19

*Ad Hoc Shrimp Trade Action Comm. v. United States,*
   515 F.3d 1372 (Fed. Cir 2008)......................................................... 10, 17

*American Mfrs. Of Multilayered Wood Flooring v. United States,*
   CIT Consol. Case No. 21-00595 (Ct. Int'l Trade) ................................. 22

*BMW of N. Am. LLC v. United States,*
   926 F.3d 1291 (Fed. Cir. 2019)........................................................ 25, 26

*Carpenter Tech. Corp. v. United States,*
   519 F. Supp. 3d 1340 (Ct. Int'l Trade 2021) ........................................ 19

*Changzhou Hawd Flooring Co. v. United States,*
   44 F. Supp. 3d 1376 (Ct. Int'l Trade 2015) ..................................... 11, 12

*Changzhou Wujin Fine Chemical Factory Co. v. United States,*
   701 F.3d 1367 (Fed. Cir. 2012)............................................................. 19

*Consol. Edison Co. v. NLRB,*
   305 U.S. 229 (1938)................................................................................. 6

*Consolo v. Fed. Mar. Comm'n,*
   383 U.S. 607 (1966)................................................................................. 6

*Hubbell Power Sys. v. United States,*
   365 F. Supp. 3d 1302 (Ct. Int'l Trade 2019) ............................. 20, 21, 22

*I.N.S. v. Elias-Zacarias,*
   502 U.S. 478 (1992)................................................................................. 6

*Inserts v. Geren,*
   530 F. Supp. 2d 24 (D.D.C. 2007) ........................................................ 24

*Jiangsu Jiasheng Photovoltaic Tech Co., Ltd. v. United States,*
   28 F. Supp. 3d 1317 (Ct. Int'l Trade 2014) .......................................... 17

*Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States,*
   Case No. 20-03885 (Ct. Int'l Trade)...................................................... 14

*MacLean-Fogg Co. v. United States,*
    100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ............................................. 6

*Messenger v. Anderson,*
    225 U.S. 436 (1912) ..................................................................................... 17

*NTN Bearing Corp. v. United States,*
    132 F. Supp. 3d 1102 (Ct. Int'l Trade 2001) ............................................. 19

*Nexteel Co., Ltd. v. United States,*
    28 F.4th 1226 (Fed. Cir. 2022) .............................................................. 10, 17

*Nucor Tubular Prods. Inc. v. United States,*
    648 F. Supp. 3d 1368 (Ct. Int'l Trade 2023) ............................................. 10

*Shandong Rongxin Import & Export, Ltd. v. United States,*
    203 F. Supp. 3d 1327 (Ct. Int'l Trade 2017) ............................................. 19

*Siemens Gamesa Renewable Energy v. United States,*
    621 F. Supp. 3d 1337 (Ct. Int'l Trade 2023) ............................................... 9

*YC Rubber Co. (N. Am.) LLC v. United States,*
    487 F. Supp. 3d 1367 (Ct. Int'l Trade 2020) (*YC Rubber I*) ............................ passim

*YC Rubber (North America) LLC v. United States,*
    Nos. 2021-1489, 2021-1698, 2021-1699, 2021-1700, 2022 WL 3711377 (Fed. Cir. Aug. 29,
    2022) (*YC Rubber II*) ................................................................................ passim

## STATUTES AND REGULATIONS

19 U.S.C. § 1677f-1(c)(2) ..................................................................................... 3, 26

19 U.S.C. § 1516a(b)(1)(B)(i) ................................................................................. 6

19 C.F.R. §§ 351.213(d)(1), 302(d) ....................................................................... 25

# INTRODUCTION

Defendant, the United States, respectfully submits this response to the comments opposing the Department of Commerce's November 3, 2023 remand results filed by consolidated plaintiffs Mayrun Tyre (Hong Kong) Limited (Mayrun), ECF No. 88; YC Rubber Co. (North America) LLC (YC Rubber), ECF Nos. 89, 90; and ITG Voma Corporation (ITG Voma), ECF No. 91.  Consolidated plaintiffs' comments and our response thereto concern Commerce's Remand Redetermination, Final Results of Redetermination Pursuant to Court Remand, Nov. 3, 2023 (Remand Results) (ECF No. 52) (P.R. 112), issued by Commerce pursuant to this Court's remand order, *YC Rubber Co. (North America) LLC v. United States*, Court No. 19-00069 (Ct. Int'l Trade 2023) (Remand Order) (ECF No. 72). The remand order instructed Commerce to issue a redetermination consistent with the Court of Appeals for the Federal Circuit's decision in *YC Rubber (North America) LLC v. United States*, Nos. 2021-1489, 2021-1698, 2021-1699, 2021-1700, 2022 WL 3711377 (Fed. Cir. Aug. 29, 2022) (*YC Rubber II*).

As explained below, this Court should sustain the remand results and enter final judgment for the United States because Commerce has fully complied with the Court's remand order and the remand results are supported by substantial evidence and otherwise in accordance with law.

# ARGUMENT

## I.  Background

Commerce published the final results on April 26, 2019.  *See Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China*, 84 Fed. Reg. 17,781 (Dep't of Commerce Apr. 26, 2019) (final admin. review).  In the final results, Commerce calculated a 64.57 percent rate for the sole mandatory respondent, Junhong, and determined that it was not required to base the rate on the examination of more than one exporter or producer based on the

circumstances of the review. Thus, Commerce applied the 64.57 percent rate to the separate rate respondents.[1]

This Court sustained Commerce's final results in full. *See YC Rubber Co. (N. Am.) LLC v. United States*, 487 F. Supp. 3d 1367 (Ct. Int'l Trade 2020) (*YC Rubber I*).

