UNITED STATES COURT OF INTERNATIONAL TRADE
NEW YORK, NEW YORK

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| YC RUBBER CO. (NORTH AMERICA) LLC, *et al*., <br><br> Plaintiffs and Consolidated Plaintiffs, <br><br> and <br><br> KENDA RUBBER (CHINA) CO., LTD., <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Consol. Ct. No. 19-00069 |

## <u>NOTICE OF SUPPLEMENTAL AUTHORITIES</u>

Plaintiffs YC Rubber Co. (North America) and Sutong Tire Resources, Inc. respectfully advise this Court of authorities issued after their Comments in Opposition to Remand Redetermination were filed on February 2, 2024, ECF 89 ("Plaintiffs' Remand Comments"), in the above-captioned appeal of the second administrative review ("AR2") of the antidumping duty ("AD") order on passenger vehicle and light truck tires ("PVLT") from the People's Republic from China ("China"). Specifically, the U.S. Department of Commerce ("Commerce") since that time issued the following Federal Register notices:

- *PVLT from China*, 89 Fed. Reg. 17,817 (Mar. 12, 2024) ("*AR7 Final Results*") (**Attachment 1**).

- *PVLT from China*, 89 Fed. Reg. 26,130 (Apr. 15, 2024) ("*AR7 Amended Final Results*") (**Attachment 2**); and

- *PVLT from China*, 89 Fed. Reg. 33,317 (Apr. 29, 2024) ("*AR4 Final Results*") (**Attachment 3**).

As a result of these new Commerce determinations, the chart on page 20 of Plaintiff's

Remand Comments can be updated as follows:

| Segment | Respondent | Rate |
|---|---|---|
| **Investigation**[1] | GITI | 30.74% |
| | Sailun | 14.35% |
| | Separate Rate | 25.84% |
| **AR1 (8/1/15–7/31/16)**[2] | GITI | 1.5% |
| | Sentury | 1.27% |
| | Separate Rate | 1.45% |
| **AR2 (8/1/16–7/31/17)**[3] | **Junhong** | **65.47%** |
| | **Separate Rate** | **41.36%** |
| | Kenda | 18.35% |
| **AR3 (8/1/17–7/31/18)**[4] | Shandong New Continent ("SNC") | 0% |
| | Separate Rate | 0% |
| **AR4 (8/1/18–7/31/19)**[5] | Separate Rate | 0% |
| **AR5 (8/1/19–7/31/20)**[6] | Sumitomo | 2.06% |
| | Separate Rate | 2.06% |
| **AR6 (8/1/20–7/31/21)**[7] | GITI | 5.39% |
| | Sumitomo | 0.59% |
| | Separate Rate | 2.19% |
| **AR7 (8/1/21–7/31/22)**[8] | GITI | 20.52% |
| | Sumitomo | 2.47% |
| | Separate Rate | 11.50% |

[1]    *PVLT from China*, 80 Fed. Reg. 47,902, 47,905-06 (Aug. 10, 2015).

[2]    *PVLT from China*, 83 Fed. Reg. 11,690, 11,692 (Mar. 16, 2018) ("*AR1 Final Results*"); *PVLT from China*, 87 Fed. Reg. 33,717, 33,718 (June 3, 2022)

[3]    *PVLT from China*, 81 Fed. Reg. 17,781, 17,782-83 (Apr. 26, 2019); Remand Redetermination (Nov. 1, 2023), ECF 78, PRR 112, at 36.

[4]    *PVLT from China*, 89 Fed. Reg. 22,396, 22,397 (Apr. 22, 2020) (final results). Although SNC's AR3 rate was reconsidered on remand, Commerce confirmed its 0% ADD rate, that redetermination was affirmed by this Court and was not appealed to the CAFC. *Pirelli Tyre Co. v. United States*, 638 F. Supp. 3d 1361, 1367-71 (CIT 2023)

[5]    *AR4 Final Results*, 89 Fed. Reg. at 33,318 (**Attachment 3**).

[6]    *PVLT from China*, 87 Fed. Reg. 13,966, 13,967 (Mar. 11, 2022) (final results).

[7]    *PVLT from China*, 88 Fed. Reg. 15,663, 15,664 (Mar. 14, 2023) (final results).

[8]    *AR7 Final Results*, 89 Fed. Reg. at 17,818 (**Attachment 1**); *AR7 Amended Final Results*, 89 Fed. Reg. at 26,131 (**Attachment 2**).

Plaintiffs further provide as **Attachment 4** this Court's Slip Op. 24-13 issued on February 8, 2024, in *American Mfgrs. of Multilayered Wood Flooring v. United States*, Court No. 21-00595 MMB, ECF 69. This ruling affirmed Commerce's remand redetermination that the mandatory respondent remained eligible for a separate rate despite its unwillingness to participate in the administrative review: "On remand, the Department reevaluated Jinlong's separate-rate eligibility under protest, found it so eligible, and set a duty based on facts otherwise available with an adverse inference." Slip Op. 24-13 (**Attachment 4**), at 6. The underlying Commerce redetermination was relied upon by Plaintiffs for the impropriety of denying separate rates for respondents on this AR2 remand. Plaintiffs' Remand Comments at 16. Plaintiffs note that this litigation is now final, was not appealed, and that Defendant emphasized the lack of finality existing when its comments were filed. Defendant's Response to Comments on Remand Results, ECF 92 (Apr. 2, 2024), at 22-23 ("this litigation is ongoing. Commerce accepted Jinlong's separate rate certification on remand under protest, and the appeal period for this case has not yet expired. Thus, until the appeals period has ended, and a final and conclusive court opinion issued, the persuasiveness of the holding in the case, or Commerce's actions taken under protest, is inherently limited.").

We intend to discuss these authorities at the oral argument on May 16, 2024.

Respectfully submitted,

/s/  Jordan C. Kahn
Jordan C. Kahn
GRUNFELD DESIDERIO LEBOWITZ SILVERMAN &
KLESTADT, LLP
1201 New York Avenue, NW. Suite 650
Washington, DC 20005

*Counsel for Plaintiffs YC Rubber (North America)*
*LLC and Sutong Tire Resources, Inc*

Dated:  May 14, 2024

3

# ATTACHMENT 1

has occurred and the subsequent assessment of double antidumping duties.

**Administrative Protective Order**

This notice also serves as a final reminder to parties subject to administrative protective order (APO) of their responsibility concerning the return or destruction of proprietary information disclosed under APO in accordance with 19 CFR 351.305(a)(3), which continues to govern business proprietary information in this segment of the proceeding. Timely written notification of the return or destruction of APO materials, or conversion to judicial protective order, is hereby requested. Failure to comply with the regulations and the term of an APO is a sanctionable violation.

**Notification to Interested Parties**

We are issuing and publishing this notice in accordance with sections 751(a)(1) and 777(i)(1) of the Act, and 19 CFR 351.221(b)(5).

Dated: March 6, 2024.

**Ryan Majerus,**

*Deputy Assistant Secretary for Policy and Negotiations, performing the non-exclusive functions and duties of the Assistant Secretary for Enforcement and Compliance.*

**Appendix**

**List of Topics Discussed in the Issues and Decision Memorandum**

I. Summary
II. Background
III. Scope of the Order
IV. Changes Since the Preliminary Results
V. Discussion of Issues
Comment 1: Whether Products Sold by TEFLU are In-Scope Merchandise
Comment 2: Whether Commerce Should Modify the Product Characteristics Used in Model Matching
Comment 3: Whether Commerce Should Alter its Treatment of Level of Trade (LOT) Fields in the Margin Program
Comment 4: Whether Commerce Should Remove TEFLU's Sample Sales from Maquilacero/TEFLU's Margin Calculation
Comment 5: Whether Commerce Should Remove Date of Payment and Credit Expense Adjustments from its Margin Calculation
Comment 6: Whether Commerce Must Adjust its Differential Pricing Analysis for Maquilacero/TEFLU
Comment 7: Adjustment of Maquilacero's Domestic Brokerage and Handling (B&H) Charges
Comment 8: Whether Commerce Should Use Updated Financial Statements
Comment 9: Whether Commerce Should Reject Regiopytsa's Change in Depreciation Methodology
Comment 10: Whether Regiopytsa's Total Direct Material Costs Are Consistent with its Financial Statements

Comment 11: Whether Commerce Should Revise the Scrap Offset
Comment 12: Whether Commerce Should Revise Regiopytsa's General and Administrative (G&A) Expenses
Comment 13: Whether Commerce Should Rely on a Different Methodology for Assigning a Weighted-Average Dumping Margin to Perfiles
VI. Recommendation

[FR Doc. 2024–05221 Filed 3–11–24; 8:45 am]

**BILLING CODE 3510–DS–P**

---

**DEPARTMENT OF COMMERCE**

**International Trade Administration**

**[A–570–016]**

**Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2021–2022**

**AGENCY:** Enforcement and Compliance, International Trade Administration, Department of Commerce.

**SUMMARY:** The U.S. Department of Commerce (Commerce) determines that the exporters of passenger vehicle and light truck tires (passenger tires) from the People's Republic of China (China) listed in the ''Final Results of Review'' section below, sold subject merchandise at less than normal value during the period of review (POR), August 1, 2021, through July 31, 2022. Further, we also determine that certain companies under review had no shipments of subject merchandise to the United States during the POR.

