## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| YC RUBBER CO. (NORTH AMERICA) LLC, *et al*., | |
| Plaintiffs and Consolidated Plaintiffs, | Consol. Ct. No. 19-00069 |
| v. | **PUBLIC VERSION** |
| UNITED STATES, | |
| Defendant. | |

## <u>PLAINTIFFS' COMMENTS OPPOSING SECOND REMAND REDETERMINATION</u>

Ned H. Marshak
Jordan C. Kahn

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
599 Lexington Ave., 36th Floor
New York, New York 10022
**
1201 New York Ave., NW
Suite 650
Washington, DC 20005

*Counsel for Plaintiffs*
*YC Rubber (North America) LLC and*
*Sutong Tire Resources, Inc.*

Dated: December 18, 2024

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................... 1

II.     SUMMARY OF ISSUES ON SECOND REMAND ................................ 1

III.    BACKGROUND ON RESPONDENT SELECTION ............................... 2

        A.    THE UNDERLYING AR2 THROUGH COMMERCE'S 1ST REMAND .......... 2

        B.    THIS COURT'S SECOND REMAND ORDER AND COMMERCE'S 2ND
              REMAND ......................................................................................... 4

IV.     STANDARD OF REVIEW ....................................................................... 5

V.      COMMERCE UNLAWFULLY SELECTED RESPONDENTS ............... 5

        A.    COMMERCE UNDISPUTEDLY CONSIDERED A SUBSET OF KENDA
              RUBBER ENTRIES ......................................................................... 6

        B.    COMMERCE PRACTICE COMPELS AGGREGATING KENDA RUBBER
              ENTRIES ........................................................................................ 9

        C.    COMMERCE UNLAWFULLY FAILED TO COMBINE KENDA RUBBER
              ENTRIES ...................................................................................... 14

VI.     COMMERCE UNLAWFULLY DENIED SEPARATE RATES ............. 19

VII.    COMMERCE UNLAWFULLY DECLINED TO RESCIND AR2 .......... 19

VIII.   CONCLUSION ...................................................................................... 21

## Table of Authorities

**Cases**

*Gerald Metals, Inc. v. United States,*
   132 F.3d 716 (Fed. Cir. 1997)................................................................................. 15, 17

*Glycine & More, Inc. v. United States*,
   880 F.3d 1335 (Fed. Cir. 2018)................................................................................. 20

*Kyocera Solar v. United States*,
   253 F.Supp.3d 1294 (CIT 2017) ........................................................................ 13, 19

*Mittal Steel Point Lisas Ltd. v. United States*,
   548 F.3d 1375 (Fed. Cir. 2008)................................................................................. 18

*Nakornthai Strip Mill Pub. Co. v. United States*,
   32 CIT 1272 (CIT 2008) ............................................................................................ 5

*WelCom Prods., Inc. v. United States,*
   865 F.Supp.2d 1340 (CIT 2012) .............................................................................. 14

*YC Rubber v. United States,*
   2022 WL 3711377 (Fed. Cir. Aug. 29, 2022)........................................................... 3

*YC Rubber v. United States,*
   487 F.Supp.3d 1367 (CIT 2020) .......................................................................... 3, 20

*YC Rubber v. United States,*
   711 F.Supp.3d 1387 (CIT 2024) ........................................................... 4, 15, 16, 17

**Statutes**

19 U.S.C. § 1516a .......................................................................................................... 5, 15

**Federal Register Notices & Publications**

*Certain Cold-Rolled Steel Flat Products From the Republic of Korea: Preliminary Results of*
   *Countervailing Duty Administrative Review*, 86 Fed. Reg. 55,572 (Oct. 6, 2021).................. 10

*Certain Corrosion Inhibitors From the People's Republic of China: Preliminary Results of the*
   *Antidumping Duty Administrative Review*, 89 Fed. Reg. 22,994 (Apr. 3, 2024)............. 10, 12

*Certain Frozen Warmwater Shrimp From Thailand: Final Negative Countervailing Duty*
   *Determination*, 78 Fed. Reg. 50,379 (Aug. 19, 2013) ............................................. 9

*Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China: Final*
   *Results of Antidumping Duty Administrative Review and Final Determination of No*
   *Shipments*, 84 Fed. Reg. 17,781 (Apr. 26, 2019)....................................................... 2

*Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China:*
   *Preliminary Results of Antidumping Duty Administrative Review, Preliminary Determination*
   *of No Shipments, and Rescission, in Part*, 83 Fed. Reg. 45,893 (Sept. 11, 2018)............... 2, 19

*Forged Steel Fittings From the People's Republic of China: Preliminary Results of Antidumping*
   *Duty Administrative Review and Preliminary Determination of No Shipments*,
   86 Fed. Reg. 16,186 (Mar. 26, 2021) ................................................................... 10. 12

*Multilayered Wood Flooring From the People's Republic of China: Final Results of Antidumping*
   *Duty Administrative Review and Final Results of New Shipper Review* ........................... 10, 12

