**UNITED STATES COURT OF INTERNATIONAL TRADE**
**NEW YORK, NEW YORK**

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| YC RUBBER CO. (NORTH AMERICA) LLC, SUTONG TIRE RESOURCES INC., MAYRUN TYRE (HONG KONG) LIMITED, and ITG VOMA CORPORATION, <br><br>     Plaintiffs and Consolidated Plaintiffs, <br><br>     v. <br><br> UNITED STATES, <br><br>     Defendant. | Consol. Court No. 19-00069 |

**COMMENTS OF ITG VOMA CORPORATION OPPOSING**
**SECOND REMAND REDETERMINATION**

Jonathan T. Stoel
Craig A. Lewis
Nicholas R. Sparks

HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-6634

*Counsel to ITG Voma Corporation*

Dated: December 18, 2024

## <u>TABLE OF CONTENTS</u>

**Page**

ARGUMENT ................................................................................................................. 2

I.     THE SECOND REMAND DETERMINATION FAILS TO ACCOUNT FOR
SUSPENDED ENTRIES IN ITS FLAWED RESPONDENT SELECTION
METHODOLOGY ................................................................................................ 3

II.    THE SECOND REMAND DETERMINATION UNLAWFULLY DENIES
RESPONDENTS' SEPARATE RATE STATUS ........................................................... 6

      A.    Commerce May Not Deny Separate-Rate Status Based on Questions Unrelated to
Government Control, Particularly at this Late Date ................................................ 7

      B.    Commerce's Denial of Separate-Rate Status Is Unduly Punitive and Arbitrary and
Capricious ...................................................................................................... 12

CONCLUSION ........................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acquisition 362, LLC, d.b.a., Strategic Import Supply, LLC, v. United States,*
    719 F. Supp. 3d 1338 (Ct. Int'l Trade 2024) ............................................................4

*Am. Manufacturers of MLWF v. United States*,
    No. 21-00595, Remand Order (Ct. Int'l Trade Mar. 21, 2023) ...............................11

*Am. Manufacturers of MLWF v. United States*,
    No. 21-00595, Remand Determination (Ct. Int'l Trade Aug. 8, 2023) ..................11

*Am. Manufacturers of MLWF v. United States,*
    No. 21-00595, 2024 WL 489474 (Ct. Int'l Trade Feb. 8, 2024) .......................11, 13

*Changzhou Hawd Flooring Co. v. United States,*
    44 F. Supp. 3d 1376 (Ct. Int'l Trade 2015) ...........................................................12

*Consol. Bearings Co. v. United States,*
    348 F.3d 997 (Fed. Cir. 2003)...................................................................................6

*Hubbell Power Sys., Inc. v. United States*,
    365 F. Supp. 3d 1302 (Ct. Int'l Trade 2019) ........................................................10

*Linyi Chengen Imp. & Exp. Co. v. United States*,
    609 F. Supp. 3d 1392 (Ct. Int'l Trade 2022) ........................................................14

*Nakornthai Strip Mill Pub. Co. v. United States*,
    32 CIT 1272 (Ct. Int'l Trade 2008) ..........................................................................2

*SeAH Steel VINA Corp. v. United States*,
    182 F. Supp. 3d 1316 (Ct. Int'l Trade 2016) ..........................................................5

*SKF USA Inc. v. United States*,
    263 F.3d 1369 (Fed. Cir. 2001)................................................................................5

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
    783 F. Supp. 2d 1343 (Fed. Cir. 2011) ..................................................................15

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
    716 F.3d 1370 (Fed. Cir. 2013)...............................................................................15

*YC Rubber Co. (N. Am.) LLC v. United States*,
    No. 2021-1489, 2022 WL 3711377 (Fed. Cir. Aug. 29, 2022) ...........................2, 15

*YC Rubber Co. (N. Am.) LLC v. United States*,
    711 F. Supp. 3d 1387 (Ct. Int'l Trade 2024) .................................................. *passim*

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i).................................................................2

19 U.S.C. § 1677e(b) ........................................................................14

19 U.S.C. § 1677f–1(c)(2) ...................................................................6

**Administrative Materials**

*Certain Frozen Warmwater Shrimp From the Socialist Republic of Vietnam,*
    83 Fed. Reg. 46,704 (Dep't Commerce, Sept. 14, 2018)........................8

