UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

```
-------------------------------------------------------------------- X
YC RUBBER CO. (NORTH AMERICA) LLC,  :
SUTONG TIRE RESOURCES, INC., MAYRUN :
TYRE (HONG KONG) LIMITED, AND ITG VOMA :
CORPORATION,                         :
        Consolidated Plaintiffs,     :
                                     :         19-cv-00069
                                     :
                                     :         PUBLIC VERSION
    v.                               :
                                     :
UNITED STATES,                       :
                                     :
        Defendant,                   :
-------------------------------------------------------------------- X
```

**CONFIDENTAL COMMENTS OF CONSOLIDATED PLAINTIFF, MAYRUN (TYRE HONG KONG) LIMITED, IN OPPOSITION TO THE DEPARTMENT'S SECOND REMAND REDETERMINATION**

NEVILLE PETERSON LLP
*Counsel for Plaintiff*

John M. Peterson
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Richard F. O'Neill
701 Fifth Ave, Ste. 4200-2159
Seattle, WA 98104
(206) 905-3648
roneill@npwny.com

December 18, 2024

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

CONFIDENTAL COMMENTS OF CONSOLIDATED PLAINTIFF, MAYRUN (TYRE HONG KONG) LIMITED, IN OPPOSITION TO THE DEPARTMENT'S SECOND REMAND REDETERMINATION ......................................................................................................1

BACKGROUND ............................................................................................................................1

ARGUMENT ..................................................................................................................................5

I.      Commerce Continues to Improperly Select Mandatory Respondents on Remand..............5

II.     Reversal of Separate Rate Status. ............................................................................6

III.    The Department Unlawfully Denied Mayrun's Second Withdrawal Request on Remand. ...............................................................................................................11

CONCLUSION .............................................................................................................................15

# **TABLE OF AUTHORITIES**

**Cases**
*Changzhou Hawd Flooring Co. v. United States*, 44 F. Supp. 3d 1376 (Ct. Int'l Tr. 2015) .......... 7
*CS Wind Vietnam Co. v. United States*, 832 F.3d 1367 (Fed. Cir. 2016) ....................... 6
*Glycine & More Inc. v. United States*, 880 F.3d 1335 (Fed. Cir. 2018). ............................... 12, 14
*Hubbell Power Sys. v. United States*, 365 F. Supp.3d 1302 (Ct. Int'l Tr. 2020) .......................... 11
*Husteel Co. v. United States*, 520 F. Supp. 3d 1296 (Ct. Int'l Tr. 2021). ....................... 6
*Laitram v. NEC Corp.,* 115 F.3d 947 (Fed. Cir. 1997) ....................... 13
*Lifestyle Ent. Inc. v. United States*, 768 F. Supp. 2d 1286 (Ct. Int'l Tr. 2011)............................ 11
*Nat. Resource Def. Council Inc v. EPA*, 859 F.2d 156 (D.C. Cir. 1988)......................... 9
*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed Cir. 2003)............................ 11
*PrimeSource Bldg. Prods. v. United States*, 111 F.4th 1320 (Fed. Cir. 2024) ............................... 6
*Shaeffler Italia S.R.L. v. United States*, 781 F. Supp. 2d 1358 (Ct. Int'l Tr. 2011) ....................... 3
*Shenzhen Xinboda Indus. Co. v. United States*, 180 F. Supp. 3d 1305 (Ct. Int'l Tr. 2016........... 11
*Star Pipe Prods. v. United States*, 365 F. Supp. 3d 1277 (Fed. Cir. 2016)....................... 6
*Telecommunications Research and Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984). ........... 9
*United States v. Whispering Oaks Res. Care Facility*, 673 F.3d 813 (8th Cir. 2012). ................... 8
*Venus Wire Indus. Pvt v. United States*, 471 S. Supp. 3d 1289 (Ct. Int'l Tr. 2020). .................... 11
*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013) .............. 6
*YC Rubber Co. (N. Am.) LLC v. United States*, 2022 WL 3711377 (Fed. Cir. 2022) .......... 3, 7, 12
*YC Rubber Co. (N. Am.) LLC v. United States*, Court No. 19-69, Slip Op. 24-74 (2024),.... passim

