# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| YC RUBBER CO. (NORTH AMERICA) LLC, SUTONG TIRE RESOURCES INC., MAYRUN TYRE (HONG KONG) LIMITED, AND ITG VOMA CORPORATION, <br><br> Plaintiffs and Consolidated Plaintiffs, <br><br> and <br><br> KENDA RUBBER (CHINA) CO., LTD. <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Consol. Court No. 19-00069 <br><br> PUBLIC VERSION |

## DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION

|  |  |
|---|---|
|  | BRETT A. SHUMATE <br> Acting Assistant Attorney General <br><br> /s/ Patricia M. McCarthy <br> PATRICIA MCCARTHY <br> Director |
| OF COUNSEL: <br><br> AYAT MUJAIS <br> Senior Attorney <br> Office of the Chief Counsel <br>  for Trade Enforcement and Compliance <br> U.S. Department of Commerce <br><br> February 3, 2025 | /s/ Claudia Burke <br> CLAUDIA BURKE <br> Deputy Director <br> U.S. Department of Justice <br> Civil Division <br> Commercial Litigation Branch <br> PO Box 480, Ben Franklin Station <br> Washington, DC 20044 <br><br> Attorneys for Defendant |

**INTRODUCTION**

Defendant, the United States, respectfully submits this response to the comments filed by consolidated plaintiffs YC Rubber (North America) LLC and Sutong Tire Resources, Inc. (YC Rubber), ITG Voma Corporation (ITG Voma), and Mayrun Ture (Hong Kong) Limited (Mayrun), on the Department of Commerce's second remand redetermination, *Final Results of Redetermination Pursuant to Court Remand*, October 28, 2024 (*Second Remand Results*) (ECF No. 112). *See* Mayrun Cmts., (ECF No. 129); YC Rubber Cmts., (ECF No. 126); ITG Voma Cmts., (ECF No. 128).

Commerce issued the second remand redetermination pursuant to this Court's remand order, *YC Rubber Co. (North America) LLC v. United States*, 711 F. Supp. 3d 1387 (Ct. Int'l Trade 2024) (*Second Remand Order*) (ECF No. 102), instructing Commerce to: (1) reconsider its method of selecting the second mandatory respondent; (2) reconsider its decision to rescind the separate rate status of Wanda Boto, Mayrun, Hengyu, and Winrun; and (3) reconsider the denial of renewed withdrawal requests. For the reasons below, this Court should sustain the *Second Remand Results* because Commerce fully complied with the *Second Remand Order* and because the *Second Remand Results* are supported by substantial evidence and otherwise in accordance with law.

**ARGUMENT**

I.     **Background**

Commerce published its *Final Results* on April 26, 2019. *See Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2016-2017*, 84 Fed. Reg. 17,781 (Dep't of Commerce April 26, 2019) (*Final Results*). Although Commerce had chosen

two mandatory respondents, one subsequently withdrew, and in the *Final Results*, Commerce calculated a 64.57 percent rate for the sole mandatory respondent left in the proceeding, Junhong. Commerce also applied this rate to the separate rate respondents.[1] This Court sustained the results. *See YC Rubber Co. (N. Am.) LLC v. United States,* 487 F. Supp. 3d 1367 (Ct. Int'l Trade 2020) (*YC Rubber I*). On appeal, the Federal Circuit held that Commerce erred in relying on a single entity and remanded for further proceedings consistent with the opinion. *See YC Rubber Co. (N. Am.) LLC v. United States,* 2022 WL 3711377 at *12 (Fed. Cir. 2022) (*YC Rubber II*).

    On remand, Commerce sought to select an additional mandatory respondent to review. Commerce found that entries from six exporters who were party to the litigation remained suspended in this review, and thus were eligible to be selected as a second mandatory respondent: (1) Kenda Rubber (China) Co., Ltd. (Kenda); (2) Mayrun; (3) Shandong Hengyu Science & Technology Co., Ltd. (Hengyu); (4) Winrun Tyre Co., Ltd. (Winrun); (5) Shandong Wanda Boto Tyre Co., Ltd (Wanda Boto); and (6) Shandong Linglong Tyre Co., Ltd. (Linglong). *See Final Results of Redetermination Pursuant to Court Remand,* November 1, 2023 (*First Remand Results*) (ECF No. 78). Commerce issued the standard questionnaire to Wanda Boto, Hengyu, Mayrun, and Winrun (in that order), and received notifications that each of these companies refused to participate as an additional mandatory respondent. *See First Remand Results* at 4.

