Slip Op. 25-64

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| YC RUBBER CO. (NORTH AMERICA) LLC AND SUTONG TIRE RESOURCES, INC., | |
| Plaintiffs, | |
| and | |
| MAYRUN TYRE (HONG KONG) LIMITED AND ITG VOMA CORPORATION, | Before: Mark A. Barnett, Chief Judge<br>Consol. Court No. 19-00069 |
| Consolidated-Plaintiffs, | **PUBLIC VERSION** |
| v. | |
| UNITED STATES, | |
| Defendant. | |

## <u>OPINION AND ORDER</u>

[Sustaining in part and remanding in part the U.S. Department of Commerce's Second Remand Results regarding the second administrative review of the antidumping duty order on certain passenger vehicle and light truck tires from the People's Republic of China.]

Dated: May 21, 2025

<u>Ned H. Marshak</u> and <u>Jordan C. Kahn</u>, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of New York, NY, for Plaintiffs YC Rubber Co. (North America) LLC and Sutong Tire Resources, Inc.

<u>John M. Peterson</u> and <u>Patrick B. Klein</u>, Neville Peterson LLP, of New York, NY, and Richard F. O'Neill, Neville Peterson LLP, of Seattle, WA, for Consolidated-Plaintiff Mayrun Tyre (Hong Kong) Limited.

<u>Jonathan T. Stoel</u>, <u>Craig A. Lewis</u>, and <u>Nicholas R. Sparks</u>, Hogan Lovells US LLP, of Washington, DC, for Consolidated-Plaintiff ITG Voma Corporation.

<u>Claudia Burke</u>, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States.  Also on the brief were <u>Patricia M. McCarthy</u>, Director, and <u>Brett A. Shumate</u>, Acting Assistant Attorney General.  Of counsel on the brief was <u>Ayat Mujais</u>, Senior Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Barnett, Chief Judge:  Before the court is the second redetermination upon remand from the U.S. Department of Commerce ("Commerce" or "the agency") for the second administrative review of the antidumping duty order on certain passenger tires from the People's Republic of China ("China").  *See* [Confid.] Final Results of Redetermination Pursuant to Ct. Remand, A-570-016 (Oct. 28, 2024) ("Second Remand Results"), ECF No. 112-1; *see also Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China*, 84 Fed. Reg. 17,781 (Dep't Commerce Apr. 26, 2019) (final results of antidumping duty admin. rev. and final redetermination of no shipments; 2016–2017) ("*Final Results*"), ECF No. 24-4, and accompanying Issues and Decision Mem., A-570-016 (Apr. 19, 2019) ("I&D Mem."), ECF No. 24-5; Final Results of Redetermination Pursuant to Ct. Remand, A-570-016 (Oct. 31, 2023) ("First Remand Results"), ECF No. 78-1.[1]

---

[1] The administrative record for the Second Remand Results is contained in a Public Remand Record ("2PRR"), ECF No. 122-2, and a Confidential Remand Record ("2CRR"), ECF No. 122-3.  The administrative record for the *Final Results* is contained in a Public Administrative Record ("PR"), ECF No. 24-2, and a Confidential Administrative Record ("CR"), ECF No. 24-3.  For the Second Remand Results, the parties submitted joint appendices containing record documents cited in their comments.  [Confid.] Second Remand Joint Appendix ("2RCJA"), ECF No. 134; [Public] Second Remand Joint Appendix ("2RPJA"), ECF No. 135.  When necessary, the court cites to confidential record documents contained in the relevant, previously filed joint appendix.  [Confid.] J.A. to Opening, Resp., and Reply Brs. Regarding Pls.' and Consol. Pls.' Mot. for J. on the Agency R. Pursuant to Rule 56.2 ("CJA"), ECF No. 46.

### BACKGROUND

This case returns to the court with considerable history.  The court repeats the history as relevant and presumes familiarity with past decisions.  *See YC Rubber Co. (N. Am.) LLC v. United States (YC Rubber I)*, 44 CIT __, 487 F. Supp. 3d 1367 (2020); *YC Rubber Co. (N. Am.) LLC v. United States (YC Rubber II)*, Appeal No. 21-1489, 2022 WL 3711377 (Fed. Cir. Aug. 29, 2022); *YC Rubber Co. (N. Am.) LLC v. United States (YC Rubber III)*, 45 CIT __, 711 F. Supp. 3d 1387 (2024).

