# UNITED STATES COURT OF INTERNATIONAL TRADE
# NEW YORK, NEW YORK

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| YC RUBBER CO. (NORTH AMERICA) LLC, SUTONG TIRE RESOURCES INC., MAYRUN TYRE (HONG KONG) LIMITED, and ITG VOMA CORPORATION,<br><br>    Plaintiffs and Consolidated Plaintiffs,<br><br>    v.<br><br>UNITED STATES,<br><br>    Defendant. | Consol. Court No. 19-00069 |

## COMMENTS OF ITG VOMA CORPORATION, YC RUBBER CO. (NORTH AMERICA) LLC, AND SUTONG TIRE RESOURCES, INC. OPPOSING THIRD REMAND DETERMINATION

Ned H. Marshak
Jordan C. Kahn

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
599 Lexington Avenue FL 36
New York, NY 10022-7648
(212) 557-4000

*Counsel to YC Rubber Co. (North America) LLC and Sutong Tire Resources, Inc.*

Jonathan T. Stoel
Craig A. Lewis
Nicholas R. Sparks

HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109
(202) 637-6634

*Counsel to ITG Voma Corporation*

Dated: October 2, 2025

## **TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................................2

      I.     COMMERCE COULD AND SHOULD HAVE RIGHTFULLY REINSTATED THE SEPARATE-RATE STATUS OF OTHER RESPONDENTS ........................3

      II.    COMMERCE'S ANALYSIS WITH RESPECT TO LINGLONG CONFIRMS THAT THE AGENCY SHOULD HAVE RECOGNIZED THE SEPARATE-RATE ELIGIBILITY OF OTHER RESPONDENTS .............................................5

CONCLUSION ...............................................................................................................................9

# TABLE OF AUTHORITIES

**CASES**

*ABB Inc. v. United States*,
  375 F. Supp. 3d 1348 (Ct. Int'l Trade 2019) ................................................................................ 4

*Linyi Chengen Imp. & Exp. Co. v. United States,*
  609 F. Supp. 3d 1392 (Ct. Int'l Trade 2022) ................................................................................ 5

*Martin v. Franklin Capital Corp.*,
  546 U.S. 132 (2005) ..................................................................................................................... 7

*Pakfood Pub. Co. v. United States*,
  34 CIT 1122 (2010) ...................................................................................................................... 7

*SKF USA Inc. v. United States*,
  263 F.3d 1369 (Fed. Cir. 2001),
  *aff'd*, 332 F.3d 1370 (Fed. Cir. 2003) ......................................................................................... 7

*YC Rubber Co. (North America) LLC v. United States*,
  2022 WL 3711377 (Aug. 29, 2022) ............................................................................................. 4

*YC Rubber Co. (North America) LLC v. United States*,
  711 F. Supp. 3d 1387 (Ct. Int'l Trade 2024) ................................................................................ 4

**OTHER AUTHORITIES**

*Certain Passenger Vehicle and Light Truck Tires From the People's Republic of* China,
  84 Feg. Reg. 17,781 (Dep't Commerce Apr. 26, 2019) ............................................................... 6

**COMMENTS OF ITG VOMA CORPORATION, YC RUBBER CO. (NORTH AMERICA) LLC, AND SUTONG TIRE RESOURCES, INC. OPPOSING THIRD REMAND DETERMINATION**

Plaintiffs YC Rubber Co. (North America) LLC, Sutong Tire Resources, Inc., and ITG Voma Corporation, respectfully submit the following comments opposing the U.S. Department of Commerce's ("Commerce" or the "Department") Final Results of Redetermination Pursuant to Court Remand (Aug. 18, 2025), 3R C.R. 2, 3R P.R. 5, ECF Nos. 144–145 (the "Third Remand Results"). The Third Remand Results are both unlawful and unsupported by substantial evidence for the reasons that follow.