Plaintiffs appealed, arguing, in part, that 19 U.S.C. § 1677f-1(c) requires Commerce to individually examine more than one company when it calculates an all-others rate. *YC Rubber II*, 2022 WL 3711377, at *2. In response, Commerce argued that the plain language of the statute does not require Commerce to calculate a separate rate using multiple respondents' rates, *YC Rubber II*, ECF No. 56 at 30 (United States' Response Brief), and, further, in this case, Commerce attempted to include two mandatory respondents, but one dropped out and "no other party had requested that Commerce select an additional respondent," *id.* at 14. Thus, Commerce "determined that, given its limited resources, workload, and circumstances of the review, it was reasonable to calculate the margin using the single remaining mandatory respondent." *Id.*

The Federal Circuit remanded the final results, holding that Commerce's interpretation of the statute as not requiring review of more than one respondent in this case was contrary to the statute's unambiguous language. *YC Rubber II*, 2022 WL 3711377, at *2. When determining the weighted-average dumping margin under 19 U.S.C. § 1677f-1(c)(2), the statute mandates Commerce "determine the weighted average" for a "reasonable number" of exporters and producers. The Federal Circuit held that "a 'reasonable number' is generally more than one." *Id.* at *4. And, in this case, the Federal Circuit held that Commerce had failed to demonstrate that it was reasonable to calculate the all-others rate using only a single rate. *Id.* at *3, *4.

---

[1] Plaintiffs participating in this remand were all eligible for a separate rate during the underlying administrative proceeding.

Thus, on remand, Commerce sought to select an additional mandatory respondent to review.   Commerce determined that entries from six exporters who were party to the litigation remained suspended in this review, and thus any were eligible to be selected as a second mandatory respondent:  (1) Kenda Rubber (China) Co., Ltd. (Kenda); (2) Mayrun; (3) Shandong Hengyu Science & Technology Co., Ltd. (Hengyu); (4) Winrun Tyre Co., Ltd. (Winrun); (5) Shandong Wanda Boto Tyre Co., Ltd (Wanda Boto); and (6) Shandong Linglong Tyre Co., Ltd. (Linglong).

On February 8, 2023, Commerce selected Wanda Boto as an additional mandatory respondent for purposes of these remand results and issued it the standard questionnaire.  *See* Memorandum, "Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China" (Feb. 8, 2023) (P.R. 2).  On February 16, 2023, Wanda Boto notified Commerce that it was unable to respond to the questionnaire and thus could not be selected as an additional mandatory respondent.  *See "*Passenger Vehicle and Light Truck Tires: Response to the Department's Request to Notify" (Feb. 16, 2023) (P.R. 9) (Wanda Boto Refusal).

On February 17, 2023, Commerce selected Hengyu as an additional mandatory respondent for purposes of this remand; however, on February 23, 2023, Hengyu notified Commerce that it would not participate in the ongoing remand.  *See "*Passenger Vehicle and Light Truck Tires: Response to the Department's Request to Notify" (Feb. 24, 2023) (P.R. 16) (Hengyu Refusal).

On February 24, 2023, Commerce selected Mayrun as an additional mandatory respondent in this remand; but on March 3, 2023, Mayrun notified Commerce that it would not participate as a mandatory respondent.  *See* "Maryun Tire (H.K.) Ltd: Request to Notification of Participation and to Initial Questionnaire" (March 3, 2023) (P.R. 23) (Mayrun Refusal).

On March 3, 2023, Commerce selected Winrun as an additional mandatory respondent in this remand; yet, on March 10, 2023, Winrun notified Commerce that it would not participate as a mandatory respondent.  *See* "Winrun Response to Department Letter of March 3, 2023 Passenger Vehicle and Light Truck Tires from China" (March 10, 2023) (P.R. 29) (Winrun Refusal).

Finally, on March 10, 2023, Commerce selected Kenda as an additional mandatory respondent in this remand and issued it an initial questionnaire.  *See* Remand Results at 4.  On April 17, 2023, Kenda submitted its responses to section A of Commerce's initial questionnaire and the double remedies questionnaire.  *Id.* (citing P.R. 49, 50).  Between May 2, 2023, and June 27, 2023, Kenda submitted its responses to Commerce's remaining questionnaires and provided surrogate value information data.  *Id.*

On July 25, 2023, Commerce issued draft remand results addressing the issue from the final results described above.  *See* Draft Remand Results (July 25, 2023) (P.R. 103).  On August 17, 2023, YC Rubber, Wanda Boto, ITG Voma, and Mayrun submitted comments.  *See* YC Rubber and Sutong Comments on Draft Remand (Aug. 17, 2023) (P.R. 109); Boto and ITG Voma Comments on Draft Remand (Aug. 17, 2023) (P.R. 110); Mayrun Comments on Draft Remand (Aug. 17, 2023) (P.R. 111).

On November 3, 2023, Commerce filed its final remand results.  Commerce determined that the four exporters who did not respond to the questionnaire and thus did not participate in the remand segment failed to establish their entitlement to a separate rate.  *Id.*  Thus, Commerce applied the China-wide rate of 87.99 percent to each of these four exporters:  Winrun, Maryun, Hengyu, and Wanda Boto.  For Kenda, who did participate in the remand segment, Commerce calculated a weighted average dumping margin of 18.15 percent, and used Kenda's and

Junhong's rates to recalculate the separate rate of 41.36 percent, which was applied to Linglong. *Id.*

## II.    <u>Standard of Review</u>

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Under this standard, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted). Instead, when, as here, Congress has entrusted an agency to administer a statute that demands inherently fact-intensive inquiries, Commerce's conclusions may be set aside only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion. *See I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).

## III.    <u>The Court Should Sustain Commerce's Redetermination</u>

This Court should sustain Commerce's remand results because Commerce adhered to the remand order, and the remand results are supported by substantial evidence and otherwise in accordance with law.

### A.    **Commerce's Calculation Of A Separate Rate Using Two Mandatory Respondents Satisfied The Federal Circuit's Opinion And This Court's Remand Order**

Commerce's remand results comply with this Court's remand order, which instructed Commerce to "issue a determination consistent with *YC Rubber* {*II*}." *See* Remand Order at 1.