**DATES:** Applicable March 12, 2024.

**FOR FURTHER INFORMATION CONTACT:** Caroline Carroll or Terre Keaton Stefanova, AD/CVD Operations, Office IX, Enforcement and Compliance, International Trade Administration, U.S. Department of Commerce, 1401 Constitution Avenue NW, Washington, DC 20230; telephone: (202) 482–4948 or (202) 482–1280, respectively.

**SUPPLEMENTARY INFORMATION:**

**Background**

On September 7, 2023, we published the *Preliminary Results* and invited interested parties to comment.[1] On December 4, 2023, Commerce extended the deadline of the final results of this administrative review to March 5, 2024,

in accordance with section 751(a)(3)(A) of the Tariff Act of 1930, as amended (the Act), and 19 CFR 351.213(h)(2).[2] For details regarding the events that occurred since the *Preliminary Results, see* the Issues and Decision Memorandum.[3]

**Scope of the Order** [4]

The products covered by this *Order* are certain passenger vehicle and light truck tires from China. For a complete description of the scope of the *Order, see* the *Preliminary Results.*

**Analysis of Comments Received**

We addressed all the issues raised in the case and rebuttal briefs in the Issues and Decision Memorandum. A list of the issues that parties raised is provided in Appendix I of this notice. The Issues and Decision Memorandum is a public document and is on file electronically via Enforcement and Compliance's Antidumping and Countervailing Duty Centralized Electronic Service System (ACCESS). ACCESS is available to registered users at *https://access.trade.gov.* In addition, a complete version of the Issues and Decision Memorandum can be accessed directly at *https://access.trade.gov/public/FRNoticesListLayout.aspx.*

**Changes Since the Preliminary Results**

Based on comments received from interested parties regarding the *Preliminary Results,* we have made certain changes to the margin calculations for Giti and Sumitomo.[5] For a discussion of these changes, *see* the Issues and Decision Memorandum.

---

[1] *See Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission, and Preliminary Determination of No Shipments; 2021–2022,* 88 FR 61506 (September 7, 2023) (*Preliminary Results*), and accompanying Preliminary Decision Memorandum (PDM).

[2] *See* Memorandum, ''Extension of Deadline for Final Results of 2021–2022 Antidumping Duty Administrative Review,'' dated December 4, 2023.

[3] *See* Memorandum, ''Issues and Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review of Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China and Final Determination of No Shipments; 2021–2022,'' dated concurrently with, and hereby adopted by, this notice.

[4] *See Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Amended Final Affirmative Antidumping Duty Determination and Antidumping Duty Order; and Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order,* 80 FR 47902 (August 10, 2015) (*Order*).

[5] Giti consists of the following companies: Giti Tire Global Trading Pte. Ltd.; Giti Radial Tire (Anhui) Company Ltd.; Giti Tire (Fujian) Company Ltd.; Giti Tire (Hualin) Company, Ltd.; Giti Tire Greatwall Company. Ltd.; Giti Tire (Anhui) Company; Giti Tire (Yinchuan) Company Ltd.; and Giti Tire (Chongqing) Company Ltd. (collectively, Giti). Sumitomo consists of the following companies: Sumitomo Rubber (Hunan) Co., Ltd.; Sumitomo Rubber (Changshu) Co., Ltd. (SRC); and Sumitomo Rubber Industries Ltd. (collectively, Sumitomo).

## Final Determination of No Shipments

In the *Preliminary Results,* we determined that the following companies did not have shipments of subject merchandise during the POR: (1) Crown International Corporation; (2) Prinx Chengshan (Shandong) Tire Company, Ltd.; (3) Qingdao Nama Industrial Co., Ltd.; (4) Shandong Changfeng Tyres Co., Ltd.; (5) Shandong Duratti Rubber Corporation Co., Ltd.; (6) Shandong Transtone Tyre Co., Ltd.; (7) Shandong Yongsheng Rubber Group Co., Ltd.; and (8) Triangle Tyre Co., Ltd. (Triangle Tyre).[6] We received comments from the petitioner[7] and Triangle Tyre regarding the no-shipments claim for Triangle Tyre.[8] However, we continue to find that each of the above-listed companies had no shipments of subject merchandise during the POR and we will issue appropriate liquidation instructions consistent with our "automatic assessment" clarification for these final results.[9]

## Separate Rates

In the *Preliminary Results,* we found that Zhongce Rubber Group Co., Ltd. (Zhongce) did not establish its eligibility for a separate rate.[10] Moreover, we determined that 14 other companies under review did not establish their eligibility for a separate rate because they failed to provide either a separate

rate application, a separate rate certification, or a no-shipment certification (if they were already eligible for a separate rate). As such, we preliminarily determined that Zhongce and these 14 other companies are part of the China-wide entity. No party filed comments on these determinations in the *Preliminary Results.* Therefore, for the final results, we continue to find that these 15 companies are part of the China-wide entity. *See* Appendix III for a complete list of these 15 companies.

In the *Preliminary Results,* we determined that Giti, Sumitomo, and 12 other companies demonstrated their eligibility for separate rates.[11] No party filed comments on these determinations in the *Preliminary Results.* Therefore, we made no changes to our preliminary separate rate findings and we continue to find that Giti, Sumitomo, and the 12 companies listed in Appendix II have demonstrated their eligibility for a separate rate in this review.

## Rate for Non-Selected Separate Rate Respondents

The Act and Commerce's regulations do not address what rate to apply to respondents not selected for individual examination when Commerce limits its examination in an administrative review pursuant to section 777A(c)(2) of the Act. Generally, Commerce looks to

section 735(c)(5) of the Act, which provides instructions for calculating the all-others rate in an investigation, for guidance when calculating the rate for non-selected respondents that are not examined individually in an administrative review. Section 735(c)(5)(A) of the Act states that the all-others rate should be calculated by averaging the weighted-average dumping margins for individually examined respondents, excluding rates that are zero, *de minimis,* or based entirely on facts available. When the rates for individually examined companies are all zero, *de minimis,* or based entirely on facts available, section 735(c)(5)(B) of the Act provides that Commerce may use "any reasonable method" to establish the all-others rate. Accordingly, for these final results, we calculated a simple average of the dumping margin for the separate rate respondents using the calculated rates of the mandatory respondents, Giti and Sumitomo, which are not zero, *de minimis,* or determined entirely on the basis of facts available. *See* Appendix II for the list of these companies.

## Final Results of Review

We are assigning the following dumping margins to the firms listed below for the period August 1, 2021, through July 31, 2022:

| Exporter | Weighted-average dumping margin (percent) |
| --- | --- |
| Giti Tire Global Trading Pte. Ltd.; Giti Radial Tire (Anhui) Company Ltd.; Giti Tire (Fujian) Company Ltd.; Giti Tire (Hualin) Company Ltd.; Giti Tire Greatwall Company, Ltd.; Giti Tire (Anhui) Company, ltd.; Giti Tire (Yinchuan) Company, Ltd.; and Giti Tire (Chongqing) Company, Ltd .......... | 53.41 |
| Sumitomo Rubber Industries Ltd.; Sumitomo Rubber (Hunan) Co., Ltd.; and Sumitomo Rubber (Changshu) Co., Ltd .......... | 2.47 |
| Separate Rate Companies[12] .......... | 27.94 |

## Disclosure

Commerce intends to disclose the calculations performed in connection with these final results to interested parties within five days of the date of publication of this notice in the **Federal Register**, in accordance with 19 CFR 351.224(b).

## Assessment Rates

Pursuant to section 751(a)(2)(C) of the Act, and 19 CFR 351.212(b), Commerce will determine, and U.S. Customs and Border Protection (CBP) shall assess, antidumping duties on all appropriate entries of subject merchandise in

accordance with the final results of this review. Commerce intends to issue assessment instructions to CBP no earlier than 35 days after the date of publication of the final results of this review in the **Federal Register**. If a timely summons is filed at the U.S. Court of International Trade, the assessment instructions will direct CBP not to liquidate relevant entries until the time for parties to file a request for a statutory injunction has expired (*i.e.,* within 90 days of publication).

For Giti and Sumitomo, we calculated importer-specific assessment rates on the basis of the ratio of the total amount

of antidumping duties calculated for each importer's examined sales and the total entered value of the sales, in accordance with 19 CFR 351.212(b)(1). Where either a respondent's weighted-average dumping margin is zero or *de minimis,* within the meaning of 19 CFR 351.106(c)(1) of the Act, or an importer-specific rate is zero or *de minimis,* we will instruct CBP to liquidate appropriate entries without regard to antidumping duties.

---

[6] *See Preliminary Results,* 88 FR at 61507.

[7] The petitioner is the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL–CIO, CLC.

[8] *See* the Issues and Decision Memorandum at Comment 7 for a discussion of the comments received regarding Triangle Tyre's no-shipment claim.

[9] *See Non-Market Economy Antidumping Proceedings: Assessment of Antidumping Duties,* 76

FR 65694 (October 24, 2011) (*Non-Market Economy Assessment Notice*).

[10] *See Preliminary Results* PDM at 11.

[11] *Id.* at 10.

[12] *See* Appendix II for the list of these companies.