*Sugar From Mexico: Final Determination of Sales at Less Than Fair Value,*
   80 Fed. Reg. 57,341 (Sept. 23, 2015) ........................................................................ 9

## I.    <u>INTRODUCTION</u>

Plaintiffs YC Rubber (North America) LLC and Sutong Tire Resources, Inc. oppose the Department of Commerce's ("Commerce" or "Department") Remand Redetermination (Oct. 28, 2024), ECF112-13, 2RCR5, 2RPR15 ("2nd Remand"), in the second administrative review ("AR2") of the antidumping duty ("ADD") order on passenger vehicle and light truck tires ("PVLT") from the People's Republic of China ("China" or "PRC"). Commerce's assignment of the 87.99% PRC-wide rate to exporters from whom Plaintiffs imported PVLT during the AR2 period of review ("POR")—Linglong Tyre Co., Ltd. ("Linglong"), Shandong Wanda Boto Tyre Co., Ltd. ("Boto"), Shandong Hengyu Science & Technology Co., Ltd. ("Hengyu"), and Winrun Tyre Co., Ltd. ("Winrun")— is unlawful for the reasons addressed below.

## II.    <u>SUMMARY OF ISSUES ON SECOND REMAND</u>

1.    **Unlawful Respondent Selection**: Commerce on second remand selected respondents—both anew and continued from the prior remand—through a flawed methodology. Commerce on both remands improperly selected respondents using all POR entries, as opposed to only suspended entries. This issue is detailed in the comments on 2nd Remand filed by Consolidated Plaintiff ITG Voma Corp. ("Voma") contemporaneously herewith ("Voma's Comments"). Plaintiffs focus their comments on Commerce having continued to incorrectly rank respondents through an erroneous finding that former Plaintiff-Intervenor Kenda Rubber (China) Co., Ltd. ("Kenda Rubber") had the least amount of PVLT entered during the POR among exporters having suspended entries. Rather, per its agency practice as well as this Court's second remand order and the overarching substantial evidence requirement, Commerce was required to have ranked Kenda Rubber higher than exporters from which Plaintiffs sourced PVLT during the POR.

2.      **Unlawful Separate Rate Denial**: There is no legal basis to deny the separate rates for the exporters from which Plaintiffs sourced PVLT during the POR. Each satisfactorily demonstrated their entitlement to a separate rate during AR2, and their documented inability to participate as mandatory respondents on remand years after-the-fact—based on reasons that include bankruptcy, stale/destroyed records, and personnel turnover—does provide any basis to deny separate rates or find non-cooperation. Plaintiffs fully support Voma's Comments on this issue.

3.      **Unlawful Unwillingness to Rescind**: Review request withdrawals filed by Hengyu, Winrun, and Linglong should have been accepted, per Court of Appeals for the Federal Circuit ("CAFC") precedent and the unique circumstances in this case. Plaintiffs fully support the comments on 2nd Remand filed by Consolidated Plaintiff Mayrun Tire (H.K), Ltd. ("Mayrun") contemporaneously herewith ("Mayrun's Comments").

## III.      BACKGROUND ON RESPONDENT SELECTION

### A.      The Underlying AR2 Through Commerce's 1st Remand

Commerce in April 2018 selected two mandatory respondents. *PVLT from China*, 83 Fed. Reg. 45,893 (Sept. 11, 2018) ("*AR2 Preliminary Results*"), PR 225, Preliminary Decision Memorandum (Sept. 4, 2018), PRR 226 ("PDM"), at 11. After one company withdrew early on, Commerce continued with AR2 as to the only other respondent, whose 64.57% calculated ADD rate was assigned as the AR2 separate rate to, *inter alia*, Boto, Hengyu, Linglong, and Winrun— each of whom were found independent from government control after submitting information establishing their eligibility for a separate rate. *Id.*; Commerce Memorandum (Sept. 4, 2018), CR 298, PR 231 ("Separate Rate Memo"); PDM at 2-3; *PVLT from China*, 84 Fed. Reg. 17,781, 17,782-83 (Apr. 26, 2019) ("*AR2 Final Results*"). Commerce rejected arguments that it should have selected another respondent. Issues and Decision Memorandum (Apr. 19, 2019), PR276 ("IDM"), Comment 1.

Plaintiffs in May 2019 appealed alleging that Commerce unlawfully conducted AR2, and this Court in December 2020 affirmed. *YC Rubber v. United States*, 487 F.Supp.3d 1367 (CIT 2020). Plaintiffs appealed to the CAFC, which in August 2022 reversed this Court—finding that "Commerce erred in relying on a single entity for calculation of a dumping margin for all respondents." *YC Rubber v. United States*, 2022 WL 3711377, *4 (Fed. Cir. Aug. 29, 2022). The CAFC and this Court ordered remand. *Id*.; Order (Feb. 2, 2023), ECF72.