*Multilayered Wood Flooring From the People's Republic of China,*
    86 Fed. Reg. 59,987 (Dep't Commerce, Oct. 29, 2021).........................8

*Forged Steel Fittings From the People's Republic of China,*
    88 Fed. Reg. 85,221 (Dep't Commerce, Dec. 7, 2023).........................5

*Ceramic Tile from the People's Republic of China,*
    89 Fed. Reg. 95,175 (Dep't of Commerce, Dec. 2, 2024).......................5

**COMMENTS OF ITG VOMA CORPORATION OPPOSING**
**SECOND REMAND REDETERMINATION**

ITG Voma Corporation ("ITG Voma"), a U.S. importer of subject merchandise and a consolidated plaintiff in this appeal, respectfully submits the following comments opposing the U.S. Department of Commerce ("Commerce" or the "Department") Final Results of Redetermination Pursuant to Court Remand (Oct. 28, 2024), Consol. Court No. 19-00069, Slip Op. 24-74 (CIT June 18, 2024), ECF Nos. 112-113 ("Second Remand Determination"). The Second Remand Redetermination is both unlawful and unsupported by substantial evidence for the reasons that follow.

On June 18, 2024, this Court remanded Commerce's First Remand Results, ordering the agency to reconsider, *inter alia* – (1) "its method of selecting the second mandatory respondent," and (2) its "decision to rescind the separate status of {Shandong Wanda Boto Tyre Co., Ltd ("Wanda Boto"), Mayrun Tyre (Hong Kong) Limited ("Mayrun"), Shandong Hengyu Science & Technology Co., Ltd ("Hengyu"), and Winrun Tyre Co., Ltd ("Winrun")}." *YC Rubber Co. (N. Am.) LLC v. United States*, 711 F. Supp. 3d 1387 (CIT 2024), Slip Op. 24-74 at 35. In this Second Remand Determination, Commerce has once again reached an unlawful and unduly punitive finding that refuses to correct its errors with respect to respondent selection and its failure to recognize respondents' continued eligibility for separate-rate status.

Specifically, Commerce has again unreasonably denied the separate-rate status of Wanda Boto, Hengyu, Mayrun, Winrun, and Linglong Tyre Co., Ltd. ("Linglong") and found that their selection as respondents before Kenda Rubber followed a reasonable respondent selection methodology. Second Remand Determination at 17, 30. The agency continues to insist that it is appropriate and lawful to now assign these entities the China-wide rate of 87.99 percent for the 2016-2017 review period because they were not positioned to participate fully as mandatory respondents before Commerce in 2023, six years after the period in question ended. This delay

could have been avoided had Commerce correctly selected a replacement respondent when conducting the administrative review back in 2018 (as the U.S. Court of Appeals for the Federal Circuit found was necessary in *YC Rubber Co. (N. Am.) LLC v. United States*, No. 2021-1489, 2022 WL 3711377 (Fed. Cir. Aug. 29, 2022)).

The Court should once again instruct the agency to correct its flawed determination, in particular by – (1) accounting for the volume of suspended entries in its respondent selection methodology, and (2) recognizing that producers such as Wanda Boto remain entitled to a separate rate and should be assigned a reasonably reflective separate-rate margin. ITG Voma observes that Plaintiffs and Consolidated Plaintiff YC Rubber Co. (North America) LLC ("YC Rubber"), Sutong Tire Resources, Inc. ("Sutong"), and Mayrun are also filing comments opposing the Remand Redetermination. ITG Voma supports these comments and respectfully incorporates by reference those developed by YC Rubber and Sutong with respect to the flaws in Commerce's respondent selection methodology and treatment of Kenda Rubber entries. For the reasons identified therein, as well as those outlined below, the Court should once again remand the determination to the agency for further revision.