**Statutes**
19 U.S.C. § 1516a ................................................................................................................... 3
19 U.S.C. § 1673d ................................................................................................................... 3
19 U.S.C. § 1677e ................................................................................................................. 10

**Other Authorities**
*Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China*,
   82 Fed. Reg 48,051 (Dep't Commerce 2017).......................................................................... 2
*Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China*,
   83 Fed. Reg. 45,893 (Dep't Commerce 2018)..................................................................... 2, 7

**Regulations**
19 C.F.R. § 351.213 ....................................................................................................... 2, 12, 14

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

---

| | |
|---|---|
| YC RUBBER CO. (NORTH AMERICA) LLC, SUTONG TIRE RESOURCES, INC., MAYRUN TYRE (HONG KONG) LIMITED, AND ITG VOMA CORPORATION,<br><br>　　　　　Consolidated Plaintiffs,<br><br>　v.<br><br>UNITED STATES,<br><br>　　　　　Defendant, | 19-cv-00069<br><br>CONFIDENTAL VERSION |

---

## CONFIDENTAL COMMENTS OF CONSOLIDATED PLAINTIFF, MAYRUN (TYRE HONG KONG) LIMITED, IN OPPOSITION TO THE DEPARTMENT'S SECOND REMAND REDETERMINATION

In accordance with Rules 7 and 56.2 of the Rules of the United States Court of International Trade ("USCIT R."), plaintiff, Mayrun Tyre (Hong Kong) Limited ("Mayrun"), hereby files the instant Comments Opposing the Second Remand Redetermination pursuant to this Court's Orders of June 18, 2024 (ECF 101) and November 4, 2024 (ECF 119). For the following reasons, Mayrun respectfully submits that Commerce's Second Remand Redetermination impermissibly excluded Kenda Rubber as the second mandatory respondent, improperly revoked Mayrun and other parties separate rate status despite their inability to act as a mandatory respondent during the remand, and impermissibly denied Mayrun's and other parties renewed withdrawal requests.

## BACKGROUND

This proceeding arose out of the second annual review of the antidumping order against *Passenger Car and Light Truck Tires from the People's Republic of China.* The review covered entries made during the period August 1, 2016, through July 30, 2017. The review was initiated

on October 16, 2017. *See Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China*, 82 Fed. Reg 48,051, at 48,055 (Dep't Commerce 2017).  As is customary, Commerce allowed individual exporters/producers to apply for "separate rate" status by demonstrating that they are free from *de facto* or *de jure* Chinese government control by submitting a Separate Rate Application ("SRA") or, if separate rate status had already been granted, by submitting a Separate Rate Certification ("SRC"). Such separate rate respondents receive an individually-calculated dumping margin separate from the country-wide margin. Mayrun and other companies applied for, and received, "separate rate status."

Although respondents requested that Commerce select at least three (3) "mandatory respondents" whose sales would be examined in the 2016-17 review, Commerce selected only two—*i.e.,* Zhaoqing Juhong Co. ("Junhong"), and Shandong Haohua Tire Co. Ltd . ("Haohua")— and issued questionnaires to these two companies on April 12, 2018. Two weeks later, Haohua notified the Department that it was withdrawing from participation in the review.  <u>Commerce did not select a replacement respondent, and for the next three months, investigated only Junhong</u>.

On September 11, 2018, Commerce issued its Preliminary Results based on its examination of Junhong and determined an individual dumping margin for that firm of 73.63%. *Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China*, 83 Fed. Reg. 45,893, 45,895 (Dep't Commerce 2018). This margin was designated as the rate applicable to the "separate rate respondents" as well.  Various respondents, including Mayrun, sought to withdraw from the review at that time, but Commerce denied these requests as being untimely submitted pursuant to 19 C.F.R. § 351.213(d)(1).