    Commerce then selected Kenda as an additional mandatory respondent and issued it an initial questionnaire. *See First Remand Results* at 4. Kenda submitted its responses to section A

---

[1] Plaintiffs participating in this remand were all eligible for a separate rate during the underlying administrative proceeding.

of Commerce's initial questionnaire.  *Id.* (citing P.R.R. 49, 50).  Kenda also submitted its responses to Commerce's remaining questionnaires and provided surrogate value information data.  *Id.*

In November 2023, Commerce filed the *First Remand Results* in which it determined that the four exporters who did not respond to the questionnaire and thus did not participate in the remand segment, had failed to establish their entitlement to a separate rate.  *Id.*  Commerce applied the China-wide rate of 87.99 percent to each of these four exporters: Winrun, Maryun, Hengyu, and Wanda Boto.  For Kenda, who did participate in the remand segment, Commerce calculated a weighted average dumping margin of 18.15 percent, and it used Kenda's and Junhong's rates to recalculate the separate rate of 41.36 percent, which was applied to Linglong.  *Id.*

This Court sustained in part and remanded in part Commerce's *First Remand Results*.  *Second Remand Order* at 1391.  Specifically, the Court sustained Commerce's decision to select a second mandatory respondent, holding that the decision, based on these facts, was supported by substantial evidence and in accordance with law and with the Federal Circuit's decision.  However, the Court remanded Commerce's selection methodology, holding that it could not discern Commerce's reasoning for omitting Linglong from the respondent selection process or for making its selections in the order that it did.  *Id.* at 1400-02.

The Court also remanded Commerce's denial of separate rate status for Wanda Boto, Hengyu, Mayrun, and Winrun, stating that Commerce had not adequately supported its decision.  *Id.* at 1404.  Specifically, the Court determined that Commerce's mere citation to the *Initiation Notice* and Commerce's conclusion that it was "unable to confirm, clarify, or verify" the separate rate certifications, were not sufficient to explain why the respondents – who were granted

4

separate rate status in the underlying review – should now be denied separate rate status. *Id.* Finally, the Court remanded Commerce's denial of new withdrawal request because Commerce had failed to address the parties' new reasons for wanting to withdraw their review requests. *Id.* at 1405-06.

On remand, Commerce selected Linglong as an additional mandatory respondent and issued Linglong a questionnaire. *Second Remand Results* at 3. Shortly after, Linglong informed Commerce that it would not respond. *Id.* Thus, Commerce continued to use Kenda as the second mandatory respondent and further determined that Kenda was correctly selected *after* Wanda Boto, Mayrun, Hengryu, and Winrun because those other companies had larger volumes of imports than Kenda, based on the U.S. Customs and Border Protection (CBP) data. *Id.* at 4-5. Next, Commerce reconsidered whether Wanda Boto, Mayrun, Hengyu, Winrun, and Linglong were entitled to a separate rate, and determined that all five companies had failed to establish their entitlement to a separate rate because Commerce was not able to corroborate their claims of an absence of *de facto* control due to their refusal to respond to Commerce's questionnaires. *Id.* at 8-12. Third, Commerce reconsidered the renewed withdrawal requests and addressed each respondent's supporting arguments. Commerce continued to reject the renewed untimely withdrawal requests. *Id.* at 14-16.

## II. Standard Of Review

The Court will sustain Commerce's remand determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

### III. The Court Should Sustain Commerce's Redetermination

This Court should sustain Commerce's *Second Remand Results* because Commerce complied with the *Second Remand Order*, supported the *Second Remand Results* with substantial record evidence, and acted in accordance with law.

#### A. Respondent Selection

The Court stated in its Second Remand Order that it "struggle[d] to discern the basis of Commerce's order of selection," both with respect to Commerce's omission of Linglong from the selection process and the remaining selection, and it ordered Commerce to "reconsider or further explain its respondent selection methodology for the second mandatory respondent." *Second Remand Order* at 1400, 1402. Commerce followed the Court's instructions, reconsidering its treatment of Linglong and further explaining its order of selection for Kenda and the others.