In October 2017, Commerce initiated the second administrative review of the antidumping duty order on certain passenger tires from China.  *Initiation of Antidumping and Countervailing Duty Admin. Revs.*, 82 Fed. Reg. 48,051 (Dep't Commerce Oct. 16, 2017); *see also Initiation of Antidumping and Countervailing Duty Admin. Revs.*, 82 Fed. Reg. 57,705 (Dep't Commerce Dec. 7, 2017) (correcting misspellings) (collectively, "*Initiation Notice*").  Commerce explained that exporters or producers that requested a non-investigated separate rate and were later selected as mandatory respondents would not be eligible for a separate rate if they did not respond to all parts of the questionnaire as mandatory respondents.  *Initiation Notice*, 82 Fed. Reg. at 48,053.  Commerce initially selected two mandatory respondents, but after one withdrew, Commerce continued with one mandatory respondent, Zhaoqing Junhong Co., Ltd. ("Junhong"), and used that company's rate as the basis for the separate rate.  *See* I&D Mem. at 14–15.  Commerce identified Kenda Rubber (China) Co., Ltd. ("Kenda"), Mayrun Tyre (Hong Kong) Limited ("Mayrun"), Shandong Hengyu Science & Technology Co., Ltd. ("Hengyu"), Shandong Linglong Tyre Co., Ltd ("Linglong"),

Shandong Wanda Boto Tyre Co., Ltd ("Wanda Boto"), and Winrun Tyre Co., Ltd

("Winrun") as among the companies receiving the separate rate. *See Final Results*, 84

Fed. Reg. at 17,1782.  Commerce rejected requests from Winrun, Linglong, Mayrun,

and Hengyu to withdraw from the review. *See* I&D Mem. at 8–9.

        In this consolidated case, YC Rubber Co. (North America) LLC and Sutong Tire

Resources, Inc. (together, "YC Rubber"), Mayrun, and ITG Voma Corp. ("ITG Voma")

(collectively, "Plaintiffs") challenged the *Final Results*.[2]  This court concluded that

Commerce did not err in relying on a single mandatory respondent or in denying the

withdrawal requests. *See generally YC Rubber I*, 487 F. Supp. 3d at 1375–85.  The

U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") vacated this court's

decision. *YC Rubber II*, 2022 WL 3711377, at *5.[3]  The Federal Circuit concluded that

Commerce "erred in relying on a single entity for calculation of a dumping margin for all

respondents." *Id.* at *4.  The matter was then remanded to Commerce to issue a

redetermination. *Id.* at *5; Order (Feb. 2, 2023) at 1, ECF No. 72.

        Commerce reconsidered the *Final Results* in its First Remand Results.

Commerce sought an additional mandatory respondent by considering Wanda Boto,

Hengyu, Mayrun, Winrun, and Kenda, in that order, ostensibly corresponding to each

---

[2] YC Rubber imports from Winrun.  Order for Stat. Injunction Upon Consent (May 24, 2019), ECF No. 11.  Sutong Tire imports from Hengyu, Linglong, and Wanda Boto. Order for Stat. Injunction Upon Consent (May 24, 2019), ECF No. 12.  ITG Voma imports from Wanda Boto.  Order for Stat. Injunction Upon Consent (May 24, 2019), ECF No. 14, *ITG Voma Corp v. United States*, No. 19-cv-00078.

[3] The court notes that *YC Rubber II* was not published in the Federal Reporter, but the decision is precedential.  *See* FED. CIR. R. 32.1(a) (providing that decisions are precedential unless designated otherwise).

company's volume of entries for the relevant time period, and, after the first four

declined to participate, Kenda served as the mandatory respondent.  First Remand

Results at 2–5.  Commerce determined that Wanda Boto, Hengyu, Mayrun, and Winrun

were no longer eligible for the non-investigated separate rate because of their

respective failures to participate as mandatory respondents, and Commerce assigned

them the China-wide rate.  *Id*. at 5–6, 36.  Commerce did not consider Linglong in the

respondent-selection process and assigned Linglong the separate rate.  *Id.* at 37.

Commerce also denied the renewed withdrawal requests of Mayrun, Winrun, and

Hengyu.  *Id.* at 36.