On May 21, 2025, this Court issued its Third Remand Order, directing Commerce to reconsider – (1) its selection of Shandong Linglong Tyre Co., Ltd ("Linglong") as a mandatory respondent, and (2) its decision to rescind the separate-rate status of Linglong. Slip Op. 25-64, at 22. Regarding the order in which Linglong was selected as a respondent, the Court observed:

> In this unusual case, at the time of the most recent respondent-selection exercise (to address the erroneous omission of Linglong from the previous respondent selection), Commerce had additional information about the volume of {Kenda Rubber (China) Co., Ltd.'s} entries and may not simply ignore it.

*Id*. at 14. The Court likewise stated: "In the absence of such evidence {that the Department would have selected Linglong as a mandatory responded or sought additional information regarding Linglong's separate rate status}, Commerce would not have had reason to select Linglong as a mandatory respondent and that company's separate-rate status would have been undisturbed." *Id*. at 18.

In the Third Remand Results, Commerce reinstated Linglong's separate-rate status and calculated a rate of 41.36 percent in recognition of the unique facts of this proceeding. Third Remand Results at 12. Notwithstanding, Commerce declined to apply this separate rate to the other non-examined respondents that timely submitted separate-rate applications/certifications

1

("SRC") in the review, including Shandong Wanda Boto Tyre Co. Ltd. ("Boto"), Shandong Hengyu Science & Technology Co., Ltd. ("Hengyu"), and Winrun Tyre Co., Ltd. ("Winrun"). P.R. 63, 65, 93. These parties, exactly like Linglong, timely provided SRCs at the outset of the review, which Commerce reviewed and accepted, but nonetheless were unable to participate as mandatory respondents due to the passage of many years since the underlying administrative review period ended, the intervening COVID-19 pandemic, and other important factors documented in the factual records before both Commerce and this Court. *See* Slip Op. 25-64 at 6 (explaining that in the Second Remand Results (Oct. 28, 2024), 2R C.R. 5, 2R P.R. 15, ECF Nos. 112-13, "Commerce continued to deny separate-rate status to Wanda Boto, Hengyu, Mayrun, and Winrun, and now also to Linglong, because those companies declined to participate as mandatory respondents."). P.R.R. 9, 16, 29; 2R P.R. 6.

Here, in justifying its decision to grant separate rate status to Linglong but not to other similarly situated respondents, Commerce simply states: "YC Rubber raises no argument as to why the Court's prior ruling on this issue is no longer applicable nor cites any provision of law requiring Commerce to grant these companies separate rates. Further, YC Rubber fails to address the facts unique to Linglong's posture that are inapplicable to the other companies." Third Remand Results at 12. This analysis is faulty and should once again be remanded for correction.

**ARGUMENT**

The Third Remand Results properly recognize that a separate rate should be calculated in this proceeding but fail to extend that separate rate to Boto, Hengyu, and Winrun. Here, Commerce calculated a separate rate of 41.36 percent by averaging the rates calculated for Kenda Rubber (China) Co., Ltd. and Zhaoqing Junhong Co., Ltd. Third Remand Results at 9–10. Commerce's calculation of a separate rate for non-examined respondent Linglong comports with the

2

Department's practice and the Court's instruction to reconsider and explain the "decision to deny a separate rate to Linglong." Slip Op. 25-64 at 18.

The Third Remand Results must be corrected, however, to apply the properly calculated separate rate to other non-examined respondents subject to the review that timely filed SRCs, including Boto, Hengyu, and Winrun. As detailed below, Commerce both could have recognized their separate-rate status in this remand proceeding and should have done so, consistent with its own reasoning that the agency improperly limited to Linglong.