Prior to the appeal in this case, Commerce had calculated the separate rate using a single mandatory respondent. Commerce explained that it had done so because "no other party had requested that Commerce select an additional respondent" after the second mandatory respondent dropped out, and, because of "its limited resources, workload, and circumstances of the review." *YC Rubber II*, ECF No. 56 at 14 (United States' Response Brief). Based on this rationale, Commerce determined that "it was reasonable to calculate the margin using the single remaining mandatory respondent." *Id.*

The Federal Circuit disagreed. The Federal Circuit held that the statute generally requires Commerce to calculate the all-others rate using "more than one" exporter or producer. *YC Rubber II*, 2022 WL 3711377, at *3, *4. And, further, Commerce did not demonstrate that it was "reasonable to 'average' a single rate" in this case. *Id.* ("Commerce erred in relying on a single entity for calculation of a dumping margin for all respondents."). Thus, the Federal Circuit's opinion squarely foreclosed Commerce from "continuing to individually examine only one respondent" on those same stated bases. Remand Results at 24.

Following the Federal Circuit's opinion, Commerce determined that "a reasonable method for addressing the Federal Circuit's concerns in this matter," Remand Results at 24-25, included "select{ing}, review{ing}, and calculat{ing} a weighted-average" rate for a second mandatory respondent, *id.* at 25. Thus, Commerce re-initiated the mandatory respondent selection process. After finding a second mandatory respondent, Commerce calculated that mandatory respondent's rate and averaged that rate with Junhong's rate to calculate an average rate for the companies eligible for a separate rate. Remand Results at 25.

Commerce's selection of a second mandatory respondent and subsequent calculation of a rate using the average of two mandatory respondent's rates comply with this Court's Remand

Order.  Commerce explained the basis for selecting a second mandatory respondent, the methodology of selection, and, ultimately, the calculation of the new rate.  Remand Results at 2-5, 24-29.  Therefore, Commerce's remand results are supported by substantial evidence, and this Court should sustain the remand results.

###### B.    Consolidated Plaintiffs' Arguments That Commerce Should Not Have Selected A Second Mandatory Respondent Are Meritless

Even though Commerce calculated the separate rate using more than one mandatory respondent—in-line with the Federal Circuit's mandate and consistent with the arguments that consolidated plaintiffs have made throughout this litigation—consolidated plaintiffs have now changed course, and they argue that Commerce is *not* required to select an additional respondent and, in fact, doing so was unreasonable and unlawful.  These arguments are specious, and the Court should reject them.

###### i.    Commerce Is Not Required To Use One Of Consolidated Plaintiffs' Methods To Calculate A Separate Rate

First, YC Rubber argues that Commerce conducted this remand under the "misguided premise" that it was compelled by the Federal Circuit "to review an additional mandatory respondent."  YC Rubber Cmts. at 7.  YC Rubber also contends that because Commerce "*could have*" used a methodology for calculating the separate rate that did not involve selecting a second mandatory respondent, Commerce "lacked any basis to find that the {Federal Circuit} compelled the Department to select a second respondent."  *Id.* at 8 (arguing that Commerce could have "assign{ed} a carry-forward ADD rate" from a prior proceeding); ITG Voma Cmts. at 4, 12-13 (same).  This argument is misdirected.

When reviewing Commerce's remand results, the Court inquires whether the remand results are "in accordance with the remand order," and are "supported by substantial evidence

and are otherwise in accordance with law." *See MacLean-Fogg*, 100 F. Supp. 3d at 1355. Thus, whether the Federal Circuit "mandated" the selection of a second mandatory respondent is irrelevant to this Court's review of whether the remand results are in accordance with the remand order and supported by substantial evidence. The Federal Circuit's opinion certainly permits the selection of a second mandatory respondent. Moreover, even if Commerce *could have* calculated the separate rate using alternative means, such as those preferred by consolidated plaintiff, it does not follow that Commerce's chosen method is inconsistent with the Court's remand order or otherwise not supported by substantial evidence. YC Rubber does not demonstrate that Commerce's chosen method – albeit different from YC Rubber's – ran afoul of the remand order or is otherwise unsupported by substantial evidence.

Next, ITG Voma argues that, unless the Federal Circuit had explicitly stated[2] that Commerce must select a replacement respondent, doing so was unreasonable. ITG Voma Cmts. at 4-5 (arguing that the Federal Circuit or this Court did not specifically direct Commerce to individually examine a new respondent) (citing *Siemens Gamesa Renewable Energy v. United States*, 621 F. Supp. 3d 1337, 1349 (Ct. Int'l Trade 2023)). ITG Voma suggests that Commerce could have used a different method for calculating the rate. *Id.* But this argument is wide of the mark. Neither the Federal Circuit's opinion nor this Court's remand order required or directed Commerce to calculate the all-others rate using any particular method, including any of the methods proposed by consolidated plaintiffs. Simply because the Court did not direct Commerce how to calculate an all-others rate does not demonstrate that Commerce ran afoul of the remand

---

[2] ITG Voma's argument is internally inconsistent. Although ITG Voma argues, on one hand, that Commerce's selection of a new mandatory respondent was unlawful because the court did not specifically direct it, ITG Voma's proposed methodology for calculating a rate – the "pull-forward" method – is similarly not identified by the Federal Circuit or this Court. *See* ITG Voma Cmts. at 4.

order when it did calculate a rate.  To the contrary, a court need not provide explicit directives to

Commerce to make their instructions clear.  *See Nucor Tubular Prods. Inc. v. United States*, 648

F. Supp. 3d 1368, 1372 (Ct. Int'l Trade 2023) (holding that, although the Court did not expressly

direct Commerce to recalculate respondent's margin, the recalculation of the margin was

consistent with the Court's opinion and in accordance with law).  Here, the instructions were

clear that Commerce could not continue to rely on a single mandatory respondent to calculate the

all-others rate.  *YC Rubber II*,  2022 WL 3711377, at *3, *4 ("Commerce erred in relying on a

single entity for calculation of a dumping margin for all respondents.").  Commerce maintained

discretion to determine how to address that on remand.

Moreover, ITG Voma's argument that Commerce is limited to specific directives from

the Court is inconsistent with the general principle that courts are not permitted to require a

certain outcome on remand.  *See Nexteel Co., Ltd. v. United States*, 28 F.4th 1226, 1238 (Fed.