Pursuant to Commerce's assessment practice,[13] for entries that were not reported in the U.S. data submitted by Giti and Sumitomo, we will instruct to CBP to liquidate such entries at the China-wide rate (*i.e.,* 76.46 percent).[14] Additionally, where Commerce determined that an exporter under review had no shipments of subject merchandise to the United States during the POR, any suspended entries of subject merchandise that entered under that exporter's CBP case number during the POR will be liquidated at the weighted-average dumping margin assigned to the China-wide entity.

For respondents not individually examined in this administrative review that qualified for a separate rate, the assessment rate will be equal to the simple average of the dumping margin calculated using the rates assigned to Giti and Sumitomo in these final results.

For the companies found not eligible for a separate rate and part of the China-wide entity, we will instruct CBP to liquidate all entries of subject merchandise during the POR exported by these companies at the China-wide assessment rate of 76.46 percent.

**Cash Deposit Requirements**

The following cash deposit requirements will be effective for shipments of the subject merchandise entered, or withdrawn from warehouse, for consumption on or after the publication date for the final results of review, as provided for by section 751(a)(2)(C) of the Act: (1) for Giti, Sumitomo, and the other exporters listed above that have a separate rate, the cash deposit rate will be the rate established in the final results of review (except, if the rate is zero or *de minimis,* then a cash deposit rate of zero will be established for that company); (2) for previously investigated or reviewed exporters not listed in the table above that have separate rates, the cash deposit rate will continue to be the existing exporter-specific rate published for the most recently-completed segment of this proceeding; (3) for all Chinese exporters of subject merchandise that have not been found to be entitled to a separate rate, the cash deposit rate will be the rate for the China-wide entity (*i.e.,* 76.46 percent); and (4) for all exporters of subject merchandise which are not located in China and have not received their own rate, the cash deposit rate will be the rate applicable to the Chinese exporter(s) that supplied that non-China

exporter. These cash deposit requirements, when imposed, shall remain in effect until further notice.

**Notification to Importers**

This notice serves as a final reminder to importers of their responsibility under 19 CFR 351.402(f)(2) to file a certificate regarding the reimbursement of antidumping and/or countervailing duties prior to liquidation of the relevant entries during this POR. Failure to comply with this requirement could result in Commerce's presumption that reimbursement of antidumping and/or countervailing duties occurred and the subsequent assessment of double antidumping duties, and/or an increase in the amount of antidumping duties by the amount of the countervailing duties.

**Administrative Protective Order**

This notice also serves as a reminder to parties subject to an administrative protective order (APO) of their responsibility concerning the return or destruction of proprietary information disclosed under APO in accordance with 19 CFR 351.305(a)(3), which continues to govern business proprietary information in this segment of the proceeding. Timely written notification of the return or destruction of APO materials, or conversion to judicial protective order, is hereby requested. Failure to comply with the regulations and terms of an APO is a violation which is subject to sanction.

**Notification to Interested Parties**

We are issuing these final results of administrative review and publishing this notice in accordance with sections 751(a)(1) and 777(i)(1) of the Act, and 19 CFR 351.213(h)(1) and 351.221(b)(5).

Dated: March 5, 2024.

**Ryan Majerus,**
*Deputy Assistant Secretary for Enforcement and Compliance, performing the non-exclusive functions and duties of the Assistant Secretary for Enforcement and Compliance.*

**Appendix I**

**List of Topics Discussed in the Issues and Decision Memorandum**

I. Summary
II. Background
III. Changes Since the *Preliminary Results*
IV. Discussion of the Issues
   Comment 1: Selection of Surrogate Country
   Comment 2: Surrogate Financial Statements
   Comment 3: Surrogate Value (SV) for Labor
   Comment 4: SVs for Electricity and Water
   Comment 5: SV for Truck Freight
   Comment 6: Whether To Grant an Export Subsidy Offset
   Comment 7: Triangle Tyre Co., Ltd's (Triangle Tyre) No-Shipment Status

   Comment 8: Whether Commerce Should Inform U.S. Customs and Border Protection (CBP) Regarding the Shipments Addressed by Prinx Chengshan (Shandong) Tire Company Ltd. (PCT)
   Comment 9: Whether Commerce Should Use Giti's Reported Factoring Discount
   Comment 10: Ministerial Errors for Giti
   Comment 11: Differential Pricing Analysis
   Comment 12: Offset for SRC's Production of Turn Up Bladders (TUB)
   Comment 13: Ministerial Errors for Sumitomo
V. Recommendation

**Appendix II**

**Separate Rate Companies**

1. Anhui Jichi Tire Co., Ltd.
2. Hankook Tire China Co., Ltd.
3. Jiangsu Hankook Tire Co., Ltd.
4. Koryo International Industrial Limited
5. Mayrun Tyre (Hong Kong) Limited
6. Qingdao Keter International Co., Limited
7. Qingdao Sentury Tire Co., Ltd.; Sentury (Hong Kong) Trading Co., Limited
8. Qingdao Sunfulcess Tyre Co., Ltd.
9. Shandong Haohua Tire Co., Ltd.
10. Shandong Linglong Tyre Co., Ltd.
11. Shandong New Continent Tire Co., Ltd.
12. Shandong Province Sanli Tire Manufactured Co., Ltd.

**Appendix III**

**Companies Found To Be Part of the China-Wide Entity**

1. Aeolus Tyre Corp., Ltd.
2. Double Coin Tire Ltd.
3. Hongtyre Group Co.
4. Nankang (Zhangjiagang Free Trade Zone) Rubber Industrial Co., Ltd.
5. Qingdao Crowntyre Industries Co., Ltd.
6. Shandong Habilead Rubber Co., Ltd.
7. Shangdong Hengfeng Rubber & Plastic Co., Ltd.
8. Shangdong Hengyu Science & Technology Co., Ltd.
9. Shangdong Longyue Rubber Co., Ltd. (aka ZODO Tire Co., Ltd.)
10. Shangdong Yongfeng Tyres Co., Ltd.
11. Shanghai Tire & Rubber (Group) Ltd.
12. Tianjin Wanda Tyre Group Company, Ltd.
13. Tyrechamp Group Co., Limited
14. Wendeng Sanfeng Tyre Co., Ltd.
15. Zhongce Rubber Group Co., Ltd.

[FR Doc. 2024–05169 Filed 3–11–24; 8:45 am]

**BILLING CODE 3510–DS–P**

---

**DEPARTMENT OF COMMERCE**

**International Trade Administration**

**[A–533–810]**

**Stainless Steel Bar From India: Continuation of Antidumping Duty Order**

**AGENCY:** Enforcement and Compliance, International Trade Administration, Department of Commerce.

**SUMMARY:** As a result of the determinations by the U.S. Department

---

[13] *See Non-Market Economy Assessment Notice,* 76 FR at 65694, for a full discussion of this practice.
[14] *See Order,* 80 FR at 47906.

# ATTACHMENT 2

The effective date of the continuation of the *Order* will be April 5, 2024.[6] Pursuant to section 751(c)(2) of the Act and 19 CFR 351.218(c)(2), Commerce intends to initiate the next five-year review of the *Order* not later than 30 days prior to fifth anniversary of the date of the last determination by the ITC.

## Administrative Protective Order (APO)

This notice also serves as a final reminder to parties subject to an APO of their responsibility concerning the return or destruction of proprietary information disclosed under APO in accordance with 19 CFR 351.305(a)(3), which continues to govern business proprietary information in this segment of the proceeding. Timely written notification of the return or destruction of APO materials, or conversion to judicial protective order, is hereby requested. Failure to comply with the regulations and terms of an APO is a violation which is subject to sanction.

## Notification to Interested Parties

This five-year (sunset) review and this notice are in accordance with sections 751(c) and 751(d)(2) of the Act and published in accordance with section 777(i) of the Act, and 19 CFR 351.218(f)(4).

Dated: April 9, 2024.

**Ryan Majerus,**
*Deputy Assistant Secretary for Policy and Negotiations, performing the non-exclusive functions and duties of the Assistant Secretary for Enforcement and Compliance.*

[FR Doc. 2024–07859 Filed 4–12–24; 8:45 am]

**BILLING CODE 3510–DS–P**

---

## DEPARTMENT OF COMMERCE

## International Trade Administration

[A–570–016]

## Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review; 2021–2022

**AGENCY:** Enforcement and Compliance, International Trade Administration, Department of Commerce.

**SUMMARY:** The U.S. Department of Commerce (Commerce) is amending the final results of the administrative review of the antidumping duty order on

passenger vehicle and light truck tires from the People's Republic of China (China) to correct a ministerial error. The period of review (POR) is August 1, 2021, through July 31, 2022.

**DATES:** Applicable April 15, 2024.

**FOR FURTHER INFORMATION CONTACT:** Caroline Carroll, AD/CVD Operations, Office IX, Enforcement and Compliance, International Trade Administration, U.S. Department of Commerce, 1401 Constitution Avenue NW, Washington, DC 20230; telephone: (202) 482–4948.

**SUPPLEMENTARY INFORMATION:**

## Background

On March 12, 2024, Commerce published the *Final Results* in the **Federal Register**.[1] Also on March 12, 2024, we received a timely submitted ministerial error allegation from Giti.[2] On March 13, 2024, we received rebuttal comments from the petitioner.[3] We are amending the *Final Results* to correct the ministerial error Giti alleged.