Immediately upon commencement of the remand proceeding, Commerce without first soliciting comments selected Boto. Commerce Respondent Selection Memorandum (Feb. 8, 2023), PRR1. Commerce found that Boto had the largest AR2 POR export volumes of those exporters with enjoined AR2 entries: Kenda Rubber; Boto; Mayrun; Boto; and Winrun— omitting Linglong, which also had enjoined entries. *Id*. Each in turn advised Commerce that they could not participate on remand due to the passage of time between AR2 and remand, for reasons including a lack key information and personnel, intervening bankruptcy, and records that had been destroyed or were otherwise unavailable. Letter from Hogan Lovells to Commerce (Feb. 16, 2023), PRR 9 ("Boto Response"); Letter from Gaopeng & Partners to Commerce (Feb. 24, 2023), PRR 16 ("Hengyu Response"), at 2. Letter from Curtis Mallet-Prevost, Colt & Mosle to Commerce (Feb. 24, 2023) ("Winrun Response"), at 1-2.

Finally, Commerce selected Kenda who, in contrast to other selected respondents, was able to participate. In November 2023, Commerce finalized its calculation of a 18.15% ADD rate for Kenda; found Boto, Hengyu, and Winrun to be part of the China-wide entity and assigned them the 87.99% PRC-wide ADD rate; and assigned a 41.36% separate rate to Linglong—which had been neither ranked nor selected by Commerce on remand. Remand Redetermination (Nov. 11, 2023), ECF112-13, PRR112 ("1st Remand"), at 36-37. Plaintiffs challenged the 1st Remand

PUBLIC VERSION

for Commerce having unlawfully selected respondents, *inter alia*.

## B.  This Court's Second Remand Order and Commerce's 2nd Remand

This Court in June 2024 invalidated Commerce's 1st Remand because, *inter alia*, the respondent selection was unsupported by substantial evidence, both respect to ranking Kenda Rubber last and omitting Linglong:

> In an effort to discern Commerce's reasoning, the court examined the underlying data Commerce cited for the companies' import volumes. . . . ***The data in that Excel attachment appears to support YC Rubber's argument that Kenda should have been selected second.*** . . . ***It appears to the court that Commerce failed to aggregate certain data entries with slightly different names.*** . . . While Commerce stated that it would "combine{} the export quantities of companies with minor variations in the spelling of their names," it is unclear which entries were combined, which were not, and how Commerce drew the line between minor and non-minor variations in names. . . .  At Oral Argument, **the Government** suggested that minor variations were limited to issues like the omission of periods in abbreviations or the omission of corporate abbreviations (like "Co.") but **was unable to confirm whether the distinct data entries actually represented distinct companies (that might ultimately be entitled to different rates)**.
>
> **{Q}uestions remain as to whether Linglong had a higher volume of entries for the relevant period**. . . . {I}f Kenda should have been selected second, then Linglong's omission would be harmless error but **the selections of Winrun, Mayrun, and Hengyu before Kenda would be erroneous. The Government all but ignores these nuances** by simply stating, without supporting data, that "{c}onsistent with its standard practice of respondent selection, Commerce initially selected the company with the largest volume of imports as a potential mandatory respondent and went down the list from there as needed." . . . **This statement assumes the list was accurately compiled and followed; however, the record evidence does not support that assumption**.  I this instance, it is not the practice that is the problem; it is the execution.

*YC Rubber v. United States*, 711 F.Supp.3d 1387, 1401 (CIT 2024) (emphases added) (citations omitted). Commerce in August 2024, without first soliciting comments, selected Linglong:

> The U.S. Customs and Border Patrol (CBP) data shows {Linglong} with entries of [          ] tires. Accordingly, we should have selected Linglong prior to Kenda Rubber . . . with entries of [     ] tires.

Commerce Respondent Selection Memorandum (Aug. 6, 2024), 2RCR1, 2RPR1.

4

Plaintiffs and Voma thereafter submitted comments, demonstrating that Kenda Rubber had greater entry volume than Linglong, and accordingly requested that Commerce rescind its selection of Linglong. Letter from Hogan Lovells & GDLSK to Commerce (Aug. 13, 2024), 2RCR2, 2RPR4 ("8/24 Respondent Selection Comments"). After Linglong explained that it was unable to participate due to the passage of time, Letter from GDLSK to Commerce (Aug. 15, 2024), 2RPR6 ("Linglong Response"), Commerce preliminarily assigned the China-wide ADD rate to Linglong and maintained that finding for Boto, Hengyu, and Winrun. Draft Results of Redetermination Pursuant to Court Remand (Sept. 6, 2024), 2RCR3, 2RPR7 ("Draft 2nd Remand"). Despite the challenge brought by Plaintiffs, Letter from Hogan Lovells & GDLSK to Commerce (Oct. 3, 2024), 2RCR4, 2RPR13, Commerce in October 2024 finalized this result. 2nd Remand at 35-36.[1]

## IV.    <u>STANDARD OF REVIEW</u>

"The court reviews remand determinations for compliance with the court's remand order." *Nakornthai Strip Mill Pub. Co. v. United States*, 32 CIT 1272, 1274 (CIT 2008). This Court must also hold unlawful a remand redetermination that is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## V.    <u>COMMERCE UNLAWFULLY SELECTED RESPONDENTS</u>

Commerce unlawfully selected respondents because:

A.  Commerce undisputedly based its selection on a subset of Kendra Rubber entries;

B.  Department practice requires consideration of all Kenda Rubber entries; and

C.  Commerce basing respondent selection on a subset of Kenda Rubber entries is unsupported by substantial evidence fails to comply with this Court's order.