## ARGUMENT

The Second Remand Determination is not supported by substantial evidence or otherwise in accordance with law because – (1) Commerce incorrectly insists on a flawed respondent selection methodology, and (2) Commerce wrongly claims that producers like Wanda Boto are not entitled to separate-rate status because they were not positioned to participate as mandatory respondents for the 2016-2017 period upon respondent reselection in 2023. "The court reviews remand determinations for compliance with the court's remand order." *Nakornthai Strip Mill Pub. Co. v. United States*, 32 CIT 1272, 1274 (CIT 2008). The Court must hold unlawful a remand redetermination that is "unsupported by substantial evidence on the record, or otherwise not in

accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

In Slip Op. 24-74, this Court correctly complained that it was a "struggle{} to discern the basis for Commerce's order of {respondent} selection." Slip Op. 24-74 at 21. The agency thus should have taken special care to follow a reasonable and appropriate respondent selection methodology in this second remand. Regrettably, however, Commerce has instead simply opted to defend its initial haphazard and unlawful approach.

Similarly, this Court concluded that in the first remand: "Commerce failed to explain *why* the lack of a complete mandatory respondent questionnaire response rendered the agency unable to confirm, clarify, or verify information that it had previously accepted as sufficient to grant separate rate eligibility." Slip Op. 24-74 at 30. Here, Commerce responds by praising the value of its Section A questionnaire and insists that full participation as a mandatory respondent in an antidumping ("AD") administrative review is necessary to demonstrate the discrete question of government control. These responses fall vastly short of what was required by this Court's remand order.

## I.    THE SECOND REMAND DETERMINATION FAILS TO ACCOUNT FOR SUSPENDED ENTRIES IN ITS FLAWED RESPONDENT SELECTION METHODOLOGY

Commerce's respondent selection is flawed because it is predicated on all entries during the period of review ("POR"), not only suspended entries, *i.e.*, the entries that are actually subject to this review proceeding. In reviewing the first remand results, this Court explained: "As for limiting selection to only those companies with suspended entries, any liquidated entries are already final, so no further challenge to the antidumping duty rate applied to them would be possible." Slip Op. 24-74 at 21. It is thus clear that only suspended entries are subject to remedy in this proceeding; consequently, Commerce should have focused solely on suspended entries in selecting respondents, particularly given the lengthy passage of time since the original customs

information was released in 2017. U.S. Customs and Border Protection ("CBP") Data (Nov. 30, 2017), Confidential Record ("CR") 44, Public Record ("PR") 119. Slip Op. 24-74 sustained Commerce's use of overall import volumes, not suspended import volumes, in Commerce's respondent selection. Slip Op. 24-74 at 21. Notwithstanding, consistent with this Court's direction, Commerce could and should have assessed suspended import volumes to implement a corrected and discernable respondent-selection methodology here.

In fact, since this Court issued Slip Op. 24-74, the CIT has further emphasized that entries from this POR that have liquidated are not subject to change and are not entitled to relief. On July 23, 2024, in *Acquisition 362, LLC, d.b.a., Strategic Import Supply, LLC, v. United States*, this Court dismissed an appeal related to entries of passenger vehicle and light truck tires during the 2016-2017 review period from Hengyu and Wanda Boto. 719 F. Supp. 3d 1338 (CIT 2024). There, the Court explained that the plaintiff "never {timely} requested {injunctive} relief from this court: *it did not join the YC Rubber litigation, it did not seek an injunction from this court, and it was not included in or covered by any other party's injunction*." *Id*. at 1343 (emphasis added). This Court's decision confirms that certain entries made during this POR were not suspended and have now liquidated without being subject to the CIT's jurisdiction. Accordingly, since liquidated entries cannot be subject to relief as a result of this litigation, Commerce should never have used those very same liquidated entries as a basis for respondent selection. Commerce's approach is nonsensical.

Furthermore, in spite of this Court's request that Commerce sufficiently explain its respondent-selection methodology, on remand the Department has not justified its repeated use of overall import volumes instead of the import volumes of only suspended entries. This is difficult to comprehend given the agency's acknowledgment that only "enjoined entries subject to the instant litigation" constitute the relevant universe of entries. Second Remand Determination at 4.

Indeed, only producers with *suspended* entries can even be subject to an administrative review, making this very issue a fundamental consideration for Commerce when it undertakes any respondent selection process in an administrative review. *See, e.g.*, *Ceramic Tile from the People's Republic of China*, 89 Fed. Reg. 95,175, 95,176 (Rescission of Antidumping Duty Administrative Review; 2023-2024) ("{F}or an administrative review to be conducted, there must be a reviewable, suspended entry that Commerce can instruct CBP to liquidate at the AD assessment rate calculated for the review period.").