Commerce issued the final results of its review on April 22, 2019, and continued to use the rate of the single mandatory respondent, Junhong, which it reduced to 64.57%. It continued to use

the Junhong rate as the rate applicable to the separate rate respondents. *See* 84 Fed. Reg. 17,782 (April 22, 2019).

YC Rubber, Sutong Tire, ITG Voma, Mayrun, and Kenda Rubber (China) Co. Ltd., each filed suit in the U.S. Court of International Trade seeking review of the Final Results pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii), and 28 U.S.C. § 1581(c). The cases were consolidated in *YC Rubber (North America) LLC v. United States*, Consol. Ct. No. 19-00069. These plaintiffs argued, *inter alia*, that Commerce's Final Results were not in accordance with law because the agency's use of a single mandatory respondent as the basis for calculating and assigning rates to the separate rate respondents violated the general rule in 19 U.S.C. § 1673d(c)(5).

The CIT held that basing the margins for a separate rate respondent on an "average" of one data point was a reasonable exercise of Commerce's discretion. On appeal, the Federal Circuit disagreed, and instead adopted the CIT's decision in *Shaeffler Italia S.R.L. v. United States*, 781 F. Supp. 2d 1358, 1362 (Ct. Int'l Tr. 2011), holding that "a reasonable number of exporters or producers <u>must be greater than one</u>." *YC Rubber Co. (N. Am.) LLC v. United States*, Appeal No. 21- 1489, 2022 WL 3711377, at *4 (Fed. Cir. 2022) (emphasis added). The CAFC concluded that the statute's reference to the plural term "reasonable number of exporters or producers," according to its plain meaning, did not encompass a quantity of one. The CAFC vacated the CIT's decision—including the portion of the CIT decision regarding the Department's denial of withdrawal requests—and remanded the case "for further proceedings." *Id.* at 5.

After this Court remanded the matter back to Commerce, the Department took the extraordinary step of *reopening* the record—many years after the reviewed transactions had occurred—and trying to locate a second mandatory respondent – to provide information that related to transactions conducted 7 or 8 years ago – an exceptional circumstance in Commerce

3

reviews. The Department selected several of the remaining separate rate respondents to act as a second mandatory respondent. Most declined, certifying *inter alia* that, given the passage of time, they no longer retained records of the transactions that the Department was inquiring about. Mayrun, when asked to be a voluntary respondent, conducted a diligent review, concluded that its records from the period in question had been discarded in accordance with Hong Kong legal requirements and were no longer available, and certified this fact to the Department. Eventually, one of the separate rate respondents, Kenda Rubber, indicated that it would act as a mandatory respondent. Kenda responded to the Department's questionnaires, and an individual rate of 18.15% was calculated for it.

Citing the statements of respondents Wanda Boto, Hengyu, Mayrun and Winrun that they were no longer able to meaningfully act as mandatory respondents in this years-old matter, Commerce (i) declared them uncooperative, (ii) revoked the separate rate status they had previously been assigned, and (iii) deemed them to be part of the China-wide entity, ultimately assigning them the "China wide" rate.

In *YC Rubber Co. (N. Am.) LLC v. United States*, Court No. 19-69, Slip Op. 24-74 (2024), the Court again remanded this case back to the agency for reconsideration of "its method of selecting the second mandatory respondent;" "its decision to rescind the separate rate status of Wanda Boto, Mayrun, Hengyu, and Winrun," and reconsideration "of the renewed requests to withdraw from review." Slip Op. 24-74 at 35. On September 6th, 2024, Commerce released to the parties its draft remand redeterminations, and Mayrun and other consolidated plaintiffs submitted comments in opposition. *See* Second Remand PR 14. On October 28, 2024. Commerce submitted its final Second Remand Redetermination to the Court, changing little from its draft determination. *See* ECF 113.