Specifically, Commerce analyzed the CBP data, made minor corrections for missed small volumes for Hengyu and Winrun, and continued to find the four largest exporters with enjoined entries continued to be Wanda Boto, Hengyu, Mayrun, and Winrun. *Second Remand Results* at 4. Further, Commerce found that Linglong had had a larger volume of entries than Kenda. *Id.* Commerce explained that it should have selected Linglong as another mandatory responded prior to selecting Kenda. In the *Second Remand Results*, Commerce remedied this, and selected Linglong as a mandatory respondent.

When Linglong refused to participate, Commerce continued to rely on Kenda as the second mandatory respondent. *Id.* Commerce explained that it would not aggregate entries by

6

Kenda Rubber (China) Co. Ltd. with entries by [    ]. Commerce explained that it sometimes aggregates entries for names with minor differences, but it does not consider the [            ] to be a minor variation. Commerce then analyzed in detail the entries and all of the data identified by the Court in its order. *Second Remand Determination* at 20-25.

In response, YC Rubber argues that Commerce unlawfully selected a second mandatory respondent because Commerce based its selection on only a subset of Kenda Rubber's entries. YC Rubber Cmts. at 5-19.[2] Specifically, YC Rubber argues that Commerce was required to aggregate the entries from Kenda Rubber (China) Co., Ltd. and [



                                                                              *Id.* at 6-7. Further, YC Rubber and Mayrun argue that Commerce's practice indicates that Commerce should have found that there was only a minor variation in the two companies names, such that Commerce should have found the addition of [    ] to be a minor variation. *Id.* at 10-11; Mayrun Cmts. at 5-6.

Commerce explained that it considers minor variations to be limited to differences like the omission of periods in abbreviations or omissions of corporate abbreviations. *Second Remand Results* at 5. Here, Commerce determined that the addition of the word [    ] was not a minor variation in names between [        ] and Kenda Rubber (China) Co., Ltd., nor was the word [    ] merely a reference to [            ]. *Id.* at 5, 22. 19 U.S.C. § 1677f-1(c)(2)(A)-(B) requires that Commerce make its respondent selection determination on the record information available to it at the time of selection. Thus, Commerce made this

---

[2] Consolidated Plaintiffs ITG Voma and Mayrun incorporate YC Rubber's brief on this issue. *See* ITG Voma Cmts. at 6; Mayrun Cmts. at 6.

7

determination based on the record at the time of respondent selection, which indicated that Kenda Rubber (China) Co., Ltd., rather than [      ], was the name of the company subject to review. *Id.* at 5, 18, 23 (citing to the request for administrative review, separate rate certification, business license, and injunction which all listed only Kenda Rubber (China) Co., Ltd.); *Kyocera Solar, Inc. v. United States,* 253 F. Supp. 3d 1294, 1317 (Ct. Int'l Trade 2017) ("{T}here is no indication in the statute that the {respondent} selection process is to evolve as the proceedings . . . evolve. The opposite is suggested by the limited phrases 'based on the information available to Commerce at the time of selection . . . .'").

At the time of respondent selection, no party pointed to record evidence that contradicted this finding. *Id.* at 20. For example, YC Rubber notes that entries from both companies [                    ]; however, Commerce stated that [                    ] is not determinative in its analysis of whether two company names should be aggregated. *Id.* at 20; YC Rubber Cmts. at 6-7. Indeed, Commerce did not aggregate the volumes of Shandong Wanda Boto Tyre Co., Ltd., with [          ], because Commerce does not consider [                    ] to be minor name variations, and no party has argued that this determination was incorrect. *Id.* Additionally, parties were aware at the time of Kenda's selection that Commerce had determined Kenda had a lower import volume than Wanda Boto, Hengyu, Mayrun, and Winrun, and no party commented on the CBP data nor argued that Commerce's selection of Kenda *after* Wanda Boto, Hengyu, Mayrun, and Winrun was improper. *Id.* at 19-20. Parties only raised this issue once they became aware that they were not granted separate rate status based in part on this order of respondent selection. *Id.* Thus, Commerce consistently, and

correctly, did not aggregate volumes for companies with non-minor name variations based on the record evidence at the time of respondent selection.

ITG Voma argues that Commerce should have assessed only suspended import volumes, rather than all import volume entries, during the period of review, to exclude entries that have liquidated. ITG Voma Cmts. at 3-4. However, the Court has already held that Commerce was correct to limit its selection of a mandatory respondent to companies with suspended entries in the litigation, and that it was additionally appropriate for Commerce to look to total import volumes from the underlying administrative review, stating that "as for Commerce's use of the total volume of entries (rather than the suspended volume of entries) for the order of selection, such a basis is consistent with {the statute}." *Second Remand Order* at 1400.