        This court remanded the First Remand Results.  *YC Rubber III*, 711 F. Supp. 3d

at 1407.  The court concluded that although Commerce did not err in deciding to select

a second mandatory respondent, Commerce erred in its selection process because

Commerce omitted Linglong from consideration and failed to explain that omission.  *Id.*

at 1399–1402.  The court further noted that Commerce's selection order, based on

volume of exports, appeared faulty because data from U.S. Customs and Border

Protection ("CBP") suggested that Kenda might have had more entries than Hengyu,

Mayrun, and Winrun, and remanded for reconsideration or further explanation.  *Id*. at

1401–02.  The court also concluded that Commerce did not adequately explain its

decision to deny separate-rate status to Wanda Boto, Hengyu, Mayrun, and Winrun

based on their respective decisions not to participate as mandatory respondents during

the First Remand proceeding.  *Id.* at 1405.  Finally, the court concluded that Commerce

did not adequately explain its decision to deny the renewed withdrawal requests, *id.* at 1405–06, and remanded that determination to Commerce, *id.* at 1407.

Commerce issued its Second Remand Results. Commerce explained that, because of a non-minor variation[4] in the CBP data referencing "Kenda Rubber," the agency reasonably limited the CBP data that it considered in calculating Kenda's volume of imports for respondent-selection purposes. Second Remand Results at 5. Based on Commerce's evaluation of the data, Commerce concluded that it properly selected Kenda after Wanda Boto, Hengyu, Mayrun, and Winrun, despite confirming, through Kenda's *subsequent* participation in the remand proceeding, that Kenda actually had a larger volume of imports than indicated by the CBP data. *Id.* at 5–6. Commerce acknowledged the omission of Linglong in the First Remand respondent-selection analysis and concluded, based on the CBP data used in the First Remand Results, that Linglong would have been selected as a mandatory respondent before Kenda. *Id.* at 4–6. Basing its approach on what it would have done had it properly considered Linglong's data in the First Remand proceeding, Commerce selected Linglong as a mandatory respondent. *Id.* at 6. Linglong declined to participate, thus leaving Kenda as the second mandatory respondent. *See id.* at 2–3.

Commerce continued to deny separate-rate status to Wanda Boto, Hengyu, Mayrun, and Winrun, and now also to Linglong, because those companies declined to participate as mandatory respondents. *Id.* at 6–13. Commerce explained that

---

[4] The omission of [[          ]] from the company name.

questionnaires for mandatory respondents, as opposed to documentation for separate-rate certification, are "more detailed" and could "corroborate claims."  *Id.* at 9.

Finally, Commerce continued to deny renewed requests to withdraw from the administrative review.  *Id.* at 15.  Commerce explained that the passage of time and efforts to select additional mandatory respondents were not appropriate reasons to permit withdrawal because those events were "foreseeable and typical" consequences of the litigation.  *Id.* at 15–16.

Plaintiffs filed comments opposing the Second Remand Results.  [Confid.] Pls.' Cmts. Opposing Second Remand Redetermination, ECF No. 126 ("YC Rubber's Cmts."); Cmts. of [ITG Voma] Opposing Second Remand Redetermination, ECF No. 128 ("ITG Voma's Cmts."); Confid. Cmts. of Consol. Pl. [Mayrun] In Opposition to the Department's Second Remand Redetermination, ECF No. 129 ("Mayrun's Cmts.").[5] The United States ("Defendant" or "the Government") filed comments in support of the Second Remand Results.  Def.'s Confid. Resp. to Cmts. on Remand Redetermination, ECF No. 132 ("Def.'s Cmts.").[6]

---

[5] Because Plaintiffs generally present the same arguments and incorporate each other's arguments, *see* YC Rubber's Cmts. at 21; ITG Voma's Cmts. at 2; Mayrun's Cmts. at 6, the court addresses arguments as from Plaintiffs generally.

[6] After the Second Remand Results, Plaintiff-Intervenor Kenda, with consent of the other parties, moved for partial summary judgment, which the court granted.  *See* Order (Nov. 26, 2024), ECF No. 124; Partial Judgment (Nov. 26, 2024), ECF No. 125. Accordingly, Kenda did not file comments on the Second Remand Results.

JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018),[7] and 28 U.S.C. § 1581(c). The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).  "An agency finding may still be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence."  *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1374 (Fed. Cir. 2015) (citing *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

DISCUSSION

**I.    Order of Selection of a Second Mandatory Respondent**

      **a.  Parties' Contentions**

Plaintiffs revive their argument, first presented in their challenge to the First Remand Results, that the order of respondent selection was erroneous because Kenda had a larger volume of imports than Commerce relied upon for respondent selection and therefore should have been selected before Hengyu, Mayrun, and Winrun, and now also Linglong.  *See* YC Rubber's Cmts. at 6–10; Mayrun's Cmts. at 5–6.  Plaintiffs argue that Commerce should have combined all CBP data entries that referenced "Kenda Rubber," thus combining entries for [[                                                    ]] with entries for [[                              ]], rather than relying only on the entries for [[

_____

[7] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and references to the U.S. Code are to the 2018 edition unless otherwise stated.

]].  YC Rubber's Cmts. at 6.  Plaintiffs point out that Commerce has a practice of combining data entries with minor name variations and a practice of using case numbers to combine data entries, and argue that the variation in the names on the entries at issue here was minor and the data entries included the same case numbers. *See* YC Rubber's Cmts. at 9–10 (citing Issues and Decision Mem. for Sugar from Mexico, A-201-845 (Sept. 16, 2015) ("Sugar from Mexico Mem.") at 12 n.53, and Prelim. Decision Mem. for Cold-Rolled Steel Flat Prods. from the Republic of Korea, C-580-882 (Sept. 30, 2021) ("CRS from Korea Prelim. Mem.") at 2 n.11))[8].  Plaintiffs identify record evidence showing that the aggregated volumes more accurately represented Kenda's volume of entries.  YC Rubber's Cmts. at 6–9; *see also* Mayrun's Cmts. 5–6.[9]

Defendant argues that Commerce appropriately explained its decision not to aggregate certain imports based on what the agency characterizes as a non-minor variation in the company name.  Def.'s Cmts. at 5–7.  Therefore, at the time of selection, the Government contends, Commerce reasonably relied on [[

]], and not any other variations.  Def.'s Cmts. at 7–8 (citing 19 U.S.C. § 1677f-1(c)(2)).

---

[8] Commerce's decision memoranda are publicly available at https://access.trade.gov/public/FRNoticesListLayout.aspx, with separate links for pre- and post-June 2021 memoranda.

[9] ITG Voma further argues that Commerce erred by relying on all imports during the period of review to determine respondent selection, rather than limiting its review to suspended entries.  ITG Voma's Cmts. at 3–6.  The court previously addressed this argument, finding that Commerce reasonably explained the basis for its reliance on total imports and that such practice was consistent with the statute.  *YC Rubber III*, 711 F. Supp. 3d at 1400.

### b. Analysis

This analysis is twofold because of the unusual nature of this proceeding and the challenges necessarily created by the timing of the reconsideration of respondent selection following the Federal Circuit's decision in *YC Rubber II*.  Recalling that the court remanded for reconsideration or further explanation Commerce's respondent-selection methodology set forth in the First Remand Results, the court now considers whether Commerce, in the Second Remand Results, has properly explained its selection of Kenda in relation to Wanda Boto, Hengyu, Mayrun, and Winrun in the First Remand Results.  The court next considers Commerce's selection of Linglong in relation to Kenda in the Second Remand Results.

### i. Kenda

Commerce has now reasonably explained its decision, from the First Remand Results, to decline to combine CBP data entries when determining Kenda's volume of imports.  Commerce has a practice of combining imports for companies with minor variations in names.  *See* Resp't Selection Mem. (Apr. 12, 2018) at 7, CR 47, PR 140, CJA Tab 24.  Commerce explained that it "considers minor variations to be limited to issues like the omission of periods in abbreviations or the omission of corporate abbreviations (like 'Co.')."  Second Remand Results at 5; *see also* Sugar from Mexico Mem. at 12 n.53 (combining entries when "Ltd." was omitted).  Commerce, however, does not consider other variations minor.  *See, e.g.*, Issues and Decision Mem. for Frozen Warmwater Shrimp from Thailand, C-549-828 (Aug. 12, 2013) at 62 (declining to

combine entries with "significant differences in the names" but not detailing those differences).