**I.     COMMERCE COULD AND SHOULD HAVE RIGHTFULLY REINSTATED THE SEPARATE-RATE STATUS OF OTHER RESPONDENTS**

The Third Remand Results' claim that Commerce could not have examined the separate-rate status of Boto, Hengyu, and Winrun is incorrect. Commerce incorrectly asserts that "YC Rubber raises no argument as to why the Court's prior ruling on this issue is no longer applicable." Third Remand Results at 12. That is, the agency posits that it was bound again to deny these respondents a separate rate given the scope of the Third Remand Order—"The Court remanded specifically Commerce's denial of a separate rate for Linglong—not Wanda Boto, Hengyu, and Winrun." *Id*. at 11. This is incorrect. This Court's findings and Commerce's practice – in this very case – disprove the agency's claim that it could not consider the separate-rate status of these respondents. Commerce should have recognized that its analysis with respect to Linglong's eligibility for a separate rate likewise applied to Boto, Hengyu, and Winrun and compelled a consistent result with respect to these respondents.

Commerce's position here is striking because the agency decided this very issue – denial of the separate-rate status to separate-rate respondents – outside the clear scope of this Court's remand order. In its First Remand Order, this Court ordered Commerce to "to issue a determination consistent with *YC Rubber Co. (North America) LLC v. United States*, Appeal

3

No. 21-1489 (Fed. Cir. Aug. 29, 2022)." Order (Feb. 2, 2023), ECF No. 72. That opinion did not address whatsoever Commerce's grant (or denial) of separate-rate status in the underlying final results of the administrative proceeding, instead solely directing: "Commerce erred in restricting its examination to only one exporter/producer." *YC Rubber Co. (North America) LLC v. United States*, 2022 WL 3711377 (Aug. 29, 2022), *4. Notwithstanding the scope of this First Remand Order instructing Commerce to correct a faulty separate-rate margin, Commerce in the First Remand then proceeded to strip respondents of their separate-rate status. *YC Rubber Co. (North America) LLC v. United States*, 711 F. Supp. 3d 1387, 1393-95 (Ct. Int'l Trade 2024). This Court upheld Commerce's action: "The agency was free to reconsider the separate rate status of various respondents, as necessary and appropriate, in the context of the agency's actions to comply with the holding of *YC Rubber II*." *Id*. at 1404.

Subsequently, this Court ordered that "Commerce shall reconsider its selection of Linglong as a mandatory respondent {and} its decision to rescind the separate-rate status of Linglong consistent with the findings in this opinion." Slip Op. 25-64 at 22. In order to comply with the Court's order, Commerce needed to conduct an analysis of separate-rate eligibility. As such, and in order to issue a coherent and consistent analysis, Commerce could and should have assessed whether the agency was lawfully permitted to continue denying separate rate status to Boto, Hengyu, and Winrun, on the one hand, while reinstating separate-rate status for Linglong. Accordingly, their separate-rate status is subject to the revision and judgment of this Court. *See ABB Inc. v. United States*, 375 F. Supp. 3d 1348, 1352 (Ct. Int'l Trade 2019) (explaining that, "Pursuant to USCIT Rule 54(b), 'any order or other decision ... that adjudicates fewer than all the claims ... does not end the action as to any of the claims ... and may be revised at any time before

4

the entry of a judgment adjudicating all the claims ....' "). Commerce thus could and should have examined the separate-rate status of Boto, Hengyu, and Winrun in its Third Remand Results.

## II. COMMERCE'S ANALYSIS WITH RESPECT TO LINGLONG CONFIRMS THAT THE AGENCY SHOULD HAVE RECOGNIZED THE SEPARATE-RATE ELIGIBILITY OF OTHER RESPONDENTS

The Third Remand Results must be corrected to apply the properly calculated separate rate to other non-examined respondents subject to the review that timely filed SRCs, including Boto, Hengyu, and Winrun. The Third Remand Results describe the factors of *de jure* and *de facto* government control described in *Sparklers from China* and *Silicon Carbide from China*. Third Remand Results at 6-8. It is arbitrary for Commerce to conclude that these factors demonstrate that Linglong is entitled to a separate rate, but not other similarly situated firms. This is particularly so because Boto, Hengyu, and Winrun (like Linglong) were unable to participate fully as mandatory respondents due to the long delay created by Commerce, which requested to examine them six years after the review period ended. P.R.R. 9, 16, 29; 2R P.R. 6; s*ee, e.g.*, *Linyi Chengen Imp. & Exp. Co. v. United States,* 609 F. Supp. 3d 1392, 1404 (Ct. Int'l Trade 2022) ("Commerce is not permitted to create a scarcity of information, to use that scarcity as justification for its determination, and to claim that a constraint on resources prevents further examination, while ignoring potentially contrary evidence on the record.").