Cir. 2022) (holding the Court of International Trade exceeded its authority by directing

Commerce to reach a particular outcome).  At most, the Court can remand for further

consideration consistent with its decision.  *See Ad Hoc Shrimp Trade Action Comm. v. United

States*, 515 F.3d 1372, 1338 (Fed. Cir 2008).  Here, this Court did just that. After holding that,

generally, Commerce must examine more than one mandatory respondent, *YC Rubber II*, 2022

WL 3711377, at *4, the Federal Circuit held that Commerce had "erred in relying on a single

entity for calculation of a dumping margin for all respondents," *id.*, and remanded the case.  This

Court remanded the case to Commerce and directed Commerce to issue a determination

consistent with *YC Rubber II*.  Consistent with Federal Circuit precedent, this Court did not

direct Commerce to any particular methodology or result.  Thus, ITG Voma's argument that

Commerce's calculation of the separate rate was unreasonable because it was not explicitly mandated by either the Federal Circuit or this Court should be rejected.

### ii. Commerce's Selection Of A Second Mandatory Was Lawful And Reasonable

Next, consolidated plaintiffs argue that Commerce's selection of a second mandatory respondent was unreasonable and unlawful based on the amount of time that had passed since the original administrative review. YC Rubber Cmts at 8-9 (arguing the selection of an additional respondent was contrary to "judicial precedent holding that Commerce cannot select a new respondent many years after the initial proceeding has concluded"); ITG Voma Cmts. at 5-10 (arguing the selection of an additional respondent was "unlawful after so many years after the conclusion of the review"); Mayrun Cmts. at 11 (arguing the selection of an additional respondent "at this late stage of an administrative proceeding is inherently arbitrary and capricious"). In support, the consolidated plaintiffs rely on *Changzhou Hawd Flooring Co. v. United States*, 44 F. Supp. 3d 1376 (Ct. Int'l Trade 2015). Consolidated plaintiffs argue that, in *Changzhou Hawd*, this Court determined that it was unreasonable for Commerce to reopen a record and individually investigate a respondent years after the fact. ITG Voma Cmts. at 5; YC Rubber Cmts. at 9. From there, consolidated plaintiffs argue that, here, too, the amount of time that had passed, which surpasses that in *Changzhou Hawd*, renders Commerce's determination inherently unreasonable.

The Court should reject this argument because it is based on a misconstruction of the Court's (non-binding) opinion in *Changzhou Hawd*, and because consolidated plaintiffs fail to demonstrate that Commerce's selection of a second mandatory respondent was unreasonable or unlawful.

In *Changzhou Hawd*, this court ordered Commerce to redetermine Changzhou Hawd's separate rate approximately three-and-half years after the underlying investigation was completed.  *See Changzhou Hawd*, 44 F. Supp. 3d at 1389.  In its first remand, Commerce initially attempted to conduct a full investigation of Changzhou Hawd based on the record created during the initial segment but reasoned that "with the very limited information currently on the record, {it} is unable to calculate a dumping rate based on Changzhou Hawd's own economic reality" without a full individual investigation.  *Id.*  Thus, Commerce determined on its second remand that it would conduct a full investigation of Changzhou Hawd.  *Id.* at 1382. Upon review of Commerce's second remand, the Court held Commerce's decision to conduct a full investigation to individually examine Changzhou Hawd at such a late date to be "arbitrary and capricious" because Commerce had "repeatedly declined to conduct an individual investigation of another Plaintiff in this investigation . . . citing lack of resources."  *Id.* at 1389. The Court noted that Commerce had made "emphatic claims of limited resources" regarding some respondents, but arbitrarily determined that individual examination of Changzhou Hawd was appropriate.  Explaining that "Commerce cannot have it both ways," the court held that, even though Commerce "retains the discretion to reasonably reopen the record," it was arbitrary and capricious to treat the respondents differently. *Id.* at 1390.

This opinion does not stand for the proposition that consolidated plaintiffs contend.  In *Changzhou Hawd*, the Court did not determine, as consolidated plaintiffs argue, that conducting a full investigation of another respondent was unlawful or arbitrary and capricious simply due to the time that had passed since the original investigation.  Rather, the holding was premised on Commerce's differing treatment of respondents.  And, tellingly, the consolidated plaintiffs cite no additional authority in support of this argument.

Moreover, it is curious that consolidated plaintiffs argue that Commerce is legally prohibited from reviewing a second mandatory respondent on remand when that is the precise outcome that these parties have long argued that the statute mandates. *See, e.g.*, *YC Rubber II*, ECF No. 30, YC Rubber, ITG Voma, Opening Br. at 36 ("A single company does not meet the definition of a 'reasonable number' and is flatly inconsistent with the language of the statute . . . ."). During this litigation, the consolidated plaintiffs have never argued that Commerce's failure to select a replacement respondent during the initial proceeding would prohibit Commerce's later efforts to correct said error; to the contrary, consolidated plaintiffs have argued at the Federal Circuit that several exporters had agreed to be reviewed and Commerce's failure to examine more than one respondent warrants remand. *Id.* at 49-50.

Consolidated plaintiffs next argue that, regarding Commerce's respondent selection process on remand, it was not reasonable for Commerce to expect respondents to participate in an administrative review conducted "more than five years" after the period of review. YC Rubber Cmts at 9; *see also* ITG Voma Cmts. at 9; Mayrun Cmts. at 8. Consolidated plaintiffs argue that the passage of time prevents these companies from complying with Commerce. This argument is also besides the point. Whether a company maintained documents or elected to participate as a mandatory respondent is not relevant to the Court's assessment of whether Commerce's selection of a second mandatory respondent was in accordance with law and supported by substantial evidence. And consolidated plaintiffs cite no authority that Commerce is precluded after a certain period of time from selecting an additional mandatory respondent. Indeed, the Federal Circuit noted no such statutory constraints, despite being fully aware of the passage of time between the administrative review and its opinion in *YC Rubber II*. *See YC*

*Rubber II*, 2022 WL 3711377 at *1-2 (noting that the second administrative review began in 2017, the preliminary results were issued in 2018, and the final results were issued in 2019).