## Legal Framework

Section 751(h) of the Tariff Act of 1930, as amended (the Act), defines a "ministerial error" as including "errors in addition, subtraction, or other arithmetic function, clerical errors resulting from inaccurate copying, duplication, or the like, and any other unintentional error which the administering authority considers ministerial."[4] With respect to final results of administrative reviews, 19 CFR 351.224(e) provides that Commerce "will analyze any comments received and, if appropriate, correct any . . . ministerial error by amending the final results of review . . ."

---

[1] *See Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2021–2022,* 89 FR 17817 (March 12, 2024) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).

[2] *See* Giti's Letter, "Ministerial Errors Comment," dated March 12, 2024 (Ministerial Error Comments). Giti consists of the following companies: Giti Tire Global Trading Pte. Ltd.; Giti Radial Tire (Anhui) Company Ltd.; Giti Tire (Fujian) Company Ltd.; Giti Tire (Hualin) Company, Ltd.; Giti Tire Greatwall Company. Ltd.; Giti Tire (Anhui) Company; Giti Tire (Yinchuan) Company Ltd.; and Giti Tire (Chongqing) Company Ltd. (collectively, Giti).

[3] The petitioner is the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL–CIO, CLC. *See* Petitioner's Letter, "Request to Reject Giti's Untimely New Argument," dated March 13, 2024.

[4] *See* 19 CFR 351.224(f).

## Ministerial Error

In the *Final Results,* we continued to rely on a boat freight surrogate value using data from Maersk stated on a U.S. dollar per-kilogram basis.[5] In its Ministerial Error Comments, Giti alleged that Commerce intended to value the boat freight surrogate value on a per-kilogram, per-kilometer basis, noting that, in the calculation of boat freight, Commerce multiplied the input quantity in kilograms by both the boat freight surrogate value and a distance in kilometers.[6]

We agree with Giti that we made a ministerial error in the *Final Results* pursuant to section 751(h) of the Act and 19 CFR 351.224(f) and have amended our calculations to correct the calculation of boat freight to remove the distance in kilometers.

Pursuant to 19 CFR 351.224(e), we are amending the *Final Results* to correct this ministerial error in the calculation of the weighted-average dumping margin for Giti, which changes from 53.41 percent to 20.52 percent. Furthermore, based on the revised weighted-average dumping margin calculated for Giti, we are also amending the rate for the companies not selected for individual examination in this review, which changes from 27.94 percent to 11.50 percent.[7]

For a complete discussion of the ministerial error allegation, as well as Commerce's analysis, *see* the accompanying Ministerial Error Memorandum.[8] The Ministerial Error Memorandum is a public document and is on file electronically via ACCESS. ACCESS is available to registered users at *https://access.trade.gov.*

## Amended Final Results of Review

As a result of correcting the ministerial error described above, we determine the following estimated weighted-average dumping margins for the period August 1, 2021, through July 31, 2022:

---

[5] *See Final Results* IDM at Comment 10.

[6] *See* Ministerial Error Comments at 3.

[7] *See* Memorandum, "Calculation of the Amended Final Cash Deposit Rate for Non-Selected Companies," dated concurrently with this notice.

[8] *See* Memorandum, "Analysis of Ministerial Error Allegation," dated concurrently with, and hereby adopted by, this notice (Ministerial Error Memorandum); *see also* Memorandum, "Calculations for Giti for the Amended Final Results," dated concurrently with this notice.

---

[6] *See* ITC Final Determination.

| Exporter | Weighted-average dumping margin (percent) |
|---|---|
| Giti Tire Global Trading Pte. Ltd.; Giti Radial Tire (Anhui) Company Ltd.; Giti Tire (Fujian) Company Ltd.; Giti Tire (Hualin) Company Ltd.; Giti Tire Greatwall Company, Ltd.; Giti Tire (Anhui) Company, ltd.; Giti Tire (Yinchuan) Company, Ltd.; and Giti Tire (Chongqing) Company, Ltd ................................................................................ | 20.52 |
| Companies Not Selected for Individual Review [9] ................................................................................ | 11.50 |

### Disclosure

We intend to disclose the calculations performed in connection with these amended final results of review to parties in this review within five days of the date of publication of this notice in the **Federal Register**, in accordance with 19 CFR 351.224(b).

### Assessment Rates

Pursuant to section 751(a)(2)(C) of the Act, and 19 CFR 351.212(b)(1), Commerce has determined, and U.S. Customs and Border Protection (CBP) shall assess, antidumping duties on all appropriate entries of subject merchandise in accordance with the amended final results of this review. Commerce intends to issue assessment instructions to CBP no earlier than 35 days after the date of publication of the amended final results of this review in the **Federal Register**. If a timely summons is filed at the U.S. Court of International Trade, the assessment instructions will direct CBP not to liquidate relevant entries until the time for parties to file a request for a statutory injunction has expired (*i.e.,* within 90 days of publication).

For Giti and Sumitomo, we calculated importer-specific assessment rates on the basis of the ratio of the total amount of antidumping duties calculated for each importer's examined sales and the total entered value of the sales, in accordance with 19 CFR 351.212(b)(1).[10] Where either a respondent's weighted-average dumping margin is zero or *de minimis,* within the meaning of 19 CFR 351.106(c)(1) of the Act, or an importer-specific rate is zero or *de minimis,* we will instruct CBP to liquidate appropriate entries without regard to antidumping duties.

Pursuant to Commerce's assessment practice,[11] for entries that were not reported in the U.S. data submitted by Giti, we will instruct CBP to liquidate

such entries at the China-wide rate (*i.e.,* 76.46 percent).[12]

For the respondents not selected for individual examination in this administrative review that qualified for a separate rate, the assessment rate will be equal to the simple average of the margin calculated for Giti in these amended final results and Sumitomo in the *Final Results.*

### Cash Deposit Requirements

The following amended cash deposit requirements will be effective for all shipments of the subject merchandise entered, or withdrawn from warehouse, for consumption on or after March 12, 2024, the publication date of the *Final Results,* as provided by section 751(a)(2)(C) of the Act: (1) the amended cash deposit rate for Giti and the other exporters not individually examined in this administrative review that have a separate rate, the cash deposit rate will be the rate established in the amended final results of review (except, if the rate is zero or *de minimis,* then a cash deposit rate of zero will be established for that company); (2) for previously investigated or reviewed exporters not listed in the table above that have separate rates, the cash deposit rate will continue to be the existing exporter-specific rate published for the most recently-completed segment of this proceeding; (3) for all Chinese exporters of subject merchandise that have not been found to be entitled to a separate rate, the cash deposit rate will be the rate for the China-wide entity (*i.e.,* 76.46 percent); and (4) for all exporters of subject merchandise which are not located in China and have not received their own rate, the cash deposit rate will be the rate applicable to the Chinese exporter(s) that supplied that non-China exporter. These cash deposit requirements, when imposed, shall remain in effect until further notice.

### Notification to Importers

This notice serves as a final reminder to importers of their responsibility under 19 CFR 351.402(f)(2) to file a certificate regarding the reimbursement of antidumping duties prior to liquidation of the relevant entries during this review period. Failure to comply with this requirement could result in Commerce's presumption that reimbursement of antidumping duties occurred and the subsequent assessment of double antidumping duties.

### Administrative Protective Order

This notice serves as the final reminder to parties subject to administrative protective order (APO) of their responsibility concerning the disposition of proprietary information disclosed under APO in accordance with 19 CFR 351.305(a)(3), which continues to govern business proprietary information in this segment of the proceeding. Timely written notification of return/destruction of APO materials or conversion to judicial protective order is hereby requested. Failure to comply with the regulations and the terms of an APO is a sanctionable violation.

### Notification to Interested Parties

We are issuing and publishing these amended final results of review in accordance with sections 751(h) and 777(i) of the Act, and 19 CFR 351.224(e).

Dated: March 29, 2024.

**Abdelali Elouaradia,**
*Deputy Assistant Secretary for Enforcement and Compliance.*

### Appendix

### Separate Rate Companies

1. Anhui Jichi Tire Co., Ltd.
2. Hankook Tire China Co., Ltd.
3. Jiangsu Hankook Tire Co., Ltd.
4. Koryo International Industrial Limited
5. Mayrun Tyre (Hong Kong) Limited
6. Qingdao Keter International Co., Limited
7. Qingdao Sentury Tire Co., Ltd.; Sentury (Hong Kong) Trading Co., Limited
8. Qingdao Sunfulcess Tyre Co., Ltd.
9. Shandong Haohua Tire Co., Ltd.
10. Shandong Linglong Tyre Co., Ltd.
11. Shandong New Continent Tire Co., Ltd.
12. Shandong Province Sanli Tire

---

[9] *See* the appendix for the list of these companies.

[10] Sumitomo's dumping margin did not change in these amended final results.

[11] *See Non-Market Economy Antidumping Proceedings: Assessment of Antidumping Duties,* 76 FR 65694 (October 24, 2011), for a full discussion of this practice.

[12] *See Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Amended Final Affirmative Antidumping Duty Determination and Antidumping Duty Order; and Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order,* 80 FR 47902, 47906 (August 10, 2015) (*Order*).

Manufactured Co., Ltd.