---

[1]      Commerce also adjusted the PRC-wide ADD cash deposit rate, a decision with which Plaintiffs agree. 2nd Remand at 34-37.

PUBLIC VERSION

### A.     Commerce Undisputedly Considered a Subset of Kenda Rubber Entries

Commerce's respondent selection on second remand incorrectly failed to recognize that the quantity of tires exported by Kenda Rubber that entered the United States during the AR2 POR should have been [

]. Commerce Memorandum (Nov. 30, 2017), CR44, PR119 ("CBP Data"), Attachment 1. In fact, the CBP data released by Commerce at the outset of AR2 reveals the following volumes of tires imported from Kenda Rubber during the AR2 POR:

| [ | | ] |
|---|---|---|
| [ | | ] |
| [ | | ] |
| [ | | ] |

*Id*.

Indeed, the [

]. *Id*. Commerce' [

].

Overwhelming and unrebutted record evidence confirms that these entries [

]. Kenda Rubber reported the following universe of subject merchandise during the AR2 POR which Commerce used to calculate its ADD rate:

**Quantity and Value of Sales during the POR**

| Market:<br>United States | Unit | Quanity | Terms of Sale | Value in USD |
|---|---|---|---|---|
| 1. Export Price | [ | | | ] |
| 2. Constructed Value | [ | 300,000.00 | | ] |
| 3. Furthur Manufactured | [ | | | ] |
| Total | [ | | | 25,000,000.00 ] |

Kenda Rubber Supplemental Section C Questionnaire Response (June 22, 2023), CRR96-99, PRR84 ("SCQR"), Exhibit SC-2.

PUBLIC VERSION

The quantity reported establishes that Kenda Rubber [                                        ] tires during the AR2 POR. Rather, the only plausible reading of the record is that the Kenda Rubber exports reflected in the CBP dataset include [

                                                                ] tires reported by Kenda Rubber on which Commerce's ADD calculations were based.[2]

Moreover, the types of sales reported by Kenda Rubber confirm the impropriety of Commerce's respondent selection. Kenda Rubber reported that [

                                ]. This is because the [

                                        ]. In fact, record evidence confirms that Kenda Rubber reported [

                                ]:

---

[2]    It is not uncommon to see such [

        ] percent of the reported quantity is reasonable. By contrast, record evidence refutes the suggestion that during the POR Kenda Rubber exported [                                        ] percent of the reported quantity used in Commerce's ADD calculations for the same company.

PUBLIC VERSION

[

]

Kenda Rubber Section C Questionnaire Response (May 2, 2023) ("CQR"), CRR35-58, PRR55,

Exhibit C-13. This entry is reflected and corroborated in the CBP data:

[

]

CBP Data Attachment 1.

The record before Commerce thus demonstrates that Kenda Rubber reported exporting tires during the AR2 POR that in the CBP dataset were [

]. *Compare* CQR Exhibit C-13, *with* CBP Data Attachment 1. Specifically, the [

]. Kenda Rubber Section A Questionnaire Response (Apr. 17, 2023), CRR5-15, PRR48-50, at 1; CQR Exhibit C-13; CBP Data Attachment 1.

Commerce itself recognizes that Kendra Rubber had [      ] more POR entries than it used in respondent selection:

> Commence ultimately determined that Kenda Rubber . . . sold [      ] tires during the POR, a volume significantly higher than shown in the CBP data used for respondent selection Similarly, YC Rubber also notes that Kenda Rubber . . . reported [      ] tires exported during the POR . . . .

2nd Remand at 23. Accordingly, there is no dispute that Commerce used [

] subset of Kenda Rubber entries when selecting respondents on remand.

## B.    Commerce Practice Compels Aggregating Kenda Rubber Entries

Commerce practice when evaluating export volumes for respondent selection "routinely accounts for minor variations in company names and aggregates CBP data related to the same company." *Sugar from Mexico*, 80 Fed. Reg. 57,341 (Sept. 23, 2015) (final determination), IDM at 12 n.53. This established Department practice includes company names having "minor punctuation or spelling difference{s}," *Frozen Warmwater Shrimp from Thailand*, 78 Fed. Reg. 50,379 (Aug. 19, 2013) (final determination) ("*Shrimp from Thailand*"), IDM at 62, as well as inconsistent parenthetical information. *Forged Steel Fittings from China*, 86 Fed. Reg. 16,186

(Mar. 26, 2021) (preliminary results) ("*FSF from China*"), PDM at 1 n.2.