Commerce's refusal to explain its insistence on the use of overall rather than suspended import volumes is particularly striking given the agency's decision to focus on suspended entries in other administrative review proceedings. Commerce regularly considers the "volume of suspended entries" attributable to each producer when selecting respondents in an administrative review. *See, e.g.*, *Forged Steel Fittings From the People's Republic of China*, 88 Fed. Reg. 85,221 (Dep't Commerce Dec. 7, 2023) (Preliminary Results of Antidumping Duty Administrative Review, Preliminary Determination of No Shipments; 2021-2022) ("On June 29, 2023, Commerce selected Yingkou Guangming as an additional mandatory respondent based on the *volume of suspended entries* of subject merchandise, entered for consumption into the United States during the POR . . . . Commerce {then} selected Jiangsu as a second additional mandatory respondent based on the *volume of suspended entries* of subject merchandise entered for consumption into the United States during the POR.") (emphases added). The Second Remand Determination offers no discernible reason why it is sometimes necessary for Commerce to consider *suspended* entries but at other times appropriate to instead rely upon *overall* import volumes. *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001), *aff'd,* 332 F.3d 1370 (Fed. Cir. 2003) ("{I}t is well-established that an agency action is arbitrary when the agency offer{s} insufficient reasons for treating similar situations differently.") (internal citation omitted); *SeAH Steel VINA Corp. v.*

*United States*, 182 F. Supp. 3d 1316, 1327 (CIT 2016) ("Commerce acts arbitrarily and violates the law when it 'consistently followed a contrary practice in similar circumstances and provided no reasonable explanation for the change in practice.'") (citing *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1007 (Fed.Cir.2003)).   In defending this decision, the Second Remand Determination simply cites the statute's reference to " producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined," without explaining whether such entry volumes must actually still be subject to the review.   Second Remand Determination at 17 (citing 19 U.S.C. § 1677f–1(c)(2)).   The agency has thus once again embraced a respondent-selection methodology whose logic is difficult (indeed, impossible) to discern.

For these reasons, as well as the reasons explained by YC Rubber and Sutong in their comments with respect to Kenda Rubber entries, Commerce has failed to implement a lawful respondent-selection methodology.   On remand, the agency should correct its respondent selection by – (1) properly ranking respondents on the basis of suspended entries, which are the only ones actually subject to this review, and (2) correcting its indiscernible treatment of Kenda Rubber entries.

## II.    THE SECOND REMAND DETERMINATION UNLAWFULLY DENIES RESPONDENTS' SEPARATE RATE STATUS

The Second Remand Determination should further be corrected to reinstate the separate-rate status of respondents, including Hengyu, Winrun, Wanda Boto, and Linglong, that Commerce previously confirmed are entitled to a separate rate.   Commerce confirmed that these entities qualify for a separate rate in the underlying final results of this review, and nothing in this litigation has changed that determination or these entities' eligibility for a separate rate.   The Department's attempt in the Second Remand Determination to reverse (once again) its clear determinations in

the final results that these entities qualify for a separate rate is not supported by substantial evidence, is contrary to law, and is unduly punitive to the separate-rate respondents.

### A.     Commerce May Not Deny Separate-Rate Status Based on Questions Unrelated to Government Control, Particularly at this Late Date

Following the first remand, this Court instructed Commerce not to remove these respondents' separate-rate status without clear logic and supporting evidence.  This Court explained:  "While Commerce may reconsider the separate rate eligibility of respondents in the course of the remand proceeding, the results of that reconsideration must be supported by substantial evidence.  Here, Commerce did not adequately support its decision."  Slip Op. 24-74 at 29.  This Court further determined and remonstrated that "Commerce failed to explain *why* the lack of a complete mandatory respondent questionnaire response rendered the agency unable to confirm, clarify, or verify information that it had previously accepted as sufficient to grant separate rate eligibility."  *Id.* at 30.  The Second Remand Determination attempts to correct this deficiency by claiming that Commerce required complete Section A questionnaire responses to determine whether these entities continued to qualify for the separate rate—that is, the agency meekly offers that "when Commerce individually-examines a company in {a non-market economy} AD review, *some questions in the section A questionnaire are akin to follow-up questions on the SRC/SRA or further examination*, to corroborate the claim for separate rate status."  Second Remand Determination at 11 (emphasis added).  Yet this unsupported assertion does not respond to this Court's concerns.  On remand this Court should again direct the Department to correct this flawed determination and to reinstate the separate-rate status of these entities under review.