4

**Confidential Information has been redacted.**

# ARGUMENT

I. **Commerce Continues to Improperly Select Mandatory Respondents on Remand.**

The Second Remand Redetermination, *see* ECF 113, continue to disregard the fact that Kenda Rubber had the second highest volume of imports among the parties participating in the review, and should have been selected a mandatory respondent before the other respondents were asked. The Court, in remanding the case a second time, examined the record and concluded that:

> The data in {an Excel attachment in the record} appears to support YC Rubber's argument that Kenda should have been selected second. It appears to the court that Commerce failed to aggregate certain data entries with slightly different names. While Commerce stated that it would "combine{ } the export quantities of companies with minor variations in the spelling of their names," it is unclear which entries were combined, which were not, and how Commerce drew the line between minor and non-minor variations in names.

Slip Op. 24-74 at p. 22-23.

In its Second Remand Redetermination, Commerce admits that it had incorrectly calculated imports by Kenda. It attributes this error to the agency's decision to treat "Kenda Rubber (China) Co." and [                    ] as distinct entities, based on its finding that the use of the word "China" was more than a "minor variation" in the names. Commerce, however, at no time explains how it distinguishes "minor variations" from non-minor variations, or why two companies whose name features the same well-known trademark [          ] should be treated as distinct entities. *See* Confidential Second Remand Redetermination at 4-5.

Commerce further notes that the data available on the record for remand indicated that Kenda Rubber (China) Co. sold a much larger quantity of imports during the POR than had been shown in the data at the time of initial respondent selection. *See* Second Remand Determination at 5. But in carrying out the decision to select a second mandatory respondent, Commerce elected to willfully blind itself to the evidence of record and relied instead on the import data reported at the

time of initial respondent selection. This omission leaves Commerce's Second Remand Redetermination unsupported by substantial evidence. *See Husteel Co. v. United States*, 520 F. Supp. 3d 1296, 1304 (Ct. Int'l Tr. 2021). It is well-settled that Commerce may not disregard record evidence that detracts from its intended conclusion. *CS Wind Vietnam Co. v. United States*, 832 F.3d 1367 (Fed. Cir. 2016); *Star Pipe Prods. v. United States*, 365 F. Supp. 3d 1277 (Fed. Cir. 2016). "The overriding purpose of Commerce's administration of the antidumping law is to calculate dumping margins as accurately as possible." *PrimeSource Bldg. Prods. v. United States*, 111 F.4th 1320, 1338 (Fed. Cir. 2024) (T. Dyk, dissenting) (quoting *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1379 (Fed. Cir. 2013)). Here the agency's willful blindness to the largest producer of record ignores this purpose, just as Commerce's use of a single mandatory respondent did.

In short, Commerce should have selected Kenda Rubber as the second mandatory respondent before making such a demand on Mayrun and the other plaintiffs in this action. Mayrun incorporates and adopts the arguments of the other plaintiff-intervenors in support of this issue.

## II.   Reversal of Separate Rate Status.

It follows from the above that Commerce erred in demanding that Mayrun and other parties act as mandatory respondent in the second remand proceeding, and in rescinding their separate rate status when firms were unable to comply with the Department's unreasonable demands. *See* Slip Op. 24-74 at FN 19.

It was also an arbitrary and capricious decision for Commerce to effectively sanction Mayrun, and the other parties for their inability to provide information from 6 to 7 years earlier. For Commerce to even request such aged information is arbitrary and capricious. In *Changzhou Hawd Flooring Co. v. United States*, 44 F. Supp. 3d 1376 (Ct. Int'l Tr. 2015), Commerce

6

determined to conduct a full review of a respondent in connection with the third remand of an administrative review. This Court noted that Commerce's discretion to reopen the agency record is subject to the command that the action not be arbitrary or capricious (*idError! Bookmark not defined.*. at 1389):