B. Separate Rate

The Court held that Commerce's explanation denying a separate rate for Wanda Boto, Hengyu, Mayrun, and Winrun, was inadequate, "at this stage of the process," and "particularly given the facts of this case." *Second Remand Order* at 1404. Commerce complied with the Court's instructions to reconsider its recission of a separate rate for these companies, and further provided analysis for its denial of a separate rate for Linglong. *Second Remand Results* at 6-13.

Specifically, Commerce explained that when completing separate rate certifications, parties are made aware via the standard company certification that if they do not furnish supporting documentation if requested by Commerce, then Commerce may conclude that they are not eligible for a separate rate, and that information in the separate rate certification may be subject to verification or corroboration. *Id.* at 8. In addition, Commerce explained that when a company is selected as a mandatory respondent, even if it has submitted a separate rate certification, Commerce will issue a full questionnaire and give weight to the more detailed,

9

verifiable information submitted in the questionnaire responses to determine whether to grant separate rate status. *Id.* at 8-9 (noting that Commerce's section A questionnaire asks for detailed information on corporate structure, ownership, affiliation, etc., which may be used to corroborate claims made in company separate rate certifications). If a company fails to provide a response to the questionnaires, Commerce will consider the failure in its separate rate determination. *Id.*

Although Wanda Boto, Hengyu, Mayrun, and Winrun submitted separate rate certifications in the underlying review, when Commerce selected these companies as additional mandatory respondents during the first remand proceeding, Commerce issued questionnaires to each company to support their claim of separate rate status. *Id.* at 10. This is entirely consistent with Commerce's general practice and makes sense in the normal context of an administrative review. As noted above, each of these companies was aware at the time that they submitted their separate rate certifications that they committed to providing all documents requested by Commerce to support their separate rate status, including questionnaires if selected as a respondent. *Id.* Because Wanda Boto, Hengyu, Mayrun, and Winrun did not respond to Commerce's questionnaires after they were selected as mandatory respondents in the *First Remand Results*, Commerce was unable to confirm, clarify, or verify the claims that these companies had made in their respective separate rate certifications. *Id.* at 11-12. Commerce made the same determination for Linglong in the *Second Remand Results*. *Id.* at 13.

ITG Voma incorrectly contends that Commerce should have granted respondents a separate rate because Commerce did not comply with the Court's remand order, and thus Commerce's determination is unsupported by substantial evidence. ITG Voma Cmts. at 7.[3] But

---

[3] Consolidated Plaintiff YC Rubber incorporates ITG Voma's brief on this issue. *See* YC Rubber Cmts. at 19.

Commerce did comply with the Court's *Second Remand Order* when it explained in greater detail why Wanda Boto, Hengyu, Mayrun, Winrun, and Linglong's failure to respond to Commerce's questionnaires rendered those companies ineligible for a separate rate. *Second Remand Results* at 6-13, 27. Further, Commerce provided its reasoning for its determination and pointed to record evidence as support. *Id.* Thus, ITG Voma's argument on this point is unpersuasive.

ITG Voma also contends that the section A questionnaire is separate from a supplemental request regarding a separate rate certification, and that Commerce has created a new standard for separate rate eligibility on remand. *Id.* at 8-9. Similarly, Mayrun states that Commerce did not make any inquiries into *de facto* or *de jure* government control on remand. Mayrun Cmts. at 9. As an initial matter, Mayrun's contention is unfounded; Commerce specifically *did* inquire into government control on remand, via its questionnaires. Commerce's section A questionnaire asks detailed questions about corporate structure beyond what is included in separate rate certifications, as well as requests an organizational chart on affiliation and information that supports a claim that the company made independent decisions regarding their profits. *Second Remand Results* at 27-29.

With respect to ITG Voma's contention that cannot require Section A questionnaire responses in the certification process, Commerce explained that a section A questionnaire is akin to a more detailed supplemental questionnaire on a company's separate rate certification. *Id.* at 28. For example, as noted above, both the section A questionnaire and a supplemental ask for addition information regarding a company's corporate structure and affiliation. Ultimately, both documents allow Commerce to collect information relevant to determining whether a company is eligible for a separate rate. *Id.* Moreover, notwithstanding ITG Voma's claims otherwise,

11

Commerce did not create a new standard for separate rate eligibility on remand; as laid out above, Commerce's established practice is to deny separate rate eligibility to companies who are selected as a mandatory but then do not response to Commerce's questionnaires.