Plaintiffs do not question this practice but rather dispute whether the omission of a particular word, [[        ]], is a minor variation.  No party suggests that the omitted word here was a corporate abbreviation such that prior practice would indicate the variation was minor.  Instead of disputing the nature of the variation, Plaintiffs point to later-obtained evidence of Kenda's volume of imports to show that Commerce's calculation of the CBP data was ultimately inaccurate.  *See* YC Rubber's Cmts. at 6–9 (citing responses to mandatory-respondent questionnaires submitted after selection); Mayrun's Cmts. 5–6.  But that evidence was not available to Commerce when deciding whether the name variation was minor.  This respondent selection occurred before the mandatory-respondent questionnaires were compiled, so Commerce had to make its decision on the record before it, and here that evidence was limited to the CBP data with discrepant names.  Commerce considered the name variations[10] and reasonably concluded the variation was not minor.  Commerce's reasoning is internally consistent: Commerce declined to aggregate a data entry from Mayrun with another data entry that

---

[10] Commerce also had available the case numbers for the differently named companies, but the agency asserted that the inclusion of the same case numbers did not warrant aggregation.  Second Remand Results at 21.  At times, Commerce has combined entries with the same case number.  *See, e.g.*, CRS from Korea Prelim. Mem. at 2 n.11. While the use of the same case number may favor aggregating the entries, the presence of such evidence does not necessarily outweigh the differences in the names themselves, reported for the entries, and the court will not reweigh the evidence that was otherwise properly accounted for by the agency.  *See Downhole Pipe*, 776 F.3d at 1376–77.

omitted an analogous term (in that case, [[                    ]]).  *See* U.S. Customs Entries

(Nov. 30, 2017), Excel attachment, CR 44–45, PR 119, CJA Tab 22 (on file with the

court).[11]

 With the limited information available to Commerce at the time of respondent

selection for the First Remand Results, Commerce had to determine the significance of

an omitted word in a company name.  Commerce has now provided the further

explanation necessary for the court to understand the agency's decision-making at the

time it made that decision.

### ii.  Linglong

 In the Second Remand Results, Commerce continued to rely on the CBP data

without aggregating certain entries with "Kenda Rubber" in the name in order to

determine that Linglong had a larger volume of imports than Kenda, and the agency

then determined that it was appropriate to select Linglong as a mandatory respondent

before Kenda.  Second Remand Results at 4–6.

 Focusing again on the unique circumstances in which this question arises,

Commerce's reliance on the original CBP data for Kenda in the Second Remand

Results in relation to Linglong is unsupported by substantial evidence.  In the First

Remand proceeding, Commerce entirely failed to analyze Linglong's import volume;

consequently, the Second Remand proceeding was the first time Commerce considered

---

[11] Commerce, rather than comparing the situation to Mayrun, focused on Wanda Boto. Second Remand Results at 5.  That comparison is less persuasive.  In addition to other variations, those disregarded companies all lacked [[          ]] in the name.

Linglong for purposes of respondent selection.  In this Second Remand proceeding, because Commerce had already examined Kenda's questionnaire responses in the First Remand Results, Commerce had ready access to *more* information about Kenda's volume of imports.  *See* YC Rubber's Cmts. at 6–9.  Instead of basing its determination on the record before it, Commerce chose to rely on the record as it existed during the respondent-selection process for the First Remand Results, explaining that "at the time [the agency] selected [Kenda] as a mandatory respondent, there was no information, compelling or otherwise, to combine entries."  Second Remand Results at 20–21.  In the case of Linglong, however, the court must consider the evidence Commerce had available to it when it selected Linglong, not when it selected Kenda in the First Remand proceeding, and whether Commerce properly considered that evidence.  The agency did not.  Commerce had more information available at the time of Linglong's selection, and Commerce cannot ignore evidence that detracts from its determination that Linglong should be selected as a mandatory respondent before Kenda.  *See CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1373 (Fed. Cir. 2016).

Defendant attempts to justify Commerce's actions by emphasizing that the agency "makes its respondent selection determination on the record information available at the time of selection."  Def.'s Cmts. at 7.  But that is decidedly not what Commerce did here, with respect to Linglong.  The premise behind Commerce's approach is that there is and was a singular respondent-selection event.  While that may be the typical case, here, respondent selection occurred at various times (the beginning of the review, after *YC Rubber II*, and after *YC Rubber III*), and as late as

2024.  *See* Resp't Selection Mem. (Aug. 6, 2024), 2CRR 1, 2PRR 1, 2RCJA Tab 28 (selecting Linglong before Kenda).[12]  In this unusual case, at the time of the most recent respondent-selection exercise (to address the erroneous omission of Linglong from the previous respondent selection), Commerce had additional information about the volume of Kenda's entries and may not simply ignore it.  Commerce's assertion that it did not have Kenda's information during an earlier respondent-selection exercise is insufficient.  Therefore, Commerce's selection of Linglong before Kenda is unsupported by substantial evidence and must be remanded.