Here, it is inconsistent and nonsensical for Commerce to conclude that the government control factors demonstrate that Linglong is entitled to a separate rate but then in the same breath find that Boto, Hengyu, and Winrun are not entitled to a separate rate. Importantly: (1) these respondents timely filed SRCs, which were accepted by Commerce in the underlying proceeding; (2) Commerce previously recognized their separate-rate status in the Final Results of the underlying review; and (3) Linglong, just like these firms, was unable to participate as a mandatory

5

respondent many years after the 2016-2017 review period and yet nonetheless was assigned a separate rate by Commerce. *See Certain Passenger Vehicle and Light Truck Tires From the People's Republic of* China, 84 Feg. Reg. 17,781, 17,782-83 (Dep't Commerce Apr. 26, 2019) (final results), P.R. 290; Slip Op. 25-64 at 6.

In determining that Linglong merits a separate rate, Commerce relies on the same findings in the Preliminary Results and Final Results that Boto, Hengyu, and Winrun are also entitled to a separate rate:

> As explained in the *Preliminary Results* and unchanged in the *Final Results*, the evidence provided by Linglong in its separate rate application supports a preliminary finding of an absence of de jure government control based on the following: (1) an absence of restrictive stipulations associated with the individual exporters' business and export licenses; (2) the existence of applicable legislative enactments decentralizing control of the companies; and (3) the implementation of formal measures by the government decentralizing control of {nonmarket economy} companies. . . .
>
> As explained in the *Preliminary Results* and unchanged in the *Final Results*, the evidence provided by Linglong supports a preliminary finding of an absence of de facto government control, based on record statements and supporting documentation showing that the company: (1) sets its own export prices independent of the government and without the approval of a government authority; (2) has the authority to negotiate and sign contracts and other agreements; (3) maintains autonomy from the government in making decisions regarding the selection of management; and (4) retains the proceeds of their respective export sales and make independent decisions regarding disposition of profits or financing of losses.

Third Remand Results at 7–8 (citations omitted).

Commerce's approach is both arbitrary and unreasonable. That is, Commerce has now found that its 2019 award of a separate rate to Linglong remains determinative, but its awards of separate rates to the other respondents, in the very same determination and on the very same grounds, should be disavowed. Third Remand Results at 7, 8, 11. Specifically, Commerce

6

unlawfully ignores that this 2019 determination just as conclusively granted a separate rate to Boto, Hengyu, and Winrun. *Pakfood Pub. Co. v. United States*, 34 CIT 1122, 1128 (2010) ("{W}here an agency is afforded a measure of discretion in administering a statute, the exercise of that discretion is not in accordance with law if it is arbitrary, such as where the agency treats like cases differently."); *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005), ("Discretion is not whim, and limiting discretion according to legal standards helps promote the basic principle of justice that like cases should be decided alike."); *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001), *aff'd*, 332 F.3d 1370 (Fed. Cir. 2003) ("{I}t is well-established that an agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently.") (internal citation omitted). Recognizing the critical flaw in its approach, Commerce suggests that Linglong is distinguishable from the other separate-rate respondents because the agency forgot Linglong in a previous remand proceeding. Third Remand Results at 2. But, this claimed differentiator is totally untethered from Commerce's government control analysis and has no bearing on the outcome of separate-rate eligibility.