### iii.    Commerce's Selection Of A Second Mandatory Respondent Was Not Arbitrary And Capricious

Next, YC Rubber and ITG Voma contend that Commerce's selection of a second mandatory respondent here was arbitrary and capricious because Commerce does not always select a mandatory respondent in every administrative review. *See* YC Rubber Cmts. at 10-11 *(citing Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States*, Case No. 20-03885 (Ct. Int'l Trade), Remand Redetermination (Mar. 31, 2023), ECF 119 (Second MLWF Remand Results)): ITG Voma Cmts. at 10-11 (same).

This argument misses the point. The Federal Circuit in *YC Rubber II* did not hold that Commerce is legally precluded from *ever* proceeding with one mandatory respondent, particularly when Commerce provides an adequate "reason why it would be reasonable to 'average' a single rate." *YC Rubber II*, 2022 WL 3711377 at *3.  It simply held that, *generally*, the "reasonable number" of exporters or producers would amount to more than one.  Under the facts of this particular case, the Federal Circuit held that Commerce erred by relying on a single entity for calculation of a dumping margin for all respondents. That holding *here* does not render Commerce's determination arbitrary or capricious when compared to a different case with unique circumstances and facts at play.

For example, YC Rubber and ITG Voma note that Commerce, during the recent remand proceedings of multilayered wood flooring from China, determined not to select an additional respondent, and thus argue that selecting an additional mandatory was not "mandated" here.  *See* Second MLWF Remand Results.  However, in that case, due to the unique circumstances of that segment of the multilayered wood flooring proceeding, Commerce found that it was reasonable

under *YC Rubber II* for Commerce to not select an additional mandatory respondent to replace Jiangsu Guyu which it had deselected due to time constraints and administrative burden. Instead, Commerce reviewed Baroque Timber as the only mandatory respondent, and assigned Baroque Timber's rate as the separate rate. This court has not issued its opinion on the remand in that case and, accordingly, the appeal period has not closed. Until a final and conclusive court opinion is issued, that case should have little, if any, bearing on the determination here. Indeed, whether Commerce may have reached a different conclusion – in a different case, involving different parties, circumstances, timelines, and internal constraints or other issues – is of little relevance here.

### C.    Commerce's Re-Evaluation Of Companies' Separate Rate Status Adheres To The Remand Order And In Accordance With Law

Commerce's determination to deny separate rates to the non-cooperative respondents Mayrun, Hengyu, Winrun, and Wanda Boto, and assign them the China-wide rate was within the scope of this Court's remand order and is otherwise in accordance with law.

As discussed above, this Court instructed Commerce to make a determination consistent with *YC Rubber II*. Remand Order at 1. In response to the Federal Circuit's rejection of Commerce's reliance on one mandatory respondent to calculate the all-others rate, Commerce re-initiated the respondent selection process in order to select a second mandatory respondent. Wanda Boto, Mayrun, Hengyu, and Winrun each refused to participate as a mandatory respondent. Therefore, consistent with its practice, Commerce was unable to confirm or verify the separate rate certifications submitted by these companies. Thus, by virtue of recalculating the separate rate consistent with *YC Rubber II*, Commerce determined that these companies each failed to rebut the presumption of government control and were ineligible for a separate rate; Commerce assigned the China-wide rate to each company.

Consistent with the Federal Circuit's opinion, Commerce ultimately selected a second mandatory respondent and used that company's rate to recalculate the separate rate.

Consolidated plaintiffs challenge Commerce's separate rate determination on several grounds. First, consolidated plaintiffs Mayrun, YC Rubber, and ITG Voma argue that the Federal Circuit "did not invite Commerce to reopen the question of Plaintiff's entitlement to separate status," and, therefore, Commerce improperly exceeded the scope of the remand. *See* Mayrun Cmts. at 7; YC Rubber Cmts. at 18; ITG Voma Cmts. at 14, 16.

Commerce's discretion on remand is not so limited. As explained above, the Court's remand order instructed Commerce to "issue a determination consistent with *YC Rubber {II}*." *See* Remand Order at 1. The Federal Circuit's opinion did not speak to Commerce's separate rate determinations and thus did not require or prohibit Commerce from re-reviewing those determinations. Moreover, the issue of separate rate status arose during Commerce's effort to recalculate an all-others rate—the issue at the heart of *YC Rubber II*. Because Commerce's re-evaluation of companies' separate rate statuses was the direct result of Commerce's compliance with the remand order, Commerce's re-evaluation of the separate rate statuses was inextricably intertwined with the remand and, thus, falls within the scope of the remand. *Carpenter Tech. Corp. v. United States*, 519 F. Supp. 3d 1340, 1347 (Ct. Int'l Trade 2021) (explaining that, when the court uses broad language in issuing a remand order, and the changes are *directly related* to the issue remanded by the Court, those changes are within the scope of remand).

Second, Mayrun argues that its separate rate status was a settled issue not implicated in the litigation and, thus, Commerce was not permitted to revisit it on remand. *See Maryun* Cmts. at 9-10. Mayrun specifically argues that "a lower court cannot re-adjudicate matters that have

already been decided; though it can rule on matters left open by the appellate court's mandate."
*Id.* (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)).

Mayrun is incorrect—the separate rate status became an issue implicated in litigation
during Commerce's calculation of the all-others rate. Moreover, if accepted, this argument
would impermissibly constrain Commerce from conducting its remand proceedings in
accordance with its normal practices, which are set forth in Commerce's Initiation Notices and
Commerce's policy bulletin. *See Nexteel*, 28 F.4th at 1238; *Ad Hoc Shrimp Trade*, 515 F.3d at
1338. *See* Remand Results at 30 (explaining Commerce's practice that, if a company refuses to
cooperate as a respondent by failing or refusing to answer the initial questionnaires during the
respondent selection process, Commerce treats that company as ineligible for separate rate
status).[3] Tellingly, Mayrun acknowledges that, on remand, Commerce had authority to "find a
second mandatory respondent," *id.*, but follows that with the illogical argument that Commerce
exceeded its authority in making determinations necessarily implicated by that course of
conduct.