[FR Doc. 2024–07902 Filed 4–12–24; 8:45 am]

**BILLING CODE 3510–DS–P**

---

## DEPARTMENT OF COMMERCE

### International Trade Administration

[C–201–861]

### Aluminum Extrusions From Mexico: Preliminary Affirmative Countervailing Duty Determination and Alignment of Final Determination With Final Antidumping Duty Determination; Correction and Retraction

**AGENCY:** Enforcement and Compliance, International Trade Administration, Department of Commerce.

**ACTION:** Notice; correction and retraction.

**SUMMARY:** The U.S. Department of Commerce (Commerce) published two notices in the **Federal Register** on March 15, 2024. One notice is a correction notice that contains a typographical error and the other notice is a duplicate of a previously published notice.

**FOR FURTHER INFORMATION CONTACT:** Christopher Williams, AD/CVD Operations, Office I, Enforcement and Compliance, International Trade Administration, U.S. Department of Commerce, 1401 Constitution Avenue NW, Washington, DC 20230; telephone: (202) 482–5166.

**SUPPLEMENTARY INFORMATION:**

#### Background

On March 15, 2024, Commerce published in the **Federal Register** a correction (FR Doc. C1–2024–05068)[1] and a duplicate (FR Doc. 2024–05534)[2] of *Aluminum Extrusions from Mexico: Preliminary Affirmative Countervailing Duty Determination and Alignment of Final Determination With Final Antidumping Duty Determination,* 89 FR 17387 (March 11, 2024) (*Preliminary Determination*). FR Doc. C1–2024–05068 misidentifies the **Federal Register** document number of the *Preliminary Determination*. FR Doc. 2024–05534 is

---

[1] *See Aluminum Extrusions from Mexico: Preliminary Affirmative Countervailing Duty Determination and Alignment of Final Determination With Final Antidumping Duty Determination; Correction,* 89 FR 18894 (March 15, 2024) (FR Doc. C1–2024–05068).

[2] *See Aluminum Extrusions from Mexico: Preliminary Affirmative Countervailing Duty Determination and Alignment of Final Determination With Final Antidumping Duty Determination,* 89 FR 18894 (March 15, 2024) (FR Doc. 2024–05534).

an inadvertently published duplicate notice of the *Preliminary Determination*.

#### Correction

In the **Federal Register** of March 15, 2024, in FR Doc C1–2024–05068, on page 18894, in the third column, correct 2024–05086 to 2024–05068.

#### Retraction

From the **Federal Register** of March 15, 2024, pages 18894 to 18899, retract FR Doc 2024–05534. As such, FR Doc 2024–05534 should be disregarded.

#### Notification to Interested Parties

This notice is issued and published in accordance with section 703(f) and 777(i)(1) of the Tariff Act of 1930, as amended, and 19 CFR 351.205(c).

Dated: April 9, 2024.

**Ryan Majerus,**
*Deputy Assistant Secretary for Policy and Negotiations, performing the non-exclusive functions and duties of the Assistant Secretary for Enforcement and Compliance.*

[FR Doc. 2024–07857 Filed 4–12–24; 8:45 am]

**BILLING CODE 3510–DS–P**

---

## DEPARTMENT OF COMMERCE

### National Institute of Standards and Technology

### Open Meeting of the Internet of Things Advisory Board

**AGENCY:** National Institute of Standards and Technology (NIST).

**ACTION:** Notice of open meeting.

**SUMMARY:** The Internet of Things (IoT) Advisory Board will meet Tuesday, May 14 and Wednesday, May 15, 2024 from 11:00 a.m. until 5:00 p.m., eastern time. Both sessions will be open to the public.

**DATES:** The Internet of Things (IoT) Advisory Board will meet Tuesday, May 14 and Wednesday, May 15, 2024 from 11:00 a.m. until 5:00 p.m., eastern time.

**ADDRESSES:** The meeting will be virtual via Webex webcast hosted by the National Cybersecurity Center of Excellence (NCCoE) at NIST. Please note registration instructions under the **SUPPLEMENTARY INFORMATION** section of this notice.

**FOR FURTHER INFORMATION CONTACT:** Barbara Cuthill, Information Technology Laboratory, National Institute of Standards and Technology, Telephone: (301) 975–3273, Email address: *barbara.cuthill@nist.gov*.

**SUPPLEMENTARY INFORMATION:** Pursuant to the Federal Advisory Committee Act, as amended, 5 U.S.C. 1001 *et seq.,* notice is hereby given that the IoT Advisory Board will hold open meetings

on the dates and times given in the **DATES** section. Both sessions will be open to the public. The IoT Advisory Board is authorized by section 9204(b)(5) of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 (Pub. L. 116–283) and advises the IoT Federal Working Group convened by the Secretary of Commerce pursuant to section 9204(b)(1) of the Act on matters related to the Federal Working Group's activities. Details regarding the IoT Advisory Board's activities are available at *https://www.nist.gov/itl/applied-cybersecurity/nist-cybersecurity-iot-program/internet-things-advisory-board*.

The agenda for the May 14–15, 2024 meeting is expected to focus on finalizing the IoT Advisory Board's report for the IoT Federal Working Group and the recommendations and findings in that report.

The recommendations, findings and discussions are expected to focus on the specific focus areas for the report cited in the legislation and the charter:

• Smart traffic and transit technologies,
• Augmented logistics and supply chains,
• Sustainable infrastructure,
• Precision agriculture,
• Environmental monitoring,
• Public safety, and
• Health care.

In addition, the IoT Advisory Board may discuss other elements that the legislation called for in the report:

• whether adequate spectrum is available to support the growing Internet of Things and what legal or regulatory barriers may exist to providing any spectrum needed in the future;

• policies, programs, or multi-stakeholder activities that—

○ promote or are related to the privacy of individuals who use or are affected by the Internet of Things;

○ may enhance the security of the Internet of Things, including the security of critical infrastructure;

○ may protect users of the Internet of Things; and

○ may encourage coordination among Federal agencies with jurisdiction over the Internet of Things.

Note that agenda items may change without notice. The final agendas will be posted on the IoT Advisory Board web page: *https://www.nist.gov/itl/applied-cybersecurity/nist-cybersecurity-iot-program/internet-things-advisory-board*.

*Public Participation:* Written comments and requests to present comments orally to the IoT Advisory Board from the public are invited and

# ATTACHMENT 3

be downloaded, completed, printed, and submitted via fax or mail.

### III. Data

*OMB Control Number:* 0608–0062.
*Form Number(s):* BE–180.
*Type of Review:* Regular submission.
*Affected Public:* Business or other for-profit organizations.
*Estimated Number of Respondents:* 6,000 annually (4,500 reporting mandatory data and 1,500 that would file exemption claims or voluntary responses).
*Estimated Time per Response:* 11 hours is the average for the 2,000 respondents filing data by country and affiliation; 2 hours for the 2,500 respondents filing data by transaction type only, and 1 hour for those filing an exemption claim or other response. Hours may vary considerably among respondents because of differences in company size and complexity.
*Estimated Total Annual Burden Hours:* 28,500.
*Estimated Total Annual Cost to Public:* $0.
*Respondent's Obligation:* Mandatory.
*Legal Authority:* International Investment and Trade in Services Survey Act (Pub. L. 94–472, 22 U.S.C. 3101–3108, as amended) and Section 5408 of the Omnibus Trade and Competitiveness Act of 1988.

### IV. Request for Comments

Comments are invited on: (a) Whether the proposed collection of information is necessary for the proper performance of the functions of the Agency, including whether the information will have practical utility; (b) the accuracy of the Agency's estimate of the burden (including hours and cost) of the proposed collection of information; (c) ways to enhance the quality, utility, and clarity of the information to be collected; and (d) ways to minimize the burden of the collection of information on respondents, including through the use of automated collection techniques or other forms of information technology.

Comments that you submit in response to this notice are a matter of public record. We will include or summarize each comment in our request to OMB to approve this ICR. Before including your address, phone number, email address, or other personal identifying information in your comment, you should be aware that your entire comment—including your personal identifying information—may be made publicly available at any time. While you may ask us in your comment to withhold your personal identifying information from public review, we

cannot guarantee that we will be able to do so.

**Sheleen Dumas,**
*Department PRA Clearance Officer, Office of the Under Secretary for Economic Affairs, Commerce Department.*

[FR Doc. 2024–09149 Filed 4–26–24; 8:45 am]

**BILLING CODE 3510–06–P**

---

## DEPARTMENT OF COMMERCE

### International Trade Administration

[A–570–016]

### Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018–2019

**AGENCY:** Enforcement and Compliance, International Trade Administration, Department of Commerce.

**SUMMARY:** The U.S. Department of Commerce (Commerce) determines that certain passenger vehicle and light truck tires (passenger tires) were made as less than normal value during the period of review (POR) August 1, 2018, through July 31, 2019.

**DATES:** Applicable April 29, 2024.

**FOR FURTHER INFORMATION CONTACT:** Toni Page, AD/CVD Operations, Office VII, Enforcement and Compliance, International Trade Administration, U.S. Department of Commerce, 1402 Constitution Avenue NW, Washington, DC 20230; telephone: (202) 482–1398.