When undertaking this exercise, Department practice "combine{s} the entry quantities . . . based on its company specific case number which appear in the CBP data." *Certain Cold-Rolled Steel Flat Products* ("*CRS*") *from Korea*, 86 Fed. Reg. 55,572 (Oct. 6, 2021) (preliminary results), PDM at 2 n.11. Moreover, "although CBP data queries are an important tool . . . , the Department has recognized that these same data are not always complete or conclusive." *Multilayered Wood Flooring* ("*MFLF*") *from China*, 80 Fed. Reg. 41,476 (July 15, 2015) (final results), IDM Comment 5. Accordingly, Commerce practice is to place CBP data on the record, and allow for the submission of record evidence concerning which CBP data entries should be combined for respondent selection purposes. *See, e.g.*, *Corrosion Inhibitors from China*, 89 Fed. Reg. 22,994 (Apr. 3, 2024) (preliminary results), PDM at 2. Evidence concerning the appropriate combination of CBP data entries can and will be considered in respondent selection; Commerce does not insist on rigid disaggregation based on company nomenclature in CBP data when the record provides a compelling evidentiary basis to combine entries.

Commerce's practice accordingly compels aggregation of the entries from Kenda Rubber and [

]. As an initial matter, [

]. Commerce responds that "the fact that entries for Kenda Rubber . . . and [                                         ] is not,

in an of itself, a compelling reason for combining the two sets of entries. 2nd Remand at 21. Yet this fact does provide a compelling basis to aggregate considering the amount of Kenda Rubber sales reported, detailed above, and examination of the CBP data against that record evidence.

Commerce declined to combine these entries, finding that "the word [        ] is a significant word in Kenda Rubber{}'s official name. 2nd Remand at 23. Commerce claimed a lack of "information on the record to support YC Rubber's contention that the word '[        ]' . . . is merely a reference to [                    ]. *Id.* at 22. However, such evidence exists because all such entries [

    ]. Section V.A, *supra*. It defies credulity to accept that Kenda Rubber's [

    ]

on CBP entry documentation, albeit [                    ]. The evidence that Commerce claims absent was in fact presented, as it recognizes: "YC Rubber also points out that the volume of {EP} sales and {CEP} sales in the U.S. database." 2nd Remand at 23.

*Shrimp from Thailand* cited by Commerce is inapposite, finding that: "the differences in the names in the CBP data were not a minor punctuation or spelling difference but **the significant difference of the omission of a substantive word**. We found this significant difference in the names to be a determinative factor in our decision, and we **did not proceed to combine such entries based on the other details attached to these specific entries**." 78 Fed. Reg. 50,379, IDM at 62 (emphases added). Unlike that case where the substantive word constituted a "significant difference," here [

]. Moreover, unlike *Shrimp from Thailand*, there are no "other details attached to these specific entries" that support treating the entries." *Id*. Instead, all "other details attached to these specific entries"—namely, the [

] compel combination. Indeed, [

].

Commerce practice can and does consider record evidence demonstrating the propriety of combining CBP data entries for purposes of respondent selection, which here compel aggregating Kenda Rubber entries. *See, e.g.*, *Corrosion Inhibitors from China*, 89 Fed. Reg. 22,994, PDM at 2. Commerce's finding that Linglong had more export volume than Kenda Rubber contradicted overwhelming, undisputed record evidence. Section V.A, *supra*. This is accordingly a situation where, as Commerce "has recognized," the CBP "data are not . . . complete or conclusive." *MFLF from China*, 80 Fed. Reg. 41,476 IDM Comment 5. Commerce unpersuasively endeavors to justify its selection by claiming the record confirms Kenda Rubber's full company name. 2nd Remand at 23. Commerce practice does not insist on rigid insistence on the specific company name in CBP data when the record provides a compelling evidentiary basis to combine entries that obviously belong to that same company, as here with Kenda Rubber.

Commerce next claims to have implemented its practice with respect to Kenda Rubber with reference to [      ]: "Commerce did not include volumes for [

] when aggregating entries, as we did not consider "the words [                    ]" to constitute minor name variations. 2nd Remand at 5, 22, This demonstration fails to support Commerce's ranking of Kenda Rubber:

PUBLIC VERSION

- Such entries omit the word [     ], which is a critical part of the name. The proper analogy would be if Commerce declined to aggregate Kenda Rubber with entries omitting the name Kenda, and not the action that Commerce took here.

- [                    ] do not otherwise appear in the [          ] in the [           ] entries, and those words do not appear [            ];

- Aggregating these entries "would not have changed . . . selection order," 2nd Remand at 4—unlike with Kenda Rubber, where declining to aggregate [          ] changed the export volume ranking order; and

- There is no evidence that the volumes attributed by these companies were in fact entered by [                            ], as there undisputably is for Kenda Rubber.

Unlike [     ], Kenda Rubber having been reviewed on first remand presents a unique situation where its reported sales information was on the record when Commerce subsequently selected Linglong on second remand. Moreover, Commerce concedes its failure to follow practice: "Commerce's practice is to place CBP data on the record, and allow for the submission of record evidence concerning which CBP data entries should be combined for respondent selection purposes." 2nd Remand at 20. Although Commerce did so early in AR2, it declined to follow this practice during either respondent selection on remand by announcing its selection without soliciting this important input. Commerce compounded this procedural error on its second remand by disregarding critical record evidence concerning Kenda Rubber's reported sales that invalidated its finding that Linglong had more entries of PVLT during the POR.