The Second Remand Determination's logic is faulty because a Section A questionnaire is wholly separate from a supplemental request regarding duly-submitted separate rate certifications ("SRC").  In making a separate-rate determination, Commerce admits that it is tasked with

assessing four discrete criteria related to government control of export activities: (1) whether the company's export sales prices are set by, or are subject to the approval of, a government agency; (2) whether the company has the authority to negotiate and sign contracts and other agreements; (3) whether the company has autonomy from the government in making decisions regarding selection of management; and (4) whether the company retains the proceeds of its export sales and makes independent decisions regarding the disposition of profits or financing of losses. Second Remand Determination at 9-10. None of these criteria was contested or otherwise questioned in the final results of the underlying administrative review, and there are no new facts on the record suddenly demonstrating the presence of government control for this 2016-2017 POR.

In a Section A questionnaire, in contrast to a supplemental SRC request, Commerce embarks on the very different inquiry as to whether an entity is engaging in dumping and conducts a comprehensive review of that entity's corporate organization, accounting practices, sales markets, and merchandise for sale. Commerce cannot credibly claim that a full Section A questionnaire bears resemblance to a supplemental SRC request. Section A questionnaire responses frequently span thousands of pages; on the other hand, SRC supplemental requests probe at specific, relevant issues like clarification of corporate names and the presence of an import during the period of review. *E.g.*, *Certain Frozen Warmwater Shrimp From the Socialist Republic of Vietnam*, 83 Fed. Reg. 46,704 (Sept. 14, 2018) (Final Results of Antidumping Duty Administrative Review, 2016-2017) and Issues and Decision Memorandum for the Final Results at 15-35; *Multilayered Wood Flooring From the People's Republic of China*, 86 Fed. Reg. 59,987 (Oct. 29, 2021) (Final Results of Antidumping Duty Administrative Review, Final Successor-in-Interest Determination, and Final Determination of No Shipments; 2018-2019) and Issues and Decision Memorandum for the Final Results at 30.

Moreover, Commerce's insistence that a Section A questionnaire is somehow comparable to an SRC supplemental request is an attempt to mask the extremeness of its actual position—that is, Commerce appears to be asserting that a failure to complete *any* section of the mandatory respondent AD questionnaire, or supplemental request thereof, merits revocation of the separate-rate status, no matter how removed that section is from the separate-rate analysis regarding government control. Here, Commerce suggests that it only needed a Section A response to properly evaluate whether the respondents could retain a separate rate: "In essence, much of Commerce's section A questionnaire is akin to a more detailed request for information to supplement the separate rate application or certification and allows Commerce to confirm or clarify claims made in a separate rate certification or application." Second Remand Determination at 28. But then, after praising the value of a complete Section A response, the Second Remand Determination posits that "*full participation* in the proceeding overall is necessary to allow Commerce to be able to verify any information relevant to determining separate rate eligibility. Accordingly, if a respondent selected for individual examination fails to *fully respond to Commerce's questionnaires* and participate fully in the proceeding, Commerce determines that it also has failed to demonstrate its eligibility for a separate rate." *Id.* (emphases added).

Indeed, the Second Remand Determination's position seems to be that the failure to provide *any* requested information during the course of a proceeding can lawfully merit revocation of a separate rate and the restoration of the presumption of government control. Commerce suggests that if any questionnaire presents issues that are relevant to governmental control or affiliations, that questionnaire must be answered fully to qualify for the separate rate—this is so even if more than six years have passed since the POR closed and the questionnaire comprehensively investigates the company's sales and operations.