> While the decision to reopen the record is generally within the agency's discretion, see *Essar Steel*, 678 F.3d at 1277-78, that discretion cannot be exercised in a manner that is arbitrary and capricious. *See Changzhou Wujin Fine Chem.,* 701 F.3d at 1377 (citing *Bowman Transp*., 419 U.S. at 284). Arbitrary and capricious is a "narrow" standard of review, but still "searching and careful." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Commerce must" articulate a rational connection between the facts found and the choice made." *Bowman*, 419 U.S. at 285 (quotation marks and citation omitted). The agency's decision cannot have "relied on factors [that] Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before [it], or [be] so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Here Commerce's actions were even more arbitrary, and even more capricious, than in *Changzhou Hawd*. This is manifest from the fact that (i) the administrative process was completed, and had already been subjected to judicial review on the agency record (Slip Op. 24-74 at 5-7); (ii) Commerce had previously accorded Mayrun and the other plaintiffs separate rate status (83 Fed. Reg. 45,893, 45,895 (Dep't Commerce Sept. 11, 2018)); and (iii) Commerce's decision fails to deliver what the Federal Circuit determined was legally required—*i.e.,* rates for separate rate respondents calculated on the basis of an average (assuming sufficient data is available). *See YC Rubber Co. (N. Am.) LLC v. United States*, Appeal No. 21- 1489, 2022 WL 3711377, at *4 (Fed. Cir. 2022).

In this regard, it is important to note that antidumping reviews are not litigation. Respondents are not subject to a "litigation hold" as litigants might be. Rather, Commerce sets a deadline for submission of factual information for the administrative record; and then judicial

7

review is conducted on the basis of that record. Private parties in judicial appeals of Commerce determinations in such reviews are not subject to further discovery procedures, and parties can be confident that Commerce's earlier, since expired, deadline for submitting factual information for the administrative record will not be disturbed. For an agency information request to be sustained, it must be (1) issued pursuant to legal authority; (2) for a lawful purpose; (3) requiring information relevant to such lawful purpose; and (4) the information sought must not be unreasonable. *United States v. Whispering Oaks Res. Care Facility*, 673 F.3d 813 (8th Cir. 2012). While the first three prongs of this test are met here, for Commerce to demand 7- and 8-year-old information in the circumstances of an antidumping review is wholly unreasonable and not pursuant to legal authority or a lawful purpose. For Commerce to sanction persons who certified their inability to provide responses smacks of retaliation.

Commerce grounds its decision to deny separate rate status on the undertaking in their respective separate rate applications (filed in connection of the first review of the order) that they will respond to agency questionnaires when issued. In the context of a typical review, these undertakings are not unreasonable[1]. Annual reviews of antidumping orders commence shortly after the completion of the period of review ("POR")—typically, one year—and are required to be completed within one year after their commencement. It is reasonable for separate rate respondents to expect that questionnaires, when issued, will be for reasonably contemporary data that the respondent would foreseeably be expected to have retained. It is a far different matter, however, when, the better part of a decade later, Commerce issues a questionnaire seeking data 7 or 8 years old. Under those circumstances, it is appropriate to inquire whether the request is reasonable (or

---

[1] Arguably, these undertakings only extend to the point where Commerce closes the record in the segment of the antidumping proceeding in question.

whether a respondent's inability to meet the request is unreasonable), or instead whether the demand is unlawfully arbitrary and capricious. Mayrun provided statements under oath that it no longer retained data from the POR. This did not evince an unwillingness to respond to a questionnaire, but an *inability* to do so. Punitive action, such as assigning to Mayrun the China-wide rate in the remand, was, under the circumstances, both arbitrary and capricious.[2]

Commerce devotes a great deal of its Second Remand Redetermination to arguing that demanding questionnaires from companies which had received separate rate status allows the agency to revisit the questions of *de facto* and *de jure* government control previously addressed in separate rate applications. But this claim is disproven by the fact that the agency did not make any inquiries into *de facto* or *de jure* state control here. However, the notion that submission of a questionnaire response by Mayrun, or any other respondent, *might* have revealed changes in this dynamic is speculative at best, and belied by the information which Mayrun placed on the record to obtain its separate rate respondent status. To disregard such record evidence in favor of pure speculation, is arbitrary and capricious. *See Nat. Resource Def. Council Inc v. EPA*, 859 F.2d 156, 210 (D.C. Cir. 1988).