Further, ITG Voma and Mayrun state that Commerce's refusal to grant separate rate status to respondents is unduly punitive and arbitrary and capricious. ITG Voma Cmts. at 12-15; Mayrun Cmts. at 6-7. Commerce did not penalize the companies it selected as mandatory respondents. Commerce reasonably revisited its respondent selection decision in the review pursuant to the Federal Circuit's directive, which in turn left open parties' separate rate eligibility. *Second Remand Results* at 30. Indeed, this Court has stated that the procedural posture of this remand does not limit Commerce's ability to reconsider separate rate eligibility. *Second Remand Order* at 1403-04. Moreover, contrary to Mayrun's contention, Commerce did not apply an adverse inference here. *Id.*; Mayrun Cmts. at 10. Instead, Commerce applied its separate rate practice, reasoning finding that Wanda Boto, Hengyu, Mayrun, Winrun, and Linglong were ineligible for a separate rate based on their failure to respond to Commerce's questionnaires. *Id.*; *Second Remand Order* at 1404 (stating that "under certain circumstances, the refusal to participate as a mandatory respondent may support Commerce's decision to rescind a party's separate rate status").

Commerce's determination is neither arbitrary nor capricious. ITG Voma and Mayrun rely upon this Court's holding in *Changzhou Hawd Flooring Co. v. United States*, 44 F. Supp. 3d 1376 (Ct. Int'l Trade 2015) as support for its allegation. ITG Voma Cmts. at 12; Mayrun Cmts. at 6-7. In *Changzhou Hawd*, the Court concluded that it was arbitrary and capricious for Commerce to start an individual examination of Changzhou Hawd three and a half years after the investigation on its own volition after Commerce previously stated it lacked administrative

12

resources to do so and had declined to conduct individual investigation of another plaintiff in that litigation. *Changzhou Hawd* at 1389. Here, by contrast, this Court has already held that the Federal Circuit's decision contemplated that Commerce would conduct an individual examination of a second mandatory respondent.

      C. <u>Withdrawal Requests</u>

With respect to the renewed untimely withdrawal requests, pursuant to the *Second Remand Order*, Commerce considered and addressed parties' arguments submitted during the first remand proceedings. *Second Remand Results* at 1405-06. At the outset, we note that this Court previously sustained Commerce's denial of the untimely withdrawal request in the underlying administrative review, but held that Commerce erred in not addressing parties' additional arguments supporting their requests. *Id.* at 1405. In the *Second Remand Results,* Commerce found that the additional arguments provided by Mayrun, Hengyu, and Windrun to grant their untimely withdrawal requests were unpersuasive, and continued to deny the withdrawal requests. *Second Remand Results* at 15.

Pursuant to 19 C.F.R. § 351.213.(d)(1), Commerce may extend the time for submitting withdrawal requests (and thus accept untimely filed withdrawal requests) if Commerce "decides it is reasonable to do so." Thus, the standard here is one of reasonableness. Indeed, the Federal Circuit has spoken to this issue, finding in *Glycine* that Commerce stated "the criteria for what would be a reasonable ground for extension reflects concerns for not wasting developmental resources, for giving parties an opportunity to know the results of prior administrative reviews when applicable … *among other considerations*." See *Glycine & More, Inc. v. United States,* 800 F.3d 1335 (Fed. Cir. 2018) (emphasis added). With respect to Hengyu, Winrun, and Linglong, their requests to renew their untimely withdrawal requests were submitted *after* they

13

were selected as an additional mandatory respondent and had stated they would not be participating.  *Id.*  Commerce did not find it appropriate to grant withdrawal under these circumstances.  *Id.*  Although Mayrun did submit its withdrawal request before it was selected as an additional respondent, Maryun's request was also premised on the posture of this remand and the passage of time, which was not a sufficient reason for granting an untimely withdrawal request.  As Commerce explained, the passage of time and potential for remand is foreseeable and typical and therefore does not lead to the conclusion that Commerce did not adhere to its reasonableness standard by not accepting the untimely withdrawal requests. *Id.* at 15-16.