## II.    Denial of Separate Rate

### a.  Parties' Contentions

Plaintiffs contend that Commerce's decision to deny separate-rate status to Hengyu, Winrun, Wanda Boto, Mayrun, and Linglong was unlawful.  First, Plaintiffs argue that Commerce's decision to request additional information (in the form of the mandatory-respondent questionnaires) was arbitrary and capricious based on the passage of time.  Mayrun's Cmts. at 6–7 (relying on *Changzhou Hawd Flooring Co. v. United States*, 39 CIT 64, 44 F. Supp. 3d 1376 (2015)); *see also* ITG Voma's Cmts. at 12–13 (same).  Next, Plaintiffs argue that those parties' failure to participate as mandatory respondents was unrelated to the issue of government control.  ITG Voma's

---

[12] Defendant relies on the statutory directive that the agency base respondent selection on "information available . . . at the time of selection" to support Commerce's decision to consider only evidence that it had at the time of the respondent selection for the First Remand Results.  *See* Def.'s Cmts. at 7 (citing 19 U.S.C. § 1677f-1(c)(2)(A)–(B)).  As discussed above, this statutory language does not require a singular respondent-selection event.

Cmts. at 7–12; Mayrun's Cmts. at 11.  Plaintiffs point out that a Section A questionnaire (which mandatory respondents must complete) and separate-rate certifications are different inquiries and therefore the failure to complete the former does not alter the validity of the latter.  ITG Voma's Cmts. at 8–9.  Plaintiffs further contend that the denial of separate-rate status is punitive and similar to an application of adverse facts available.  *Id.* at 12–16; Mayrun's Cmts. at 6–7.

Defendant explains that Commerce reasonably gave more weight to the more detailed and verifiable information in the full questionnaire responses in determining the applicability of a separate rate.  Def.'s Cmts. at 9–10.

### b.  Analysis

"In proceedings involving non-market economy (NME) countries, [Commerce] begins with a rebuttable presumption that all companies within the country are subject to government control and, thus, should be assigned a single antidumping duty deposit rate."  *Initiation Notice*, 82 Fed. Reg. at 48,052; *see also Transcom, Inc. v. United States*, 294 F.3d 1371, 1373 (Fed. Cir. 2002).  Commerce may grant a non-investigated separate rate to companies that establish that they are independent from government control.  *Initiation Notice*, 82 Fed. Reg. at 48,052.  Companies may submit a separate-rate application or, if they have received a separate rate in a prior administrative review, a separate-rate certification.  *Id.*  In its *Initiation Notice*, Commerce further stated: "[f]or exporters and producers who submit a separate-rate status application or certification and subsequently are selected as mandatory respondents, these exporters and producers will no longer be eligible for separate rate status unless they respond to all

parts of the questionnaire as mandatory respondents." *Id.* at 48,053. Separate-rate

certifications are also subject to verification or corroboration. *See, e.g.*, [Wanda Boto]

Separate Rate Certification (Nov. 15, 2017), Ex. 1, PR 93, 2RCJA Tab 6 (requiring

companies seeking a separate rate to attest that they are "aware that the information

contained in th[eir] submission may be subject to verification").

Here, Commerce denied separate-rate status to Wanda Boto, Hengyu, Winrun,

Mayrun, and Linglong after each of those companies declined to participate as

mandatory respondents. Second Remand Results at 6–13. As a general matter,

Commerce reasonably explained in the Second Remand Results that the information in

Section A of the mandatory-respondent questionnaire was relevant to obtaining the

separate-rate status because it solicited information about corporate structure that

would corroborate the companies' claims. *Id.* at 9–11, 13.

Plaintiffs' arguments otherwise are unpersuasive. First, Commerce did not act in

an arbitrary and capricious manner by requesting additional information late in the

proceeding. The court already found in *YC Rubber III* that Commerce reasonably

explained its decision to select another mandatory respondent based on *YC Rubber II*.