Indeed, Commerce has recognized "the unusual nature of this proceeding and the challenges necessarily created by the timing of the reconsideration of respondent selection following the U.S. Court of Appeals for the Federal Circuit's decision in *YC Rubber II*." *Id*. at 3. The unusual nature of this proceeding underscores why it was unreasonable for Commerce to deny Boto, Hengyu, and Winrun their previously granted separate-rate status simply because they were unable to participate fully as mandatory respondents more than six years after the 2016-2017 review period concluded. For example, Boto timely explained to Commerce that "Given the very lengthy passage of time and the unexpected nature of the Department's request, it is no longer feasible for Boto to prepare the detailed sales and cost information requested by Commerce."

7

P.R.R. 6 at 2.  As Boto explained in February 2023: "The data sources are stale, key company staff have changed, and the requested documentation is no longer easily accessible." *Id.* at 2; *see also* P.R.R. 16 at 2 ("Hengyu is not in a position to participate in the current review and respond to the questionnaire because Hengyu is in the bankruptcy procedure.  All the company personnel of Hengyu have been dismissed and even no responsible person could be contacted by us."); P.R.R. 29 at 2 ("Winrun notes that the time period for which the Department seeks data and information is 6-7 years old.  And Winrun hereby confirms that, pursuant to its normal business practices, Winrun only has the ability to access sales data and information that is 3 years old."); 2R P.R. 6 at 2 ("Linglong is unable to provide the detailed AR2 POR sales and costs information necessary to participate as a mandatory respondent because, during the intervening years: data sources have become stale; there has been turnover of key personnel; and necessary records are not readily accessible on account of its normal business practices.").

In sum, Commerce acted unlawfully by revoking the separate rate status previously assigned to Boto, Hengyu, and Winrun while maintaining one for Linglong.  The same 2019 analysis that Commerce now uses to grant Linglong a separate rate remains equally valid for Boto, Hengyu, and Winrun.  Commerce should not punish these entities for their inability (like Linglong) to participate fully as mandatory respondents by stripping them of their previously assigned separate rates.  This is particularly so here where it was Commerce's actions that created the factual circumstances leading to these respondents' inability to participate as mandatory respondents.[1]

---

[1]  Not only was the agency responsible for causing the delay resulting in respondents not being able to respond to the mandatory respondent questionnaire by failing to select a replacement respondent during the underlying review, Commerce has also delayed resolution of this matter by missing various deadlines before this Court.  *See* ECF Nos. 75, 80, 146.

Accordingly, this Court should instruct Commerce to correct this error by granting them the now calculated separate rate.

## CONCLUSION

For the foregoing reasons, Commerce's Third Remand Results are not supported by substantial evidence and otherwise not in accordance with law. This Court should remand them once again to the agency with an instruction to assign a separate rate to Boto, Hengyu, and Winrun, consistent with Commerce's prior determinations in its April 2019 final results.

Respectfully submitted,

| | |
|---|---|
| /s/ *Jordan C. Kahn*_____ | /s/ *Jonathan T. Stoel* |
| Ned H. Marshak | Jonathan T. Stoel |
| Jordan C. Kahn | Craig A. Lewis |
| | Nicholas R. Sparks |
| GRUNFELD, DESIDERIO, LEBOWITZ, SILVERMAN & KLESTADT LLP | HOGAN LOVELLS US LLP |
| *Counsel to YC Rubber Co. (North America) LLC and Sutong Tire Resources, Inc.* | *Counsel to ITG Voma Corporation* |

October 2, 2025

9

**CERTIFICATE OF COMPLIANCE**

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Jonathan T. Stoel, hereby certify that this brief complies with the word limitations set forth in Slip Op. 25-64 at 22. Excluding the table of contents, table of authorities, and signature block, the word count for this brief is 2,664 words. This brief thus complies with the Court's order in Slip Op. 25-64, which permits responses to the agency's remand redetermination of 3,000 words or fewer.

        Respectfully submitted,

        /s/ Jonathan T. Stoel
        Jonathan T. Stoel

        Hogan Lovells US LLP
        555 Thirteenth Street, N.W.
        Washington, DC 20004-1109

        *Counsel to ITG Voma Corporation*

Dated: October 2, 2025