---

[3] *See* Remand Results at 30 (citing *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 82 Fed. Reg. 48,051, 48,055 (October 16, 2017) ("For exporters and producers who submit a separate-rate status application or certification and subsequently are selected as mandatory respondents, these exporters and producers will no longer be eligible for separate rate status unless they respond to all parts of the questionnaire as mandatory respondents.") (Initiation Notice)); *see also Separate-Rate Practice & Application of Combination Rates in Antidumping Investigations Involving Non-Market Economy Countries*, Policy Bulletin No. 05.1 (Apr. 5, 2005); *see also Jiangsu Jiasheng Photovoltaic Tech Co., Ltd. v. United States*, 28 F. Supp. 3d 1317, 1329 (Ct. Int'l Trade 2014) ("Commerce has broad discretion to set the procedures it needs in order to adequately perform and enforce its regulatory role," which includes "requiring timely [questionnaire] responses as a precondition of separate-rate eligibility."). By unambiguously and consistently requiring respondents to properly and timely file responses to questionnaires as a pre-condition for separate-rate eligibility, Commerce attempts to prevent respondents from circumventing the mandatory respondent selection process and benefitting from the all-others separate rate without the risk or burden of individual investigation.

Even if Mayrun's separate rate status was once "settled" during the course of the initial administrative proceeding, a foreseeable consequence of an appeal to this Court includes that previously "settled" determinations by Commerce may be remanded for reconsideration. That is especially true in a case, like here, where consolidated plaintiffs – Mayrun included – appealed Commerce's administrative decision and argued strenuously at both the trial and appellate court that Commerce is required to select a second mandatory respondent when calculating an all-others rate.  The necessary implication of Mayrun prevailing is that Commerce must recalculate the separate rate, which could (and did) result in additional changes based upon that recalculation.

Moreover, as discussed above, Commerce was required to base its weighted-average calculations on a reasonable number of respondents, which is more than one in this case.  *See YC Rubber II*, 2022 WL 3711377 at *3-4.  To base its weighted-average calculations on more than one respondent, Commerce had to select a second mandatory respondent.  Commerce made clear at the outset of the segment of the proceeding that the refusal of a company to participate as a mandatory respondent results in their loss of separate rate eligibility.  This expectation of cooperation remains open by virtue of the remand results ordered by the Federal Circuit and this Court, per Commerce's normal practice. Mayrun's argument that Commerce should be constrained by prior determinations on remand – despite that the Court ordered remand for Commerce to reconsider an issue that necessarily implicates those determinations – is non-sensical.

Third, YC Rubber argues that Commerce exceeded the scope of remand by making separate rate determinations, because the remand order did not "compel{} Commerce to disregard the passage of time that rendered it unreasonable to expect exporters to be able to fully

18

participate." YC Rubber Cmts. at 18.  Commerce's authority on remand is not so limited as YC

Rubber suggests.  It is well-established that, "{u}nless specifically directed by the court,

Commerce has broad discretion to fully consider the issues remanded." *ABB, Inc. v. United*

*States*, 920 F.3d 811 (Fed. Cir. 2019).  Thus, absent specific limiting language, Commerce is

permitted, on remand, to reconsider aspects of the issues that led to the necessity of correction.

*Carpenter Tech. Corp. v. United States*, 519 F. Supp. 3d 1340, 1345 (Ct. Int'l Trade 2021).

Along that same vein, Commerce also retains discretion, absent specific direction to the contrary,

"to request and evaluate new data."  *Shandong Rongxin Import & Export, Ltd. v. United States*,

203 F. Supp. 3d 1327, 1338 (Ct. Int'l Trade 2017); *NTN Bearing Corp. v. United States*, 132 F.

Supp. 3d 1102, 1107-08 (Ct. Int'l Trade 2001).  In doing so, so long as changes are directly

related to the issue remanded by the Court, those changes fall within the scope of remand.

*Carpenter*, 519 F. Supp. 3d at 1347.

　　　While it is true that Commerce may exceed the scope of the remand instructions when

Commerce makes changes that go beyond any issue litigated in the case, *Zhaoqing Tifo New*

*Fibre Co. v. United States*, 256 F. Supp. 3d 1314, 1335-37 (Ct. Int'l Trade 2017), Commerce did

no such thing here.  Because the remand order aimed to remedy Commerce's failure to comply

with statutory requirements of selecting a second mandatory respondent, it would be anomalous

for the Court to adopt the overly restrictive position advanced by consolidated plaintiffs and

determine that it was improper for Commerce to reinitiate the mandatory selection process at

issue in the case. This is especially so given that the issue of obtaining a separate rate status is

inextricably intertwined with the specific, narrow issue of selecting a mandatory respondent.

*Changzhou Wujin Fine Chemical Factory Co. v. United States*, 701 F.3d 1367 (Fed. Cir. 2012)

(rejecting argument that Commerce exceeded the scope of authority on remand by recalculating

the U.S. price, where nothing in the remand order limited Commerce from recalculating the U.S. price, and where Commerce's re-examination of the adverse facts available rate used in calculating the appellant's separate rate "necessarily involved" reconsideration of the underlying variables, including U.S. price). Indeed, the two issues cannot be entirely discrete when Commerce's longstanding practice dictates that compliance with the issuance of mandatory respondent questionnaires is a pre-requisite for separate rate status.

Because the Court did not bar Commerce from seeking additional information from parties in order to select a second mandatory respondent, and the failure to select a second mandatory respondent was the basis of the consolidated plaintiffs' complaint concerning the underlying proceedings, the Court should reject YC Rubber's argument that Commerce exceeded the scope of the remand order.

Finally, consolidated plaintiffs argue that Commerce unreasonably expected and required selected companies to maintain their records beyond their jurisdictional requirements, and Commerce's application of an adverse inference to those companies who could not provide the requested data or participate as a mandatory was unreasonable and unlawful. Mayrun Cmts. at 8, 12-13; ITG Voma Cmts. at 9-10, 13-15; YC Rubber Cmts. at 17. Consolidated plaintiffs cite *Hubbell Power Sys. v. United States*, 365 F. Supp. 3d 1302 (Ct. Int'l Trade 2019), to support their argument that Commerce may not deny separate rates to respondents who submit valid separate rate certifications at the outset of the review, even if they subsequently are unable to participate as a mandatory respondent. YC Rubber Cmts. at 14 (citing 365 F. Supp. 3d at 1309 ("a company's failure to provide information unrelated to establishing entitlement to a separate rate does not necessarily undermine submissions demonstrating an absence of government control"); Mayrun Cmts. at 13; ITG Voma Cmts. at 15-16.