**SUPPLEMENTARY INFORMATION:**

### Background

On June 18, 2020, Commerce published the preliminary results of the 2018–2019 administrative review of the antidumping duty order on passenger tires from the People's Republic of China (China).[1] On June 3, 2021, Commerce deferred the deadline for the final results to consider whether to request a voluntary remand from the U.S. Court of International Trade of the 2017–2018 administrative review to evaluate the information provided by U.S. Customs and Border Protection (CBP) regarding Shandong New Continent Tire Co., Ltd. (Shandong New Continent) (the mandatory respondent in the 2017–2018 administrative review whose rate of zero percent was

preliminarily assigned to the separate rate respondents in the instant administrative review), further examine whether Shandong New Continent accurately reported its 2017–2018 POR sales information, and potentially reopen the record to solicit additional information.[2] On February 20, 2024, Commerce notified interested parties of its intent to issue the final results of the 2018–2019 administrative review by no later than April 22, 2024.[3] For a summary of the events subsequent to the *Preliminary Results, see* the Issues and Decision Memorandum.[4]

### Scope of the Order

The products covered by this order are certain passenger vehicles and light truck tires. A full description of the scope of the order is provided in the Issues and Decision Memorandum.

### Analysis of Comments Received

Commerce addressed all issues raised in the case and rebuttal briefs in the Issues and Decision Memorandum. These issues are identified in the appendix to this notice. The Issues and Decision Memorandum is a public document and is on file electronically via Enforcement and Compliance's Antidumping and Countervailing Duty Centralized Electronic Service System (ACCESS). ACCESS is available to registered users at *https://access. trade.gov.* In addition, a complete version of the Issues and Decision Memorandum can be accessed directly at *https://access.trade.gov/public/ FRNoticesListLayout.aspx.*

### Changes Since the Preliminary Results

Based on our analysis of the comments received, we determine that Qingdao Fullrun Tyre Corp., Ltd. (Fullrun Tyre) had no shipments during the POR. For further details, *see* the Issues and Decision Memorandum.

### Final Determination of No Shipments

Based on an analysis of CBP information, Commerce determines that the following companies had no shipments during the POR: (1) Shandong Duratti Rubber Corporation

---

[1] *See Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review and Rescission, in Part: 2018–2019,* 85 FR 36831 (June 18, 2020) (*Preliminary Results*), and accompanying Preliminary Decision Memorandum (PDM).

[2] *See* Memorandum, ''Deferral of the Final Results of Antidumping Duty Administrative Review; 2018–2019,'' dated June 3, 2021.

[3] *See* Memorandum, ''Notification of Resumption of the Final Results of Antidumping Duty Administrative Review; 2018–2019,'' dated February 20, 2024.

[4] *See* Memorandum, ''Issues and Decision Memorandum for the Final Results of the Administrative Review of the Antidumping Duty Order on Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China; 2018– 2019,'' dated concurrently with, and hereby adopted by, this notice (Issues and Decision Memorandum).

Co., Ltd.; and (2) Qingdao Fullrun Tyre Corp., Ltd.

Shandong Anchi Tyres Co., Ltd. (Anchi) filed a no-shipment certification; however, our preliminary analysis of CBP information contradicted this claim. After further review, we determine for these final results that Anchi had shipments during the POR. For additional information regarding this determination, *see* the Issues and Decision Memorandum.

## Separate Rates

In the *Preliminary Results,* we found that the following companies did not establish their eligibility for a separate rate: (1) Qingdao Odyking Tyre Co., Ltd. (Qingdao Odyking); (2) Shandong Longyue Rubber Co., Ltd. DBA ZODO Tire Co., Ltd. (Shandong Longyue); (3) Anchi; and (4) Fullrun Tyre.[5] As such, we preliminarily found that these companies were part of the China-wide entity. No interested party filed comments with respect to Qingdao Odyking's and Shandong Longyue's preliminary separate rate findings; therefore, for the final results, we continue to find that these two companies are part of the China-wide entity. Interested parties did file comments with respect to Anchi and Fullrun Tyre. We have examined these comments and continue to find that Anchi is part of the China-wide entity; however, as noted above, we have found that Fullrun Tyre had no shipments during the instant POR.[6]

We also continue to find that the evidence provided by the following respondents supports finding an absence of both *de jure* and *de facto* government control and, therefore, we continue to grant a separate rate to each of these companies: (1) Qingdao Fullrun Tyre Tech Corp., Ltd.; (2) Qingdao Powerich Tyre Co., Ltd.; (3) Qingdao Sentury Tire Co., Ltd.; (4) Shandong Linglong Tyre Co., Ltd.; (5) Shandong Province Sanli Tire Manufactured Co., Ltd.; (6) Shandong Yongsheng Rubber Group Co., Ltd.; and (7) Shouguang Firemax Tyre Co., Ltd.

## Rate for Non-Selected Separate Rate Respondents

The Tariff Act of 1930, as amended (the Act), and Commerce's regulations do not address what rate to apply to respondents not selected for individual examination when Commerce limits its examination in an administrative review pursuant to section 777A(c)(2) of the Act. Generally, Commerce looks to

section 735(c)(5) of the Act, which provides instructions for calculating the all-others rate in an investigation, for guidance when calculating the rate for non-selected respondents that are not examined individually in an administrative review. Section 735(c)(5)(A) of the Act states that the all-others rate should be calculated by averaging the weighted-average dumping margins for individually examined respondents, excluding rates that are zero, *de minimis,* or based entirely on facts available. When the rates for individually examined companies are all zero, *de minimis,* or based entirely on facts available, section 735(c)(5)(B) of the Act provides that Commerce may use "any reasonable method" to establish the all-others rate.

However, here, because both mandatory respondents were found to be part of the China-wide entity, there are no estimated weighted-average dumping margins calculated for exporters or producers individually examined in this review. Therefore, consistent with our practice,[7] we have assigned to the non-individually examined companies that demonstrated their eligibility for a separate rate the most recently assigned separate rate in this proceeding (*i.e.,* 0.00 percent).[8]

## China-Wide Entity

Under Commerce's current policy regarding the conditional review of the China-wide entity, the China-wide entity will not be under review unless a party specifically requests, or Commerce self-initiates, a review of the entity.[9] Because no party requested a review of the China-wide entity in this review, the entity is not under review and the entity's rate is not subject to change (*i.e.,* 76.46 percent).[10]

---

[5] *See Preliminary Results,* 85 FR 36831, 36832.

[6] *See* Issues and Decision Memorandum at Comment 6.

[7] *See, e.g., Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Successor-in-Interest Determination, and Final Determination of No Shipments; 2018–2019,* 86 FR 59987 (October 29, 2021), and accompanying IDM at Comment 1; and *Drawn Stainless Steel Sinks from the People's Republic of China: Preliminary Results of the Antidumping Duty Administrative Review; 2019–2020,* 86 FR 7363 (January 28, 2021), and accompanying PDM, unchanged in *Drawn Stainless Steel Sinks from the People's Republic of China: Final Results of the Antidumping Duty Administrative Review; 2019–2020,* 86 FR 18511 (April 9, 2021).

[8] *See Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2017–2018,* 85 FR 22396 (April 22, 2020).

[9] *See Antidumping Proceedings: Announcement of Change in Department Practice for Respondent Selection in Antidumping Duty Proceedings and Conditional Review of the Nonmarket Economy Entity in NME Antidumping Duty Proceedings,* 78 FR 65963 (November 4, 2013).

[10] *See Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China:*

## Final Results of Review

Commerce determines that the following weighted-average dumping margin exists for the period of August 1, 2018, through July 31, 2019:

| Exporter | Weighted-average dumping margin (percent) |
| --- | --- |
| Qingdao Fullrun Tyre Tech Corp., Ltd .. | 0.00 |
| Qingdao Powerich Tyre Co., Ltd ........... | 0.00 |
| Qingdao Sentury Tire Co., Ltd ............... | 0.00 |
| Shandong Linglong Tyre Co., Ltd ......... | 0.00 |
| Shandong Province Sanli Tire Manufactured Co., Ltd .......................... | 0.00 |
| Shandong Yongsheng Rubber Group Co., Ltd ................................................ | 0.00 |
| Shouguang Firemax Tyre Co., Ltd ........ | 0.00 |

## Disclosure

Normally, Commerce will disclose the calculations used in our analysis to parties in this review within five days of the date of publication of the notice of final results in the **Federal Register**, in accordance with 19 CFR 351.224(b). However, here, Commerce is applying a separate rate[11] and the China-wide rate[12] that were established in prior segments of the proceeding. Thus, there are no calculations on this record to disclose.

## Assessment Rates

Pursuant to section 751(a)(2)(C) of the Act, and 19 CFR 351.212(b), Commerce will determine, and CBP shall assess, antidumping duties on all appropriate entries of subject merchandise in accordance with the final results of this review. Commerce intends to issue assessment instructions to CBP no earlier than 35 days after the date of publication of the final results of this review in the **Federal Register**. If a timely summons is filed at the U.S. Court of International Trade, the assessment instructions will direct CBP not to liquidate relevant entries until the time for parties to file a request for a statutory injunction has expired (*i.e.,* within 90 days of publication).

For the final results, we will instruct CBP to apply an *ad valorem* assessment

---

*Amended Final Affirmative Antidumping Duty Determination and Antidumping Duty Order; and Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order,* 80 FR 47902, 47904, n.19 (August 10, 2015).

[11] *See Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2017–2018,* 85 FR 22396 (April 22, 2020).

[12] *See Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Amended Final Affirmative Antidumping Duty Determination and Antidumping Duty Order; and Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order,* 80 FR 47902 (August 10, 2015).

rate of 76.46 percent to all entries of subject merchandise during the POR that were exported by Qingdao Odyking and Shandong Longyue.