Commerce again concedes its failure to follow practice by citing this Court's finding "that under the statute 'respondent selection determination must be based on information that *is known and available at the time of selection*.'" 2nd Remand at 25 (emphasis in original) (quoting *Kyocera Solar v. United States*, 253 F.Supp.3d 1294, 1318 (CIT 2017)). Commerce selected Linglong in August 2024, and Kenda Rubber's CQR reported U.S. sales in May 2023—meaning

the record undisputedly refuting Commerce's ranking of Linglong export volume was "*known and available at the time of selection*" that occurred well over a year afterwards. *Id.*

In short, Commerce practice required that Kenda Rubber entries be aggregated with those of [                    ]. The differences are minor using [


          ]; and extensive undisputed, record evidence at the time Linglong was selected confirms that the [      ] Kenda Rubber [      ], in fact, are one and the same. It is axiomatic that where—as occurred in the 2nd Remand—"the Department provides no reasonable explanation for changing a practice that it has consistently followed, **such a change is an unacceptable agency practice**." *WelCom Prods., Inc. v. United States,* 865 F.Supp.2d 1340, 1344 (CIT 2012). Commerce's claims to have followed a coherent practice throughout AR2 is refuted by its own acknowledged reaggregation of entries for respondents other than Kenda Rubber. 2nd Remand at 4, 37, nn.175, 178. Moreover, Commerce practice aside, as set forth below, the Linglong selection violates this Court's remand order and is otherwise not in accordance with law.

### C.    Commerce Unlawfully Failed to Combine Kenda Rubber Entries

Commerce improperly engages in temporal sleight of hand to avoid combining Kenda Rubber entries: "Here, **at the time of respondent selection in the *First Remand Results***, the record showed that Kenda Rubber (China) Co., Ltd. rather than [                    ] was the name of the company subject to the underlying review." 2nd Remand at 5.[3] Yet **Commerce was**

---

[3]      Commerce also emphasizes the "name of the company subject to the . . . underlying injunction." 2nd Remand at 5. Yet [                                 ] Kenda Rubber would not have participated on remand if the [                          ] entries already liquidated. Moreover, concerns over which Kenda Rubber entries were suspended provides a compelling basis for Commerce to have selected respondents using suspended entry volume, as set forth in Voma's Comments.

**tasked with defending its respondent selection on second remand, with the then-existing record**, and not going back in time to defend its selection at an earlier point in time.

As an initial matter, Commerce's selection of Linglong must have been based on the existing record evidence; it does not matter whether Commerce "should have selected Linglong prior to selecting Kenda in the *First Remand Results*." *Id*. at 6. Commerce acknowledged that this Court "questioned the order in which Commerce selected" respondents on remand, in part because "Commerce neglected to include {Linglong}." *Id*. at 1. Accordingly, any selection of Linglong anew on second remand must have been based on the then-existing record. Commerce unpersuasively retorts that "the Court did not instruct Commerce to consider Kenda Rubber . . .'s questionnaire responses in determining whether Linglong had a higher volume of entries than Kenda Rubber . . . for the relevant period." 2nd Remand at 26. Yet it is axiomatic that remand redeterminations must be support by substantial evidence. 19 U.S.C. § 1516a(b)(1)(B)(i). Commerce's disregard for Kenda's U.S. sales reporting invalidates its having selected Linglong "without taking into account contradictory evidence." *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (quotation omitted).

Moreover, this Court tasked Commerce with defending its overall respondent selection in finding that the CBP data "**appears to support YC Rubber's argument that Kenda should have been selected second**. . . . **It appears to the court that Commerce failed to aggregate certain data entries with slightly different names**." *YC Rubber*, 711 F.Supp.3d at 1401 (emphasis added). This Court found that Defendant "**was unable to confirm whether the distinct data entries actually represented distinct companies (that might ultimately be entitled to different rates)**." *Id*. (emphasis added). This Court further observed that "questions remain as to **whether Linglong had a higher volume** of entries for the relevant period," such

that with record evidence establishing that "Kenda should have been selected second, . . . **the selections of Winrun, Mayrun, and Hengyu before Kenda would be erroneous**." *Id*. (emphasis added). Finally, this Court invalidated Defendant's unsupported statement claiming to follow agency practice listing companies by export volume: "**This statement assumes the list was accurately compiled and followed; however, the record evidence does not support that assumption**. In this instance, it is not the practice that is the problem; it is the execution." *Id*. (emphasis added).