Fortunately, this Court need not tread new ground in rejecting Commerce's newly proposed, unreasonable approach. Rather, the CIT has expressly foreclosed it, explaining that decisions related to separate-rate status must be clearly tied to the more limited separate-rate inquiry. That is, the CIT has made clear that a respondent's entitlement to a separate rate may not be linked to a failure to respond to unrelated questions:

> As the court has previously stated, a company's failure to *provide information unrelated to establishing entitlement to a separate rate* does not necessarily undermine submissions demonstrating an absence of government control. *See Shenzhen Xinboda Indus. Co. v. United States*, 180 F. Supp. 3d 1305, 1316–17 (C.I.T. 2016) (holding that Commerce cannot find a respondent's separate rate information "tainted" on the basis of deficiencies in sales data as such data is unrelated to corporate ownership and control); *Lifestyle Enter. Inc. v. United States*, 768 F. Supp. 2d 1286, 1296 (C.I.T. 2011) (holding that a respondent's failure in unrelated aspects of a review does not undermine its application for separate rate status); *Shandong Huarong Gen. Grp. Corp. v. United States*, 27 CIT 1568, 1594 (2003) (denying Commerce's assignment of a {China}-wide dumping margin where respondents presented "evidence of their entitlement to separate rates" when there was "no indication that any necessary information was missing or incomplete").

*Hubbell Power Sys., Inc. v. United States*, 365 F. Supp. 3d 1302, 1309 (CIT 2019) (emphasis added). The Second Remand Determination refuses to engage with this judicial precedent, notwithstanding that this Court directly referred to *Hubbell Power* in Slip Op. 24-74 at 30. Commerce simply ignores these holdings, blithely asserting:

> These cases are inapplicable because here we have explained how certain missing information requested in the questionnaire relate to the *de facto* government control analysis that is part of Commerce's separate rate analysis and why full participation is necessary for Commerce's evaluation of a mandatory respondent's separate rate status.

Second Remand Determination at 29. But, *Hubbell Power* does not limit itself to questions of *de jure* control. 365 F. Supp. 3d at 1310 ("The court stresses the need for Commerce to clearly bifurcate its decision on whether Gem-Year is entitled to a separate rate from any decision

regarding its ability to calculate such a rate accurately.").  Commerce may not ignore difficult and relevant judicial precedent by calling it "inapplicable" and moving forward with a contradictory approach.

In fact, the CIT has been clear that Commerce is prohibited from doing precisely what it has done here in denying a separate rate to these respondents.  In an appeal of the 2018-19 administrative review of the AD order on *Multilayered Wood Flooring ("MLWF") from China*, the CIT held that because Commerce had accepted SRCs from non-individually examined respondents, the agency had then arbitrarily denied a separate rate for the mandatory respondent who thereafter declined to participate.  *Am. Mfgrs. of MLWF v. United States*, CIT Consol. Case No. 21-00595, Remand Order (Mar. 21, 2023), ECF 51.  The CIT instructed that:

> the court . . . REMANDS this case to . . . Commerce with instructions that the Department reconsider whether the Fusong Jinlong Group was eligible for a separate rate based on its submission of a {SRC}, despite not responding to Commerce's Section A questionnaire, *in view of the Department's acceptance of {SRCs} as sufficient evidence on the record to warrant renewing separate rate status for other respondents not individually examined and in view of the court's finding that disparate treatment of respondents who appear to be similarly situated is arbitrary and capricious* . . . .

*Id*. (emphasis added).    There, Commerce's underlying redetermination had found that the respondent was entitled to a separate rate yet assigned an AD rate based on "total" adverse facts available ("AFA").  *Am. Mfgrs. of MLWF*, CIT Case No. 21-00595, Remand Redetermination (Aug. 8, 2023), ECF 57-1, at 5-6; *Am. Mfgrs. of MLWF v. United States*, 2024 WL 489474, at *1 (CIT Feb. 8, 2024) ("On remand, Commerce concluded under protest that the mandatory respondent is eligible {for separate-rate status} and accordingly recalculated the margin for non-investigated separate-rate companies.  Finding that determination supported by substantial evidence, the court sustains it.").

Commerce's logic in the Second Remand Determination is squarely contradictory to this judicial precedent.  Here, Commerce should not have considered the issue of separate-rate eligibility because it was never challenged or questioned during the underlying review.  Moreover, it was unlawful to require participation as a mandatory respondent to maintain separate-rate status, which is what the Second Remand Determination effectively mandates.  On remand, Commerce should correct this error and recognize that producers like Wanda Boto are entitled to retain their separate rate even if they are unable at this late to complete the review as a mandatory respondent.