Antidumping proceedings are time-delimited and are conducted on a statutory deadline with a limited record compiled before the Department. In each review, the Department closes the

---

[2] Courts have indicated that, generally, the timeliness of administrative action is determined using a "rule of reason". What constitutes a reasonable time for agency action may be influenced by whether Congress has provided the agency a timetable or other indication of speed with which the agency is expected to act. *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984). In the case of antidumping annual reviews, Congress has prescribed strict timelines. Commerce is to commence a review within one year of the date of entry of the merchandise concerned; it is to complete that review within one year. An agency request for information made within that period is presumptively reasonable. That does not mean, however, that a Commerce demand made years after the specified time for completing a review is likewise "reasonable". And the demand does not become reasonable because the agency, in this case, provided the plaintiffs with a defective decision which was overturned by the Federal Circuit.

record and prohibits the submission of additional factual information. Judicial review of an antidumping determination is conducted on the basis of the record made before the agency. There is no reason for respondents to treat these proceedings, and judicial review thereof, in the same manner as a lawsuit.

By determining that Mayrun and the other mandatory respondents were part of the "China-wide" entity, the Department subjected them to an adverse inference without a legal basis to do so. In this regard, 19 U.S.C. § 1677e (a) provides that when a respondent fails to provide requested information, Commerce may rely on "facts available." However, 19 U.S.C. § 1677e (b) provides:

> (b) Adverse inferences
>
> (1) In general
>
> If the administering authority or the Commission (as the case may be) finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority or the Commission, the administering authority or the Commission (as the case may be), in reaching the applicable determination under this subtitle—
>
> > (A) may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available; and
> >
> > (B) is not required to determine, or make any adjustments to, a countervailable subsidy rate or weighted average dumping margin based on any assumptions about information the interested party would have provided if the interested party had complied with the request for information.

The Federal Circuit has noted that:

> Subsection (b) permits Commerce to 'use an inference that is adverse to the interests of [a respondent] in selecting from among the facts otherwise available,' only if Commerce makes the separate determination that the respondent 'has failed to cooperate by not acting to the best of its ability to comply.' The focus of subsection (b) is respondent's <u>failure to cooperate to the best of its ability</u>, not its failure to provide requested information.

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed Cir. 2003) (emphasis added).

Commerce must make a separate finding that a party failed to cooperate to the best of its ability,

10

and like any other Commerce determination, that finding must be supported by substantial evidence on the record. *See Venus Wire Indus. Pvt v. United States*, 471 S. Supp. 3d 1289, 1307 (Ct. Int'l Tr. 2020). The record on remand contains no evidence, about Mayrun's ability to cooperate other than Mayrun's own certified statement that it was *unable* to cooperate 7 years after the transactions occurred, and this, it explains, is because it no longer retained the records sought in Commerce's questionnaire. At no point did Commerce make an evidence-based determination regarding the "best of {Mayrun's} ability" to cooperate. In this regard, the Second Remand Redetermination as to Mayrun is unsupported by substantial evidence on the record.

It is also well-settled that a party may not be denied "separate rate" status because of deficiencies in providing data unrelated to the factors of *de jure* and *de facto* government control. *See Hubbell Power Sys. v. United States*, 365 F. Supp.3d 1302, 1309 (Ct. Int'l Tr. 2020); *see also, Shenzhen Xinboda Indus. Co. v. United States*, 180 F. Supp. 3d 1305, 1316-17 (Ct. Int'l Tr. 2016) (Commerce cannot find a respondent's separate rate information "tainted" on the basis of deficiencies in data unrelated to corporate ownership or control); *Lifestyle Ent. Inc. v. United States*, 768 F. Supp. 2d 1286, 1296 (Ct. Int'l Tr. 2011).