      Mayrun argues that Commerce did not address the extraordinary circumstances that prompted Mayrun's request to withdraw on remand, and that the circumstances surrounding the remand (*i.e.,* the unusual procedural posture of the case) exceed the extraordinary circumstances threshold for withdrawal to be granted.  Mayrun Cmts. at 13.[4]  Further, Mayrun notes that no domestic petitioner requested a review of Mayrun, and thus Commerce has "no institutional or other interests" in continuing to review Mayrun.  *Id.* at 14.  However, Commerce addressed the unusual posture, and found that the circumstances were foreseeable.  *Id.* at 32.  Specifically, parties were aware that the separate rate Commerce assigned in the underlying administrative review was challenged before this Court; indeed, these very parties argued *for* a selection of a second mandatory respondent.  *Id.* at 32-33; *Second Remand Order* at 1406 (". . . parties were (or should have been) aware of the ongoing and unsettled nature of this administrative review").  When these parties appealed this Court's original opinion to the Federal Circuit, parties were aware that the appellate court would consider "whether the statute permits Commerce to review a

---

[4] Consolidated Plaintiff YC Rubber incorporates Mayrun's brief on this issue.  *See* YC Rubber Cmts. at 20.

14

single exporter or producer when multiple have requested review and Commerce has not demonstrated that it was otherwise reasonable to calculate the all-others rate based on only one respondent." *YC Rubber II* at *9. Thus, parties could have foreseen that the Federal Circuit could have, and in fact did, remand this issue to Commerce to select a second mandatory respondent. Given this, parties could have foreseen that Commerce would select an additional respondent on remand. These are not "extraordinary circumstances" that set this remand apart from others or make it "unusual." Mayrun Cmts. at 13. Litigation before this Court often results in an issue being remanded back to Commerce, which often takes substantial time particularly if the issue is appealed, and indeed these parties *specifically argued* that Commerce should select an additional respondent. *See, e.g.*, *Abitibi-Consol. Inc. v. United States,* 437 F. Supp. 2d 1352, 1361 (Ct. Int'l Trade 2006) (finding that it is not unremarkable for judicial review to take substantial time).

In addition, Commerce does have "institutional or other interests" in continuing to review Mayrun. At the outset, a request from a domestic interested party is not necessary for review if a company requests review of itself. Furthermore, accepting Mayrun's withdrawal request made in the first remand before its selection as a mandatory respondent would have reduced the pool of potential second respondents from six companies to five companies, potentially hindering Commerce's ability to comply with the *First Remand Order*. *Second Remand Results* at 33. Commerce has stated that respondents may not abuse the review procedures by electing to continue participation only to the extent assured that the results of a review will be favorable to their interests. *Id.* (citing *Folding Metal Tables and Chaires from the People's Republic of China: Final Results of Antidumping Duty Review,* 77 Fed. Reg. 39,680 (Dep't of Commerce July 5, 2012)). This Court has recognized that Commerce must have the ability to prevent a

party from requesting a review and then withdrawing the request once it ascertains that the results are not likely to be in its favor as a reason for not allowing untimely withdrawal requests. *Id.; Glycine & More, Inc. v. United States,* 880 F.3d 1335 (Fed. Cir. 2018). Allowing such a practice would permit gaming of antidumping duty laws, with respondents effectively selecting their own dumping rates by continuing participation in favorable reviews and withdrawing from unfavorable proceedings. *Id.* Thus, Commerce certainly has an institutional interest in continuing to include Mayrun in this proceeding.

## IV.   CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's *Second Remand Results* and enter final judgment in favor of the United States.

                                                      Respectfully submitted,

                                                     BRETT A. SHUMATE
                                                     Acting Assistant Attorney General

                                                     /s/ Patricia M. McCarthy
                                                     PATRICIA M. MCCARTHY
                                                     Director

| OF COUNSEL: | /s/ Claudia Burke |
|---|---|
| | CLAUDIA BURKE |
| | Deputy Director |
| AYAT MUJAIS | U.S. Department of Justice |
| Senior Attorney | Civil Division |
| Office of the Chief Counsel | Commercial Litigation Branch |
|   for Trade Enforcement and Compliance | PO Box 480, Ben Franklin Station |
| U.S. Department of Commerce | Washington, DC 20044 |
| | |
| February 3, 2025 | Attorneys for Defendant |