Moreover, Commerce's request was hardly "unexpected," ITG Voma's Cmts. at 12–13

(citation omitted), given that Plaintiffs expressly challenged the lack of a second rate to

weight-average with Junhong to determine the rate applicable to separate-rate

companies. *Changzhou* does not counsel otherwise. While the decision to individually

investigate another company in that case similarly came "in the third iteration of a much

contested [antidumping] determination," the *Changzhou* court's analysis focused not

simply on the passage of time but rather on the "[i]nternal inconsistency and self-

contradiction" of initiating an individual investigation after the agency claimed that it did

not have resources. *Changzhou*, 39 CIT at 77, 44 F. Supp. 3d at 1389–90.

Commerce's decision here is a consequence of *YC Rubber II*. Moreover, throughout

the entire proceeding, the parties have been on notice that failure to act as a mandatory

respondent would result in a denial of separate-rate certification, without regard to the

duration of the proceeding.

    Plaintiffs' second point, that the failure to act as a mandatory respondent is

unrelated to government control, is also unavailing. In a review involving a non-market

economy, such as China, the starting presumption is that a company is subject to the

country-wide rate, unless and until the company demonstrates independence from the

government. *See Transcom*, 294 F.3d at 1373. While Plaintiffs argue that the selected

respondents' failure to act as mandatory respondents was unrelated to the issue of

government control, they have misplaced the burden. Commerce is not required to

establish that companies are part of the Chinese government—that is the starting

presumption. *See China Mfrs. Alliance, LLC v. United States*, 1 F.4th 1028, 1039 (Fed.

Cir. 2021) ("We have previously affirmed Commerce's practice of applying a rebuttable

presumption that all companies within an NME country are subject to government

control."). Rather, companies must establish that they are independent of the Chinese

government and may do so through applications, certifications, and, if asked, responses

to questionnaires and requests for verification. By failing to respond to questionnaires

as mandatory respondents when reasonably requested to do so, Hengyu, Winrun,

Mayrun, and Wanda Boto did not rebut the presumption of government control and Commerce's decision to deny a separate rate for those companies is supported by substantial evidence.

Linglong, however, presents a different situation.  Based on the record before Commerce during the Second Remand proceeding, it is undisputed that Kenda had more imports than Linglong and, thus, should have been selected before Linglong. Nothing in the record suggests Commerce intended or needed to select a third mandatory respondent or was otherwise inclined to seek verification or corroboration of Linglong's separate-rate certification.  In the absence of such evidence, Commerce would not have had reason to select Linglong as a mandatory respondent and that company's separate-rate status would have been undisturbed.  Thus, consistent with this court's remand of the selection of Linglong as a mandatory respondent, the court will also remand Commerce's decision to deny a separate rate to Linglong for reconsideration or further explanation consistent with this opinion.

### III.    Denial of Withdrawal Requests

#### a.  Parties' Contentions

Plaintiffs contend that Commerce erred in denying the parties' requests to withdraw from the review after *YC Rubber II*.  *See* YC Rubber's Cmts. at 19–21 (discussing Hengyu, Winrun, and Linglong); Mayrun's Cmts. at 11 (discussing Mayrun). Plaintiffs argue that the "unique circumstances" of the passage of time since the initiation of the second administrative review warranted the parties' withdrawal.  YC Rubber's Cmts. at 20.  Plaintiffs further argue that the selection of a second mandatory

respondent constituted an "extraordinary circumstance" that warranted the renewed requests to withdraw from the proceeding. Mayrun's Cmts. at 12–13. Finally, Plaintiffs argue that denying the requests served no purpose for Commerce because the agency was not, at the time, expending any resources to review the respondents requesting withdrawal. YC Rubber's Cmts. at 20; *see also* Mayrun's Cmts. at 14 ("Commerce has no institutional or other interests in continuing to conclusion a review of a party for whom no review request remains, and for whom no additional expenditure of agency resources was required.").

Defendant argues that Commerce reasonably considered the passage of time and the accompanying remands as foreseeable and typical, not unique. Def.'s Cmts. at 14. Moreover, Defendant contends that Commerce has an interest in ensuring administration of the antidumping laws and therefore in preventing parties from requesting and then withdrawing from a review. *Id.* at 15–16.