In *Hubbell Power*, the Court held that a respondent's production data deficiencies did not relate to the threshold determination of government control, but rather to Commerce's ability to establish an accurate dumping rate. *Id.* Consolidated plaintiffs argue that, here, the respondents' failure to participate in the mandatory selection process does not provide new information that the respondents are subject to government control. ITG Voma Cmts. at 16. ITG Voma argues that Commerce's citation to its Initiation Notice—which sets forth its practice of denying a separate rate to exporters or producers that do not participate—cannot "obviate" the holding in the non-binding case of *Hubbell*. ITG Voma Cmts. at 16; *see also* YC Rubber at 15.

This argument is unpersuasive. As an initial matter, *Hubbell Power* is not binding here. Second, the facts of *Hubbell Power* are materially different from those presented here. In *Hubbell Power*, Commerce denied a separate rate to a party who participated as a mandatory respondent based on that party's omission of information relevant to its separate rate status and production information. *See Hubbell Power*, 365 F. Supp. 3d at 1305. Because Hubbell had failed to provide information that Commerce deemed necessary to its separate rate determination, Commerce determined that the party's separate rate information was "unreliable and incomplete" and, thus, Commerce applied "total adverse facts available" and placed the party in the China-wide entity. *Id.* at 1304. Hubbell challenged that determination, arguing that Commerce improperly inflated the separate rate inquiry with the issue of whether the party supplied necessary data to set a rate. *Id.* This Court held that the party's failure to timely reveal certain information did not compel the application of total AFA, because such a result was unduly punitive or arbitrary given the extensive factual information that remained on the record. *Id.* at 1305. The Court explained that the party's omissions were not so several or central to the question that they would prevent Commerce from making a determination of whether that party

was under state control. *Id.* Therefore, the court remanded the separate rate inquiry to Commerce.

Here, Commerce relied on its longstanding practice when it declined to grant separate rate status to companies who *refused to participate* as a mandatory respondent or respond to any questionnaires after being selected. *See* Initiation of Antidumping and Countervailing Duty Administrative Reviews; Remand Results at 5-6. This situation is not analogous to the facts presented in *Hubbell Power*.

YC Rubber also relies on *American Manufacturers of MLWF* to support its argument that it was unlawful for Commerce to deny parties a separate rate for not participating as a mandatory respondent. YC Rubber Cmts. at 16 (citing *American Mfrs. Of Multilayered Wood Flooring v. United States*, CIT Consol. Case No. 21-00595 (Ct. Int'l Trade)). In the underlying review of *American Manufacturers of MLWF,* Commerce determined that Jinlong, who had submitted a separate rate certification, was not eligible for a separate rate because they did not respond to Commerce's questionnaire after being selected as a mandatory respondent due to the COVID-19 crisis. *American Mfrs. of MLWF* at *2-3. Based on that failure to respond, Commerce applied the China-wide rate to Jinlong. *Id.* The Court found unlawful such a denial of the separate rate because Commerce did not provide a "rational explanation" as to why it denied Jinlong a separate rate but did not deny other companies who submitted a separate rate certification but were not selected as a mandatory respondent. *Id.* at *4.

This non-binding case is unpersuasive. As an initial matter, this litigation is ongoing. Commerce accepted Jinlong's separate rate certification on remand under protest, and the appeal period for this case has not yet expired. Thus, until the appeals period has ended, and a final and

conclusive court opinion issued, the persuasiveness of the holding in the case, or Commerce's actions taken under protest, is inherently limited.

Regardless, in this case, Commerce provided a rational explanation as to why it denied Wanda Boto, Mayrun, Hengyu, and Winrun separate rate status, *i.e.*, under Commerce's respondent selection practice, companies who do not respond to Commerce's questionnaires after being selected as a mandatory are ineligible for a separate rate. *See* Remand Results at 30-31. Thus, consolidated plaintiffs' argument that their separate status was unrelated to Commerce's selection of an additional respondent is unpersuasive because companies' separate rate status was dependent on their obligation to participate if selected as a mandatory respondent.

### D. Commerce Was Not Required On Remand To Make Determinations On Issues Not Within The Scope Of The Federal Circuit's Opinion

The Federal Circuit's opinion in *YC Rubber II* did not address Commerce's exclusion of surrogate value import data from countries alleged to receive generally available subsidies, or a discussion of companies' withdrawal requests. This Court's remand order similarly made no mention of whether Commerce should reconsider issues not addressed in the Federal Circuit's mandate (*i.e.,* its exclusion of surrogate value import data, respondents' withdrawal request, or whether Junhong's rate was aberrational); rather, this Court's remand order limits Commerce to the confines of *YC Rubber II.*

Despite arguing that Commerce exceeded the scope of remand by considering issues directly related to those considered by the Federal Circuit on appeal, consolidated plaintiffs ITG Voma and YC Rubber argue that Commerce's remand results were not broad enough. Both parties complain that Commerce did not revisit issues previously decided which were not addressed by the Federal Circuit.

The Court should reject these arguments. Not only do the parties confusingly attempt to both limit Commerce's discretion on remand and simultaneously broaden it, but also these issues fall squarely outside the scope of the remand order, and there is nothing to suggest Commerce should have – let alone must have – reconsidered these issues.

For example, ITG Voma argues that Commerce was required to correct its determination to disregard Thai imports of goods from countries presumed to have generally available subsidies. *See* ITG Voma Cmts. at 17-19 (arguing that Commerce "sidestepped this issue"). ITG Voma is incorrect. Commerce cannot be said to have "sidestepped" an issue that it was not required to address on remand, or even an issue considered on appeal. ITG Voma appears to concede as much when it acknowledges that "the Federal Circuit did not address this issue on appeal, instead remanding to Commerce on separate grounds . . . ." *Id.*

Because Commerce was neither required nor directed to revisit its determination on the exclusion of surrogate value import data, ITG Voma fails to demonstrate that Commerce erred by not reconsidering this issue. *See Inserts v. Geren*, 530 F. Supp. 2d 24, 35-36 (D.D.C. 2007) (noting that an agency is not required to consider a plaintiff's additional arguments on remand when the scope of the Federal Circuit's mandate does not include those arguments).