For the companies receiving a separate rate, we intend to assign an assessment rate of 0.00 percent, consistent with the methodology described above. Additionally, if Commerce determines that an exporter under review had no shipments of the subject merchandise, any suspended entries that entered under that exporter's CBP case number will be liquidated at the rate for the China-wide entity.

**Cash Deposit Requirements**

The following cash deposit requirements will be effective upon publication of the final results of this administrative review for all shipments of the subject merchandise from China entered, or withdrawn from warehouse, for consumption on or after the publication date, as provided for by section 751(a)(2)(C) of the Act for the three separate rate respondents that do not have a superseding cash deposit rate: [13] (1) for the exporters listed above, the cash deposit rate will be equal to the weighted-average dumping margin established in the final results of this review (except that, if the rate is *de minimis* (*i.e.,* less than 0.5 percent), then the cash deposit rate will be zero for that exporter); (2) for previously investigated or reviewed Chinese and non-Chinese exporters not listed above that have separate rates, the cash deposit rate will continue to be equal to the exporter-specific weighted-average dumping margin published of the most recently-completed segment of this proceeding; (3) for all Chinese exporters of subject merchandise that have not been found to be entitled to a separate rate, the cash deposit rate will be the rate for the China-wide entity, *i.e.,* 76.46 percent; and (4) for all exporters of subject merchandise which are not located in China and which are not eligible for a separate rate, the cash deposit rate will be the rate applicable to Chinese exporter(s) that supplied that non-Chinese exporter. These cash deposit requirements shall remain in effect until further notice.

Because Qingdao Sentury Tire Co., Ltd., Shandong Linglong Tyre Co., Ltd., Shandong Province Sanli Tire Manufactured Co., Ltd., and Shouguang Firemax Tyre Co., Ltd. have a superseding cash deposit rate, *i.e.* there

have been final results published in a subsequent administrative review, we will not issue revised cash deposit instructions to CBP for these companies. Thus, this notice will not affect the current cash deposit rate for these companies.

**Notification to Importers**

This notice serves as a final reminder to importers of their responsibility under 19 CFR 351.402(f)(2) to file a certificate regarding the reimbursement of antidumping and/or countervailing duties prior to liquidation of the relevant entries during this POR. Failure to comply with this requirement could result in Commerce's presumption that reimbursement of antidumping and/or countervailing duties occurred and the subsequent assessment of double antidumping duties, and/or an increase in the amount of antidumping duties by the amount of countervailing duties.

**Administrative Protective Order**

This notice also serves as a reminder to parties subject to an administrative protective order (APO) of their responsibility concerning the return or destruction of proprietary information disclosed under APO in accordance with 19 CFR 351.305(a)(3), which continues to govern business proprietary information in this segment of the proceeding. Timely written notification of the return or destruction of APO materials, or conversion to judicial protective order, is hereby requested. Failure to comply with the regulations and terms of an APO is a violation which is subject to sanction.

**Notification to Interested Parties**

We are issuing and publishing these final results of administrative review and notice in accordance with sections 751(a)(1) and 777(i) of the Act and 19 CFR 351.221(b)(5).

Dated: April 22, 2024.

**Ryan Majerus,**
*Deputy Assistant Secretary for Policy and Negotiations, performing the non-exclusive functions and duties of the Assistant Secretary for Enforcement and Compliance.*

**Appendix—List of Topics Discussed in the Issues and Decision Memorandum**

I. Summary
II. Background
III. Scope of the Order
IV. Changes from the *Preliminary Results*
V. Discussion of the Issues
　Comment 1: Whether to Modify the Rate for Separate Rate Respondents
　Comment 2: Whether to Deny a Separate Rate to Shandong Linglong Tyre Co., Ltd. (Linglong)

　Comment 3: Whether to Deny a Separate Rate to Qingdao Powerich Tyre Co., Ltd. (Qingdao Powerich)
　Comment 4: Whether to Deny a Separate Rate to Shandong Yongsheng Rubber Group Co., Ltd. (Shandong Yongsheng)
　Comment 5: Whether to Deny a Separate Rate to Qingdao Fullrun Tyre Tech Corp., Ltd. (Fullrun Tyre Tech)
　Comment 6: Whether Anchi Tyres Co., Ltd. (Anchi) and Qingdao Fullrun Tyre Corp., Ltd. (Fullrun Tyre) Have No Shipments and/or Qualify for a Separate Rate
VI. Recommendation

[FR Doc. 2024–09092 Filed 4–26–24; 8:45 am]

**BILLING CODE 3510–DS–P**

---

# DEPARTMENT OF COMMERCE

## International Trade Administration

**[C–570–167, C–533–927, C–580–920, C–583–877]**

## Certain Epoxy Resins From the People's Republic of China, India, the Republic of Korea, and Taiwan: Initiation of Countervailing Duty Investigations

**AGENCY:** Enforcement and Compliance, International Trade Administration, Department of Commerce.

**DATES:** Applicable April 23, 2024.

**FOR FURTHER INFORMATION CONTACT:** Nathan James (the People's Republic of China (China)), Eliza DeLong (India), Thomas Martin (the Republic of Korea (Korea)), and Whitley Herndon (Taiwan), AD/CVD Operations, Offices V, V, IV, and IX, Enforcement and Compliance, International Trade Administration, U.S. Department of Commerce, 1401 Constitution Avenue NW, Washington, DC 20230; telephone: (202) 482–5305, (202) 482–3878, (202) 482–3936, and (202) 482–6274, respectively.

**SUPPLEMENTARY INFORMATION:**

**The Petitions**

On April 3, 2024, the U.S. Department of Commerce (Commerce) received countervailing duty (CVD) petitions concerning imports of certain epoxy resins (epoxy resins) from China, India, Korea, and Taiwan filed in proper form on behalf of U.S. Epoxy Resin Producers *Ad Hoc* Coalition (the petitioner).[1] The CVD petitions were accompanied by antidumping duty (AD) petitions concerning imports of epoxy resins from

---

[13] These three companies are: Qingdao Fullrun Tyre Tech Corp., Ltd.; Qingdao Powerich Tyre Co., Ltd.; and Shandong Yongsheng Rubber Group Co., Ltd.

[1] *See* Petitioner's Letter, "Petitions for the Imposition of Antidumping and Countervailing Duties," dated April 3, 2024 (the Petitions). The members of the U.S. Epoxy Resin Producers *Ad Hoc* Coalition are Olin Corporation and Westlake Corporation.

# ATTACHMENT 4

Slip Op. 24-13

**UNITED STATES**
**COURT OF INTERNATIONAL TRADE**

Court No. 21-00595

AMERICAN MANUFACTURERS OF
MULTILAYERED WOOD FLOORING,

*Plaintiff*,

v.

UNITED STATES,

*Defendant*,

and

JIANGSU GUYU INTERNATIONAL
TRADING CO., LTD., *et al.*,

*Defendant-Intervenors.*

Before: M. Miller Baker, Judge

**OPINION**

[The court sustains the Department of Commerce's remand redetermination.]

Dated: February 8, 2024

*Mark Ludwikowski*, *Kelsey Christensen*, and *Sally Alghazali*, Clark Hill PLC of Washington, DC, on the comments for Defendant-Intervenors.

*Brian M. Boynton*, Principal Deputy Assistant Attorney General; *Patricia M. McCarthy*, Director; *Tara K.*

*Hogan*, Assistant Director; and *Brendan Jordan*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC, on the comments for Defendant. Of counsel on the comments was *Alexander Fried*, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce of Washington, DC.

*Timothy C. Brightbill*, *Maureen E. Thorson*, *Stephanie M. Bell*, *Tessa V. Capeloto*, and *Theodore P. Brackemyre*, Wiley Rein LLP of Washington, DC, on the comments for Plaintiff.

*Baker*, Judge: This matter returns following a remand for the Department of Commerce to reconsider its determination that a mandatory respondent in an administrative review of an antidumping order on Chinese wood flooring was ineligible for a separate rate. If the company were so eligible, Commerce then would have to recalculate the duty for separate-rate producers not selected as respondents.

On remand, Commerce concluded under protest that the mandatory respondent is eligible and accordingly recalculated the margin for non-investigated separate-rate companies. Finding that determination supported by substantial evidence, the court sustains it.

I

This case involves the 2018–2019 review of an antidumping order on multilayered wood flooring from

China.[1] In the preceding review, Commerce found that the Fusong Jinlong Group (Jinlong) had shown independence from the Chinese government and was therefore eligible for a separate rate. *See Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and New Shipper Review and Final Determination of No Shipments: 2017–2018*, 85 Fed. Reg. 78,118, 78,119 (Dep't Commerce Dec. 3, 2020).

When the Department opened the review at issue here, it stated that companies "selected as mandatory respondents . . . will no longer be eligible for separate rate status unless they respond" to a questionnaire. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 85 Fed. Reg. 6896, 6897 (Dep't Commerce Feb. 6, 2020), Appx1156.

Jinlong filed a "certification"—essentially, a form allowing for a streamlined renewal of its separate rate. Appx1075. The Department then selected it as a mandatory respondent and issued a questionnaire. In April 2020, the company advised that it was "unable to respond . . . for reasons associated with the ongoing COVID-19 health crisis." Appx1268.