This Court thereby expressly required that on second remand, Commerce provide "**record evidence**" to assess **"whether Linglong had a higher volume"** and to support its invalidated finding that, with respect to Kenda Rubber entries in the CBP data, "**the distinct data entries represented distinct companies (that might ultimately be entitled to different rates)**." *Id*. (emphasis added). No such evidence exists; the record overwhelmingly and indisputably confirms that Linglong had fewer entries and the Kenda Rubber entries were from the same company. Section V.A, supra. Indeed, "Commerce determined that Kenda Rubber (China) Co., Ltd. sold [      ] tires during the POR, a volume significantly higher than that shown in the CBP data." 2nd Remand at 6. This uncontroverted record evidence cannot be disregarded through reference to Commerce practice, as this Court found: "it is not the practice that is the problem." *YC Rubber*, 711 F.Supp.3d at 1401. Nor can Commerce disregard record evidence through temporal sleight of hand, as it was required to defend its selection of Kenda Rubber on second remand with the then-existing record. Compliance with this Court's remand order therefore required engaging with the record evidence as it stood, and not going back in time to before Kenda Rubber was reviewed.

Commerce not only failed to support its ranking of Kenda Rubber entries, but acted in

contradiction of evidence establishing that the Kenda Rubber entries are [

]. The substantial evidence standard requires "taking into account

contradictory evidence." *Gerald Metals*, 132 F.3d at 720. Pretending such evidence does not

exist by relocating the decision-making to an earlier point in time does not take the reported

Kenda Rubber sales information into account in any meaningful sense, particularly when

Commerce on second remand selected a new respondent and was ordered by this Court to

provide affirmative record evidence supporting its prior unwillingness to combine Kenda Rubber

entries. This Court ordering second remand for the Kenda Rubber selection and Commerce

having selected another respondent thereon refutes the characterization of Plaintiffs' challenge

on this live issue as "*post hoc* arguments." 2nd Remand at 19.

Commerce improperly faults others in its effort to justify the fundamentally flawed

respondent selection: "parties did not comment on the CBP data with respect to Kenda in the

underlying administrative review or the first remand." 2nd Remand at 6. Yet Commerce's initial

respondent selection in 2017 is inapposite, as there was no reason **more than seven years ago**

for parties to have commented on Kenda Rubber entries. Moreover, this Court expressly found

that Defendant waived any exhaustion argument with respect to parties not having raised the

Kenda Rubber combination issue during the first remand proceeding: "**the Government has**

**waived any failure-to-exhaust claim, so YC Rubber's argument is properly before the court**

**now**." YC Rubber, 711 F.Supp.3d at 1402 n.16 (emphasis added).

In both remand proceedings, Commerce declined to solicit comments on CBP data before

selecting respondents—an acknowledged deviation from its normal practice that deprived parties

of a specific opportunity to provide input on the most critical issue throughout this appeal. 2nd

Remand at 20 Plaintiffs and Voma, on their own initiative, filed comments **before** Commerce

issued its Draft 2nd Remand. 8/24 Respondent Selection Comments.  Accordingly, Plaintiffs

"raise{d} the issue **at the appropriate time on remand**" as necessary "to exhaust {their}

administrative remedies before Commerce." *Mittal Steel Point Lisas Ltd. v. United States*, 548

F.3d 1375, 1384 (Fed. Cir. 2008) (emphasis added). Commerce accordingly was able to consider

those comments with respect to its selection of Linglong. While Commerce emphasizes that the

SCQR was filed "105 days after Commerce selected Kenda Rubber," 2nd Remand at 23,

Commerce's selection of Linglong occurred **463 days after** the CQR evidenced that Linglong

had [                    ] less export volume than Kenda Rubber during the AR2 POR.

   The determination whether to aggregate Kenda Rubber entries on second remand was

required to have been supported by affirmative record evidence. This obligation could not be

avoided through reference to either the first remand proceeding or to the ordinary manner in

which respondents are selected in other proceedings, despite Commerce's effort to do so:

> {R}espondent selection decisions are **made early in a segment prior to
> development a fulsome record** . . . . **Commerce does not normally reconsider
> the order** of our respondent selection after respondents submit their questionnaire
> responses. . . .
>
> Indeed, **we do not typically receive additional information** regarding the
> mandatory respondent's quantity and volume of subject merchandise exports until
> after we select the respondent as a mandatory based on CBP data.

2nd Remand at 6, 24 (emphases added).

   This case is the antithesis of "normal{}" and "typical." *Id*.  Here, Commerce was ordered

to defend its respondent selection—and in fact selected another respondent—on second remand,

very late in a segment after "developing a fulsome record" as to Kenda Rubber. *Id*. Thus, it

should have on second remand "reconsider{ed} the order of {its} respondent selection" after

Kenda Rubber submitted its "questionnaire responses." *Id*. Commerce did in fact "receive

additional information regarding" Kenda Rubber long before it conducted respondent selection

on second remand; such sales data were "available *at the time*" that Commerce selected

Linglong. *Id*. at 24. Commerce misplaces reliance on this Court's precedent involving a request

to reconsider respondent selection during the course of an investigation based on a scope

modification in that final determination. *Id*. at 25 (citing *Kyocera*, 253 F.Supp.3d at 1298). Such

a situation has no applicability where Commerce conducted respondent selection on second

remand in disregard of the record developed on first remand. *Kyocera* is therefore inapposite.