**B.    Commerce's Denial of Separate-Rate Status Is Unduly Punitive and Arbitrary and Capricious**

Not only does the Second Remand Determination employ faulty logic tying participation as a mandatory respondent to qualification for a separate rate, Commerce is yet again being unduly punitive to the separate-rate respondents.  Commerce's attempt to penalize respondents for being unable to provide detailed information from the 2016-2017 review period is both arbitrary and unreasonable.  In this regard, Commerce's approach is analogous to *Changzhou Hawd Flooring Co. v. United States*, 44 F. Supp. 3d 1376, 1391 (CIT 2015), in which the CIT concluded after multiple remands that "it is arbitrary and capricious for Commerce to now launch an individual investigation of Changzhou Hawd {at such a late date}."  Here, the original AD POR (August 1, 2016 through July 31, 2017) ended more than seven years ago.  Producers like Wanda Boto, for example, participated cooperatively in the underlying AD review at that time and did not appeal the final results.  Boto timely explained to the Department on February 16, 2023:

> {T}he original AD period of review (August 1, 2016 through July 31, 2017) ended nearly six years ago.  Boto participated cooperatively in the underlying AD review at that time and did not appeal the final results.  Boto is not currently a party to the court litigation that led to this remand proceeding, as noted above, and therefore until just a few days ago has not been involved in this proceeding in any way for more than four years.  Given the very lengthy passage of time and the unexpected nature of the

> Department's request, *it is no longer feasible for Boto to prepare the detailed sales and cost information requested by Commerce. Nor was it reasonable for Commerce to make this request after all of this time for data from a company that is not even a party to the underlying litigation.*

Letter from Hogan Lovells US LLP to U.S. Department of Commerce, *Response to the Department's Request to Notify*, (Remand CAFC 21-1489) (Feb. 16, 2023), First Remand PR 6 at 2 (emphasis added). As Boto noted in February 2023: "Commerce cannot reasonably require a respondent to submit detailed AD questionnaire responses six years after the fact. The data sources are stale, key company staff have changed, and the requested documentation is no longer easily accessible." *Id*. at 2.

The same can be said of Hengyu, Winrun, and Linglong. These firms filed for bankruptcy, destroyed records pursuant to a document retention policy, and lost key personnel, respectively, since the conclusion of the underlying second administrative review. Letter from Gaopeng & Partners to U.S. Department of Commerce (Feb. 23, 2023), First Remand PR 16 at 2 ("Hengyu is not in a position to participate in the current review and respond to the questionnaire because *Hengyu is in the bankruptcy procedure. All the company personnel of Hengyu have been dismissed and even no responsible person could be contacted by us.*") (emphasis added); Letter from Curtis Mallet-Prevost, Colt & Mosle to U.S. Department of Commerce (Mar. 10, 2023), First Remand PR 29 at 2 ("Winrun no longer has sufficient data and information to be able to prepare complete AD responses and databases for the POR2 August 1, 2016 – July 31, 2017 time period. Winrun notes that the time period for which the Department seeks data and information is 6-7 years old. And Winrun hereby confirms that, pursuant to its normal business practices, *Winrun only has the ability to access sales data and information that is 3 years old.*") (emphasis added); Letter from GDLSK to U.S. Department of Commerce (Aug. 15, 2024), Second Remand PR 6 at 2 ("Linglong is unable to provide the detailed AR2 POR sales and costs information necessary to participate as

a mandatory respondent because, during the intervening years: *data sources have become stale; there has been turnover of key personnel; and necessary records are not readily accessible on account of its normal business practices*.") (emphasis added).

In sum, due to the very lengthy passage of time and the intervention of the Covid-19 pandemic, it simply was not feasible for respondents to prepare the detailed sales and cost information requested by Commerce.

Commerce's application of the China-wide rate to the respondents seemingly assumes that the agency is entitled to an application of AFA here, even if Commerce stops short of actually calling it AFA.  But, the statutory inquiry for Commerce's application of AFA is whether each company "has failed to cooperate {with Commerce} *by not acting to the best of its ability*."  19 U.S.C. § 1677e(b) (emphasis added).  That standard plainly has not been met here.  There is no lawful basis to apply AFA, which is what Second Remand Determination does by including in the China-wide entity those respondents who (1) indisputably demonstrated both their eligibility for a separate rate seven years ago, and (2) their current inability to participate as mandatory respondents so many years after-the-fact.