### III. The Department Unlawfully Denied Mayrun's Second Withdrawal Request on Remand.

The Second Remand Redetermination acknowledges that on February 16, 2023, Mayrun renewed its withdrawal request before the agency. During the initial phase of the review, when Mayrun initially sought to withdraw from the review, Commerce denied that request, citing 19 C.F.R. § 351.213(d)(1).[3] The CIT upheld that decision, which Mayrun appealed to the Federal

---

[3] 19 C.F.R. § 351.213(d)(1) provides:

> (d) Rescission of administrative review—(1) Withdrawal of request for review. The Secretary will rescind an administrative review under this section, in whole or in

11

Circuit. *YC Rubber Co. (N. Am.) LLC v. United States*, 2022 U.S. App. LEXIS 24259. In remanding the case, the Federal Circuit did not reach the issue of Mayrun's second withdrawal request, but vacated the CIT's prior holding. In Slip Op. 24-74, the CIT said that "[t]he renewed requests of respondents to withdraw their review requests during the remand proceedings, however, present a fresh question for the agency and now this court." Slip Op. 24-74 at 32.

Mayrun has two individual withdrawal requests that need to be addressed: (i) the first withdrawal request made during the review; and (ii) the second withdrawal request, made in connection with the remand proceeding, which was filed as soon as it became evident that Commerce intended to improperly revert to an earlier, already completed, phase of the proceeding, the "respondent selection" stage.

Commerce had previously issued a policy determination in which it held that a tardy request to withdraw from a proceeding pursuant to 19 C.F.R. § 351.213(d)(3) could only be considered in "extraordinary circumstances." *See Glycine & More Inc. v. United States*, 880 F.3d 1335, 1340 (Fed. Cir. 2018). While the Federal Circuit subsequently ruled that a tardy withdrawal was not limited to "extraordinary circumstances," it certainly did not preclude Commerce from *entertaining* a tardy withdrawal request when extraordinary circumstances exist. *Id.* at 1345.

When the CIT remanded this matter to Commerce, and the agency raised the possibility of selecting a second mandatory respondent, this was truly an "extraordinary circumstance." The agency was going back to the respondent selection phase, an early stage in any review. Mayrun

---

part, if a party that requested a review withdraws the request within 90 days of the date of publication of notice of initiation of the requested review. The Secretary may extend this time limit if the Secretary decides that it is reasonable to do so.

thus made a second request to withdraw from the proceeding, on February 16, 2023. *See* Mayrun Second Withdrawal Request (February 16, 2023), First Remand PR 8.[4]

In its opinion remanding this action, the Federal Circuit did not resolve Mayrun's first request to withdraw, leaving the issue open for Commerce to address. *See Laitram v. NEC Corp.,* 115 F.3d 947, 951 (Fed. Cir. 1997)[5]. Commerce was required to consider and address the "extraordinary circumstances" which prompted Mayrun's second request to withdraw. Commerce's Second Remand Redetermination ignores this procedural posture and instead says that the agency:

> … does not find it appropriate to accept these untimely withdrawal requests where the parties based their renewed requests on, among other things, the passage of time and new selection of an additional mandatory respondent as a result of litigation.

*See* ECF 113 at 15.

The undisputed facts and unusual procedural posture of this case meets and exceeds the "extraordinary circumstances" threshold for withdrawal to be granted. The multiple remands to Commerce reverted the proceeding to an improper and unreasonable selection of mandatory respondents—a more than extraordinary justification for Commerce to grant Mayrun's second request to withdraw from the proceeding.

Commerce's notion that Mayrun and other parties were gaming the U.S. antidumping laws is misguided. *See* ECF 113 at 33-34. Commerce's unlawful decision to move forward in the underlying annual review with only a single mandatory respondent is the reason for the original and second withdrawal requests. This is not a case of the parties "effectively selecting their own

---

[4] Refers to the Administrative Index filed at ECF 81, and Joint Appendix filed at ECF 94.