### b. Analysis

As discussed in *YC Rubber III* (and *YC Rubber I*), Commerce "will rescind an administrative review . . . if a party that requested a review withdraws the request within 90 days of the publication of the notice of initiation of the requested review." 19 C.F.R. § 351.213(d)(1). Commerce "may extend this time limit if [the agency] decides that it is reasonable to do so." *Id.*; *see also Glycine & More, Inc. v. United States*, 880 F.3d 1335, 1344–45 (Fed. Cir. 2018) (confirming reasonableness standard).

To the extent Plaintiffs continue to challenge Commerce's decision to deny their initial withdrawal requests, this court previously determined that those denials were

supported by substantial evidence and that finding was unaltered by the Federal Circuit. *See YC Rubber III*, 711 F. Supp. 3d at 1405.[13]  Plaintiffs have not provided any basis for the court to reconsider its earlier holding.

      Mayrun, Hengyu, Winrun, and Linglong all requested to withdraw after the 90-day deadline, so the reasonableness standard articulated in the regulation applies.  Though Plaintiffs characterize this case as "unique" based on the significant time since the initiation of the administrative review and the selection of a second mandatory respondent, those events were foreseeable consequences based on the claims made and pursued by Plaintiffs in this litigation.  It is unremarkable that time would pass as the litigation continued or that a litigated issue would be resolved in a way that necessitated further administrative action by Commerce.  The companies, whether participating in the litigation or not, were aware that Commerce's results in the second administrative review were not yet final and conclusive.  Moreover, the reason for the continued litigation was clear—the absence of a second rate to weight-average with Junhong to establish the rate applicable to separate-rate companies.  *See YC Rubber II*, 2022 WL 3711377, at *3–4.  Thus, the renewed respondent-selection process, and consequent denial of separate-rate status based on the companies' respective decisions not to participate as mandatory respondents, was reasonably foreseeable.  Commerce

---

[13] In particular, YC Rubber argues that the publication of the final results from the first administrative review after the 90-day deadline satisfies the reasonableness standard for a subsequent withdrawal request.  YC Rubber's Cmts. at 20.  This argument was dispensed with in *YC Rubber I*, 487 F. Supp. 3d at 1385, and unchanged by *YC Rubber II*, 2022 WL 3711377, at *5.  While the parties may wish to preserve a possible appeal, the court does not readdress the issue.

explained as much, Second Remand Results at 32–33, and the court sustains Commerce's decision to deny these requests to withdraw.

Plaintiffs' argument that Commerce lacks an institutional interest in continuing the review for these parties is unpersuasive.  Commerce explained that generally allowing parties to withdraw without reasonable grounds would risk allowing parties to manipulate the antidumping laws and effectively avoid any outcome from proceedings that are not favorable to them.  Second Remand Results at 33–34.  Here, Plaintiffs have successfully litigated the issue that Commerce could not lawfully determine the rate applicable to separate-rate companies based on one company.  Having won that point, the court is unpersuaded that Commerce has no institutional interest in denying these parties' requests to be excused from the consequences of their success.

Although Mayrun, unlike the others, requested withdrawal before being selected as a mandatory respondent, that does not alter the court's decision.  Even at that point, Commerce had invested resources into conducting the second administrative review as requested by various parties, including Mayrun.  While Mayrun may disagree with Commerce's denial, that decision is not unreasonable.  *See Downhole Pipe*, 776 F.3d at 1374 (explaining substantial evidence is still met "even if two inconsistent conclusions can be drawn").

For these reasons, the court sustains Commerce's denial of the parties' requests to withdraw from the second administrative review.

### CONCLUSION AND ORDER

In accordance with the foregoing, it is hereby

**ORDERED** that Commerce's Remand Results are sustained in part and remanded in part; it is further

**ORDERED** that, on remand, Commerce shall reconsider its selection of Linglong as a mandatory respondent; it is further

**ORDERED** that, on remand, Commerce shall reconsider its decision to rescind the separate-rate status of Linglong consistent with the findings in this opinion; it is further

**ORDERED** that Commerce shall file its remand redetermination on or before August 19, 2025; it is further

**ORDERED** that subsequent proceedings shall be governed by USCIT Rule 56.2(h); it is further

**ORDERED** that any comments or responsive comments must not exceed 3,000 words.

/s/    Mark A. Barnett
Mark A. Barnett, Chief Judge

Dated:    May 21, 2025
          New York, New York