Similarly, YC Rubber argues that Commerce should have granted respondents' "renewed" withdrawal requests on remand. *See* YC Rubber Cmts. at 22. But that issue was not subject to remand and the Federal Circuit did not address this issue. As such, Commerce's prior determinations stand. To be sure, Commerce stated in the remand results that it continues to find that it was inappropriate to accept untimely review withdrawal requests filed by Mayrun, Winrun, Linglong, and Hengyu. *See* Remand Results at 36. Neither the Federal Circuit's opinion nor the Court's remand order instructed Commerce to reconsider this issue and, as

24

previously explained, it is not part of Commerce's normal practice to consider late withdrawal requests. 19 C.F.R. §§ 351.213(d)(1), 302(d).

YC Rubber further argues that Commerce should have reconsidered its argument that Junhong's (the original mandatory respondent) calculated rate was aberrational. YC Rubber Cmts. at 19-22. But again, this issue was not remanded to Commerce and the Federal Circuit did not identify any issue with Junhong's rate. Thus, Commerce did not error by failing to address this distinct substantive argument on remand.

### E.    Commerce's Separate Rate Determination Was Not An Application Of Adverse Facts Available

YC Rubber next argues that after Commerce determined that Wanda Boto, Mayrun, Hengyu, and Winrun were not entitled to a separate rate, Commerce applied "total" adverse facts available. YC Rubber Cmts. at 16. From there, YC Rubber argues that such application was unlawful. *See YC Rubber* Cmts. at 17. YC Rubber relies on *BMW of N. Am. LLC v. United States*, 926 F.3d 1291 (Fed. Cir. 2019), to argue that Commerce did not "consider how the procedural irregularities surrounding the administrative review process affected its view of {selected exporters'} level of culpability." YC Rubber Cmts. at 17 (quoting *BMW*, 926 F.3d at 1302).

This argument is not persuasive, because Commerce did not apply adverse facts available here. As explained in the remand results, all four complaining parties had an opportunity to be selected as a mandatory respondent but refused. *See* Remand Results at 2-4. 30-31. Thus, Commerce adhered to its practice and denied those parties separate rates. *See* Remand Results at 30-31; *Initiation of Antidumping and Countervailing Duty Administrative Reviews*; Commerce Policy Bulletin 05.1. Although YC Rubber characterizes Commerce's rejection of separate rate eligibility as "adverse," there was no application of adverse facts available here.

25

Thus, YC Rubber's reliance on *BMW*—a case involving Commerce's application of adverse facts available—is similarly unpersuasive because the facts in that case are materially different than those presented here.  *See BMW*, 926 F.3d at 1300-1302.

### F. Commerce's Respondent Selection Methodology Was In Accordance With Law

Finally, YC Rubber argues that Commerce's respondent selection process was flawed because Commerce did not explain why it was (1) limiting the selection of respondents to those only with suspended entries and basing its selection on the volume of passenger vehicle light truck tires exported only by respondents with suspended entries; and (2) gave each selected party only one week to respond to its selection as a mandatory.  YC Rubber Cmts. at 11-12; ITG Voma Cmts. at 7-8.

First, Commerce limited the potential mandatory respondents to Kenda, Mayrun, Hengyu, Windru, Wanda Boto, or Linglong because those companies had entries that were properly suspended pursuant to injunctions filed in this litigation.  *See* Remand Results at 2-3. Consistent with its standard practice of respondent selection, Commerce initially selected the company with the largest volume of imports as a potential mandatory respondent and went down the list from there as needed.  *See* 19 U.S.C. § 1677f-1(c)(2).  This methodology is both reasonable and standard, and YC Rubber fails to demonstrate otherwise.  Commerce is not required to initially select the parties' preferred candidate as the "first" mandatory respondent, and YC Rubber's after-the-fact contention that, had Commerce selected Kenda as the first mandatory respondent, Commerce could have avoided the issue of Mayrun, Hengyu, Winrun, and Wanda Boto's separate rate eligibility entirely, *id.* at 12, does not demonstrate that Commerce erred by following its practice.

Second, ITG Voma and YC Rubber argue that Commerce unreasonably provided only one week for companies to respond to mandatory respondent questionnaires. YC Rubber Cmts. at 11-12, ITG Voma Cmts. at 7-8. This argument is misleading. Commerce did not require parties to respond to the entire questionnaires in only one week—parties simply were required, within one week, to indicate *whether* they would participate in general as a mandatory respondent. *See* Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China (Feb. 8, 2023). This is no clearer than in the record detailing Kenda's participation. After Commerce had selected Kenda as a mandatory respondent on March 10, 2023, Commerce provided Kenda with over a month – until April 17, 2023 – to respond to the questionnaire, as is typical during an administrative review. *See* Remand Results at 4-5. Thus, the Court should deny outright consolidated plaintiffs' arguments that Commerce unlawfully limited parties' time to respond to questionnaires.

## **CONCLUSION**

For these reasons, we respectfully request that the Court sustain Commerce's remand results and enter final judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. MCCARTHY
Director

OF COUNSEL:                                s/ Ashley Akers
Ayat Mujais                                ASHLEY AKERS
Senior Attorney                            Trial Attorney
U.S. Department of Commerce                U.S. Department of Justice
Office of the Chief Counsel For Trade      Civil Division
    Enforcement and Compliance             Commercial Litigation Branch
1401 Constitution Avenue, NW               P.O. Box 480
Washington, D.C. 20230                     Ben Franklin Station
Tel: (202) 482-1439                        Washington D.C. 20044
Email:  ayat.mujais@trade.gov              Tel: (202) 353-0521
                                           Email: Ashley.Akers@usdoj.gov


April 2, 2024                              Attorneys for Defendant