---

[1] *See Multilayered Wood Flooring from the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 76 Fed. Reg. 64,318, 64,321 (Dep't Commerce Oct. 18, 2011).

Commerce denied the company's certification because of this failure. Appx1055–1056.[2] As a result, the Department calculated the separate rate for non-investigated entities based entirely on the zero percent duty assigned to the other mandatory respondent (which did receive a separate rate). Appx1057–1058.[3]

A group of domestic wood flooring producers then brought this suit challenging the Department's denial of Jinlong's certification and, relatedly, the calculation

---

[2] Jinlong instead received the 85.13 percent China-wide rate that applies by default to producers not eligible for a separate rate. Appx1013–1014.

[3] Neither the Tariff Act of 1930, as amended, nor Commerce's regulations address how the Department should establish the separate rate for companies not individually examined in an antidumping investigation or review of imports from a country with a nonmarket economy. In a case involving a market-economy country, the statute requires the Department to calculate an "all others" rate for non–individually investigated exporters and producers; that margin is to be "an amount equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated." 19 U.S.C. § 1673d(c)(5)(A). For a nonmarket-economy country such as China, Commerce uses the "all-others" mechanism to determine the separate rate. *See Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006, 1011 (Fed. Cir. 2017); *see also New Am. Keg v. United States*, Ct. No. 20-00008, Slip Op. 21-30, at 9 n.6, 2021 WL 1206153, at *3 n.6 (CIT Mar. 23, 2021) (explaining that "the 'separate rate' applied to eligible producers and exporters . . . is analogous to the 'all-others rate' applied to non-investigated companies from market economy countries"). The Department's final determination here cited that mechanism. Appx1034–1035.

method used for the non-investigated separate-rate companies. If Jinlong were certified, its duty—if greater than zero—would have the domino effect of raising the separate-rate companies' margins. In effect, the battle over Jinlong's eligibility is a proxy war waged by the domestic producers against non-investigated Chinese producers eligible for a separate rate, several of whom intervened to defend Commerce's decision.[4]

Following briefing and argument, the court found from the bench that the Department's denial of Jinlong's certification was unlawful. ECF 52, at 32:5–33:22 (transcript). "This is, by [the court's] lights, arbitrary and capricious under the [Administrative Procedure Act] because Commerce is treating similarly situated [entities[5]] differently" and because the Department failed to address the company's separate-rate certification on the merits. *Id.* at 33:13–18. "Rather[,] Commerce viewed it as inadequate . . . solely because [the company] had the bad luck to be chosen as [a] mandatory respondent and regardless of whether the certification would have been adequate had the company not been so chosen." *Id.* at 33:18–22. The court expressed concern that certification was sufficient for some companies but not for others: "Without a rational explanation, the [c]ourt cannot sustain Commerce's determination here." *Id.* at 34:3–9.

---

[4] Jinlong, however, did not intervene.

[5] The court misspoke when it used the term "respondents" rather than "entities."

## II

On remand, the Department reevaluated Jinlong's separate-rate eligibility under protest,[6] found it so eligible, and set a duty based on facts otherwise available with an adverse inference. Appx1300.[7] Commerce assigned the company a margin of 85.13 percent, the highest calculated rate for any respondent from a completed segment of the proceeding. Appx1307.[8]

The Department then had to calculate a margin for the companies that received separate rates without being individually investigated. The problem was that of the two mandatory respondents, one received a zero duty and the other (Jinlong) received a rate based entirely on facts otherwise available. Commerce noted that in such a circumstance, the statute allows it to "use any reasonable method . . . , including averaging the estimated weighted dumping margins determined for the exporters and producers individually in-

---

[6] "[W]hen Commerce advocates a position zealously and must abandon that position in order to comply with a ruling of the U.S. Court of International Trade, Commerce preserves its right to appeal if it adopts a complying position under protest." *Saha Thai Steel Pipe Pub. Co. v. United States*, 583 F. Supp. 3d 1350, 1353 (CIT 2021) (citing *Viraj Grp., Ltd. v. United States*, 343 F.3d 1371, 1376 (Fed. Cir. 2003)).

[7] For an explanation of facts otherwise available with an adverse inference, see *Hung Vuong Corp. v. United States*, 483 F. Supp. 3d 1321, 1336–39 (CIT 2020).

[8] This was the same rate assigned to the China-wide entity, *see above* note 2, so the net result for Jinlong remained unchanged.

vestigated." Appx1308–1309 (quoting 19 U.S.C. § 1673d(c)(5)(B)). The Department added that the Statement of Administrative Action accompanying the Uruguay Round Agreements Act (SAA)[9] states that the "expected method" in such cases "will be to weight-average" the zero, *de minimis*, and facts-otherwise-available margins, "provided that volume data is available." Appx1309 (quoting SAA, H.R. Doc. 103–316, vol. 1, at 873, 1994 U.S.C.C.A.N. 4040, 4201). If the "expected method" is not feasible, or results in a figure that is not reasonably reflective of potential dumping margins for non-investigated companies, the SAA allows the use of "other reasonable methods." SAA, H.R. Doc. 103–316, vol. 1, at 873, 1994 U.S.C.C.A.N. at 4201.

Because Jinlong did not answer the questionnaire, Commerce could not calculate a weighted average of the two rates. Appx1309. It therefore assigned the simple average—42.57 percent—as the separate rate for all eligible non-examined producers. *Id.*

In this litigation round, the private litigants have traded places. The domestic producers, who opposed the original determination, support the remand re-

---

[9] The SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application." *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 66 F.4th 968, 972 (Fed. Cir. 2023) (quoting 19 U.S.C. § 3512(d)).

sults, while Defendant-Intervenors, who supported that determination, now oppose them.

## III

The domestic producers brought this suit under 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (B)(iii). Subject-matter jurisdiction is conferred by 28 U.S.C. § 1581(c).

The standard of review for a remand redetermination is the same as that on previous review. *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (CIT 2002). In § 1516a(a)(2) actions, "[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). That is, the question is not whether the court would have reached the same decision on the same record—rather, it is whether the administrative record as a whole permits Commerce's conclusion.

> Substantial evidence has been defined as more than a mere scintilla, as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. To determine if substantial evidence exists, we review the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence.

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (cleaned up).

IV

Defendant-Intervenors argue that Commerce did not act arbitrarily and capriciously in the first instance by denying Jinlong a separate rate. ECF 65, at 5–6. The court, however, declines to reconsider its prior ruling to the contrary.

Defendant-Intervenors do not challenge the Department's decision to accept the company's certification on its own merits. They instead argue that even if Commerce properly assigned Jinlong a separate rate, the agency improperly calculated their margins by averaging the company's rate with the other mandatory respondent's. *Id.* at 7. Despite raising several theoretical policy concerns, *id.* at 8–10, they fail to address Congress's mandate (in the market-economy context) that Commerce apply the methodology used here[10] where all mandatory respondents eligible for a separate rate receive duties that are zero, *de minimis*, or based entirely on facts otherwise available. *See above* note 3. Defendant-Intervenors thus "cannot contend that methodology employing [such] margins is disfa-

---

[10] Commerce's only deviation from the "expected method" was that it used the simple average, rather than the weighted average, of the two rates assigned to the mandatory respondents. Appx1309. The Department explained that it did so because the lack of sales quantity and value data from Jinlong made calculating a weighted average impossible. *Id.* The SAA envisions this possibility by conditioning use of the "expected method" on whether "volume data is available." H.R. Doc. 103–316, vol. 1, at 873, 1994 U.S.C.C.A.N. at 4201. Commerce's reasoning therefore suffices to explain why the use of a simple average is a "reasonable method."

vored when Congress has unmistakably explained that it is, in fact, preferred." *Albemarle Corp. v. United States*, 821 F.3d 1345, 1354 (Fed. Cir. 2016).[11] As Plaintiffs explain, "While Intervenors argue that it was inherently unfair for Commerce to rely in part on an adverse rate in determining the non-examined companies' margins, such a position cannot be squared with Congress's expressed expectation that [the Department] do just that." ECF 66, at 6.

The government correctly observes that Defendant-Intervenors make "no arguments outside of critiquing the expected method itself." ECF 67, at 14. In that respect, their avenue for relief lies with Congress, not with this court. *See Wyeth v. Kappos*, 591 F.3d 1364, 1370 (Fed. Cir. 2010) ("[T]his court does not take upon itself the role of correcting all statutory inequities, even if it could. In the end, the law has put a policy in effect that this court must enforce, not criticize or correct.").

---

[11] The court also approvingly cited a case reasoning that because the statute specifically refers to averaging the zero, *de minimis*, and facts-otherwise-available rates "as the sole provided example of a 'reasonable method[,] . . .' [i]t is impermissible to interpret this provision as expressing a preference against the use of such methodology in such situations. This must particularly be the case when the SAA expressly states that the allegedly disfavored methodology is in fact the expected method in such cases." *Id.* at 1354 n.8 (cleaned up) (quoting *Amanda Foods (Vietnam) Ltd. v. United States*, 714 F. Supp. 2d 1282, 1291 (CIT 2010)).

*   *   *

For the reasons outlined above, the court sustains Commerce's redetermination. A separate judgment will issue. *See* USCIT R. 58(a).

Dated:  February 8, 2024      /s/ *M. Miller Baker*
         New York, NY          Judge