In short, Commerce compounded its chronic unlawful respondent selection methodology

in AR2 by persisting with its unwillingness to combine Kenda Rubber entries on second remand.

This action failed to provide the affirmative supporting evidence required by statute and this

Court, in contradiction of overwhelming record evidence, resulting in agency action unsupported

by substantial evidence.

## VI.   COMMERCE UNLAWFULLY DENIED SEPARATE RATES

Commerce unlawfully denied the separate rates of Boto, Hengyu, Winrun, and Linglong,

for the reasons set forth in Voma's Comments. Each of these exporters was assigned a separate

rate based on their Separate Rate Certifications ("SRC") evidencing a lack of control by the

Chinese government. *AR2 Preliminary Results*, 83 Fed. Reg. 45,895; Separate Rate Memo; Boto

SRC (Nov. 15, 2017), PR93-94; Winrun SRC (Nov. 10, 2017), PR63; Hengyu SRC (Nov. 12,

2017), PR65; Linglong SRC (Nov. 14, 2017), PR76. That these exporters were unable to

participate as mandatory respondents years after-the-fact—for reasons that include bankruptcy,

stale/destroyed records, and personnel turnover—does not provide any legal of factual basis to

treat them as part of the China-wide entity in AR2. Boto Response; Hengyu Response; Winrun

Response; Linglong Response.

## VII.   COMMERCE UNLAWFULLY DECLINED TO RESCIND AR2

Commerce unlawfully declined to accept the withdrawal requests filed by Hengyu,

Winrun, and Linglong, for the reasons set forth in Mayrun's Comments. Each submitted

withdrawal requests during AR2. Letter from Curtis, Mallet-Prevost, Colt & Mosle to Commerce

(Oct. 2, 2018), CR306-07, PR239; Letter from GDLSK to Commerce (Oct. 25, 2018), PR 251;

Letter from Gaopeng & Partners to Commerce (Nov. 6, 2018), PR 254.[4] Commerce should have

granted these withdrawal requests in AR2, because of: (1) Commerce not expending resources to

review the respondent seeking rescission when the late withdrawal was filed; and (2) the final

results of the preceding review not knowable until well after expiration of the deadline—

satisfaction of both CAFC criteria, *Glycine & More, Inc. v. United States*, 880 F.3d 1335, 1338-

45 (Fed. Cir. 2018); Plaintiffs' Comments on 1st Remand (Feb. 2, 2024), ECF89-90, at 22-24.

While this Court disagreed, *YC Rubber*, 487 F.Supp.3d at 1384-86, the CAFC declined to

address the issue. *YC Rubber*, 2022 WL 3711377, *5. On remand, Hengyu, Winrun, and

Linglong each renewed their withdrawal requests. Hengyu Response; Winrun Response;

Linglong Response. This Court ordered Commerce reconsideration of its failure to address the

renewed bases for withdrawal. *YC Rubber*, 487 F.Supp.3d at 1405-06.

　　　　Commerce should have granted these withdrawal requests on second remand. The bases

for granting the AR2 withdrawals are compelling given the unique circumstances surrounding

this litigation; that is, exporters could not participate as mandatory respondents years after-the-

fact due to the passage of time caused by Commerce violating its statutory mandate and seeking

unused extensions for CAFC reconsideration. Accordingly, Commerce's continued,

unreasonable refusal to grant the requested rescissions is unsupported by substantial evidence.

---

[4]　　　　Importer American Pacific Industries, Inc. ("API") also withdrew its review for Hengyu, although that request was invalid because API failed to submit an entry summary establishing the importation of subject merchandise—as Commerce practice requires. Letters from Tuttle Law to Commerce (Aug. 30, 2017, Nov. 28, 2017 & Nov. 9, 2018), PR35, PR118, PR266.

PUBLIC VERSION

## VIII.  <u>CONCLUSION</u>

Based on the foregoing, Plaintiffs request that this Court invalidate Commerce's 2nd

Remand, direct Commerce to take action consistent with the arguments set forth by Plaintiffs

herein, as well as the arguments set forth in Voma's Comments and Mayrun's Comments filed

contemporaneously herewith.

<div style="margin-left: 40%;">

Respectfully submitted,

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

<u>/s/ Jordan C. Kahn</u>
Ned H. Marshak
Jordan C. Kahn*

599 Lexington Ave., 36th Floor
New York, New York 10022
**
1201 New York Ave., NW*
Suite 650
Washington, DC 20005

*Counsel for Plaintiffs*
*YC Rubber (North America) LLC and*
*Sutong Tire Resources, Inc.*

</div>

Dated: December 18, 2024

21

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Plaintiffs' Comments on Remand Redetermination, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's word processing system Microsoft Word 2007, is 5,939 words, less than the 6,000 word limit.

<u>/s/ Jordan C. Kahn</u>

*Counsel for Plaintiffs*
*YC Rubber (North America) LLC and*
*Sutong Tire Resources, Inc.*

Dated: December 18, 2024

50619_1