Once again, the fault for the circumstances presented here (*i.e.*, the extensive passage of time and the accompanying data and personnel difficulties making it impossible to participate as mandatory respondents) lies solely with Commerce.  As such, the agency cannot penalize separate-rate respondents in an attempt to shift the blame for this error.  *See, e.g.*, *Linyi Chengen Imp. & Exp. Co. v. United States,* 609 F. Supp. 3d 1392, 1404 (CIT 2022) ("Commerce is not permitted to create a scarcity of information, to use that scarcity as justification for its determination, and to claim that a constraint on resources prevents further examination, while ignoring potentially contrary evidence on the record.").  There is no question that the decision to locate and select a substitute mandatory respondent could have – and should have – been made during the underlying

second administrative review immediately after the initial mandatory respondent, Shandong Haohua Tire Co., Ltd., notified Commerce that it would not participate in the review. *See, e.g., Case Brief of Shandong Wanda Boto Tyre Co. Ltd. and ITG Voma Corporation*, Case No. A-570-016 (2016-2017 Administrative Review) (Nov. 8, 2018), PR 263 at 12. Back then, the data were still fresh, there was ample time to prepare and review the data, Covid-19 had not occurred, and Commerce could reasonably have expected participating respondents to submit questionnaire responses. Commerce then compounded that delay by obtaining three additional months to seek reconsideration by the U.S. Court of Appeals for the Federal Circuit (which was not pursued). *YC Rubber Co. (N. Am.) v. United States*, CAFC No. 21-1489, ECF 78-83. Accordingly, Commerce's actions delayed the final resolution of this matter, making it no longer feasible or reasonable for Commerce to review an additional respondent. *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1379 (Fed. Cir. 2013) (citing *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 35 C.I.T. 948, 955 n.4, 783 F. Supp. 2d 1343, 1351 n.4 (2011)) (similarly faulting Commerce for its own actions, which "put itself in a precarious situation when it selected only two mandatory respondents."). It is thus arbitrary and capricious for Commerce to revoke separate-rate status based on the inability of these firms to participate as mandatory respondents at this late date.

For these reasons, on remand, Commerce should reinstate the separate-rate status of respondents, including, Hengyu, Winrun, Boto, and Linglong. Moreover, Commerce should apply the rate calculated for Kenda Rubber to these entities for this period of review.[1] (ITG Voma

---

[1]       Alternatively, as ITG Voma has previously explained, it would be appropriate for Commerce to apply a "pull-forward" margin calculated in the first administrative review of the AD order (*i.e.*, the review immediately preceding this one). Comments of ITG Voma Corporation Opposing Remand Redetermination (Feb. 2, 2024), ECF No. 91 at 12; Memorandum of Points and Authorities in Support of Plaintiffs' and Consolidated Plaintiffs' Motion for Judgment on the Agency Record (Nov. 12, 2019) ECF No. 36-1 at 32.

observes that Commerce has now calculated a contemporaneous and non-aberrational rate through its examination of Kenda Rubber. In the previous remand proceeding, Commerce already acknowledged that rate to be relevant for separate-rate respondents in its previously-recognized separate-rate calculation for Linglong. *Final Results of Redetermination Pursuant to Court Remand* (Oct. 31, 2023), ECF No. 78-1 at 34.). On remand, Commerce should correct its determination to reinstate the separate rate status of producers like Wanda Boto and apply a reasonably representative separate rate.

## **CONCLUSION**

For the foregoing reasons, and those submitted in the comments of YC Rubber and Sutong, ITG Voma respectfully requests that this Court remand Commerce's Second Remand Determination for further correction by the agency.

Respectfully submitted,

/s/ Jonathan T. Stoel
Jonathan T. Stoel
Craig A. Lewis
Nicholas R. Sparks

HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109

*Counsel to ITG Voma Corporation*

Dated: December 18, 2024

## CERTIFICATE OF COMPLIANCE

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Jonathan T. Stoel, hereby certify that this brief complies with the word limitations set forth in Slip Op. 24-74 at 36.  Excluding the table of contents, table of authorities, and signature block, the word count for this brief is 5,007 words.  This brief thus complies with the Court's order in Slip Op. 24-74, which permits responses to the agency's remand redetermination of 6,000 words or fewer.

Respectfully submitted,

/s/ Jonathan T. Stoel
Jonathan T. Stoel

Hogan Lovells US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109

*Counsel to ITG Voma Corporation*

Dated: December 18, 2024