[5] Certainly, the realization in the initial review that Commerce meant to calculate Mayrun's "all others" rate using the data from a single, unrepresentative mandatory respondent—an action struck down in this litigation as unlawful—also constituted an extraordinary circumstance.

13

dumping rates by continuing participation in favorable reviews and withdrawing from proceedings not going their way." *See* ECF 113 at 34. Rather, the parties were looking to avoid an unlawful application of the antidumping statutes. The second withdrawal request, made during the first remand proceedings, sought to withdraw Mayrun from the proceedings at a stage before mandatory respondent selection was completed or any rate calculated. The selection of mandatory respondents typically occurs 49-50 days after publication of the Notice of Initiation of a review, and well within the 90-day period specified in 19 C.F.R. § 351.213(d)(1). In this case, the final mandatory respondent selection occurred years after the regulatory deadline for withdrawal, and this is purely the fault of Commerce who misapplied the law. While tardy requests for rescission have been viewed by Commerce as evidence of "gamesmanship," the facts of the instant case do not support such a conclusion. Mayrun could not have committed any "gamesmanship" here because it sought to withdraw before a rate was calculated or announced – and before anyone knew whether, in fact, Commerce could located a second mandatory respondent.

In this regard, the Court should bear in mind that no domestic petitioner requested a review of Mayrun, and that one consideration undergirding 19 C.F.R. § 351.213(d)(1) is "not conducting undesired reviews." *See Glycine & More Inc. v. United States*, 880 F.3d 1335 (Fed. Cir. 2018). It is well-established that Commerce need not—should not—conduct an annual review of a party where no interested party requests such a review, or where interested parties withdraw such a request. Commerce has no institutional or other interests in continuing to conclusion a review of a party for whom no review request remains, and for whom no additional expenditure of agency resources was required. Antidumping duties are not collected for the purpose of raising revenue; the Government, and the agency, has no independent interest in their collection when no interested party has requested that a respondent's rate be revisited.

**CONCLUSION**

For the reasons set out herein, Mayrun submits that the Court should reject Commerce's Second Remand Redetermination as unsupported by substantial evidence on the record and not in accordance with law, and remand this matter again to Commerce for further consideration.

    Respectfully submitted,

    NEVILLE PETERSON LLP
    *Counsel for Plaintiff*


    /s/ John M. Peterson
    John M. Peterson
    Patrick B. Klein
    One Exchange Plaza
    55 Broadway, Suite 2602
    New York, NY 10006
    (212) 635-2730
    jpeterson@npwny.com

    Richard F. O'Neill
    701 Fifth Ave, Ste. 4200-2159
    Seattle, WA 98104
    (206) 905-3648
    roneill@npwny.com

December 18, 2024

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. MARK A. BARNETT, CHIEF JUDGE

```
------------------------------------------------------------------ X
YC RUBBER CO. (NORTH AMERICA) LLC,  :
SUTONG TIRE RESOURCES, INC., MAYRUN :
TYRE (HONG KONG) LIMITED, AND ITG VOMA :
CORPORATION,                        :
            Consolidated Plaintiffs, :
                                    :
    and                             :
                                    :
KENDA RUBBER (CHINA) CO., LTD.      :          19-cv-00069
                                    :
            Plaintiff-Intervenor,   :
                                    :
    v.                              :
                                    :
UNITED STATES,                      :
                                    :
            Defendant,               :
------------------------------------------------------------------ X
```

**CERTIFICATE OF COMPLIANCE**

Pursuant to the U.S. Court of International Trade Standard Chambers Procedures, and in reliance upon the word count feature of the word processing program used to prepare the instant Memorandum, I, Patrick B. Klein, of Neville Peterson LLP, who is responsible for the instant Memorandum, certify that it contains 4,519 words.

Respectfully submitted,

/s/ Patrick B. Klein
Patrick B. Klein